# Exhibit 1

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**March 16, 2022**

**SECURITIES ACT OF 1933**
**Release No. 11040 / March 16, 2022**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-20801**

| | |
|---|---|
| **In the Matter of**<br><br>**DF Growth REIT II, LLC,**<br><br>**Respondent.** | **ORDER TEMPORARILY SUSPENDING EXEMPTION PURSUANT TO SECTION 3(b) OF THE SECURITIES ACT OF 1933 AND RULE 258 OF REGULATION A THEREUNDER, STATEMENT OF REASONS FOR ENTRY OF ORDER, AND NOTICE OF OPPORTUNITY FOR HEARING** |

**I.**

The public official files of the Securities and Exchange Commission ("Commission") show that:

Respondent DF Growth REIT II, LLC ("REIT II" or "Respondent"), a Delaware limited liability company with its principal place of business in San Diego, California, filed a Regulation A offering statement on Form 1-A under the Securities Act of 1933 ("Securities Act") with the Commission on December 23, 2020, and filed an amendment to the offering statement on Form 1-A/A under the Securities Act on January 21, 2021 (the "Offering Statement"). The Offering Statement was filed to obtain an exemption from the registration requirements of the Securities Act, as amended, pursuant to Section 3(b) of the Securities Act and Regulation A thereunder. The Offering Statement offered $50 million of limited liability company interests, designated as Class A Investor Shares, on a purportedly continuous basis in a Tier 2 offering under Regulation A, and was qualified on January 29, 2021.

**II.**

Rule 258 of Regulation A promulgated under the Securities Act, 17 C.F.R. § 230.258, provides that the Commission may, at any time, enter an order temporarily suspending a Regulation A exemption if it has "reason to believe" that one of six enumerated factors are present. 17 C.F.R. § 230.258. Each factor provides an independent basis upon which to

temporarily suspend an exemption from Regulation A. Two of these factors are:

- "any of the terms, conditions or requirements of Regulation A have not been complied with" (17 C.F.R. § 230.258(a)(1)); or

- "[t]he offering statement, [or] any sales or solicitation of interest material . . . contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading" (17 C.F.R. § 230.258(a)(2)).

The Commission, on the basis of information reported to it by its staff, has reason to believe that (1) REIT II failed to comply with the terms, conditions and requirements of Regulation A; and (2) REIT II's offering documents and the website it uses to solicit investors contain untrue statements of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. The Commission's decision to issue this temporary suspension under the "reason to believe" standard is not a final determination about the availability of the exemption.

**A. Non-Compliance with Regulation A**

The Commission has reason to believe that REIT II failed to comply with two of the terms, conditions, or requirements of Regulation A.

First, REIT II was required to commence its qualified continuous offering within two days after its January 29, 2021 qualification pursuant to Rule 251(d)(3)(i)(F) under Regulation A: "Continuous . . . offerings may be made under this Regulation A, so long as the offering statement pertains only to . . . [s]ecurities the offering of which will be commenced within two calendar days after the qualification date . . . ." REIT II's September 29, 2021 semi-annual report states that, as of June 30, 2021, it had not yet commenced its operations or sold any LLC interests under Regulation A, but that it "plans to begin raising money . . . starting in the second half of the year."

Here, there is a reason to believe that REIT II's failure to commence the offering within two days of qualification constituted a failure to comply with Rule 251(d)(3). Notably, violations of Rule 251(d)(3) are "deemed to be significant to the offering as a whole" for purposes of the insignificant deviation provisions of Rule 260, 17 C.F.R. § 230.260(a)(2), although Rule 260(c) specifically states that Rule 260(a) "provides no relief or protection from a [suspension] proceeding under Rule 258."

Second, REIT II raised its maximum offering amount from $50 million to $75 million through the filing of an August 26, 2021 offering circular supplement rather than a new offering statement or post-qualification amendment as required by the note to Rule 253(b) under Regulation A: "An offering circular supplement may not be used to increase the volume of securities being offered. Additional securities may only be offered pursuant to a new offering statement or post-qualification amendment qualified by the Commission." Based on this failure to file an offering statement or post-qualification amendment as required, both of which must be qualified, there is a reason to believe that REIT II avoided review by Division of Corporation Finance staff and sold in contravention of the requirement that qualification is a necessary

component for Regulation A sales. *See* Rule 251(d)(2). After Division of Enforcement staff notified REIT II of this failure, it reduced its offering amount back to $50 million.

### B. Materially Misleading Representations

The Commission has reason to believe that DiversyFund, Inc.'s ("DiversyFund") website, used to solicit REIT II investors, REIT II's January 2021 offering circular ("Offering Circular"), and REIT II's August 26, 2021 offering circular supplement make materially misleading representations regarding REIT II being a separate investment vehicle from REIT I, and regarding how much capital REIT II needs to raise from investors, its plan of operation based on the amount of capital raised, and its fees.[1]

First, REIT II argued in its emergency motion for stay filed with the Ninth Circuit,[2] that a temporary disqualification from REIT II's Regulation A exemption will result in harm to thousands of investors in both REIT I and REIT II. If we accept REIT II's argument regarding investor harm as true, then there is reason to believe that the website's representations regarding the separation of REIT II and REIT I are misleading. In November 2021, REIT II's website[3] stated that REIT I and REIT II's offerings are "separate investment vehicles." The website further explained the separation between the two offerings as follows:

> "Will launching REIT 2 impact my original REIT investment in any way?
>
> No, REIT I will not be impacted by REIT II in any way. The assets in REIT I will continue to be owned and operated by REIT I."

Similarly, if we accept REIT II's argument regarding investor harm as true – *i.e.*, that stopping REIT II sales of securities will harm both REIT I and REIT II investors – then there is reason to believe that representations in the Offering Circular regarding how much capital it needs to raise from investors and its plan of operation, which is based on the amount of capital raised, are both misleading. REIT II's Offering Circular states on its cover page that "The Offering has no minimum amount. Thus, we will begin to deploy (spend) the money we raise right away, no matter how much or little we raise." (emphasis added). In addition, under its "Plan of Operation," REIT II's Offering Circular states: "Whether we raise $50,000,000 in the Offering or something less, we believe the proceeds of the Offering will satisfy our cash requirements. If we raise less than $50,000,000, we will simply make fewer investments." (emphasis added).

Second, there is reason to believe that REIT II made conflicting representations about whether fund management fees will be charged. Specifically, REIT II's August 2021 offering

---

[1] DiversyFund is the 100% owner of DF Manager, LLC, the manager of both the DF Growth REIT, LLC ("REIT I") and REIT II securities offerings.

[2] The Ninth Circuit denied the emergency motion for stay. *See* DiversyFund, Inc., et al. v. U.S. Securities and Exchange Commission, Case No. 22-70023 (9th Cir. Feb. 28, 2022).

[3] We refer to different versions of the website because DiversyFund has revised it several times and continues to do so.

circular supplement describes an "Asset Management Fee" "equal to 2% of the capital raised," but the September 2021 version of DiversyFund's website states that there are "no management fees." There is reason to believe that these conflicting representations are misleading.

There is also reason to believe that REIT II made conflicting representations regarding several other fees. REIT II's Offering Circular represents that DF Manager will charge a substantial "Sponsor Fee," and may charge a "Property Disposition Fee," a "Construction Management Fee," a "Guaranty Fee" and "Other Fees." REIT II's August 2021 offering circular supplement, which states that it revises the fee structure in its entirety, does not mention the "Sponsor Fee," but discusses the possible "Property Disposition Fee," "Construction Management Fee," "Guaranty Fee" and "Other Fees." None of these fees appear under the website headings "What Are Your Fees?," or "REIT 2: Fee Structure," both of which state that they describe the "new fee structure." These fees are not discussed in the November 2021 version of DiversyFund's website. There is reason to believe that these conflicting representations are misleading.

In these circumstances, the Commission has reason to believe that these representations are materially misleading. A reasonable REIT II investor would consider it important to know if their investment's success or failure was contingent upon REIT I or on how much money REIT II raised. A reasonable REIT II investor would also find it important to know what fees might be charged. *See Basic v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

**III.**

IT IS ORDERED, pursuant to Rule 258(a) of the General Rules and Regulations under the Securities Act, that the exemption of REIT II under Regulation A be, and hereby is, temporarily suspended.

IT IS FURTHER ORDERED that notice of this Order shall be delivered by personal service, registered mail, or certified mail to the addresses given by the issuer, any underwriter, and any selling security holder in the Offering Statement.

NOTICE IS HEREBY GIVEN that any person having an interest in this matter may, within thirty calendar days after the entry of this Order, file with the Secretary of the Commission pursuant to the Commission's Rules of Practice a request for a hearing; that within twenty days after the receipt of such request the Commission will, or at any time upon its own motion the Commission may, set the matter for hearing at a place to be designated by the Commission, for the purpose of determining whether this order should be vacated or made permanent, without prejudice, however, to the presentation and consideration of additional matters at the hearing; and that notice of the time and place of the hearing will be promptly given by the Commission. If no hearing is requested and none is ordered by the Commission, this Order shall become permanent on the thirtieth day after its entry, and will remain in effect unless and until it is modified or vacated by the Commission.

Attention is called to Rule 151(a), (b) and (c) of the Commission's Rules of Practice, 17 C.F.R. § 201.151(a), (b) and (c), providing that when, as here, a proceeding is set before the Commission, all papers (including those listed in the preceding paragraph) shall be filed

electronically in administrative proceedings using the Commission's Electronic Filings in Administrative Proceedings (eFAP) system access through the Commission's website, www.sec.gov, at http://www.sec.gov/eFAP. Respondent also must serve and accept service of documents electronically. All motions, objections, or applications will be decided by the Commission.

By the Commission.

Vanessa A. Countryman
Secretary