BUCHALTER
A Professional Corporation
**Sanjay Bhandari (181920)**
655 W. Broadway, Suite 1600
San Diego, California 92101
Telephone:  619.219.5335
E-mail: sbhandari@buchalter.com

**Mitchell S. Kim (276429)**
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Telephone:  (213) 563-8360
E-mail: mkim@buchalter.com

Attorneys for Defendant, DF GROWTH
REIT, LLC; DF GROWTH REIT II, LLC;
DIVERSYFUND, INC.; CRAIG CECILIO;
and ALAN LEWIS

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK FERRY et al., | Case No. 3:22-cv-02001-AJB-WVG |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE** |
| v. | |
| DF GROWTH REIT, LLC et al., | Filed without a hearing date pursuant to the Court's March 2, 2023 Order (Docket No. 11) |
| Defendants. | |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that pursuant to this Court's March 2, 2023 Order Granting the Joint Motion for a Briefing Schedule (Doc. No. 11), Defendants DF Growth REIT, LLC, DF Growth REIT II, LLC, DiversyFund, Inc., Craig Cecilio, and Alan Lewis, hereby move this Honorable Court for an order dismissing the First Amended Complaint (Doc. No. 13) and striking impertinent allegations from that complaint and any amendment the Court may allow.

The Court's March 2, 2023 Order set a briefing schedule but no hearing date. Therefore, no date is listed on this motion.

Counsel for Defendants met and conferred with counsel for the Plaintiffs on March 28, 2023 regarding this motion. Plaintiffs oppose the motion.

This motion is based on Federal Rules of Civil Procedure 8, 9, and 12, the inherent power of the Court, attached Memorandum of Points and Authorities, all files and records in the case, and such evidence and argument as may be presented at any hearing.

DATED:  April 3, 2023                    BUCHALTER
                                         A Professional Corporation


                                    By:   _/s/ Sanjay Bhandari_
                                          SANJAY BHANDARI
                                    Attorneys for Defendants, DF GROWTH
                                      REIT, LLC; DF GROWTH REIT II,
                                      LLC; DIVERSYFUND, INC.; CRAIG
                                        CECILIO; and ALAN LEWIS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND ........................................................................................2

III.  LEGAL STANDARD .................................................................................3

      A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction ................3

      B.   Motion to Dismiss for Failure to State a Claim for Relief ..................4

      C.   Motion to Strike ..................................................................................5

IV.   ARGUMENT ..............................................................................................5

      A.   Plaintiffs Lack Standing. ....................................................................5

      B.   Plaintiffs Are Largely Time-Barred. ...................................................7

      C.   Plaintiffs' Allegations are Immaterial and Implausible. .....................8

            1.   Closed SEC Investigation. ..........................................................8

            2.   Mr. Cecilio's California BRE Sanction. ....................................10

            3.   Second SEC Investigation. .........................................................12

            4.   Acquisition and Developer Fees. ...............................................17

      D.   Plaintiffs' Second Claim for Control Person Liability Fails. ............20

      E.   Leave to Amend ................................................................................21

V.    CONCLUSION .........................................................................................21

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

NOTICE OF MOTION TO DISMISS AND STRIKE THE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)............................................................9, 13

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) .....................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................4, 18, 21

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).....................5

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ......................................3

*Courtesy Properties, LLC v. S&ME, Inc.*,
No. 1:20-cv-02097-SDG, 2020 WL 7698659 (N.D. Ga. Dec. 28, 2020) ....................................................................................18

*In re Donald J. Trump Casino Securities Lit*,
7 F.3d 357 (3d Cir. 1993).......................................................17

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993)...................................................5

*Ferris v. Wynn Resorts Ltd.*,
Case No. 2:18-cv-00479, 2020 WL 2748309 (D. Nev. May 27, 2020) ....................................................................................11

*Fries v. Northern Oil & Gas, Inc.*,
285 F.Supp.3d 706 (S.D.N.Y. 2018) ...............................10, 11, 12

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

*Galati v. Commerce Bancorp, Inc.*,
   220 F. App'x 97 (3d Cir. 2007)................................................................11

*Gregory v. ProNAi Therapeutics Inc.*,
   297 F. Supp. 3d 372 (S.D.N.Y. 2018) ....................................................11

*Hardisty v. Moore*,
   6 F. Supp. 3d 1044 (S.D. Cal. 2014) (Battaglia, J.) ...............................2

*Hayes v. Woodford*,
   444 F.Supp.2d 1127 (S.D. Cal. 2006) ......................................................5

*Herring v. Teradyne, Inc.*,
   2008 WL 11337851 (S.D. Cal. Aug. 29, 2008) ....................................15

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013)............................................3, 20

*Johnson v. Fed. Home Loan Mortg. Corp.*,
   793 F.3d 1005 (9th Cir. 2015)...........................................5, 10, 18

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ..........................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................4, 6, 21

*MAZ Partners LP v. First Choice Healthcare Sols., Inc.*,
   No. 6:19-CV-619, 2019 WL 5394011 (M.D. Fla. Oct. 16, 2019).............*passim*

*McNutt v. Gen. Motors Acceptance Corp. of Indiana*,
   298 U.S. 178 (1936)........................................................................4

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020)..................................................21, 22

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987).......................................................2

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004).....................................................4

*Seaman v. Cal. Bus. Bank*,
   No. 13-cv-02031-JST, 2013 WL 5890726 (N.D. Cal. Oct. 30, 2013)................9

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996)................................................................17

*TransUnion LLC v. Ramirez*,
   210 L. Ed. 2d 568 (June 25, 2021) ......................................................19

*Trump v. New York*,
   141 S. Ct. 530 (2020)............................................................................4

*Vaughn v. Teledyne, Inc.*,
   628 F.2d 1214 (9th Cir. 1980)..............................................................17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)................................................................4

*Weiss v. NNN Cap. Fund I, LLC*,
   No. 3:14-cv-02689-H-NLS, 2015 WL 11990929 (S.D. Cal. Apr. 3,
   2015) (Huff, J.) ......................................................................6, 7, 21

*Xia Bi v. McAuliffe*,
   927 F.3d 177 (4th Cir. 2019)................................................................15

*In re Yahoo! Inc. Sec. Litig.*,
   No. C-11-02732 CRB, 2012 WL 3282819 (N.D. Cal. Aug. 10,
   2012), *aff'd,* 611 F. App'x 387 (9th Cir. 2015)..................................9

**California Cases**

*Deveny v. Entropin, Inc.*,
   139 Cal. App. 4th 408 (2006)................................................................8

*Insurance Underwriters Clearing House, Inc. v. Natomas Co.*,
   184 Cal. App. 3d 1520 (1986)............................................................13

**California Statutes**

California Corporations Code
   § 25401 ..................................................................................................2
   § 25504 ........................................................................................20, 21
   § 25506(b) ............................................................................................7

**Other Authorities**

DiversyFund's website, www.DiversyFund.com ................................13

Federal Rule of Civil Procedure 8 .................................................................4, 20

Federal Rule of Civil Procedure 9(b) .............................................................*passim*

Federal Rule of Civil Procedure 12 ....................................................................17

Federal Rule of Civil Procedure 12(b)(1) .......................................................3, 21

Federal Rule of Civil Procedure 12(b)(6) ................................................... 4, 5, 21

Federal Rule of Civil Procedure 12(f) ..................................................................5

Federal Rule of Civil Procedure 12(h)(3) .............................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The First Amended Complaint ("FAC") in this putative securities fraud class action is largely an attempt to free-ride on the 2022 administrative action by the U.S. Securities and Exchange Commission ("SEC") that Plaintiffs attach to their complaint. That free-riding does not work, and Plaintiff's additional theories also fail, for four reasons.

*First*, no Plaintiff alleges injury from any alleged violation. All Plaintiffs thus lack standing.

*Second*, most of Plaintiffs' allegations are time-barred, based on events disclosed more than two years before their assertion.

*Third*, Plaintiffs' additional theories about undisclosed or excessive acquisition and developer fees (things not claimed by the SEC) are not supported by particularized, plausible allegations. The disclosures on which Plaintiffs rely do not support their allegations—in some cases, not at all, and in others, not without large helpings of impermissible speculation.

*Fourth*, Plaintiffs' allegations about closed investigations and administrative actions by the SEC and California's Bureau of Real Estate ("BRE") are immaterial as a matter of law. The SEC can police technical, inadvertent, and immaterial regulatory mistakes. Private securities plaintiffs cannot. Such mistakes, which are all the SEC alleged in the administrative action on which Plaintiffs try to free-ride, are not fraud. (Indeed, the SEC administrative law judge declined to find that the issues even merited an administrative sanction.) Nor is it fraud if company disclosures do not discuss unrelated and trivial matters, such as a minor BRE sanction against an executive's prior business or a SEC inquiry about which Plaintiffs allege nothing beyond its closure.

Since it is clear that most plaintiffs can never allege constitutionally required

standing, and most allegations will never support a viable claim, Defendants[1] request that the FAC be dismissed with prejudice and without leave to amend.[2] If, however, the Court allows Plaintiffs to amend the FAC, Defendants request the Court to strike and disallow in any amendment certain time-barred or otherwise futile matters. Defendants also ask that if Plaintiffs re-plead class allegations, that the Court require non-boilerplate allegations to be pled given the obvious time and standing bars the vast majority of purported class members face.

## II.    BACKGROUND

As stated in the FAC, Defendants REIT I and REIT II are real estate investment trusts ("REITs") aimed at "bringing the wealth-building investment tools traditionally used by the wealthy ("the 1%") to the everyday investor through participation in alternative investments, such as REITs." (FAC ¶ 15.) Investors' interests in the REITs are securities, the offering of which pursuant to qualification by the SEC instead of registration is allowed by SEC Regulation A. (*Id.* ¶¶ 7-8, 13-14, 17.) REIT I offered such securities/investments from 2018 to November 13, 2021 (*id.* ¶¶ 7, 20-23); REIT II did so after August 2020 into 2022 (*id.* ¶¶ 24-28).

Both REITs invested the proceeds of their securities offerings in real estate projects. (FAC ¶¶ 7-8.) They also made regular public disclosures including "semi-annual and annual reports with the SEC." (*Id.* ¶¶ 20, 125, 127.) Plaintiffs attack these disclosures as misleading or insufficient, and thus, violations of the California Corporations Code ("CCC"), Section 25401—a fraud statute that must be pleaded with particularity[3]—under the following theories.

---

[1] All Defendants (*i.e.*, DF Growth REIT, LLC, a Delaware limited liability company ("REIT I"); DF Growth REIT II, LLC, a Delaware limited liability company ("REIT II"), DiversyFund, Inc., a Delaware corporation ("DiversyFund"), Craig Cecilio, and Alan Lewis join in this motion.

[2] Although leave to amend is liberally allowed, leave should be denied when amending the complaint would "be an exercise in futility." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

[3] *Hardisty v. Moore*, 6 F. Supp. 3d 1044, 1064 (S.D. Cal. 2014) (Battaglia, J.) ("In order to establish a cause of action under Section 25401, a plaintiff must plead and

First, Plaintiffs claim that the REITs should have disclosed a prior SEC investigation. However, they allege only that the investigation closed in January 2020; there is no allegation concerning its subject matter, starting date, duration, or results (including any adverse finding or penalty). (FAC ¶¶ 30, 139-45.)

Second, they claim the regulatory issues raised in the SEC's 2022 administrative action amount to fraud. (FAC ¶¶ 31-38, 63-84.)

Third, they claim that the REITs should have disclosed a 2017 BRE sanction against Mr. Cecilio's unaffiliated prior business. (FAC ¶¶ 40-45, 136-38.)

Fourth, in new allegations in the FAC, they claim that the REITs insufficiently disclosed the acquisition and developer fees they would and did pay, and that the fees paid exceeded what was disclosed. (FAC ¶¶ 46-62, 86-131.)

None of these allegations pass muster, even on the limited review appropriate on a motion to dismiss. Most are on their face time-barred. Further, Plaintiffs lack standing to assert them, and most are unable to allege facts that would create standing.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Because standing relates to a federal court's subject matter jurisdiction, an assertion that the requirements of standing are not satisfied is properly raised in a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1)." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 944-45 (N.D. Cal. 2018) (citation omitted). Subject matter jurisdiction may be attacked on a Rule 12(b)(1) motion through a facial attack (that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction") or a factual attack (disputing "the truth of the allegations that, by

---

prove that [1] there was a sale or purchase of stock in California [2] by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading.") (internal quotations omitted); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1058 (N.D. Cal. 2013) (applying Rule 9(b) to claims under Sections 25401 and 25501).

themselves, would otherwise invoke federal jurisdiction"). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Under Article III's "case or controversy" requirement, a case presents a "justiciable" controversy only if the plaintiff has shown standing, "including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 560-561 (1992) (standing requires (1) injury in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision).

Standing must be established by plaintiff's complaint. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). If, at any time, a court finds a lack of subject matter-jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### B.   Motion to Dismiss for Failure to State a Claim for Relief

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), courts must dismiss any claim whose supporting allegations fail to satisfy Rule 8's requirement of a plausible set of facts which, if true, would entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition, for cases sounding in fraud, like this one (*see supra* n. 3), FRCP 9(b) requires specific allegations on the "who, what, when, where, and how" of alleged misrepresentations, including why the statement is false or misleading. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

While a court must accept well-pled allegations and construe them in plaintiff's favor, it may not credit boilerplate or conclusory allegations. *Iqbal*, 556 U.S. at 678. Nor should a court "accept as true allegations contradicting documents

1   that are referenced in the complaint." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793

2   F.3d 1005, 1007-08 (9th Cir. 2015).[4]

3       **C.    Motion to Strike**

4       Rule 12(f) allows the Court to "strike from a pleading . . . any redundant,

5   immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Matter is

6   'immaterial' where there is no important or essential relationship to the claims or

7   defenses being pleaded." *Hayes v. Woodford*, 444 F.Supp.2d 1127, 1132 (S.D. Cal.

8   2006). Matter is "impertinent" where it "is not necessary or does not pertain to the

9   issues at hand." *Id.* Rule 12(f) thus allows a court to prevent "the expenditure of time

10  and money that must arise from litigating spurious issues by dispensing with those

11  issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

12  **IV.    ARGUMENT**

13      Count I of the FAC alleges primary securities fraud under CCC § 25401

14  against Defendants REITs I and II. (FAC ¶¶ 156-59.) Count II alleges the other

15  Defendants (*i.e.*, DiversyFund, Mr. Cecilio and Mr. Lewis) bear secondary liability

16  as alleged control persons. (FAC ¶¶ 161-63 (citing CCC § 25504).) Defendants shall

17  first address why Plaintiffs' complaint fails to allege primary liability of REITs I and

18  II, and then, address the alleged secondary liability of other defendants.

19      **A.    Plaintiffs Lack Standing.**

20      To plead standing, a plaintiff must allege facts plausibly showing the plaintiff

21  (1) "suffered an injury in fact—an invasion of a legally protected interest which is

22  (a) concrete and particularized, and (b) actual or imminent, not conjectural or

23  hypothetical," (2) caused by the conduct complained of, or "fairly traceable to the

24  challenged action of the defendant, and not the result of the independent action of

---

25

26  [4] Even on a FRCP 12(b)(6) motion to dismiss, a court may also consider documents

27  "whose contents are alleged in a complaint and whose authenticity no party
    questions, but which are not physically attached to the pleading." *Branch v. Tunnell*,

28  14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

NOTICE OF MOTION TO DISMISS AND STRIKE THE FIRST AMENDED COMPLAINT

some third party not before the court," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks omitted).

Therefore, to plead injury in fact caused by a section 25401 violation, a plaintiff must plead that they suffered injury in the sale or purchase of a stock in California as a result of a misrepresentation. *Weiss v. NNN Cap. Fund I, LLC*, No. 3:14-cv-02689-H-NLS, 2015 WL 11990929, at *5-6 (S.D. Cal. Apr. 3, 2015) (Huff, J.) (dismissing Sections 25401 and 25504 claims because of plaintiff's failure to allege injury resulting from alleged misrepresentation).

At no point in the FAC do Plaintiffs even attempt to plead any injury resulting from any statement, focusing instead solely on alleged misrepresentations.[5]  Plaintiffs never allege that they relied on any misrepresentation to their detriment or that they suffered any other actionable injury. Their complaint must be dismissed as a result.

This defect is not a mere technical issue of pleading: most Plaintiffs cannot cure this defect, as to most of their claims, because most of them purchased their interests in REIT I or II long before the statements in issue. For example, Plaintiff Krause, who invested in 2018, (FAC ¶ 6(d),) based on 2018 disclosures, cannot logically claim reliance or injury resulting from any alleged fraudulent inducements in statements REIT I or REIT II made in 2019 onwards.

Plaintiffs' non-curable standing problem is well-illustrated by the *Weiss* case. The *Weiss* plaintiff, like Plaintiffs here, filed a putative class action alleging violations of various California laws, including Section 25401, arguing that the

---

[5] For example, it is not enough that Plaintiffs allege that REIT I and REIT II "violated § 25401 of the Cal. Corp. Code by making statements of material fact regarding (i) the interdependency between REIT I and REIT II; (ii) the fees charged by REIT I and REIT II; (iii) the background of management; and (iv) REIT I and REIT II's lack of a need to raise a minimum amount of capital, that were untrue, and/or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." (FAC ¶ 157.) This merely recites alleged misrepresentations. It does not allege that any such statement caused a specific harm to a specific plaintiff.

defendants fraudulently induced him to acquire an interest in a limited liability company. *Weiss*, 2015 WL 11990929, at *1. The court concluded that the plaintiff "ha[d] not shown that he has standing to bring this claim against the … Defendants." *Id.* at *5 (citing *Lujan*, 504 U.S. at 560-61). It noted that "[t]o establish standing, Plaintiff must show that he—not the purported class—ha[d] suffered an injury in fact for each of the claims he raises." *Id.* (citation omitted). The *Weiss* plaintiff could not do this, because he alleged that (1) he "purchased the securities at issue on or around April 28, 2008," and that (2) defendants "omitted material information with respect to their mezzanine loans from July through August 2008 for the Plantations Note and August through September 2008 for the Barberry Note, **after he purchased his interests**." *Id.* (emphasis added). As a result, his complaint failed "to establish that he suffered an injury 'fairly traceable' to the … Defendants' actions." *Id.* Like the *Weiss* plaintiff, the plaintiffs in this case, like Plaintiff Krause, have not alleged and cannot allege injury traceable to each of the FAC's allegations. (*See* FAC ¶ 6 (listing investment dates of 2018 for Plaintiffs Krause and Korostelev, 2020 for Ferry, and 2021 for Hamerling).)

Nowhere in the FAC do Plaintiffs address standing: the lack of standing thus defeats each and every one of Plaintiffs' theories and claims. If Plaintiffs attempt to allege standing in an amended complaint, they must do so with great specificity both with regard to their investment dates and that which they relied upon, for the timing of these events is critical.[6]

### B.   Plaintiffs Are Largely Time-Barred.

Claims under Section 25401 have a maximum limitations period of 5 years, or "two years after the discovery by the plaintiff of the facts constituting the violation, **whichever shall first expire**." Cal. Corp. Code § 25506(b) (emphasis added).

---

[6] For example, Plaintiffs plead that Defendants failed to disclose an SEC investigation that they admit the SEC closed in January 2020. (FAC ¶ 30.) Even if such a thing were material, there was only a failure to disclose in 2018 (when Mr. Krause invested) if the investigation was open then.

"[I]nquiry notice is sufficient to trigger the running of the limitations period under section 25506." *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 412-13 (2006). "Inquiry notice arises in a securities action when circumstances suggest to an investor of ordinary intelligence the possibility that he has been defrauded." *Id.* at 428. This includes "whenever there are any financial, legal, or other data, such as public disclosures in the media" that "would tend to alert a reasonable person to the likelihood of fraud." *Id.* (internal citations and quotation marks omitted).

Plaintiffs' first complaint was filed on December 16, 2022, allowing them to raise only issues noticed after mid-December 2020. Issues first raised in Plaintiffs' FAC, filed March 10, 2023, must have been first noticeable only after mid-March 2021. As detailed below, most issues do not meet this time bar. For example, Plaintiff Krause, who invested in 2018 (FAC ¶ 6(d)), knew by 2019 and certainly 2020 what reports he had received and not received from REIT I. March 2023 is too late for him to complain that REIT I failed to provide "reports to investors consistent with" alleged promises made in REIT I's October 2018 Offering Circular. (*See* FAC ¶¶ 47-48). Similarly, it is too late for him to now claim that he thinks that the fees disclosed in a May 2019 REIT I disclosure (FAC ¶¶ 52, 91-93) or a September 2020 REIT I disclosure (FAC ¶¶ 106-107) were excessive, based on (incorrect) 2023 calculations.

## C.   Plaintiffs' Allegations are Immaterial and Implausible.

### 1.   Closed SEC Investigation.

Plaintiffs claim that the REITs should have disclosed a SEC investigation that was closed in January 2020. (FAC ¶¶ 30, 139-45.) They allege no facts about how long that inquiry was open, what it concerned, or that any adverse findings or penalties were involved. (*Id.*) Nor do they allege when Defendants became aware of it, or any injury caused Plaintiffs by the alleged failure to disclose. These allegations are obviously inadequate to state a material matter that should have been disclosed as of a particular point in time. *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("a government investigation, without more, does not

trigger a generalized duty to disclose"). Drawing inferences for a plaintiff does not allow a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Plaintiffs attempt to finesse this lack of materiality by saying they complain not about nondisclosure of a material matter *per se* but about a failure to qualify or update related statements. For example, Plaintiffs identify a statement in REIT I's October 2018 Offering Circular that stated REIT I and DiversyFund were not "currently the subject of any investigation," and claim that statement should have been updated when Defendants learned of the SEC's first investigation (FAC ¶ 142.) A duty to update, however, applies only to relevant forward-looking statements. *Seaman v. Cal. Bus. Bank*, No. 13-cv-02031-JST, 2013 WL 5890726, at *5 (N.D. Cal. Oct. 30, 2013) (noting that "an affirmative duty to update or correct past statements … applies only to statements that are clear, factual, and forward-looking, such that some continuing representation remains alive in the minds of investors when circumstances change") (internal quotations and citations omitted); *In re Yahoo! Inc. Sec. Litig.*, No. C-11-02732 CRB, 2012 WL 3282819, at *20 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015) (same). REIT I's October 2018 statement was clearly not forward looking, as it contained the qualifier "currently." Other statements relied on by Plaintiffs are both irrelevant (*e.g.*, they discuss being "named as a defendant in any active or pending litigation," *see* FAC ¶¶ 30, 139-45[7], which is not the same as an investigation) and insufficiently detailed under FRCP 9(b) to be culpable misrepresentations because Plaintiffs never allege when Defendants knew of the first SEC investigation. If Defendants did not know of

---

[7] Statements cited in these paragraphs include: a statement from REIT I's June 30, 2019 Semi-Annual Report, which stated that "[a]s of June 30, 2019, [REIT I] [was] not named as a defendant in any active or pending litigation," and REIT I's June 30, 2020 Semi-Annual Report, which stated that as of the date of the report, REIT I was "not named as a defendant in any active or pending litigation."

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

an SEC investigation when they made a disclosure, they obviously could not disclose it.

### 2.     Mr. Cecilio's California BRE Sanction.

Plaintiffs attempt to make a mountain out of a molehill through artful pleading about Mr. Cecilio's trivial BRE sanction. The BRE documents cited by Plaintiffs show that the BRE matter settled as a minor administrative infraction (no admitted facts, consent to a failure to supervise charge, a minor fine, and a 30-day suspension) related to a completely separate business. (*Compare* FAC ¶¶ 40-45 (describing the BRE proceeding) *with* Exhibit 2 to Defendants' Request for Judicial Notice in Support of Motion to Dismiss the FAC ("RJN") at 2,  ¶ 4 (noting that Mr. Cecilio, "[i]n the interest of expedience and economy," remained silent without admitting or denying the allegations), 5-8 (setting forth consequences); *Johnson*, 793 F.3d at 1007-08.) At no point do Plaintiffs cite a statement in REIT I or REIT II's disclosures that was rendered false or misleading because Mr. Cecilio's prior business should have been discussed.

Plaintiffs' inability to leverage this trivial matter into a securities fraud class action is well-illustrated by *Fries v. Northern Oil & Gas, Inc.*, 285 F.Supp.3d 706, 720-21 (S.D.N.Y. 2018). In *Fries*, the court granted a motion to dismiss a putative securities class action, finding that the plaintiffs failed to "allege an actionable misstatement or omission related to Defendants' representations about" the corporate defendant's Chief Executive Officer ("CEO"). *Fries* involved a corporate defendant's CEO, who had received a Wells Notice from the SEC for alleged misconduct at a different company, namely, for masking his control of that company to "improperly obtain financial benefits … through a stock manipulation scheme." *Id.* at 712. In various 10-K filings, the corporate defendant, his new employer, represented it would rely on the expertise and relationships of its management, including the CEO, and "touted"—to borrow Plaintiffs' terminology in the present action—the qualifications of the CEO. *Id.* at 714-15. The plaintiff argued these

representations should have included information about the CEO's prior misconduct—misconduct much more significant and relevant than the administrative infraction in issue here. *Id.* at 715. However, the court rejected this theory because the company's statements were true in and of themselves and did not suggest the CEO was not engaged in previous undisclosed misconduct. *Id.* at 719. The court also reasoned that "[t]he mere allegation that Defendants' disclosures were incomplete or that they omitted material information is not enough to plead scienter based on conscious misbehavior or recklessness." *Id.* at 722 (internal quotations omitted). Rather, "[a]llegations that defendants concealed corporate mismanagement or uncharged criminal conduct are not actionable unless the non-disclosures render other statements by defendants misleading." *Id.* at 718. "In making that determination, courts must consider whether the omitted mismanagement or uncharged criminal conduct is sufficiently connected to defendants' existing disclosures." *Id.* at 719 (internal quotations omitted). *See also Galati v. Commerce Bancorp, Inc.,* 220 F. App'x 97, 102 (3d Cir. 2007) (general statements regarding business unit did not "put into play," and thus require disclosure of, kickback scheme by management); *Ferris v. Wynn Resorts Ltd.,* Case No. 2:18-cv-00479, 2020 WL 2748309, at *13-15 (D. Nev. May 27, 2020) (dismissing securities fraud claims premised on sexual harassment allegations because, e.g., statements about corporate culture and code of conduct were puffery, and statements about compliance with legal obligations were not misleading); *Barilli v. Sky Solar Holdings, Ltd.,* 389 F. Supp. 3d 232, 252 (S.D.N.Y. 2019) ("The general positive statements about [defendant's] professional history and management abilities, such as statements that he was a 'successful businessman,' are at most non-actionable puffery."); *Gregory v. ProNai Therapeutics Inc.,* 297 F. Supp. 3d 372, 399 (S.D.N.Y. 2018) (statements that defendant's "technology, knowledge, experience, and scientific resources provide[d] [defendant] with competitive advantages" and that defendant was "a leader in developing and ... deliver[ing] therapeutic outcomes that dramatically

changed patients' lives" were non-actionable puffery); *MAZ Partners LP v. First Choice Healthcare Sols., Inc.*, No. 6:19-CV-619, 2019 WL 5394011, at *9-10 (M.D. Fla. Oct. 16, 2019) (statement that CEO was key to company's success not rendered materially misleading by omission of corporate misconduct, the CEO's involvement in a market manipulation scheme, even though the court agreed that the market manipulation scheme would have been relevant to a reasonable investor.)

Further, these allegations are time-barred. Mr. Cecilio's sanction was public, in 2017, (*see* Exhibits 1 and 2 to RJN), putting Plaintiffs on inquiry notice that expired no later than 2019. Further, as was the case with the CEO's previous misconduct in *Fries*, Mr. Cecilio's previous real estate investigation, while working for another corporate entity—just as the *Fries*' CEO's misconduct involved work done for a different entity—was not "sufficiently connected to defendants' existing disclosures" to warrant mandatory disclosure.

### 3.    Second SEC Investigation.

Plaintiffs attach to their complaint a SEC order commencing an administrative proceeding against REIT II based on four alleged administrative issues, each of which Plaintiffs pick up as supposed securities fraud.

Plaintiffs admit that two of these issues (delayed commencement of REIT II's offering, (FAC ¶ 135), and use of a wrong form to seek an increase in offering size, *id.* at ¶ 136) were "technical and inadvertent." (*Id.* at ¶ 135.) Plaintiffs make no allegation that Defendants made a related misrepresentation after first learning about these "inadvertent" issues. Therefore, neither technical error has any relevance. Related paragraphs (FAC ¶¶ 132-35) should be struck from the complaint.

The other issues are discussed below.

#### a.    *Separateness of REIT I and II*

Plaintiffs claim that REITs I and II "violated § 25401 of the Cal. Corp. Code by making statements of material fact regarding … the interdependency between REIT I and REIT II." (FAC ¶ 157.) Specifically, Plaintiffs allege: "[i]n November

2021, when both REIT I and REIT II were selling securities to the public, DiversyFund's website, www.DiversyFund.com, advertised to investors that REIT I and REIT II 'operate as separate investment vehicles' and that 'REIT I will not be impacted by REIT II in any way.'" (FAC ¶ 63).[8] Plaintiffs allege these statements were untrue, citing litigation statements by DiversyFund's management concerning the potentially dire impact of a sudden SEC stoppage of REIT II. These allegations fail to state a viable claim, for four reasons.

*First*, with regard to standing, each Plaintiff purchased their securities before the November 2021 statement,[9] and so they could not have relied upon it. REIT I was closed in November 2021 (FAC ¶ 7), so only REIT II investors could reasonably claim to have reviewed the November 2021 statement before investing.

*Second*, the November 2021 statement could not have been material[10] to any investor. The November 2021 statement answered questions of REIT I investors, who had all invested by then; it was not a marketing statement for REIT II.

*Third*, the allegations are time-barred. REIT II's Offering Circular was qualified on January 19, 2021 and publicly disclosed information about the REITs common management and likely co-investments, as detailed below, that put Plaintiffs

---

[8] The full November 2021 statement is publicly available,  explained the "separation between the two offerings" by answering the question "Will launching REIT 2 impact my original REIT investment in any way?" with "No, REIT I will not be impacted by REIT II in any way. These assets in REIT I will continue to be owned and operated by REIT I." (See FAC Ex. 1 at 4.)

[9] Most Plaintiffs purchased their securities in 2018 and 2020. (*Id.* at ¶ 6.) Even the Plaintiff vaguely alleged to have purchased in "2021," (FAC ¶ 6(b)) cannot be presumed to have purchased after the November 2021 statement: that is implausible and a form of filling in allegations that is not permitted. *Associated Gen. Contractors of Cal.*, 459 U.S. at 526

[10] A statement is material if "there is a substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision." *Insurance Underwriters Clearing House, Inc. v. Natomas Co*., 184 Cal. App. 3d 1520, 1527 (1986).  If the alleged statements were published <u>after</u> Plaintiffs invested in the subject REITs, such statements cannot be deemed as material to Plaintiffs as a matter of law.

on at least inquiry notice about these matters.  (*See* Exhibit 3 to RJN).[11] The necessary economic relationship and interdependence caused by this common management and co-investment is what Plaintiffs incorrectly claim was not disclosed. (FAC ¶ 70).

*Fourth*, the allegations fail to plausibly allege a single material misrepresentation or omission.  Plaintiffs do not plead a single fact supporting the notion that REITs I and II are not separate investment vehicles, with separate bank accounts, separate interests in various assets, etc. Plaintiffs' attempt to use a 2021 loan from REIT I as a contradiction of the statement, "impacted by REIT II in any way" is completely unsupported: there is no allegation that REIT II was even operational as of when the loan occurred, or was in any way related to the loan. (FAC ¶ 71). Nor do Plaintiffs allege any other actual event or fact inconsistent with the November 2021 statements. Plaintiffs try to leverage Mr. Lewis' late 2021 expression of fears that the SEC's sudden suspension of REIT II could significantly disrupt operations that it could cause the REITs I and II's common management to need to wind up affairs. (FAC ¶ 65-66). The foregoing expression by Mr. Lewis was just that, an expression of emotion, and not a prediction of a certain event.  Thus, the alleged "fact" Plaintiffs allege was not disclosed was not a fact at all.

No doubt for these reasons, despite the SEC's advancement of the same arguments as the Plaintiffs, an experienced, specialized SEC ALJ rejected these arguments, finding then "insufficient to support the [SEC Division of Enforcement]'s claims that Respondent [REIT II] misrepresented … the relationship between REIT I and REIT II." Exhibit 5 to RJN (*In the Matter of DF Growth REIT II, LLC*, Administrative Proceeding File No. 3-20801).

b. <u>*Asset Management Fees*</u>

Plaintiffs also claim that REIT II made inaccurate statements that it would not

---

[11] REIT II's Offering Circular disclosed that the two REITs might co-invest in some properties (REIT II Offering Circular (RJN Ex. 3) at 20), and would have common management (*id*. at 21).

charge asset management fees. (FAC ¶¶ 80-84.) Specifically, they claim that from September to November 2021, DiversyFund's website stated that it required a "minimum investment of only $500 and **no management fees**." (FAC ¶¶ 79-80.) Plaintiffs admit that this was true for REIT I, which did not collect asset management fees (FAC ¶ 22),[12] but not for REIT II, which has assessed asset management fees. (FAC ¶ 26.) These allegations fail to present a viable fraud claim.

*First*, as discussed above, absent an allegation of injury suffered in reliance, no Plaintiffs have standing to explore this. In fact, REIT I investors cannot allege such injury as they have never had asset management fees assessed against them.

*Second*, Plaintiffs' claim fails because no reasonable REIT II investor could have believed asset management fees would not be charged. In light of the detailed, multi-page fee disclosure REIT II publicly filed, which included specific discussion of asset management fees, no reasonable investor could rely upon the generalized statement on DiversyFund's website. *Compare* Exhibit 5 to RJN at 33-36, 43, 55 (discussing the management fees to be paid) *with Herring v. Teradyne, Inc.*, 2008 WL 11337851, at *4 (S.D. Cal. Aug. 29, 2008) (stating that "fully disclosed information cannot alter the 'total mix' of information available to investors"); *Xia Bi v. McAuliffe*, 927 F.3d 177, 186 (4th Cir. 2019), as amended (July 9, 2019) ("But the realities of the Internet do not alter the fundamental need for plaintiffs to plead reliance with particularity … Investments often boil down to a series of written contracts," and "[t]he written offering documents must control" even if "they in fact contradicted the sorts of stray media statements …").

       c.     <u>*Alleged Misrepresentations Regarding Capital Needs*</u>

Plaintiffs also allege that "REIT I and REIT II "violated § 25401 of the Cal.

---

[12] Plaintiffs make a half-hearted attempt to claim that because Defendants could have assessed asset management fees for some REIT I investors starting in 2020, sales to those investors were fraudulent. (FAC ¶ 79.) This is an absurd claim absent the allegation (never made) that REIT I investors actually were charged asset management fees.

1  Corp. Code by making statements of material fact regarding … REIT I and REIT II's

2  lack of a need to raise a minimum amount of capital." (FAC ¶ 157.) More specifically,

3  they contend that "in the REIT II Offering Circular (dated <u>January 19, 2021</u>), REIT

4  II represented that its Regulation A offering 'has no minimum amount,' and as such,

5  'we will begin to deploy (spend) the money we raise right away, no matter how much

6  or how little we raise.'" (FAC ¶ 64 (citing REIT II Offering Circular, p. 1)).

7      *First*, the same issues of lack of standing and time-bars discussed above apply

8  to these claims. A 2018 REIT I investor, like Mr. Krause, who cannot point to any

9  injury suffered, cannot now create a federal class action based on REIT I's 2018

10  Offering Circular.

11      *Second*, the allegations are not plausible, as the SEC ALJ already concluded.

12  All the Offering Circular said was that funds would be deployed as they were raised;

13  in other words, that the REITs would not wait to raise a threshold amount before

14  beginning to invest. They provided no assurance that all would be well regardless of

15  how much was raised, and in fact spent substantial time cautioning investors of the

16  substantial risks they faced. For example, REIT II's Offering Circular stated that

17  REIT II had yet to generate any revenue; that its ability to survive for the next twelve

18  months was "dependent on its ability to obtain capital"; that it could give no

19  assurance that it could raise capital; and that "if [it] raised only a small amount from

20  the Offering"—which occurred when the SEC suddenly shut it down—"its business

21  plans would be severely curtailed[.]" (*See* Exhibit 4 to RJN at 4, 8.) It would be

22  obvious to a reasonable investor that REIT II was a start-up that was highly dependent

23  on its ability to obtain capital, and subject to serious peril if it raised much less than

24  expected. It was also be obvious that to the extent REIT I and II co-invested in certain

25  properties, which REIT II expressly disclosed they might (*id.* at 20), REIT I could be

26  negatively affected if its co-investor's admitted sole source of money—the

27  Offering—was terminated.

28      After reviewing the Offering Circular, a reasonable investor would understand

that REIT II had no money and was depending on the Offering to raise capital to "meet current and future obligations." (*Id.* at 4.) With knowledge of this fact, a reasonable investor would not construe the statement to mean that REIT II—which admittedly had no source of income other than the Offering—could meet its capital commitments even if its sole source of funding were suddenly taken away in the midst of making such capital commitments. Put another way, a securities fraud claim does not lie in a failure to state the obvious. *See Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980); *In re Donald J. Trump Casino Securities Lit*, 7 F.3d 357, 377 (3d Cir. 1993). Businesses do not need to remind investors that they would be in a bad spot if they were suddenly deprived of their only source of funding. Nor do they have any obligation to predict the future. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996).

In sum, Plaintiffs' have failed to plead facts sufficient to state a plausible claim for relief for violation of Section 25401.

### 4.    Acquisition and Developer Fees.

Plaintiffs devote a substantial portion of their amended complaint to new allegations about acquisition and developer fees. (FAC ¶¶ 46-62, 86-131.) They claim the REITs did not carry out on promises they made to make detailed disclosures concerning the acquisition and developer fees they would pay to DiversyFund, and that the fees disclosed "exceeded what Defendants had represented DiversyFund would collect from REIT I and REIT II." (FAC ¶¶ 46, 85.) These allegations are time-barred and contrary to the very disclosures on which Plaintiffs rely.

#### a.    *Amount of Fees*

Plaintiffs allege four examples of allegedly excessive fees.

First, they allege that REIT I paid $1.25 million in developer fees on its investment in DiversyFund Park Boulevard, citing a May 2019 disclosure. (FAC ¶¶ 52, 91-93.) However, that two-page disclosure lists no such fee (Exhibit 6 to RJN), rendering the allegation about it impossible to credit even on a Rule 12 motion.

1  *Johnson*, 793 F.3d at 1007-08.

2      Second, noting a disclosure that said REIT II paid acquisition fees of

3  "$1,280,2126 [sic]"[13] on its investment in the NCP Dove project, Plaintiffs speculate

4  this means REIT II paid excessive fees. (FAC ¶¶ 60-62, 128-29.) But an obvious

5  typographical error is no basis for a fraud lawsuit: that requires a plausible,

6  particularized factual basis, not speculation. *Courtesy Properties, LLC v. S&ME,*

7  *Inc.*, No. 1:20-cv-02097-SDG, 2020 WL 7698659, at *8 (N.D. Ga. Dec. 28, 2020)

8  (citing *Twombly*, 550 U.S. at 555). The Supreme Court could not have been more

9  clear on this in *Twombly*, instructing that complaints' "[f]actual allegations must be

10  enough to raise a right to relief *above the speculative level*." 550 U.S. at 555.

11      Third, Plaintiffs claim that the acquisition fees of $540,088.00 disclosed in

12  June 2020 as paid to DiversyFund on investments in DF Summerlyn indicates that

13  REIT I must have overpaid given its equity investment of $1,324,500. (FAC ¶¶ 101-

14  02.) Again, Plaintiffs have no plausible basis to claim this. REIT I disclosed that it

15  would pay DiversyFund 6-8% of the total project costs, including both 'hard' costs

16  (e.g., the cost of land, buildings, construction, and renovation) and 'soft' costs (e.g.,

17  professional fees)." (FAC ¶ 50.) Total project cost, as defined, obviously far exceeds

18  equity investment and also purchase price, especially given that both REITs focus on

19  "value-add renovations" to improve property value. (FAC ¶ 16.) Plaintiffs do not

20  allege the total project cost for DF Summerlyn. Without that, they and the Court can

21  only guess what percentage of that number $540,088.00 is. For this reason, Plaintiffs

22  can only vaguely allege that the fees paid "appears to exceed" the allowed amount.

23  (FAC ¶ 102.) Speculation is not a plausible or Rule 9(b)-compliant basis for a fraud

24  complaint.

25      Fourth, Plaintiffs claim that the September 2020 disclosure that "in 2020

26  [DiversyFund] received acquisition fees of $549,842 in connection with the

27  acquisition of McArthur LG, LLC" means that REIT I overpaid fees given its equity

28  _____

[13] Plaintiffs acknowledge this as an obvious typographical error.

investment of $5,255,302. (FAC ¶¶ 106-07.) Again, Plaintiffs have no plausible basis to claim this, because again it is "total project cost" that drives acquisition fees (FAC ¶¶ 50), and Plaintiffs have not alleged the total project cost for McArthur. They therefore can only allege that the paid fees "appears to exceed" the allowed amount. (FAC ¶ 107). That language clearly calls for impermissible speculation; it does not plausibly or with particularity state a fraud claim.

Even if the above allegations were plausible on their face, all but one of them would be time-barred. A March 2023 complaint cannot raise section 25401 issues concerning May 2019, June 2020, or September 2020 disclosures. All such allegations should be struck from the complaint.

### b. *Disclosure Sufficiency*

Plaintiffs complain that REIT I and II did not provide an annual "detailed statement" of fees as promised, (FAC ¶¶ 47-49), and also complain that fee disclosures made were "rendered false, misleading and/or incomplete" by the absence of sufficient detail. (FAC ¶¶ 97, 103, 108, 113, 116, 121, 124, 131.) These allegations fail for four reasons.

First, Plaintiffs lack standing. Not one Plaintiff alleges a single injury that was caused by the lack of the disclosures they claim were needed. Such a claim is unlikely: it is hard to imagine a circumstance where nondisclosure itself, rather than the actions disclosed or not, caused concrete harm. As the Supreme Court has stated: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568 (June 25, 2021).

Second, the allegations are largely time-barred. Most plaintiffs—including 2018 investors Krause and Korotselev, and likely, 2020 investor Ferry—are time-barred from raising claims about REIT I and REIT II's disclosures, having not made those claims within two years of getting allegedly inadequate disclosures. Many of the allegedly improper disclosures themselves are also time-barred, stemming from publicly filed SEC disclosures made more than two years before the FAC. (*See* FAC

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

¶¶ 95-97 (discussing the July 27, 2019 disclosure), 98-103 (discussing the June 16, 2020 disclosure), 104-08 (discussing the September 28, 2020 disclosure)).[14] These should be struck and disallowed from any amended complaint.

Third, the allegations fail to present a plausible, particularized fraud claim under Rules 8 and 9(b). The REITs obviously made public disclosures, so Plaintiffs cannot complain that no disclosures were made. With respect to the content of the disclosures, Plaintiffs cannot simply allege in conclusory terms that disclosures were "rendered false, misleading and/or incomplete by [REIT I or II]'s failure to provide a 'detailed statement.'" (See FAC ¶¶ 97, 103, 108, 113, 116, 121, 124, 131.) That is insufficient to meet Rule 9(b)'s requirements. Plaintiffs must allege with particularity what was false, what was misleading, and what was incomplete, and why.

### D.    Plaintiffs' Second Claim for Control Person Liability Fails.

The Second Claim for Relief, the sole claim against Defendants DiversyFund, Cecilio, and Lewis, arises under CCC § 25504, which creates secondary liability for an officer or other control person who "materially aids in the act or transaction constituting [a] violation" of section 25501 (which states the remedy for violations of § 25401). This secondary liability claim fails for two reasons.

First, as shown above, Plaintiffs have not adequately pleaded primary liability. *See, e.g.*, *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("In the absence of a viable claim of primary liability [under § 25401 or 25501], plaintiff cannot state a claim against the D & O defendants for control person liability under § 25504.").

Second, Plaintiffs have not adequately pleaded secondary liability. The FAC makes boilerplate allegations that DiversyFund, Mr. Cecilio, and Mr. Lewis are

---

[14] These allegations in these paragraphs arise from disclosures within two years of the FAC: FAC ¶¶ 109-113 (discussing the April 30, 2021 disclosure), 114-16 (discussing the September 28, 2021 disclosure), 117-21 (discussing the May 3, 2022 disclosure), 122-24 (discussing the September 28, 2022 disclosure), 127-31 (discussing the May 26, 2022 disclosure).

control persons but alleges no facts—much less particularized facts under Rule 9(b)—showing their material aid in any alleged violation. (*See* FAC ¶¶ 161-62 (pleading conclusory allegations of control persons liability); *see also id.* at ¶¶ 13-147 (failing to connect any alleged violation to an act by DiversyFund, Cecilio, or Lewis)). Plaintiffs' boilerplate allegations on the material aid (FAC ¶ 162) claim must be disregarded. *Twombly*, 550 U.S. at 555. The Second Claim for Relief, therefore, must be dismissed because Plaintiffs have "not provided sufficiently specific allegations as to how the [secondarily liable defendants] aided and abetted violations of aided and abetted violations of Section 25504." *Weiss*, 2015 WL 11990929 at *5 (Huff, J.).

## E.    Leave to Amend

Although courts within the Ninth Circuit liberally grant leave to amend, this Court should deny leave to amend and dismiss this case *with prejudice* because amending the FAC would be futile. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (noting that courts may deny leave to amend where a plaintiff has failed to plead the requisite particularity after previously being granted leave to amend). Here, Plaintiffs lack standing, which means this Court lacks subject-matter jurisdiction over this case. This jurisdictional deficiency cannot be cured because Plaintiffs lack a cognizable injury under *Lujan* that would create standing despite being on their second iteration of the complaint. *See, e.g.*, *Nguyen*, 962 F.3d at 420 (noting that were a plaintiff has amended a complaint but "has subsequently failed to add the requisite particularity to its claims," the district court did not err by denying leave to amend "because it was clear that the plaintiff had made her best case and had been found wanting").

## V.    CONCLUSION

For the foregoing reasons, Defendants ask this Court to dismiss Plaintiffs' FAC for both lack of subject-matter jurisdiction under FRCP 12(b)(1) and failure to state a claim for relief under FRCP 12(b)(6). Further, the Court should deny leave to

1    amend on the basis that such efforts would prove futile. *Nguyen*, 962 F.3d at 420.

2

3    DATED:  April 3, 2023          BUCHALTER

4                                       A Professional Corporation

5

6                          By:  */s/ Sanjay Bhandari*

7                                 SANJAY BHANDARI
                       Attorneys for Defendants, DF GROWTH

8                        REIT, LLC; DF GROWTH REIT II,
                       LLC; DIVERSYFUND, INC.; CRAIG
                       CECILIO; and ALAN LEWIS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28