LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons (SBN 244977)
92 Hopmeadow Street, Suite LL1
Weatogue, CT 06089
Tel: (860) 920-5181
Fax: (860) 920-5174
joshuakons@konslaw.com

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiffs MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV, and RYAN KRAUSE

**U.S. DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV and RYAN KRAUSE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DF GROWTH REIT, LLC, DF GROWTH REIT II, LLC, DIVERSYFUND, INC., CRAIG CECILIO, and ALAN LEWIS,<br><br>Defendants. | CASE NO. 22-CV-2001-AJB-WVG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE** |

# TABLE OF CONTENTS

STATEMENT OF FACTS ........................................ 1

ARGUMENT AND AUTHORITIES ........................................ 6

I. Standard of Review ........................................ 6

II. Liability under California Corp. Code § 25401 ........................................ 7

III. The Plaintiffs Have Stated a Claim for Violations § 25401 as Defendants Misrepresented and Omitted Facts Throughout the Class Period ........................................ 8

A. The Asset Management Fees were Misrepresented. ........................................ 8

B. The Acquisition and Developer Fees were Misrepresented ........................................ 11

C. The Relationship Between the REITs was Misrepresented ........................................ 13

D. The SEC Investigation is Material ........................................ 14

E. The BRE Sanctions are Material ........................................ 16

IV. Defendants' Other Arguments Lack Merit ........................................ 17

A. Plaintiffs Have Standard to Bring this Action. ........................................ 17

B. Plaintiffs Have Stated a Claim for Violations of Section 25504 of the Cal. Corp. Code. ........................................ 20

C. Plaintiffs Have Pleaded Defendants' Material Omission to Disclose that REIT II Was Not In Compliance With Regulation A ........................................ 21

D. Plaintiffs' Claims are Not Time-Barred. ........................................ 22

CONCLUSION ........................................ 23

# TABLE OF AUTHORITIES

## Cases

*Bell Atlantic Corp. v. Twombly,*

550 U.S. 544 127 S.Ct. 1955 L.Ed.2d 929 (2007)..............................................6

*Bowden v. Robinson,*

67 Cal. App. 3d 705 Cal. Rptr. 871 (1977)..........................................................8

*Cf., Hayes v. Woodford,*

444 F. Supp. 2d 1127, 1132 (S.D. Cal. 2006)

*Cutler v. Rancher Energy Corp.,*

No. SACV 13-00906-DOC (JPRx), 2014 U.S. Dist. LEXIS 34622 at *16 ..........7

*Cutler,*

2014 U.S. Dist. LEXIS 34622 at *26....................................................................8

*DF Growth REIT, LLC v. Flaster Greenberg P.C., et al,*

N.J. Superior Court Docket No. MER-L-000200-23, Kons Decl. Exh. 1 at ¶ 23 ..5

*I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*,

No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481 at *89 ...............................8

*In re Franchard*,

42 S.E.C. 163 (Jul. 31, 1964)...........................................................................19

*In re Wash. Mut., Inc.,*

*462 B.R. 137* (Bankr. D. Del. 2011)..................................................................23

*Lopez v. Smith*,

203 F.3d 1122 (9th Cir. 2000)....................................................................7

*Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561, 560-561 (1992)..........................................................20

*Luksch v. Latham*

675 F.Supp. 1198 (N.D.Cal. 1987) ............................................................26

*Mosesian v. Peat, Marwick, Mitchell Co.*

727 F.2d 873 (9th Cir. 1984).....................................................................26

*Pino v. Cardone Cap., LLC,*

55 F.4th 1253 (9th Cir. 2022)......................................................................9

*Schaffer Family Inv'rs LLC v. Sonnier*,

2016 U.S. Dist. LEXIS at *16 (C.D...........................................................11

*SEC v. All. Leasing Corp.*,

28 Fed.Appx. 648 (9 th Cir. 2002)............................................................10

*SEC v. Murphy*,

626 F.2d 633 (9th Cir.1980).......................................................................15

*Siemers v. Wells Fargo & Co.*,

No. C 05-04518 WHA, 20017 U.S. Dist. LEXIS 31287......................................19

*Stone v. Kirk*,

8 F.3d 1089 (6 th Cir. 1993)........................................................................11

*United States v. Laurienti*,
611 F.3d 530 (9th Cir. 2010)....................11

*Weiss v. NNN Cap. Fund I, LLC*,
No. 3:14-cv-02689-H-NLS, 2015 WL 11990929 (S.D. Cal. Apr. 3, 2015).........21

*Yee v. NIVS Intellimedia Tech. Group, Inc.*,
No. CV 11-8473 JGB (AJWx), 2013 U.S. Dist. LEXIS 46128 at *9....................6

*Zakinov v. Ripple Labs, Inc.*,
No. 18-cv-06753-PJH, 2020 U.S. Dist. LEXIS 32982 at *50 ..............................9

**Statutes**

Cal. Corp. Code § 25504....................23

Cal. Corp. Code § 25506(b ....................25

**Rules**

Fed. R. Civ. P. 9(b) ....................8

Plaintiffs Mark Ferry, Valerie Hamerling, Igor Korostelev and Ryan Krause ("Plaintiffs"), by and through their undersigned counsel, hereby file their response in opposition to Defendants' Motions to Dismiss and Motion to Strike ("Motion"). For the reasons that follow, Defendants' Motions should be denied in its entirety.

## STATEMENT OF FACTS

Throughout the Class Period[1], Defendants made various material misrepresentations and omissions of fact to Plaintiffs and the Class, including recurring misstatements between 2018 and 2022 about the fees charged or to be charged.

First, Defendants misrepresented the management fees actually charged and the fees that could be charged by the REITs. As charged by the SEC, the REITs heavily advertised as a selling point on DiversyFund's website and elsewhere having "no management fees". (FAC ¶ 74) In the case of REIT II, this representation was flatly untrue, as REIT II did in fact charge management fees. *Id.* In the case of REIT I, it was a best a half truth, as DF Manager was entitled to collect a 2% per annum management fee for investments made on or after January

---

[1] The Class Period herein runs from November 13, 2018, through March 16, 2022. Terms not defined herein shall have the same meaning as in Plaintiffs' First Amended Complaint (ECF No. 13, hereinafter "FAC").

1, 2020- and thus on the vast majority of the shares of REIT I that are currently outstanding. *See id.*

Second, throughout the Class Period the REITs made misstatements and incomplete partial disclosures concerning the acquisition and developer fees. (FAC ¶ 46) DiversyFund then collected exorbitant acquisition fees that appear to have exceeded what Defendants had represented DiversyFund would collect from the REITs, while at best partially disclosing the quantum of developer and acquisition fees paid, and the method of calculating same. *Id.* Although the REITs repeatedly represented throughout the Class Period that they would provide a detailed accounting of all fees and related party transactions (FAC ¶¶ 48, 87, 94, 99, 109, 117, 127) it appears that Defendants never did provide such an accounting (and Defendants do not argue otherwise). Defendants' piecemeal disclosures concerning acquisition and developer fees were rendered false, misleading and/or incomplete by the REITs' failure to provide the promised "detailed statement" of the "services performed and the amount of compensation paid" to DiversyFund throughout the Class Period.

Third, Defendants misrepresented the independence of REIT I from REIT II (and vice versa). (FAC ¶ 72) As the U.S. Securities and Exchange Commission ("SEC") has charged, the REITs advertised themselves as completely independent from one another, although they in fact both needed to obtain an ongoing infusion

of new investor capital from REIT II investors in order to continue to fund DiversyFund. (FAC ¶ 71) In fact, in 2021, REIT I had to loan DiversyFund $2,500,000 just to pay DiversyFund's operational expenses. *Id.* The REITs advertised themselves as independent of one another, but Defendant Lewis later stated in sworn statement filed in federal court that if the SEC case involving REIT II prevented DiversyFund from raising additional capital under Regulation A, "all of the Petitioning Entities would be driven out of business" and also asserted that "[c]ontinued exempt offerings are the **only viable means** of continuing to meet [REIT I] and REIT II's capital needs… ." (FAC ¶ 66, emphasis supplied therein).

Fourth, Defendants rendered their statements concerning the background of management and lack of regulatory investigations misleading by failing to disclose a 2019 regulatory investigation by the SEC as well as an administration accusation against Defendant Craig Cecilio by the California Bureau of Real Estate. The SEC also had opened (and then closed in January 2020) an initial investigation into DiversyFund, but this investigation was never disclosed to REIT I investors in the REIT's filings with the SEC, despite REIT I's previous statements that it was "not the subject of any investigation or proceedings by any governmental authorities." (FAC ¶¶ 139-44). Defendants' issues with the SEC were not disclosed in either REIT's SEC filings, and did not become public, until the SEC publicly disclosed

its Order Temporarily Suspending Exemption in *In the Matter of DF Growth REIT II, LLC* on March 16, 2022. *See infra.*

The initial SEC investigation, second SEC investigation, or the California Bureau of Real Estate matter were ***never*** disclosed in REIT I or REIT II's SEC filings during the Class Period. The initial SEC investigation into DiversyFund was only made public in federal court filings in February 2022 and the SEC publicly disclosed its Order Temporarily Suspending the Exemption in *In the Matter of DF Growth REIT II, LLC* one month later on March 16, 2022 – the last day of the Class Period. *See infra*.

Fifth, as also charged by the SEC, Defendants made misrepresentations to the effect that there was no minimum amount of capital that REIT II needed to raise. As charged by the SEC, REIT II advertised its offering as having "no minimum amount" and stated that "[w]hether we raise $50 million in offering or something less, proceeds of the Offering will satisfy our cash requirements", but this statement was false and misleading because, in fact, REIT II needed to raise far more than the $10 million it ultimately did raise to be viable. (FAC ¶¶ 142-44).

Contrary to Defendants' suggestion in the Motion, the Administrative Law Judge in the SEC case (Administrative Proceeding File No. 3-20801) did **not** dismiss the SEC's claims against REIT II annexed as <u>Exhibit 1</u> to Plaintiffs' Request for Judicial Notice ("RJN"). The judge simply denied summary

disposition, and the case remains pending and is currently stayed pending the SEC's consideration of an Offer for Settlement.[2]

Sixth, and finally, the REITs failed to disclose that REIT II had not adhered to the requirements of Regulation A (by failing to timely commence its offering and by filing the incorrect form to increase the size of its offering) and therefore ran the risk of being disqualified from utilizing the Regulation A exemption from registration. (FAC ¶¶ 132-34) These violations later resulted in the in the suspension of the REIT II Offering, causing adverse consequences for the REITs. (FAC ¶ 135).

The Defendants herein have now sued the attorneys who prepared the same offering documents that are the subject of this action as well as the SEC matter, alleging that the attorneys were negligent and committed professional malpractice by, *inter alia,* preparing faulty Offering Circulars and Offering Circular Supplements, including with respect to the representations charged by the SEC to be misleading concerning the REITs having "no minimum offering amount". *See* Complaint, *DF Growth REIT, LLC v. Flaster Greenberg P.C., et al,* N.J. Superior Court Docket No. MER-L-000200-23, attached as Exhibit 2 of the RJN.

---

[2] Accessible at https://www.sec.gov/alj/aljorders/2023/ap-6900.pdf

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

In order to withstand a motion to dismiss under Fed. R. Civ. P. 8(a), a complaint need not state detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

There is a split of authority as to whether the pleading standard set forth in Fed. R. Civ. P. 9(b) applies to claims under Cal. Corp. Code § 25401. Compare *Yee v. NIVS Intellimedia Tech. Group, Inc.,* No. CV 11-8473 JGB (AJWx), 2013 U.S. Dist. LEXIS 46128 at *9 (C.D. Cal. Mar. 25, 3013 with *Cutler v. Rancher Energy Corp.,* No. SACV 13-00906-DOC (JPRx), 2014 U.S. Dist. LEXIS 34622 at *16 (C.D. Cal. Mar. 11, 2014).

If the court concludes that a 12(b)(6) motion should be granted, the court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

/ / /

**II. Liability under California Corp. Code § 25401**

Under the private cause of action asserted by Plaintiffs set forth in § 25501 a private plaintiff may sue for either rescission or damages. The private cause of action established by §§ 25401 and 25501 differs from common law negligent misrepresentation under California law in that: (1) proof of reliance is not required, (2) although the fact misrepresented or omitted must be "material," no proof of causation is required, and (3) plaintiff need not plead defendant's negligence. *Cutler,* 2014 U.S. Dist. LEXIS 34622 at *26-2; *see also Bowden v. Robinson,* 67 Cal. App. 3d 705, 136 Cal. Rptr. 871, 878 (1977) (causation, reliance and negligence are not required to establish violation of § 25401- Legislature conspicuously avoided the actual reliance requirement of common law fraud); *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481 at *89 (N.D. Cal. Dec. 30, 2005), (intent not an element of liability under § 25401); *Strong v. Cochran,* No. 2:14-cv-788-TC, 2017 U.S. Dist. Lexis 179973 (D. Utah Oct. 13, 2017) (to state a claim under § 25501, plaintiffs do not need to show reliance).

Finally, the particular misstatement of fact alleged to trigger liability need not even be directed to the complaining plaintiffs. *See Zakinov v. Ripple Labs, Inc.,* No. 18-cv-06753-PJH, 2020 U.S. Dist. LEXIS 32982 at *50-51 (N.D. Cal. Feb. 26, 2020); *see also Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1260 (9th Cir. 2022)

(Section 12 of Securities Act of 1933 does not require that a solicitation be directed or targeted to a particular plaintiff).

## III. The Plaintiffs Have Stated a Claim for Violations § 25401 as Defendants Misrepresented and Omitted Facts Throughout the Class Period

### A. The Asset Management Fees were Misrepresented.

One of the representations Defendants made to the Plaintiffs and the Class in connection with the sale of shares in the REITs was there were "no fund level fees". Exhibit 3 to the RJN is an example taken from a screenshot of the DiversyFund.com website in April 2021[3]:




Disclosures regarding fees charged are frequently highly material. *See SEC v. All. Leasing Corp.*, 28 Fed.Appx. 648, 652 (9th Cir. 2002) (defendant's failure to

---

[3] Accessible at https://web.archive.org/web/20210413033206mp_/https://diversyfund.com/investment_offering/diversyfund-growth-reit/

disclose a commission was material as a matter of law); *United States v. Laurienti*, 611 F.3d 530, 541 (9th Cir. 2010) (omission that brokers received higher commission on certain "house" stocks than they received on other stocks material); *Schaffer Family Inv'rs LLC v. Sonnier*, 2016 U.S. Dist. LEXIS at *16-17 (C.D. Cal. July 5, 2016); *Stone v. Kirk*, 8 F.3d 1089. 1087 (6th Cir. 1993) (existence of large 18% commissions on sale of securities was a highly material fact)

It was patently false to represent to REIT I investors that "no fund level fees" could be charged as the asset management fees were only *waived* for investors who invested through December 31, 2019 per the August 13, 2019 supplement to the REIT I Offering Circular filed by DiversyFund.[4] Nonetheless, through 2020 and most of 2021, DiversyFund continued to sell shares of REIT I under the premise of "no management fees" even though it was contractually entitled to collect management fees. (FAC ¶ 79) What's worse, REIT II investors were in fact assessed asset management fees notwithstanding the "no fund level fee" representations.

---

[4] Accessible at https://www.sec.gov/Archives/edgar/data/1750695/000121390019015565/f253g2081319_dfgrowthreit.htm

Defendants' reliance on *Herring v. Teradyne* is misplaced, as in that case the facts allegedly omitted by the Defendants concerning a drop in sales orders had already been disclosed and caused a drop in the publicly-listed company's share price on the same day the press release allegedly omitting these same facts was released, 2008 WL 11337851 at *4 (S.D. Cal. Aug. 29, 2008). Here, Plaintiffs have alleged that DiversyFund continued to sell shares in REIT I and later REIT II under the premise of "no management fees" for an extended period "through 2020 and most of 2021". (FAC 79). Further, contrary to Defendants' argument, specific misrepresentations of fact made on social media are not immunized or rendered inactionable by mere generalized cautionary language in separate offering circulars. *Pino v. Cardone Capital*, No. 21-55564, 2022 U.S. App. LEXIS 35270, *6 (9th Cir. 2022). Contrary to Defendants' argument, the bespeaks caution doctrine applies only to precise cautionary language which directly addresses itself to future projections, estimates or forecasts in a prospectus. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994).

There is no real dispute that Defendants made very specific representations regarding no "platform level" or "management" fees and represented that DiversyFund "limits our fees to just a project level acquisition/development fee". Therefore, it is plausible that the "no fund level fee" representations were untrue statements of fact, or contained omissions of material fact in light of the charging

of management fees to REIT II investors and DiversyFund's reservation of the right to charge fund level fees for most REIT I investors.

**B. <u>The Acquisition and Developer Fees were Misrepresented</u>**

Throughout the Class Period, the REITs consistently represented that not "less than once per year" each REIT would provide the Plaintiffs and the Class with a "detailed statement" of the services performed and amount of fees paid to DiversyFund. The dates of these statements by REIT I are set forth in the FAC as follows: ¶ 47 (October 18, 2018), ¶ 94 (July 26, 2019), ¶ 99 (June 16, 2020), ¶ 109 (April 30, 2021), and ¶ 117 (May 30, 2022). REIT II made similar or identical statements on the following dates, as also set forth in the FAC: ¶ 48 (January 19, 2021) and ¶ 127 (May 26, 2022). To date, no "detailed statement" of fees for each investment in either REIT is known to have been provided, rendering the blanket disclosures false. It is plausible that representations that investors would receive a "detailed statement of fees" would be important to an investor in reaching an investment decision.

Plaintiffs plead multiple examples of transactions in which it is plausible that excessive fees were charged to the detriment of the Plaintiffs and the Class. For example:

<u>DiversyFund Park Boulevard:</u> Defendants complain that the two-page disclosure (discussed at FAC ¶¶ 91-93) lists no developer fee. Yet, it clearly

discloses an estimated $1,200,000 developer fee on a $250,000 investment. No corresponding "detailed statement" of fees charged regarding this investment was provided, therefore rendering it plausible that the estimated $1,200,000 developer fee on a $250,000 investment far exceeded the 6-8% developer fees Defendants represented would be charged.

NCP Dove: It is plausible that notwithstanding the typographical error, which Plaintiffs reproduced in the FAC for accuracy's sake, REIT II invested over $1.2 million (quoted as "$1,280,2126") into NCP Dove without providing a "detailed statement" of the fees charged. It is also plausible that the $1.2 million fee far exceeded 4% of REIT II's share of the acquisition price of NCP Dove, given that it appears the **only investment that had been made by REIT II at that time** was its investment in NCP Dove totaling $5,014,216.06. (FAC ¶ 129)

DF Summerlyn: Defendants argue that that "the Court can only guess what percentage of that number [total project cost] $540,088 is." Motion, p. 18 ln. 21. This is precisely the issue given Defendants' failure to produce the "detailed statement" promised. But, given that the only two data points disclosed by Defendants were the fee ($540,088) and the investment amount ($1,324,500), it is plausible that a fee of over 40% of the amount invested far exceeds the maximum 6-8% of the REIT's share of total project costs Defendants represented would be

charged. *Cf.,* FAC ¶¶ 101-02 with FAC ¶ 50 ("the Company's cost of the fee will not exceed 6% - 8% of the Company's share of the total project cost").

**C. <u>The Relationship Between the REITs was Misrepresented</u>**

As also charged by the SEC, Defendants represented that REIT I and II were standalone entities which were capable of operating independently without using capital from one REIT to support the other REIT. *See* FAC ¶ 67 *et seq*. Furthermore, disclosures regarding capital needs are material. *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir.1980) (holding that the "materiality of information relating to financial condition, solvency, and profitability is not subject to serious challenge.")

Defendants' arguments regarding the boilerplate risk disclosures regarding REIT II are misplaced. REIT II made very specific representations to its investors about its ability to operate independently in stating that. "[w]hether we raise $50 million in offering or something less, proceeds of the Offering will satisfy our cash requirements. If we raise less than $50 million, we will simply make fewer investments." (REIT II Offering Circular, pp. 8, 73, quoted at FAC ¶ 64. This a statement is rendered false and misleading by the true fact that REIT II would require ongoing infusions of capital via sales under the claimed Regulation A exemption in order to be viable. (FAC ¶¶ 65-66). Indeed, Defendant Lewis signed

a sworn declaration admitting that the "[c]ontinued exempt offerings are the **only viable means** of continuing to meet [REIT I] and REIT II's capital needs… ." *Id.*

It is plausible that the representation regarding "no minimum" is false in that both the REITs required continued exempt offerings to meet its capital needs. Each of these facts would be important to a reasonable investor in considering whether or not to invest in REIT I or REIT II.

### D. <u>The SEC Investigation is Material</u>

Defendants had a duty to disclose the SEC investigations, which later ripened into proceedings that resulted in REIT II's exemption from registration being suspended. During the Class Period, the REITs failed to do so. The SEC itself disclosed the suspension of REIT II's exemption from registration on March 16, 2022 – the final day of the Class Period.

In the Offering Circular, REIT I affirmatively disclosed to investors that: "Neither the Company itself, the Manager, the Sponsor, or any of their respective employees, officers, directors, managers, or members is, to the knowledge of the Company, currently the **subject of any investigation or proceedings by any governmental authorities**." (FAC ¶ 142) By speaking as to "investigations or proceedings by any governmental authorities", Defendants imposed on themselves a duty to speak when SEC matters materialized. Further, Item 7 of Form 1-A (the SEC form for qualification of a Regulation A offering) requires disclosure of

"[a]ny legal proceedings material to the business or financial condition of the issuer."[5] Form 1-K, the form setting forth annual report requirements for a Regulation A issuer, also requires the incorporation of "the information required by Item 7 of Form 1-A", meaning that material legal proceedings that materialized during the reporting period must be disclosed. Based on the foregoing, any annual report filed by REIT I after the SEC matter was commenced would have had to disclose the SEC matter, assuming that the SEC matter is "material to the business or financial condition of the issuer."

Indeed, while § 25401 requires some affirmative statement be rendered misleading by an omission of fact:

> [O]nce a party chooses to speak, it has a "duty to be both accurate and complete." *Caiola v. Citibank*, N.A. , 295 F.3d 312, 331 (2d Cir. 2002). "[A]n entirely truthful statement may provide a basis for liability if material omissions related to the content of the statement make it ... materially misleading."

*In re Lions Gate Entm't Corp.*, 165 F. Supp. 3d 1, 11 (S.D.N.Y. 2016) (*citing In re Bristol Myers Squibb Co. Sec. Litig*., 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008).

Defendants then attempt to confuse the issues by stating that the Plaintiffs allege "no facts about how long the inquiry was open, what it concerned, or that any adverse findings or penalties were involved". This is true, insofar as there was

---

[5] Accessible at https://www.sec.gov/files/form1-a.pdf. Form 1-K is accessible at https://www.sec.gov/files/form1-k.pdf.

no public record of the existence of the initial SEC investigation, let alone its subject matter, until February 15, 2022, and the Plaintiffs (and counsel) still are not privy to the details. However, it is a matter of public record that the SEC ultimately filed its Order Temporarily Suspending Exemption in *In the Matter of DF Growth REIT II, LLC* in Administrative Proceeding File No. 3-20801 ("SEC Suspension Order")[6] one month later on March 16, 2022. Given that the SEC matter resulted in the suspension of REIT II's exemption from registration, which in turn resulted in harm to both REITs according to Defendants' own court filings (*see* FAC ¶¶ 65-67), the Court may draw the inference that it was material.

**E. <u>The BRE Sanctions are Material</u>**

Disclosures regarding the integrity of management that reflect on their ability to run an enterprise are material. *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 20017 U.S. Dist. LEXIS 31287 (N.D. Cal. Apr. 17, 2007)( "The integrity of management is always of importance to investors."); *see also In re Franchard*, 42 S.E.C. 163 (Jul. 31, 1964)("managerial ability and personal integrity" of management were material).

---

[6] Annexed to FAC as Exh. 1 and also accessible at https://www.sec.gov/litigation/admin/2022/33-11040.pdf.

The BRE sanctions, attached as Exhibit 4 to the RJN, related to alleged misconduct by Defendants Cecilio and DiversyFund (through a predecessor known as Coastal California Funding Group) are of the same type(s) of misconduct outlined in the Complaint.7 *See* FAC ¶¶ 40-45. Therefore, it is plausible they were material and should have been disclosed to the Plaintiffs. And even though Defendants deny materiality, the BRE sanction was disclosed in another parallel private securities offering (known as Value Add Growth REIT IV, LLC) by Defendant Cecilio before the filing of this litigation.[8] By omitting to disclose the BRE matter, the statements concerning Cecilio's and DiversyFund's background and expertise were rendered misleading.

**IV. Defendants' Other Arguments Lack Merit**

**A. Plaintiffs Have Standard to Bring this Action.**

Plaintiffs properly plead damages and other actionable injuries throughout the FAC sufficiently to establish an "injury in fact" that is "fairly traceable" to Defendants' action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 560-561

---

[7] Accessible at https://www2.dre.ca.gov/hearingfiles/H04876SD_170215_P.pdf

[8] Accessible at https://www.sec.gov/Archives/edgar/data/1949029/000121390022065481/ea166571-1a_valueadd4.htm#a_009

(1992). For example, Plaintiffs plead that Defendants collected "exorbitant acquisition fees that appear to have exceeded what Defendants had represented DiversyFund would collect from the REITs, while partially disclosing the quantum of developer and acquisition fees paid . . ." (FAC ¶ 46). At the most basic level, Plaintiffs alleged that they purchased securities based on misrepresentations and omissions which coincide with Defendants' sale of securities. (FAC ¶¶ 6, 159)

The foregoing should suffice to establish standing, as a private cause of action established by §§ 25401 and 25501 does not require proof of reliance or causation. *See Cutler,* 2014 U.S. Dist. LEXIS 34622 at *26-2. It seems that Defendants are advancing their standing argument to attempt to impose reliance and causation requirements that are not in fact elements of Plaintiffs' statutory causes of action.

Further, Plaintiffs plead facts from which additional concrete harms resulting from Defendants' acts can be inferred. For example, as a result of acquisition fees paid to Defendants exceeding what was represented in the Offering Circular, Plaintiffs and the proposed Class would be damaged by the amount of fees above what the REITs disclosed would be charged. Also, the Plaintiffs would be harmed by the "no minimum" representations because, as set forth in the declaration of Defendant Lewis discussed, "[c]ontinued exempt offerings are the

only viable means of continuing to meeting DF Growth REIT and REIT II's capital needs" – a fact obscured by Defendants' misrepresentations.

Defendants rely almost exclusively on a single factually distinguishable case for their standing argument. *See Weiss v. NNN Cap. Fund I, LLC,* No. 3:14-cv-02689-H-NLS, 2015 WL 11990929 (S.D. Cal. Apr. 3, 2015). But in *Weiss*, the sole putative class representative purchased the securities at issue in April 2008, **entirely before** the time frame when the defendants omitted material information between July and September 2008. *Id.* Here, all of the Plaintiffs purchased securities **after** one or more well-pleaded misrepresentation of material fact. With respect to misrepresentations concerning fees, these were interspersed throughout the Class Period and began at the beginning of the Class Period with the REIT I Offering Circular in 2018.[9]

Perhaps most importantly, Defendants have directly contradicted their no harm arguments by arguing the exact opposite before the U.S. Court of Appeals for the Ninth Circuit. In connection with a petition for review of the SEC's temporary

---

[9] REIT I's repeated false statements that Defendants would provide a detailed account of fees are set forth in full in the FAC as follows: ¶ 47 (October 18, 2018), ¶ 94 (July 26, 2019), ¶ 99 (June 16, 2020), ¶ 109 (April 30, 2021), and ¶ 117 (May 30, 2022). REIT II made similar or identical statements on the following dates, as also set forth in the FAC: ¶ 48 (January 19, 2021) and ¶ 127 (May 26, 2022).

disqualification order, REIT II submitted a declaration sworn to by Defendant Lewis (attached as Exhibit 5 to the RJN) in which Lewis stated, under oath, that the loss of REIT II's ability to raise funds pursuant to Regulation A "will cause significant and irreparable harm to DiversyFund and their 30,000 investors" including investors in both REITs.[10] (FAC ¶ 65) Simply put, Plaintiffs have standing to bring this litigation.

**B. Plaintiffs Have Stated a Claim for Violations of Section 25504 of the Cal. Corp. Code.**

The Plaintiffs have properly plead a claim for secondary liability of Defendants DiversyFund, Inc., Craig Cecilio, and Alan Lewis. "Control" for purposes of section 25504 means "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies." *In re Wash. Mut., Inc., 462 B.R. 137, 141-42* (Bankr. D. Del. 2011) (quoting *Rochez Bros. Inc. v. Rhoades,* 527 F.2d 880, 890 (3d Cir. 1975)).

DiversyFund, Inc. was the sponsor of REIT I and II. (FAC ¶ 10) Defendant Cecilio was the CEO of DiversyFund. (FAC ¶ 11) Defendant Lewis was Chief

---

[10] Defendants also admitted in another filing that their "capital intensive real estate business depends on its ability to raise capital to meet ongoing commitments, so the sudden deprivation of their Reg A exemption will very quickly put Petitioners out of business, irreparably injuring Petitioners and their nearly 30,000 individual investors." (Case No. 22-70023, Dkt. No. 1-2, at 3).

Investment Officer of REIT I, REIT II, and DiversyFund. (FAC ¶ 11) In these respective capacities, Defendants DiversyFund, Cecilio and Lewis each had the power to direct the management and policies of REIT I and II.

Indeed, the Offering Circulars for both REITs list Mr. Cecilio as Chief Executive Officer and Mr. Lewis as Chief Financial Officer for the REITs, which fall squarely within the definition of § 25504. Therefore, it is entirely plausible that Defendants DiversyFund, Cecilio and Lewis are "control persons" under Cal. Corp. Code § 25504.

### C. Plaintiffs Have Pleaded Defendants' Material Omission to Disclose that REIT II Was Not In Compliance With Regulation A

What Defendants term their "technical, inadvertent and immaterial regulatory mistakes" discussed in ¶¶ 132-135 of the FAC, which Defendants ask be struck from the FAC, are in fact highly relevant to the fact pattern here, state a claim, and should not be struck. Simply put, Defendants Lewis and Cecilio were tasked with compliance with applicable regulations, including crucially those related to Regulation A – as the very basis for the claimed exemptions from registration that were integral the REITs offerings. The REITs failed to disclose that REIT II had not adhered to the requirements of Regulation A (by failing to timely commence its offering and by filing the incorrect form to increase the size of its offering) and therefore ran the risk of being disqualified from utilizing the Regulation A exemption from registration. (FAC ¶¶ 132-34) These violations

later resulted in the suspension of the REIT II Offering, causing adverse consequences for both the REITs. (FAC ¶ 135).

Surely conduct that places an issuer's exemption from registration in peril has a "relationship to the claims and defenses" herein and cannot be termed "immaterial" or "impertinent". *Cf., Hayes v. Woodford,* 444 F. Supp. 2d 1127, 1132 (S.D. Cal. 2006) (noting that Fed. R. Civ. P. 12(f) motions to strike are "generally disfavored" but striking pro se prisoner's demand for punitive damages where no facts pleaded in support thereof).

### D. Plaintiffs' Claims are Not Time-Barred.

The Plaintiff's claims are not time-barred. The first opportunity the Plaintiffs could have even discovered the undisclosed SEC investigations, the interdependence of the REITs, and falsity of the REITs' representations regarding "no minimum capital needs" was the February 15, 2022 Ninth Circuit petition was filed, which contained a treasure trove of previously non-public information related to the REITs. But this presumes the Plaintiffs actively searched and could access these files on PACER. A copy of the docket is attached as Exhibit 6 to the RJN. The SEC Suspension Order – which could have been discovered on Google – was only filed a month later on March 16, 2022. A copy of the Suspension Order is

attached as Exhibit 7 to the RJN.[11] This litigation was filed within a year from these points in time – well within the two-year discovery rule afforded by Cal. Corp. Code § 25506(b).

Even if and even if there is a question on timeliness, such claims should not be dismissed at this stage. In the Ninth Circuit, courts generally view inquiry notice (or "storm warnings") as "generally views the question of when a reasonably diligent investor should have discovered a claim as one appropriate for the factfinder to determine after trial rather than one for a judge to decide as a matter of law on summary judgment." *Luksch v. Latham* 675 F.Supp. 1198, 1201) (N.D.Cal. 1987) ; *see also Mosesian v. Peat, Marwick, Mitchell Co.* 727 F.2d 873, 879 (9th Cir. 1984) ("The question of what a reasonably prudent investor should have known is particularly suited to a jury determination").

**CONCLUSION**

Based on the foregoing, the Rule 12(b)(1) and 12(b)(6) Motions to Dismiss, and Rule 12(f) Motion to Strike should be DENIED.

/ / /

[11] Accessible at https://www.sec.gov/litigation/admin/2022/33-11040.pdf

Dated this April 21, 2023

/s/ Todd M. Friedman
Todd M. Friedman (SBN 216752)

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman (SBN 216752)
21550 Oxnard St, Suite 780
Woodland Hills, CA 91367
Phone: (877) 206-4741
Fax: (866) 633-0228
tfriedman@toddflaw.com

LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow Street, Suite LL1
Weatogue, CT 06089
Tel: (860) 920-5181
Fax: (860) 920-5174
joshuakons@konslaw.com

LAW OFFICE OF CHRISTOPHER J. GRAY
Christopher J. Gray (*pro hac vice*)
360 Lexington Ave, 14th Floor
New York, New York 10017
Phone: (212) 838-3221
Fax: (212) 937-3139
chris@investorlawyers.net

*Attorneys for Plaintiffs*

Filed electronically on this 21ST day of April, 2023, with:

**United States District Court CM/ECF system**

And hereby served upon all parties

Notification sent on this 21ST day of April, 2023, via the ECF system to:

Honorable Anthony J. Battaglia
United States District Court
SOUTHERN District of California

This 21ST day of April, 2023.
By: s/Todd M. Friedman
Todd M. Friedman