LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons (SBN 244977)
92 Hopmeadow Street, Suite LL1
Weatogue, CT 06089
Tel: (860) 920-5181
Fax: (860) 920-5174
joshuakons@konslaw.com

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiffs MARK FERRY, VALERIE
HAMERLING, IGOR KOROSTELEV, and RYAN
KRAUSE

## U.S. DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV and RYAN KRAUSE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>DF GROWTH REIT, LLC,<br>DF GROWTH REIT II, LLC,<br>DIVERSYFUND, INC.,<br>CRAIG CECILIO, and ALAN LEWIS,<br><br>                    Defendants. | CASE NO. 22-CV-2001-AJB-WVG<br><br>**DECLARATION OF JOSHUA B. KONS IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE** |

1

DECLARATION OF JOSHUA B. KONS IN SUPPORT OF PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

JOSHUA B. KONS declares as follows pursuant to 17 U.S.C. §1746:

1.      I am an attorney representing Plaintiffs Mark Ferry, Valerie Hamerling, Igor Korostelev and Ryan Krause ("Plaintiffs") in the above-captioned matter. I am duly licensed to practice law in the State of California and admitted to practice before the United States Court in the Southern District of California.  I have personal knowledge of the facts set forth herein, and am competent to testify thereto.

2.      Exhibit 1 is a true and correct copy of the November 14, 2022, Order Denying Summary Disposition and ordering a hearing on the merits to commence April 17, 2023 in the SEC administrative proceeding (Ad. Proc. File No. 3-20801). This document is publicly accessible at the following link:

https://www.sec.gov/alj/aljorders/2022/ap-6879.pdf

3.      Exhibit 2 is a true and correct copy of the complaint filed in Mercer County Superior Court in New Jersey by Defendants against their securities law firm for professional malpractice, captioned: *DF Growth REIT, LLC v. Flaster Greenberg P.C., et al,* N.J. Superior Court Docket No. MER-L-000200-23.

4.      Exhibit 3 is a true and correct copy of a full printout of a page from the DiversyFund.com website from April 2021 from Archive.org. This document is publicly accessible at the following link:

2

DECLARATION OF JOSHUA B. KONS IN SUPPORT OF PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

https://web.archive.org/web/20210413033206mp_/https://diversyfund.com/investment_offering/diversyfund-growth-reit/

5.     Exhibit 4 is a true and correct copy of the accusation by the California Bureau of Real Estate (the "BRE") filed February 15, 2017. This document is publicly accessible at the following link:

https://www2.dre.ca.gov/hearingfiles/H04876SD_170215_P.pdf

6.     Exhibit 5 is a true and correct copy of the declaration of Defendant Alan Lewis filed as Exhibit 7 to the Defendants' Emergency Motion to Stay filed in Ninth Circuit (Diversyfund, Inc., et al v. USSEC, Case No. 22-70023, Dkt. 2, at 94-98 dated February 28, 2022).

7.     Exhibit 6 is a true and correct copy of the docket sheet from the Defendants' Emergency Motion to Stay filed in Ninth Circuit (Diversyfund, Inc., et al v. USSEC, Case No. 22-70023).

8.     Exhibit 7 is a true and correct copy of the March 16, 2022, Order Temporarily Suspending REIT II, LLC's Regulation A. Exemption (Ad. Proc. File No. 3-20801). This document is publicly accessible at the following link:

https://www.sec.gov/litigation/admin/2022/33-11040.pdf

/ / /

3

DECLARATION OF JOSHUA B. KONS IN SUPPORT OF PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of April 2023 in Simsbury, Connecticut.


/s/ Joshua B. Kons
Joshua B. Kons

4
DECLARATION OF JOSHUA B. KONS IN SUPPORT OF PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

# EXHIBIT 1

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

ADMINISTRATIVE PROCEEDINGS RULINGS
Release No. 6879/November 14, 2022

ADMINISTRATIVE PROCEEDING
File No. 3-20801

_____

| | | |
|---|---|---|
| In the Matter of | : | |
| | : | |
| DF GROWTH REIT II, LLC | : | ORDER |

_____

     The Securities and Exchange Commission instituted this proceeding with an Order Temporarily Suspending Exemption Pursuant to Section 3(b) of the Securities Act of 1933 and Rule 258 of Regulation A[1] Thereunder and Notice of Opportunity for Hearing on March 16, 2022. Respondent DF Growth REIT II, LLC (Respondent or REIT II), requested a hearing, and, on March 31, 2022, the Commission ordered that the matter be heard by an Administrative Law Judge (ALJ). On May 16, 2022, the proceeding was reassigned to the undersigned.

     Under consideration are the Division of Enforcement's Motion for Summary Disposition and responsive pleadings.  In accordance with the procedural schedule adopted on May 26, 2022, as supplemented on August 1 and September 14, 2022,[2] the Division filed its motion on June 3, 2022; REIT II, an Opposition on June 21, 2022; the Division, a Reply on June 28, 2022; REIT II, an Opposition on September 19, 2022; and the Division, a Reply on September 28, 2022.

     This proceeding concerns a Regulation A offering statement filed by REIT II on December 23, 2020, on Securities Act Form 1-A and amended on Form 1-A/A on January 21, 2021.  The Division seeks a permanent suspension of REIT II's use of the Regulation A exemption, pursuant to Securities Act Section 3(b) and Rule 258(a)(1), (2) thereunder.  Specifically, the Division alleges that DF Growth REIT II failed to comply with requirements of Regulation A by (1) engaging in a delayed offering, in violation of Rule 251(d), and (2) raising its maximum offering amount from $50 million to $75 million through filing an offering circular supplement rather than through a new offering statement or amendment, in violation of Rule 253(b).  It further alleges that Respondent's offering statements and solicitation materials contained untrue or misleading statements of material fact relating to (1) the separation of "REIT II" from "REIT I," DiversyFund's previously existing

_____

[1] Regulation A consists of Securities Act Rules: 17 C.F.R. §§ 230.251-263 (Rules 251-263).

[2] *See DF Growth REIT II, LLC*, Admin. Proc. Rulings Release Nos. 6853, 2022 SEC LEXIS 1355 (A.L.J. May 26, 2022); 6860, 2022 SEC LEXIS ____ (A.L.J. Aug. 1, 2022); 6869, 2022 SEC LEXIS 2375 (A.L.J. Sept. 14, 2022).  The proceeding was stayed between August 15 and September 14, 2022, based on the parties' request for a Stay Pending Commission Consideration of Offer of Settlement.  *DF Growth REIT II, LLC*, 2022 SEC LEXIS 2375.

real estate investment fund, (2) the minimum cash amount needed for its business and the significant risk of loss to REIT II investors if REIT II were unable to raise sufficient capital in its Regulation A offering, and (3) the fees that investors would be charged. Respondent vigorously contests these allegations, and both parties expanded these arguments in their filings on the summary disposition motion and provided affidavits and documentary evidence.

While the Division argues that permanent suspension is warranted on the basis of undisputed facts, it appears that questions of material fact remain as to one or more claims or defenses. For example, the evidence provided reveals a dispute of material fact as to when Respondent began soliciting investors. *Compare* Mot. Summ. Disp. Exs. 2 at 1-2, 21 at 75-77, *with* Ex. 22 at 76. There is also a material dispute as to whether Respondent signed advisory agreements for its investors and invested their funds in REIT II without their knowledge. The Division presented evidence in the form of declarations from three investors that they either had not signed advisory agreements or had not consented to investing in REIT II. Mot. Summ. Disp. Exs. 25, 26, 27. Respondent countered this as to one of the three investors with a declaration of DiversyFund's Head of Product and Technology, who is responsible for its website and investor portal. Decl. of David Legacki (filed Jul. 15, 2022). Moreover, the evidence presented is insufficient to support the Division's claims that Respondent misrepresented its minimum capital requirements and the relationship between REIT I and REIT II.

Some of the Division's other allegations appear to be supported by undisputed facts, such as its claim that Respondent violated Rule 253(b) by raising its maximum offering amount from $50 million to $75 million through filing an offering circular supplement rather than through a new offering statement or amendment. Mot. Summ. Disp. Ex. 3. That violation alone might *permit* the entry of a permanent suspension, but does not require it. Rule 258(d), referring back to Rule 258(a)(1), provides that the "Commission *may* . . . after notice of and opportunity for hearing, . . . permanently [suspend] the exemption for any reason [specified for] a temporary suspension under [Rule 258(a)]" (emphasis added), which includes when "any of the terms, conditions or requirements of Regulation A have not been complied with." The Rule's use of "may" means that it does not *require* a permanent suspension. Hearing testimony could further clarify the circumstances of Respondent's violation and whether there are any mitigating factors.

The Division's Motion is DENIED. The parties are ordered to confer on prehearing and other procedures for the resolution of the issues in this proceeding and to file a joint proposal by December 9, 2022. The hearing has been scheduled to commence on April 17, 2023, consistent with 17 C.F.R. § 201.200(c). *DF Growth REIT II, LLC*, Admin. Proc. Rulings Release No. 6877, 2022 SEC LEXIS 2911 (A.L.J. Oct. 31, 2022).

IT IS SO ORDERED.

/S/ Carol Fox Foelak
Carol Fox Foelak
Administrative Law Judge

# <u>EXHIBIT 2</u>

Robert W. McAndrew, Attorney No. 016231978
Jonathan P. Vuotto, Attorney No. 021372004
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
(973) 538-6308
Attorneys for Plaintiffs, DF Growth REIT, LLC, DF Growth REIT II, LLC, DiversyFund, Inc.,
Craig Cecilio and Alan Lewis

| | |
|---|---|
| DF GROWTH REIT, LLC, DF GROWTH REIT II, LLC, DIVERSYFUND, INC., CRAIG CECILIO and ALAN LEWIS,<br><br>     Plaintiffs,<br><br>  v.<br><br>FLASTER GREENBERG P.C., LEX NOVA LAW, LLC, MARKLEY S. RODERICK, ESQ. and JOHN DOES 1-10,<br><br>     Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO. MER-L-<br><br>CIVIL ACTION<br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiffs, DF Growth REIT, LLC, DF Growth REIT II, LLC, DiversyFund, Inc., Craig Cecilio and Alan Lewis (collectively, "Plaintiffs"), by way of Complaint against Defendants, Flaster Greenberg P.C., Lex Nova Law, LLC and Markley S. Roderick, Esq. (collectively, "Defendants"), allege as follows:

## PARTIES

1. Plaintiff DF Growth REIT, LLC ("REIT I") is a Delaware limited liability company with a principal office located in California.

2. Plaintiff DF Growth REIT II, LLC ("REIT II") is a Delaware limited liability company with a principal office located in California.

3.      Plaintiff DiversyFund, Inc. ("DiversyFund") is a Delaware corporation with a principal office located in California, is the Sponsor of REIT I and REIT II, and is the 100% owner of DF Manager, LLC, which is the manager of both REIT I and REIT II.

4.      Plaintiff Craig Cecilio ("Cecilio") is an individual who resides in California and is the Chief Executive Officer of DiversyFund.

5.      Plaintiff Alan Lewis ("Lewis") is an individual who resides in California and is the Chief Investment Officer of DiversyFund.

6.      On information and belief, Defendant Flaster Greenberg P.C. ("Flaster Greenberg") is a New Jersey professional corporation with multiple offices located in New Jersey, including in Mercer County.

7.      On information and belief, Defendant Lex Nova Law, LLC ("Lex Nova") is a New Jersey limited liability company with a principal place of business located in New Jersey.

8.      On information and belief, Defendant Markley S. Roderick, Esq. ("Roderick") is an individual attorney who resides in New Jersey and is a member of Lex Nova and was formerly a shareholder of Flaster Greenberg.

9.      John Does 1-10 are unknown individuals and/or entities who, on information and belief, were attorneys or law firms who may have participated in the representation of Plaintiffs as alleged herein.

## FACTS

10.     In or around June 2017, Plaintiffs engaged Flaster Greenberg and Roderick to represent Plaintiffs in connection with securities offerings in certain real estate investment funds (including REIT I and REIT II) under U.S. Securities and Exchange Commission ("SEC") Regulation A.    The engagement specifically included analysis, negotiations, research,

investigation, correspondence, communication, preparation and drafting of regulatory filings and legal documents, and related work for the securities offerings.

11.     Regulation A is an exemption from registration that allows issuers to offer and sell securities to the public so long as the issuer fully complies with the regulation's requirements.

12.     On October 3, 2018, REIT I filed an Offering Circular, which was prepared by Flaster Greenberg and Roderick and based on their advice, analysis, research and investigation, under Regulation A, to raise up to $50 million of capital.

13.     In or around January 2020, Roderick left Flaster Greenberg and joined Lex Nova, where Roderick continued to represent Plaintiffs, along with other Lex Nova attorneys.

14.     REIT II was formed in August 2020 and, based on advice, analysis, research, investigation and work product prepared by Flaster Greenberg, Lex Nova and Roderick, filed an Offering Circular under Regulation A to raise up to $50 million of capital through the sale of Class A Investor Shares.

15.     On March 26, 2021, based on advice, analysis, research, investigation and work product prepared by Lex Nova and Roderick, REIT I filed an "Offering Circular Supplement" to raise its maximum offering amount from $50 million to $75 million under Regulation A.  Based on Lex Nova and Roderick's advice, REIT I filed the Offering Circular Supplement rather than a new offering statement or post-qualification amendment.

16.     On August 26, 2021, based on advice, analysis, research, investigation and work product prepared by Lex Nova and Roderick, REIT II filed an Offering Circular Supplement to raise its maximum offering amount from $50 million to $75 million under Regulation A.  Based on Lex Nova and Roderick's advice, REIT II filed the Offering Circular Supplement rather than a new offering statement or post-qualification amendment.

3

17.     Defendants' advice turned out to be grossly negligent and had disastrous effects on Plaintiffs.

18.     The note to Rule 253(b) under Regulation A provides that "An offering circular supplement may not be used to increase the volume of securities being offered. Additional securities may only be offered pursuant to a new offering statement or post-qualification amendment qualified by the Commission." Because REIT II failed to file an offering statement or post-qualification amendment as required, it failed to obtain review, comment, and qualification by Division of Corporation Finance staff in contravention of the requirement that qualification is a necessary component for Regulation A sales.

19.     As a result of Defendants' negligent advice to file Offering Circular Supplements for REIT I and REIT II rather than filing a new offering statement or post-qualification amendment, the SEC opened investigations of Plaintiffs, alleging that the violations invalidate REIT I and REIT II's respective reliance on Regulation A for the securities offerings.

20.     In conducting its investigation of REIT II, the SEC has alleged that the language used in REIT II's original Offering Circular was misleading to investors in that it failed to properly disclose the relationship between REIT II and related entities (including REIT I and DiversyFund), including the expectation of additional investment capital inflow as compared to the "no minimum offering amount" language in the Offering Circular, which was prepared by Defendants and based on Defendants' advice.

21.     Due to the SEC's investigation of the alleged violations, REIT II prematurely terminated its offering, and has incurred significant costs and losses, totaling over $1 million to date. The SEC also has the right to bring an enforcement proceeding to challenge REIT II's

reliance on Regulation A, which could result in remedies, including civil monetary penalties, totaling several million dollars.

22.     In conducting its investigation of REIT I, the SEC has alleged or is likely to allege that the March 26, 2021 Offering Circular Supplement violated Regulation A, depriving REIT I of the ability to rely on Regulation A for the issuance of related unregistered securities.  The potential penalties and damages arising from the SEC's allegations in this regard are even larger than those relating to REIT II.  Similar to the investigation of REIT II, the SEC has alleged or is also likely to allege that investors were misled by the October 3, 2018 Offering Circular language relating to "no minimum offering amount," putting in issue all REIT I securities issued in reliance on Regulation A.

23.     Additionally, mainly as a result of Defendants' negligent advice and work product in connection with REIT I and REIT II's respective Offering Circulars and Offering Circular Supplements, Plaintiffs have been sued by investors in a Class Action Complaint filed in the U.S. District Court for the Southern District of California, alleging violation of California securities laws, including seeking personal liability for Cecilio and Lewis.

24.     But for Defendants' negligent advice and work product in connection with REIT I and REIT II's respective securities offerings, REIT I and REIT II would have filed proper Offering Circulars and would have offered additional securities only pursuant to new offering statements or post-qualification amendments.  But for Defendants' negligent advice and work product, there would have been no alleged violation of SEC Rules or Regulation A by REIT I or REIT II.

25.     As a result of Defendants' negligent advice and work product in connection with REIT I and REIT II's respective securities offerings, Plaintiffs have incurred and will continue to incur substantial damages from, among other potential liability, attorneys' fees and costs to defend

against the SEC's investigations and proceedings, likely SEC civil monetary penalties, potential civil monetary liability resulting from the Class Action Complaint, and attorneys' fees and costs to bring this action.

26.     Pursuant to New Jersey Court Rule 4:5-2, the factual allegations of the preceding paragraphs are intended to be illustrative of Plaintiffs' claims and not exhaustive of all facts in support of these claims.

## COUNT ONE

## ATTORNEY MALPRACTICE

27.     Plaintiffs repeat and reallege all of the allegations contained above as if fully set forth herein.

28.     At all relevant times, Defendants held themselves out to the public as, and continue to hold themselves out to the public as, attorneys who handle substantial securities offering advise and representation.

29.     Plaintiffs engaged Defendants to represent Plaintiffs specifically in connection with securities offerings in real estate debt funds such as REIT I and REIT II under SEC Regulation A. The engagement specifically included analysis, negotiations, research, investigation, correspondence, communication, preparation and drafting of legal documents, and related work for the securities offerings.

30.     As Plaintiffs' attorneys, Defendants owed Plaintiffs a duty of care, requiring Defendants to exercise a certain level of skill and diligence in representing Plaintiffs' interests.

31.     By the actions and omissions outlined herein, Defendants breached their duties to Plaintiffs by failing to exercise the ordinary and reasonable skill commonly exercised by attorneys

in representing their clients in connection with securities offerings and proximately caused Plaintiffs damages.

32.     Without limitation, Defendants breached their duties to Plaintiffs by not proceeding with adequate care with respect to, among other things: (i) advising Plaintiffs on the clarity of REIT I and REIT II's respective Offering Circulars; (ii) failing to properly advise Plaintiffs to commence their offerings within two calendar days of qualification as required under Rule 251(d)(3)(i)(F); (iii) preparing and filing REIT I and REIT II's respective Offering Circulars such that they were clear and non-misleading under all of the circumstances; (iv) advising Plaintiffs on the proper methods of, and requirements connected with, increasing the volume of securities being offered; and (v) preparing and filing improper Offering Circular Supplements for REIT I and REIT II rather than filing a new offering statement or post-qualification amendment.

33.     Defendants' actions and omissions constitute failures to exercise the appropriate level of skill, prudence and diligence commonly used by attorneys performing securities offering work.

34.     But for Defendants' negligence, Plaintiffs would have timely filed proper and clear Offering Circulars, would have commenced their offerings within two calendar days of qualification and would have offered additional securities only pursuant to new offering statements or post-qualification amendments rather than Offering Circular Supplements.

35.     As a proximate cause of Defendants' negligence as aforesaid, Plaintiffs have incurred substantial damages and will continue to incur substantial damages, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for compensatory damages in an amount to be determined at trial, plus interest, attorneys' fees and costs of suit under

*Saffer v. Willoughby*, 143 N.J. 256 (1996), and any other or further relief for Plaintiffs that the Court finds just and equitable.

## COUNT TWO

## BREACH OF CONTRACT

36.     Plaintiffs repeat and reallege all of the allegations contained above as if fully set forth herein.

37.     Plaintiffs and Defendants had a binding Engagement Agreement whereby Defendants agreed to represent Plaintiffs in connection with securities offerings in real estate debt funds, including REIT I and REIT II, under SEC Regulation A.  The engagement specifically included analysis, negotiations, research, investigation, correspondence, communication, preparation and drafting of legal documents, and related work for the securities offerings.

38.     These provisions are material terms of the Engagement Agreement.

39.     Defendants breached their Engagement Agreement with Plaintiffs by, among other things: (i) failing to properly advise Plaintiffs on the clarity of REIT I and REIT II's respective Offering Circulars; (ii) preparing and filing improper Offering Circulars for REIT I and REIT II; (iii) failing to properly advise Plaintiffs to commence their offerings within two calendar days of qualification as required under Rule 251(d)(3)(i)(F); (iv) failing to properly advise Plaintiffs on the proper methods of, and requirements connected with, increasing the volume of securities being offered; and (v) preparing and filing improper Offering Circular Supplements for REIT I and REIT II rather than filing a new offering statement or post-qualification amendment.

40.     As a proximate result of Defendants' material breaches of the Engagement Agreement, Plaintiffs have incurred and will continue to incur substantial damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for compensatory damages in an amount to be determined at trial, plus interest, attorney's fees, costs of suit and any other or further relief for Plaintiffs that the Court finds just and equitable.

McANDREW VUOTTO, LLC
Attorneys for Plaintiffs

By:___*/s/Jonathan P. Vuotto*_____
Jonathan P. Vuotto

Dated: February 10, 2023

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable in this action.

## CERTIFICATION PURSUANT TO R. 4:5-1

Pursuant to R. 4:5-1, I hereby certify that the matter in controversy is presently not the subject of any other pending actions in any court. The matter in controversy here is not the subject of pending arbitration proceedings and no other action or arbitration proceedings are presently contemplated. I further certify that there are no other parties of which we are currently aware that should be joined in the action.

By:___*/s/Jonathan P. Vuotto*_____
Jonathan P. Vuotto

Dated: February 10, 2023

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(3)

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

By:___*/s/Jonathan P. Vuotto*_____
Jonathan P. Vuotto

Dated: February 10, 2023

# EXHIBIT 3



The Wayback Machine - https://web.archive.org/web/20210413033206/https://diversyfund.com/investment_offering/diversyfund-gro...

# DiversyFund Growth REIT



## Fund Details at a Glance

**Offering:** Public Non-Traded REIT (Real Estate Investment Trust)

**Minimum Investment:** $500

**Availability:** All US Residents

GET STARTED

Help

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!

 DIVERSYFUND

# Fund Investment Strategy

The fund strategy for the Growth REIT is a value-add investment strategy designed to accelerate growth over a 5-year cycle.

**Investment target details**

- *Type*: multifamily real estate (apartment buildings only)
- *Size*: 100+ units
- *Markets:* across the US
- *IRR:* targeting between 10% and 20% return rate for each property
- The value-add cycle is approximately 5 years.



# 5 Stages of the Value-Add Cycle

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!



## 02 Acquisition

Properties are acquired that meet the strict criteria of our real estate experts and that offer strong potential for increased value at the time of resale.

## 03 Renovation.

As part of our value-add investing strategy, existing cash-flowing properties are acquired and then renovated to allow for increased rents and property value appreciation.

## 04 Appreciation.

Once the renovations are complete, we allow time for the properties to increase in value.

## 05 Disposition.

Properties are sold and any profits are distributed to investors.



# Build your million-dollar real estate holdings.

Invest in million-dollar deals without writing million-dollar checks and avoid broker fees. You get to inspect every project in your portfolio and stay up to date on each project's progress.



**Summerlyn**
Killeen, TX

TYPE
**Multifamily**

POTENTIAL RETURN
**18% IRR**

Acquiring a cash flowing 200-unit apartment complex for a value-add opportunity where we



**Park Blvd**
San Diego, CA

TYPE
**Multifamily**

POTENTIAL RETURN
**21% IRR**

This 59-unit mixed use development provides an exciting opportunity to deliver an architectural





**McArthur Landing**

Fayetteville, NC

TYPE
**Multifamily**

POTENTIAL RETURN
**15.5% IRR**

A multifamily value-add opportunity that creates wealth by repositioning an existing 211-unit apartment complex built in 2014 requiring minimal renovation to achieve higher cash flows and returns.

INVEST NOW

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!



The U.S. Securities and Exchange Commission (SEC) qualified the DiversyFund Growth REIT under Regulation A in November 2018. What this means is that we go through rigorous vetting, which includes strict reporting requirements and annual audits similar to the standards for public companies listed on the stock market.

# SEC Filings

| Offering Circular | Supplement No. 1 | Supplement No. 2 | Supplement No. 3 |
|---|---|---|---|
| Supplement No. 4 | Supplement No. 5 | Supplement No. 6 | Supplement No. 7 |
| | Supplement No. 8 | 2018 Form 1-K Report | |

# Fund Administration

DiversyFund owns and operates the fund and its assets: this provides direct ownership for investors. The fund is not available on public markets and therefore not correlated with stock fluctuations, adding a layer of protection to the portfolio.

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!



# Fees & Expenses

DiversyFund is eliminating middleman fees because we do everything in-house. At the REIT level, we do not charge any platform level or management fees. We are able to limit our fees to just a project level acquisition/development fee because we are the real estate sponsor on all of the deals that the REIT invests in (the sponsor is the entity responsible for finding, acquiring, managing and selling assets in a real estate deal).



DiversyFund is the manager

DiversyFund is the developer

We manage our own properties & make money as a developer, waiving fund level fees

**DiversyFund**

**Fund Level**
No mgmt fee
No broker fee

**Project Level**
2-8% developer fee

Properties

**Other Platforms**

**Fund Level**
2-3% mgmt fee
5-10% broker fee

**Project Level**
2-8% developer fee

Properties

Other platforms are the manager & make money here

Other platforms outsource to 3rd parties



# The DiversyFund Real Estate Team

Our expert real estate team directs the identification, underwriting, and financing of the assets DiversyFund invests in. These include both acquisitions and development with a highly seasoned team overseeing the execution of the business plans for each investment. The team has over 75 years of combined real estate experience.

Van oversees the company's acquisitions and financing in multifamily real estate. He brings over 30 years of executive real estate experience in the commercial multifamily space. Previously he was CEO of Prime Financial Development, a national commercial mortgage lender where he specialized in multifamily projects and acquisitions. Prior to PFD Van held roles as president of Virginia Financial Development, a commercial real estate lending firm primarily doing business in the South East, as well as President of Accurate Title, an escrow and settlement company in eastern Virginia for 14 years.  Van possesses expanded knowledge of real estate legal transactions, having closed and settled over 5 billion in real estate transactions over the last 30 years.

*– Van Vogel, Executive Vice President of Real Estate*

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!



family apartments, in addition to developing master-planned communities.

An accomplished and versatile Investment and Acquisition executive with twenty-plus years of complete lifecycle real estate experience from sourcing to acquisition through debt and equity placement to project disposition, Mr. Witkowski's experience includes: co-founder of a real estate investment management startup and Vice President of Acquisitions at TGM Associates, a SEC registered pension fund and investment advisory firm.  He has built or acquired nearly 6,000 multifamily units as well as office and land assets all totaling in excess of $2.5 Billion.

*– Andrew Witkowski, Vice President of Acquisitions, Eastern US*

Joshua directs the multifamily acquisitions and asset management efforts for all markets Texas and West. In his career, he has assisted in closing more than $1 billion of multifamily value-add products with Southern California's most successful multifamily investment firms. Mr. Spencer has 13 years of experience in finance, with the last eight years working in real estate private equity. Prior to joining DiversyFund's acquisitions team, Mr. Spencer was the acquisitions director for Boulder Mountain Endurance Investments (BME) and Investors Management Group (IMG) sourcing investment opportunities in AZ, CA, CO, NM, NV, TX, UT, and WA. Preceding his time at IMG, Mr. Spencer was a part of TruAmerica and the Bascom Group where he added value to the acquisitions team by closing more than 4,500 units of multifamily products.

*– Joshua Spence, Vice President Acquisitions, Western US*

Shayan is responsible for all aspects of the closing commercial real estate investments for DiversyFund's multifamily offerings including managing the due diligence, underwriting and loan process. He has 10+ years of



# Start Investing In Alternative Assets Today

Growing your wealth is easier than you think.

START INVESTING

  

*Questions? You can reach us via chat or email*

HELLO@DIVERSYFUND.COM

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!





    

**Company**

Our Story

Team

Reviews

FAQ

**Resources**

Learning Center

Affiliates

Contributors

**Contact**

Email Customer Relations

Growth REIT Webinar

Location

Careers

Press

DiversyFund, Inc. ("DiversyFund") operates a website at diversyfund.com (the "Site"). By using the Site, you accept our **Terms of Service** and **Privacy Policy**. Past performance is no guarantee of future results. Any historical returns, expected returns, or probability projections may not reflect actual future performance. All securities involve risk and may result in partial or total loss. Neither DiversyFund nor any of its affiliates provides tax advice or investment recommendations and do not represent in any manner that the outcomes described herein or on the Site will result in any particular investment or tax consequence. Prospective investors should confer with their personal tax advisors regarding the tax consequences based on their particular circumstances. Neither DiversyFund nor any of its affiliates assume responsibility for the tax consequences for any investor of any investment. This message is not a proposal to sell or the solicitation of interest in any security, which can only be made through official documents such as a private placement memorandum or a prospectus.
Due to state regulatory restrictions, we are not currently able to accept new investors residing in Arkansas and are not making any solicitation or offer to sell securities to any person or entity residing or domiciled in that state.

JOIN OUR GROWING COMMUNITY OF MORE THAN 20,000 DIVERSYFUND INVESTORS!



# EXHIBIT 4

1    Julie L. To (SBN 219482)
     Bureau of Real Estate
2    320 West 4th Street, Suite. 350
     Los Angeles, California 90013-1105
3
     Telephone:  (213) 576-6916 (direct)
4      -or-        (213) 576-6982 (office)
5
6
7

**F I L E D**

FEB 1 5 2017

**BUREAU OF REAL ESTATE**

By _____

8                BEFORE THE BUREAU OF REAL ESTATE

9                      STATE OF CALIFORNIA

10                            * * *

11   In the Matter of the Accusation of          )        No. H-04876 SD
                                                  )
12   COASTAL CALIFORNIA FUNDING                   )        **ACCUSATION**
     GROUP INC and                                )
13   C. CRAIG CECILIO,                            )
     individually and as designated officer      )
14   of Coastal California Funding Group Inc,     )
                                                  )
15                                                )
                                                  )
16          Respondents.

17          The Complainant, Veronica Kilpatrick, a Supervising Special Investigator of the

18   State of California, for cause of Accusation against COASTAL CALIFORNIA FUNDING

19   GROUP INC and C. CRAIG CECILIO, individually and as former designated officer of Coastal

20   California Funding Group Inc alleges as follows:

21                                     1.

22          The Complainant, Veronica Kilpatrick, a Supervising Special Investigator of the

23   State of California, makes this Accusation in her official capacity.

24   ///

25   ///

26

27

CalBRE Accusation – Coastal California Funding Group Inc & C. Craig Cecilio

2.

All references to the "Code" are to the California Business and Professions Code and all references to "Regulations" are to Title 10, Chapter 6, California Code of Regulations.

<u>LICENSE HISTORY</u>

3.

<u>C. CRAIG CECILIO</u>

A. Respondent C. CRAIG CECILIO ("CECILIO") is presently licensed and/or has license rights under the Real Estate Law (Part 1 of Division 4 of the Code) as a real estate broker ("REB"), Bureau of Real Estate ("BRE" or "Bureau") license ID 01322708.

B. CECILIO was originally licensed by the Bureau as a real estate salesperson ("RES") on or about October 10, 2002, and as a REB on or about May 5, 2004.

C. CECILIO's BRE mailing and main office address of record are the same: 600 W. Broadway, Suite 1420, San Diego, CA 92101.

D. According to BRE records to date, CECILIO has no current DBAs under his BRE license and CECILIO is the designated officer ("D.O.") for COASTAL CALIFORNIA FUNDING GROUP INC until his officer license affiliation expires on November 11, 2017.

E. CECILIO's BRE license will expire on May 4, 2020.

4.

<u>COASTAL CALIFORNIA FUNDING GROUP INC</u>

A. Respondent COASTAL CALIFORNIA FUNDING GROUP INC ("CCFGI") is presently licensed and/or has license rights under the Real Estate Law (Part 1 of Division 4 of the Code) as a real estate corporation ("REC"), license ID 01520017.

B. CCFGI was originally licensed by the Bureau on or about November 12, 2005.

C. CCFGI's mailing and main office address of record is the same as that of CECILIO.

D. According to BRE records to date CCFGI's designated officer of record is CECILIO (until his license affiliation expiration on November 11, 2017); CCFGI maintains two (2) current DBAs: CCFG, Inc. (active as of February 11, 2010) and CCFG Investments (active as of May 27, 2011).; and CCFGI employs two (2) RES.

## AUDIT OF COASTAL CALIFORNIA FUNDING GROUP INC

### (SD 150019)

### 5.

On February 4, 2016, the Bureau completed an audit examination of the books and records of Respondent CCFGI pertaining to the mortgage loan activities described in Paragraph 7, below, which require a real estate license. The audit examination covered a period of time beginning on December 1, 2014 and ending on November 30, 2015 ("audit examination period"), and was performed between December 14, 2015 and January 14, 2016 ("field work period"). The final report of February 4, 2016 revealed violations of the Code and the Regulations as set forth in the following paragraphs, and more fully discussed in Audit Report SD 150019.

### 7.

### CCFGI's Business Activities & Corporate Structure

A. At all times mentioned in San Diego, California, Respondent CCFGI acted as a real estate broker, and ordered, caused, authorized or participated in licensed activities within the meaning of: Code Section 10131(d), by soliciting borrowers or lenders for or negotiating loans or collecting payments or performing services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity ("mortgage loan activities").

///

///

B. According to the BRE's licensing records of December 14, 2015, CCFGI had three (3) fictitious business names: CCFG, Inc.; CCFG Investments; and Coastal La Jolla Funding" and employed three (3) licensed employees.

C. According to CECILIO, CCFGI was engaged in negotiating hard money loans for borrowers and private investors, and during the audit period, closed one hundred nine (109) non-institutional loans with private investor's funds totaling about $36.7 million for two hundred ten (210) investors. Included in these loan transactions were forty-eight (48) multi-lender loan transactions valued at $17.6 million. CCFGI did not perform the escrows on any of these loan transactions; escrows related to the hard money loans were handled by independent escrow companies. According to CECILIO, all of the hard money loans negotiated were for investment, construction, and rehabilitation purposes, and were non-owner occupied.

D. CCFGI also performed loan servicing activities for borrowers and lenders. As of November 30, 2015, CCFGI collected loan payments for approximately fifty-six (56) loans with a principal balance of $17.5 million for one hundred seventy-three (173) investors. The average annual collections were approximately $12.6 million.

E. Based on the loan files provided for the rehabilitation/construction loans, CCFGI used neutral third party escrows to handle the receipts and disbursement of funds. According to the final settlement statements in some of the loan files examined, Rehab Holdback funds were disbursed at the close of escrow from the neutral third party escrow to CCFGI and were kept at CCFGI's separate bank account for further disbursements according to the draw schedule to complete the project. If the Rehab Holdback amounts were less than $100,000.00 the proceeds were disbursed by independent escrow companies to CCFGI's bank accounts and CCFGI in turn would disburse the funds to the borrowers to complete the project/rehabilitation. If the Rehab Holdback amounts of the rehabilitation/construction loans were more than $100,000.00, the proceeds were disbursed by the independent escrow companies to the bank

account(s) of "BuildZig to Buildzig," an independent third party company not affiliated with CCFGI.

F. According to CECILIO, CCFGI maintained one (1) trust account for multiple beneficiaries during the audit period used in connection with its loan servicing activity and about fifty-five (55) separate trust accounts during the audit period and beyond used in connection with the rehabilitation loans (holdbacks) activity.  CECILIO represented that he maintained one (1) trust account for each property/loan for the loan proceeds received from the independent escrow companies for the rehabilitation loan (holdback) of the property; he would then close the trust account once he disbursed the funds to the borrowers after the completion of the project/rehabilitation.  CECILIO indicated there were about seventeen (17) trust accounts still open as of November 30, 2015.

G. CECILIO is the Chief Executive Office, Chief Financial Officer, Secretary and one hundred percent (100%) owner of CCFGI.

///
///
///
///
///
///
///
///
///
///
///
///

1

<u>Bank Accounts</u>

2

8.

3    According to CECILIO, CCFGI maintained one (1) trust account for the receipts

4    and disbursements of trust funds in connection with its loan servicing activity, and about fifty-

5    five (55) trust accounts for the receipts and disbursements of trust funds in connection with the

6    rehabilitation loans (holdbacks) activity.  Three (3) trust accounts were sampled for the audit:

7         Trust Account 1 ("T/A1")
          * Account Name/Title: COASTAL CALIFORNIA FUNDING GROUP INC dba
8    CCFG Investments, A CA Corporation Real Estate Broker Trust Account
          Realty Group
9         * Bank: City National Bank, San Diego, CA
          * Account # xxxxx8440
10        * Signatory: CECILIO

11        CCFGI maintained T/A 1 for multiple beneficiaries for handling the receipts and

12

13   disbursements of trust funds received in connection with its loan servicing activity.

14        Trust Account 2 ("T/A2")
          * Account Name/Title: COASTAL CALIFORNIA FUNDING GROUP INC dba
15   CCFG Investments, A CA Corporation Real Estate Broker Trust Account
          Realty Group
16        * Bank: City National Bank, San Diego, CA
          * Account # xxxxx2197
17        * Signatory: CECILIO

18        CCFGI maintained T/A 2 for a single beneficiary for handling the receipts and

19   disbursements of trust funds received in connection with its rehabilitation loan (holdback)

20   activity for the property located at 3019 S. Denison Street in Los Angeles.

21        Trust Account 3 ("T/A3")
          * Account Name/Title: COASTAL CALIFORNIA FUNDING GROUP INC dba
22   CCFG Investments, A CA Corporation Real Estate Broker Trust Account
          Realty Group
23        * Bank: City National Bank, San Diego, CA
          * Account # xxxxx1395
24        * Signatory: CECILIO

25

26

27

1                 <u>Violations of the Real Estate Law</u>

2                     9.

3        In the course of activities as described in Paragraph 7, above, and during the

4 examination period described in Paragraph 6, Respondent CCFGI acted in violation of the Code

5 and the Regulations, as described below:

6        A. **<u>Trust Fund Handling for Multiple Beneficiaries (Code Section 10145 and</u>**

7 **<u>Regulation 2832.1)</u>**

8         Based on the records provided and the bank reconciliation prepared by the BRE

9 auditor, T/A 2 and T/A 3 were in balance as of November 30, 2015.  However, T/A 1 had a

10 shortage of <$94,813.20> as of November 30, 2015.  The accountability was determined based

11 on separate records provided by CCFGI's asset manager and consultant, and the adjusted bank

12 balance was compared to the accountability.  The shortage was attributable to:

13         Negative balance of accounts totaling     <$ 40,617.86>

14         Bank service charges               <$   9,831.10>

15         Unidentified disbursements[1]        <$   2,012.33>

16         <u>Unidentified shortage</u>            <u><$ 42,351.91></u>

17         Trust Fund Shortage as of 11/30/15    <$ 94,813.20>

18 On or about January 19, 2016, CECILIO made a wire transfer deposit from CCFGI's general

19 business account #xxxxxxxx2768 into T/A 1 in the amount of $94,813.20 to cure the total trust

20 funds shortage.

21 ///

22 ///

23 ///

24

---

25 [1] The unidentified disbursements of <$912.41> and <$1,099.92> totaled <$2,012.33> and could not be identified or
tied to loan transactions examined in the audit.

26

27

## B. <u>Trust Fund Handling – Trust Fund Records to be Maintained (Code Section 10145 and Regulation 2831)</u>

The control record maintained for T/A 1 which was used for the receipts and disbursement of trust funds in connection with CCFGI's loan servicing activity was inaccurate and incomplete, in violation of **Code Section 10145 and Regulation 2831**.

1. The auditor found sixteen (16) examples where receipts were deposited into T/A 1 but were not recorded on the control record.

2. The auditor also found five (5) examples in which receipts were recorded on the control record but were not deposited into T/A 1, including one receipt for the amount $1,224,406.26 that was recorded but not deposited.

3. The auditor found ten (10) examples in which disbursements were made from T/A 1 but were not recorded on the control record.

4. The auditor found six (6) examples in which disbursements were recorded on the control record but were not disbursed from T/A 1.

## C. <u>Trust Fund Handling –Separate Record For Each Beneficiary or Transaction (Code Section 10145 and Regulation 2831.1)</u>

The separate records maintained for T/A 1 were inaccurate and incomplete, in violation of **Code Section 10145 and Regulation 2831.1**. Some receipts were deposited into T/A 1 but were not recorded on the separate records. Some receipts were recorded on the separate records but were not deposited into T/A 1. Some disbursements were made from T/A 1 but were not recorded on the separate records. Some disbursements were recorded on the separate records but were not disbursed from T/A 1. The auditor's examples regarding the separate records of T/A 1 are the same as the examples cited above in 9B., with respect to the control record of T/A 1.

1   **D. <u>Trust Fund Handling – Trust Account Reconciliation (Code Section 10145</u>**

2   **<u>and Regulation 2831.2)</u>**

3         During the audit period, CCFGI did not maintain the monthly reconciliation of all

4   the separate records or transactions (separate records) to the balance of the record of all trust

5   funds received and disbursed (control record) for T/A 1 in connection with the mortgage loan

6   servicing activity,  in violation of **Code Section 10145 and Regulation 2831.2**.

7         **E. <u>Secret Profit or Undisclosed Compensation/Broker Placement of Trust</u>**

8   **<u>Funds with Financial Institutions (Code Section 10176(g) and Regulation 2830)</u>**

9         CCFGI engaged in an earnings credit relationship with City National Bank

10  whereby it received earnings credit from the trust funds available in T/A 1, and the earnings

11  credit was used to offset bank service charges incurred in T/A 1, in connection with the mortgage

12  loan servicing activity, without written disclosure of such usage to the owners of the trust funds,

13  in violation of **Code Section 10176(g) and Regulation 2830**.  The auditor found six (6)

14  examples between the months June 2015 and October 2015 in which CCFGI utilized the earnings

15  credit to offset bank service charges in T/A 1 without disclosing such usage to the trust fund

16  owners.

17        **F. <u>Use of False or Fictitious Business Names (Code Section 10159.5 and</u>**

18  **<u>Regulation 2731)</u>**

19        CCFGI used unlicensed fictitious business names "DiversyFund" on business

20  cards and in e-mails during the audit period without first obtaining a license from the Bureau

21  bearing such fictitious name, in violation of **Code Section 10159.5 and Regulation 2731.**

22  ///

23  ///

24  ///

25  ///

26

27

G. **Filing Fiscal Year Reports – Failure to Submit Independent Audit Report – Delayed Filing of Annual Trust Account Report (Code Sections 10232.2(a), 10238(k)(3), and 10238(o) and Regulations 2846.5 and 2846.7)**

CCFGI failed to file the Annual Report of a Review of Trust Fund Financial Statements ("TAR") with the BRE for the year ended 2014 within ninety (90) days after the end of CCFGI's fiscal year December 31, 2014. The TAR was due May 31, 2015; CCFGI submitted said report to the BRE on October 16, 2015, in violation of **Code Sections 10232.2(a), 10238(k)(3), and 10238(o) and Regulations 2846.5 and 2846.7.**

H. **Quarterly Trust Fund Status Report (Code Section 10232.25(a), (b) and Regulation 2846.8)**

CCFGI failed to file with the BRE the Quarterly Threshold Reports within thirty (30) days after the end of each of the first three fiscal quarters of CCFGI's fiscal year, for the quarters ending March 31, 2015, June 30, 2015, and September 30, 2015. The 1st Quarterly Threshold Report was due April 30, 2015; CCFGI submitted said report to the RE on October 9, 2015, in violation of **Code Section 10232.25(a), (b) and Regulation 2846.8**. CECILIO stated that he would submit the 2nd and 3rd Quarterly Threshold Reports to the BRE's Mortgage Loan Activity Section by the end of January 2016. As of the date of Audit Report SD 150019, CCFGI did not submit the 2nd and 3rd Quarterly Threshold Reports to the BRE, in violation of **Code Section 10232.25(a), (b) and Regulation 2846.8.**

I. **Quarterly Multi-Lender Reports (Code Section 10238(k)(3) and 10238(j)(6))**

CCFGI failed to file with the BRE the Quarterly Multi-Lender Reports within thirty (30) days after the end of each of the first three fiscal quarters of CCFGI's fiscal year, for the quarters ending March 31, 2015, June 30, 2015, and September 30, 2015. The 1st Quarterly Multi-Lender Report was due April 30, 2015; CCFGI submitted said report to the RE on October

9, 2015, in violation of **Code Section 10238(k)(3) and 10238(j)(6)**. CECILIO stated that he would submit the 2nd and 3rd Quarterly Multi-Lender Reports to the BRE's Mortgage Loan Activity Section by the end of January 2016. As of the date of Audit Report SD 150019, CCFGI did not submit the 2nd and 3rd Quarterly Multi-Lender Reports to the BRE, in violation of **Code Section 10238(k)(3) and 10238(j)(6)**.

### J. **Multi-Lender Loans – Construction/Rehabilitation Loans (Rehab Holdback) – Code Section 10238(h)(4)(A)**

CCFGI failed to meet the following safeguard as required on multi-lender construction/rehabilitation loans if the value of the project after completion is disclosed as the current market value to the lenders in the project: CCFGI failed to use a neutral third party escrow to handle all receipts and disbursements for the multi-lender construction/rehabilitation loans related to disbursement draws from the escrow account in accordance with the draw schedule, in violation of **Code Section 10238(h)(4)(A)**. Rehab Holdback funds were disbursed at the close of escrow from the neutral third party escrow to CCFGI and were kept at CCFGI's separate bank account for further disbursements according to the draw schedule to complete the project. The auditor found in the loan file settlement statement for the multi-lender loan transaction of Nueva Casa LLC, loan # CCFG11743, that $50,000 of the $370,000 loan proceeds were disbursed by Keller Williams Realty Irvine Escrow Division to CCFGI's bank account, the funds of which CCFGI would then disburse to borrowers according to the draw schedule to complete the project/rehabilitation.

### K. **Responsibility of Corporate Officer/ Failure to Supervise – D.O. CECILIO (Code Sections 10159.2 and 10177(h) and Regulation 2725)**

The acts and/or omissions of D.O. CECILIO as described in Paragraphs 9A. through 9J. above, demonstrate a failure to adequately supervise the real estate activities of CCFGI, its salespersons, and its employees to ensure compliance with the Real Estate laws and

1   regulations.  D.O. CECILIO failed to maintain complete and accurate control record, separate

2   records, and failed to maintain trust account reconciliations for CCFGI's mortgage loan broker

3   servicing activity.  CECILIO reduced the balance of trust funds in T/A 1 to an amount less than

4   the aggregate trust fund liabilities of CCFGI to all the owners of the trust funds without their

5   written consent.  CECILIO failed to submit on time to the BRE the Annual Report of a Review

6   of Trust Fund Financial Statements, the 1st, 2nd, and 3rd Quarterly Trust Fund Status Reports, and

7   the 1st, 2nd, and 3rd Quarterly Multi-Lender Reports.  CCFGI failed to use a neutral third party

8   escrow to handle all receipts and disbursements related to some of the multi-lender

9   construction/rehabilitation loans.  Rehab Holdbacks were disbursed from the neutral third party

10  escrow to CCFGI and were kept at CCFGI's separate bank account for future disbursements

11  upon completion of the project.  The violations cited in Audit SD 150019 are indicative of

12  Respondent CECILIO's failure to establish policies, rules, procedures and systems to review,

13  oversee, inspect and manage: transactions requiring a real estate license, the handling of trust

14  funds in CCFGI's activities, and the proper reporting of trust fund activity to the BRE.  These

15  acts and/or failures to act constitute grounds for the suspension or revocation of the license and

16  license rights of Respondent CECILIO under the provisions of **Code Sections 10159.2 and**

17  **10177(h) and Regulation 2725.**

18                    Additional Violations of the Real Estate Law

19                                    10.

20          The overall conduct of Respondents CCFGI and CECILIO are violative of the

21  Real Estate Law and constitute cause for the suspension or revocation of the real estate licenses

22  and license rights of CCFGI and CECILIO under the provisions of **Code Section 10177(g)** for

23  negligence and **Code Section 10177(d)** for willful disregard of the Real Estate Law.

24  ///

25  ///

26

27

## COSTS

### Investigation and Enforcement Costs

11.

**Code Section 10106** provides, in pertinent part, that in any order issued in resolution of a disciplinary proceeding before the Bureau of Real Estate, the Commissioner may request the administrative law judge to direct a licensee found to have committed a violation of this part to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case.

### Audit Costs

12.

**Code Section 10148(b)** provides, in pertinent part, the Commissioner shall charge a real estate broker for the cost of any audit, if the Commissioner has found in a final decision following a disciplinary hearing that the broker has violated Code section 10145 or a regulation or rule of the Commissioner interpreting said section.

///
///
///
///
///
///
///
///
///
///
///

CalBRE Accusation – Coastal California Funding Group Inc & C. Craig Cecilio

1          WHEREFORE, Complainant prays that a hearing be conducted on the allegations

2    of this Accusation and that upon proof thereof, a decision be rendered imposing disciplinary

3    action against the licenses and license rights of Respondents COASTAL CALIFORNIA

4    FUNDING GROUP INC and C. CRAIG CECILIO  under the Real Estate Law (Part 1 of vision 4

5    of the Business and Professions Code), for the cost of investigation and enforcement as permitted

6    by law, and for such other and further relief as may be proper under other provisions of law, and

7    for costs of audit.

8    Dated at San Diego, California

9    this _____ day of _____, 2017.

10

11   _____
     Veronica Kilpatrick

12   Supervising Special Investigator

13

14

15

16

17

18

19

20

21

22   cc:    Coastal California Funding Group Inc

23         C. Craig Cecilio

           Sacto.

24         Audits – Z. Wanis

25

26

27

# EXHIBIT 5

No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## DIVERSYFUND, INC., DF GROWTH REIT, LLC, DF GROWTH REIT II, LLC, DF MANAGER, LLC, CRAIG CECILIO, AND ALAN LEWIS,

*Petitioners,*

*v.*

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

On Appeal from the United States of America
Before the Securities and Exchange Commission
File No. LA-5266

## DECLARATION OF ALAN LEWIS IN SUPPORT OF PETITIONERS' MOTION FOR STAY

Sanjay Bhandari
Buchalter, APC
655 West Broadway
Suite 1600
San Diego, CA 92101
Telephone: 619-219-5335
sbhandari@buchalter.com

***Attorneys for Petitioners DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis***

I, Alan Lewis, hereby declare as follows.

1.  I am an officer of each of the Petitioning Entities (DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, and DF Manager, LLC). I have personal knowledge of the matters discussed herein except where otherwise stated, and could testify competently to these matters if called as a witness.

2.  This Declaration is submitted to update and clarify my December 13, 2021 declaration submitted in support of Petitioners' December 13, 2021 administrative petition to the U.S. Securities and Exchange Commission ("SEC"). I incorporate that declaration (referred to as "First Lewis Decl.," and filed herewith) by reference, and refer the reader to it for details that will not be restated herein.

3.  The Petitioning entities and individuals have for years operated a capital-intensive real estate business in reliance on obtaining continued funding through securities offerings under registration exemptions such as Regulation A ("Reg A"). After the SEC's January 13, 2022 Amended Formal Order of Investigation, all Petitioners are disqualified under SEC Rule 262 from participating in

-2-

exempt offerings while the investigation is pending. The SEC has stated that its investigations take years to conclude. *See* SEC Division of Enforcement, 2019 Annual Report at 7 (available at https://www.sec.gov/files/enforcement-annual-report-2019.pdf) (average length of SEC investigations was 24 months generally and 37 months for financial fraud and disclosure). If Petitioners' disqualification were to last that long, all of the Petitioning Entities would be driven out of business, and all affected individuals (I, Craig Cecilio, the 30,000+ investors in the Petitioning Entities, and our employees) would suffer significant and irreparable losses. For many, these losses would be both financial and reputational.

4.     These losses will start to be suffered within weeks if the disqualification is not removed. Petitioners continually face funding commitments (e.g., to close on real estate transactions) that would cause immediate injury (e.g., forfeiture of deposit, *see* First Lewis Decl. ¶ 16) if Petitioners defaulted. The $1 million deposit for the Texas project I described in my earlier Declaration remains at risk of forfeiture until Petitioners can meet closing requirements, for which

-3-

they must raise additional capital that they will not be able to raise unless the disqualification is lifted no later than February 28, 2022. (The Texas project was also mentioned in my prior Declaration; it was delayed due to a lender extension issue, and funds raised in the interim were invested in competing time-sensitive projects.) A San Diego project for which Petitioners received an $18 million construction financing commitment requires equity funding of $3 million within 60 days, or that valuable financing will disappear (and likely not be available in the future). Petitioners' business involves complex, ongoing commitments that depend on operations continuing. If those are brought to a sudden stop, cascading harm will likely result.

5.     Continued exempt offerings are the only viable means of continuing to meeting DF Growth REIT and REIT II's capital needs: seeking to register an offering would take too much time (months if not years) and capital to be a viable response to the SEC's actions. Because management of investments provides most or all of the revenues and operations of the other Petitioning entities, shutting down the REITs' ability to obtain capital would also shut down their affiliates. If

-4-

Petitioners were unable to obtain relief from disqualification, they would be forced to take drastic measures, including discharging employees, stoppages to other expenses needed to operate their business, and winding down operations, to attempt to limit investor losses. Petitioners will begin these drastic measures if relief is not obtained by February 28, 2022, implementing them as slowly as possible as long as hope remains that disqualification will be lifted.

Executed under penalty of perjury in San Diego, California on the date set forth below.

Dated: February 15, 2022

Alan Lewis

-5-

# **EXHIBIT 6**

**General Docket**
**United States Court of Appeals for the Ninth Circuit**

RECAP Actions

| | |
|---|---|
| **Court of Appeals Docket #:** 22-70023 | **Docketed:** 02/15/2022 |
| Diversyfund, Inc., et al v. USSEC | **Termed:** 04/20/2022 |
| **Appeal From:** Securities & Exchange Commission | |
| **Fee Status:** Paid | |

**Case Type Information:**
  **1)** agency
  **2)** review
  **3)** San Diego Southern California

**Originating Court Information:**
  **District:** SEC-1 : LA-5266
  **Date Filed:** 02/15/2022
  **Date Decided:**                  **Date Rec'd COA:**
  01/26/2022                        02/15/2022

**Prior Cases:**
  None

**Current Cases:**
  None

---

DIVERSYFUND, INC.
       Petitioner,

                             Paul Augusto Alarcon
                             Direct: 310-380-6595
                             Email: paul.alarcon@bowmanandbrooke.com
                             Fax: 310-719-1019
                             [COR LD NTC Retained]
                             Bowman and Brooke, LLP
                             970 W 190th Street
                             Suite 700
                             Torrance, CA 90502

                             Sanjay Bhandari
                             Direct: 619-219-5335
                             Email: sbhandari@buchalter.com
                             [COR LD NTC Retained]
                             Buchalter, A Professional Corporation
                             Labor and Employment
                             655 W Broadway
                             Suite 1600
                             San Diego, CA 92101

                             Robert M. Dato
                             Direct: 949-224-6245
                             Email: rdato@buchalter.com
                             [COR LD NTC Retained]
                             Buchalter, APC
                             18400 Von Karman Avenue
                             Suite 800
                             Irvine, CA 92612

                             Mary-Christine Sungaila
                             Direct: 949-991-1900
                             Email: mc.sungaila@calg.com
                             [COR LD NTC Retained]
                             Complex Appellate Litigation Group, LLP
                             620 Newport Center Drive
                             Suite 1100
                             Newport Beach, CA 92660

DF GROWTH REIT, LLC
       Petitioner,

                             Paul Augusto Alarcon
                             Direct: 310-380-6595
                             [COR LD NTC Retained]
                             (see above)

Sanjay Bhandari
Direct: 619-219-5335
[COR LD NTC Retained]
(see above)

Robert M. Dato
Direct: 949-224-6245
[COR LD NTC Retained]
(see above)

Mary-Christine Sungaila
Direct: 949-991-1900
[COR LD NTC Retained]
(see above)

DF GROWTH REIT II, LLC
    Petitioner,

Paul Augusto Alarcon
Direct: 310-380-6595
[COR LD NTC Retained]
(see above)

Sanjay Bhandari
Direct: 619-219-5335
[COR LD NTC Retained]
(see above)

Robert M. Dato
Direct: 949-224-6245
[COR LD NTC Retained]
(see above)

Mary-Christine Sungaila
Direct: 949-991-1900
[COR LD NTC Retained]
(see above)

DF MANAGER, LLC
    Petitioner,

Paul Augusto Alarcon
Direct: 310-380-6595
[COR LD NTC Retained]
(see above)

Sanjay Bhandari
Direct: 619-219-5335
[COR LD NTC Retained]
(see above)

Robert M. Dato
Direct: 949-224-6245
[COR LD NTC Retained]
(see above)

Mary-Christine Sungaila
Direct: 949-991-1900
[COR LD NTC Retained]
(see above)

CRAIG CECILIO
    Petitioner,

Paul Augusto Alarcon
Direct: 310-380-6595
[COR LD NTC Retained]
(see above)

Sanjay Bhandari
Direct: 619-219-5335
[COR LD NTC Retained]
(see above)

Robert M. Dato
Direct: 949-224-6245
[COR LD NTC Retained]
(see above)

Mary-Christine Sungaila
Direct: 949-991-1900

[COR LD NTC Retained]
(see above)

ALAN LEWIS
       Petitioner,

Paul Augusto Alarcon
Direct: 310-380-6595
[COR LD NTC Retained]
(see above)

Sanjay Bhandari
Direct: 619-219-5335
[COR LD NTC Retained]
(see above)

Robert M. Dato
Direct: 949-224-6245
[COR LD NTC Retained]
(see above)

Mary-Christine Sungaila
Direct: 949-991-1900
[COR LD NTC Retained]
(see above)

  v.

U.S. SECURITIES & EXCHANGE COMMISSION
       Respondent,

Jeffrey Alan Berger, Attorney
Direct: 202-551-5112
Email: bergerje@sec.gov
[COR LD NTC Government]
Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549

Michael Andrew Conley, Solicitor
Direct: 202-551-5127
Email: ConleyM@sec.gov
[COR NTC Government]
Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549

Daniel Taylor Young, Attorney
Direct: 202-551-3078
Email: youngda@sec.gov
[COR NTC Government]
Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549

DIVERSYFUND, INC.; DF GROWTH REIT, LLC; DF GROWTH REIT II, LLC; DF MANAGER, LLC; CRAIG CECILIO; ALAN LEWIS,

       Petitioners,

 v.

U.S. SECURITIES & EXCHANGE COMMISSION,

       Respondent.

| 02/15/2022 | ☐ 1<br>37 pg, 1.75 MB | FILED PETITION FOR REVIEW. DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL. NOTIFIED RESPONDENTS OF FILING. SEND MQ: Yes. Petitioners Diversyfund, Inc., et al. Mediation Questionnaire due on 02/22/2022. Petitioner brief due 05/06/2022 for Diversyfund, Inc., et al. Respondent brief due 06/06/2022 for U.S. Securities & Exchange Commission. Petitioner's optional reply brief is due 21 days after service of the answering brief. [12371252] (BY) [Entered: 02/15/2022 03:51 PM] |
| 02/15/2022 | ☐ 2<br>101 pg, 3.08 MB | Filed Petitioners Diversyfund, Inc., et al., EMERGENCY motion for stay pursuant to Circuit Rule 27-3; Relief Requested by 2/28/22. Deficiencies: None. Served on 02/15/2022. [12371269] (BY) [Entered: 02/15/2022 03:57 PM] |
| 02/15/2022 | ☐ 3<br>1 pg, 33.75 KB | Received Petitioners Diversyfund, Inc., et al. Notice of Sealing. [12371362] (BY) [Entered: 02/15/2022 04:39 PM] |
| 02/15/2022 | ☐ 4 | Filed UNDER SEAL Petitioners Diversyfund, Inc., et al. Sealed Exhibits. Served on 02/15/2022 [12371369] (BY) [Entered: 02/15/2022 04:41 PM] |
| 02/16/2022 | ☐ 5 | Added Attorney(s) Mary-Christine Sungaila, Paul Agusto Alarcon, Robert M. Dato for party(s) Petitioner DF Growth Reit II, LLC Petitioner DF Manager, LLC Petitioner DF Growth Reit, LLC Petitioner Alan Lewis Petitioner Craig Cecilio Petitioner Diversyfund, Inc., in case 22-70023. [12371512] (BY) [Entered: 02/16/2022 06:58 AM] |
| 02/16/2022 | ☐ 6<br>1 pg, 101.16 KB | Filed clerk order (Deputy Clerk: AT): The court has received petitioners' emergency motion for a stay. The response to the motion is due February 22, 2022 by 12:00 noon Pacific Time. Any reply is due February 24, 2022 by 12:00 noon Pacific Time. [12371673] (AF) [Entered: 02/16/2022 09:50 AM] |
| 02/18/2022 | ☐ 7<br>2 pg, 146.3 KB | Filed (ECF) Petitioners Diversyfund, Inc., DF Growth Reit, LLC, DF Growth Reit II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis Mediation Questionnaire. Date of service: 02/18/2022. [12374186] [22-70023] (Dato, Robert) [Entered: 02/18/2022 08:30 AM] |
| 02/18/2022 | ☐ 8 | The Mediation Questionnaire for this case was filed on 02/18/2022.<br>To submit pertinent **confidential** information directly to the Circuit Mediators, please use the following link.<br>Confidential submissions may include any information relevant to mediation of the case and settlement potential, including, but not limited to, settlement history, ongoing or potential settlement discussions, non-litigated party related issues, other pending actions, and timing considerations that may impact mediation efforts.[12374775]. [22-70023] (AD) [Entered: 02/18/2022 12:44 PM] |
| 02/22/2022 | ☐ 9<br>108 pg, 1.39 MB | Filed (ECF) Respondent USSEC response opposing motion ([2] Party Motion). Date of service: 02/22/2022. [12376193] [22-70023] (Berger, Jeffrey) [Entered: 02/22/2022 11:26 AM] |
| 02/24/2022 | ☐ 10<br>2 pg, 113.38 KB | MEDIATION ORDER FILED: By 03/10/2022, counsel to email Circuit Mediator regarding settlement potential. Include Ninth Circuit case name and number in subject line. This communication will be kept confidential, if requested, and should not be filed with the court. The existing briefing schedule remains in effect. SEE ORDER FOR DETAILS. [12378975] (VS) [Entered: 02/24/2022 11:28 AM] |
| 02/24/2022 | ☐ 11<br>26 pg, 418.49 KB | Filed (ECF) Petitioners Craig Cecilio, DF Growth Reit II, LLC, DF Growth Reit, LLC, DF Manager, LLC, Diversyfund, Inc. and Alan Lewis reply to response ([2] Party Motion). Date of service: 02/24/2022. [12379004] [22-70023] --[COURT UPDATE: Updated docket text to reflect correct ECF filing type. 2/24/2022 by TYL] (Dato, Robert) [Entered: 02/24/2022 11:40 AM] |
| 02/28/2022 | ☐ 12<br>1 pg, 105.55 KB | Filed (ECF) Respondent USSEC Correspondence: Factual development regarding petitioners' emergency motion for a stay (Dkt. 2). Date of service: 02/28/2022 [12381177] [22-70023] (Berger, Jeffrey) [Entered: 02/28/2022 05:47 AM] |
| 02/28/2022 | ☐ 13<br>2 pg, 135.98 KB | Filed order (MARSHA S. BERZON and MARK J. BENNETT) The emergency stay motion (Docket Entry No. [2]) is denied. See Nken v. Holder, 556 U.S. 418, 426 (2009). Although petitioners have raised serious questions on the merits at this preliminary stage, we conclude that petitioners have not made a sufficient showing of the remaining stay factors, including the likelihood of irreparable injury to warrant a stay at this time. See Doe #1 v. Trump, 957 F.3d 1050, 1058-59 (9th Cir. 2020) (observing that a stay applicant "has the burden of showing that irreparable injury is likely to occur during the period before the appeal is decided") (quoting Nken, 556 U.S. at 434). The court sua sponte expedites briefing and calendaring of this petition. The opening brief and excerpts of record are due March 18, 2022. The answering brief is due April 8, 2022. The optional reply brief is due within 14 days after service of the answering brief. No streamlined extensions of time will be approved. See 9th Cir. R. 31- 2.2(a)(1). No written motions for extensions of time under Ninth Circuit Rule 31- 2.2(b) will be granted absent extraordinary and compelling circumstances. The Clerk will place this petition on the calendar for May 2022. See 9th Cir. Gen. Order 3.3(g). [12381218] (WL) [Entered: 02/28/2022 07:52 AM] |
| 02/28/2022 | ☐ 14<br>1 pg, 93.44 KB | MEDIATION ORDER FILED: In light of this court's February 28, 2022 order expediting briefing and calendaring, this case is released from mediation. [12381468] (VS) [Entered: 02/28/2022 10:04 AM] |

| 03/01/2022 | ☐ 15 | Notice of Oral Argument on Thursday, May 12, 2022 - 09:00 A.M. - Courtroom 1 - Scheduled Location: San Francisco CA.<br>The hearing time is the local time zone at the scheduled hearing location.<br><br>View the Oral Argument Calendar for your case here.<br><br>NOTE: Although your case is currently scheduled for oral argument, the panel may decide to submit the case on the briefs instead. *See* Fed. R. App. P. 34. Absent further order of the court, if the court does determine that oral argument is required in this case, you may have the option to appear in person at the Courthouse or remotely by video. Check here for updates on the status of reopening as the hearing date approaches. At this time, even when in person hearings resume, an election to appear remotely by video will not require a motion, **and any attorney wishing to appear in person must provide proof of vaccination.** The court expects and supports the fact that some attorneys and some judges will continue to appear remotely. If the panel determines that it will hold oral argument in your case, the Clerk's Office will contact you directly at least two weeks before the set argument date to review any requirements for in person appearance or to make any necessary arrangements for remote appearance.<br><br>Please note however that if you do elect to appear remotely, the court **strongly prefers** video over telephone appearance. Therefore, if you wish to appear remotely by telephone you will need to file a motion requesting permission to do so.<br><br>Be sure to review the GUIDELINES for important information about your hearing, including when to be available (30 minutes before the hearing time) and when and how to submit additional citations (filing electronically as far in advance of the hearing as possible).<br><br>If you are the specific attorney or self-represented party who will be arguing, use the **ACKNOWLEDGMENT OF HEARING NOTICE** filing type in CM/ECF no later than 28 days before Thursday, May 12, 2022. No form or other attachment is required. If you will not be arguing, do not file an acknowledgment of hearing notice.[12382930]. [22-70023] (KS) [Entered: 03/01/2022 11:38 AM] |
| 03/08/2022 | ☐ 16 | Filed (ECF) notice of appearance of Daniel Taylor Young (U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549) for Respondent USSEC. Date of service: 03/08/2022. (Party was previously proceeding with counsel.) [12388979] [22-70023] (Young, Daniel) [Entered: 03/08/2022 10:23 AM] |
| 03/08/2022 | ☐ 17 | Added Attorney(s) Daniel Taylor Young for party(s) Respondent USSEC, in case 22-70023. [12389740] (RR) [Entered: 03/08/2022 04:04 PM] |
| 03/18/2022 | ☐ 18<br>38 pg, 552.86 KB | Submitted (ECF) Opening Brief for review. Submitted by Petitioners Diversyfund, Inc., DF Growth Reit, LLC, DF Growth Reit II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis. Date of service: 03/18/2022. [22399376] [22-70023]--[COURT UPDATE: Attached corrected PDF of the brief. 03/21/2022 by KWG] (Dato, Robert) [Entered: 03/18/2022 01:58 PM] |
| 03/18/2022 | ☐ 19<br>7 pg, 878.62 KB | Filed (ECF) Petitioners Craig Cecilio, DF Growth Reit II, LLC, DF Growth Reit, LLC, DF Manager, LLC, Diversyfund, Inc. and Alan Lewis Motion to take judicial notice of Motion to Take Judicial Notice of two orders issued by the Securities and Exchange Commission (SEC) on March 16, 2022.. Date of service: 03/18/2022. [12399398] [22-70023]--[COURT UPDATE: Attached sealed exhibits A & B, originally filed with notice of sealing in [20]. 03/18/2022 by KWG] (Dato, Robert) [Entered: 03/18/2022 02:08 PM] |
| 03/18/2022 | ☐ 20 | Filed (ECF) UNDER SEAL Petitioners Craig Cecilio, DF Growth Reit II, LLC, DF Growth Reit, LLC, DF Manager, LLC, Diversyfund, Inc. and Alan Lewis notice of filing document under seal. Type of document: other (Exhibits A and B to the Motion to Take Judicial Notice). Date of service: 03/18/2022. [12399414] [22-70023] (Dato, Robert) [Entered: 03/18/2022 02:16 PM] |
| 03/18/2022 | ☐ 21 | Filed (ECF) UNDER SEAL Petitioners Craig Cecilio, DF Growth Reit II, LLC, DF Growth Reit, LLC, DF Manager, LLC, Diversyfund, Inc. and Alan Lewis notice of filing document under seal. Type of document: excerpts of record. Date of service: 03/18/2022. [12399438] [22-70023]--[COURT UPDATE: Attached corrected PDF of the excerpts vol. 1. 03/21/2022 by KWG] (Dato, Robert) [Entered: 03/18/2022 02:25 PM] |
| 03/18/2022 | ☐ 22<br>70 pg, 5.44 MB | Submitted (ECF) excerpts of record. Submitted by Petitioners Craig Cecilio, DF Growth Reit II, LLC, DF Growth Reit, LLC, DF Manager, LLC, Diversyfund, Inc. and Alan Lewis. Date of service: 03/18/2022. [22-70023]--[COURT UPDATE: Attached corrected PDF of the excerpts, volume 2. 03/21/2022 by KWG] (Dato, Robert) [Entered: 03/18/2022 02:38 PM] |
| 03/18/2022 | ☐ 23<br>2 pg, 409.59 KB | Filed (ECF) notice of sealing under Ninth Circuit Rule 27-13 [20]. Filed by Petitioners Craig Cecilio, et al. Date of service: 03/18/2022. (Court-entered filing) [12399645] (KWG) [Entered: 03/18/2022 04:05 PM] |
| 03/18/2022 | ☐ 24<br>2 pg, 814.2 KB | Filed (ECF) notice of sealing under Ninth Circuit Rule 27-13 [21]. Filed by Petitioners. Date of service: 03/18/2022. (Court-entered filing) [12400753] (KWG) [Entered: 03/21/2022 02:52 PM] |

| | | |
|---|---|---|
| 03/18/2022 | ☐ 25 | Submitted (ECF) UNDER SEAL excerpts of record volume 1. Submitted by Petitioners. Date of service: 03/18/2022. (Court-entered filing, excerpts of record originally submitted in [21].) [12400756] (KWG) [Entered: 03/21/2022 02:54 PM] |
| 03/21/2022 | ☐ 26 <br> 2 pg, 97.24 KB | Filed clerk order: The opening brief [18] submitted by petitioners is filed. Within 7 days of the filing of this order, filer is ordered to file 6 copies of the brief in paper format, accompanied by certification (attached to the end of each copy of the brief) that the brief is identical to the version submitted electronically. Cover color: blue. The excerpts of record [22], [25] submitted by petitioners are filed. Volume 1 UNDER SEAL. Within 7 days of this order, filer is ordered to file 3 copies of the excerpts in paper format securely bound on the left side, with white covers. The paper copies shall be submitted to the principal office of the Clerk. [12400763] (KWG) [Entered: 03/21/2022 02:58 PM] |
| 03/23/2022 | ☐ 27 <br> 4 pg, 87.3 KB | Filed (ECF) Respondent USSEC response to motion ([19] Motion (ECF Filing), [19] Motion (ECF Filing)). Date of service: 03/23/2022. [12403227] [22-70023] (Berger, Jeffrey) [Entered: 03/23/2022 02:35 PM] |
| 03/25/2022 | ☐ 28 | Received 6 paper copies of Opening Brief [18] filed by Petitioners. (sent to panel) [12405120] (SD) [Entered: 03/25/2022 11:47 AM] |
| 03/25/2022 | ☐ 30 <br> 1 pg, 179.16 KB | Received Petitioners 3 paper copies of Volume 1 of excerpts of record [25] UNDER SEAL. Deficiency: missing copies of Volume 2 and index volume. Corrections required (see attached notice). [12408686]--[Edited docket text for clarity. 03/31/2022 by LA] (KWG) [Entered: 03/30/2022 12:41 PM] |
| 03/28/2022 | ☐ 29 <br> 2 pg, 86.73 KB | Filed (ECF) Respondent USSEC agency certified list. Date of service: 03/28/2022 [12406666] [22-70023] (Berger, Jeffrey) [Entered: 03/28/2022 03:43 PM] |
| 03/31/2022 | ☐ 31 | Received correction to deficient excerpts of record [22] from Petitioners: 3 copies of Volume 2 and index volume of excerpts. [12409769] (LA) [Entered: 03/31/2022 11:41 AM] |
| 03/31/2022 | ☐ 32 | Received 3 paper copies of excerpts of record [25], [22] in 2 volumes (Volume 1 UNDER SEAL) and index volume filed by Petitioners. (sent to panel) [12409771] (LA) [Entered: 03/31/2022 11:42 AM] |
| 04/08/2022 | ☐ 33 <br> 101 pg, 1.76 MB | Submitted (ECF) Answering Brief for review. Submitted by Respondent USSEC. Date of service: 04/08/2022. [12416227] [22-70023] (Young, Daniel) [Entered: 04/08/2022 01:07 PM] |
| 04/08/2022 | ☐ 34 <br> 2 pg, 96.64 KB | Filed clerk order: The answering brief [33] submitted by USSEC is filed. Within 7 days of the filing of this order, filer is ordered to file 6 copies of the brief in paper format, accompanied by certification (attached to the end of each copy of the brief) that the brief is identical to the version submitted electronically. Cover color: red. The paper copies shall be submitted to the principal office of the Clerk. [12416311] (LA) [Entered: 04/08/2022 02:05 PM] |
| 04/13/2022 | ☐ 35 | Received 6 paper copies of Answering Brief [33] filed by USSEC. (sent to panel) [12420395] (SD) [Entered: 04/13/2022 02:23 PM] |
| 04/14/2022 | ☐ 36 | Filed (ECF) Acknowledgment of hearing notice by Attorney Paul Agusto Alarcon for Petitioners Craig Cecilio, DF Growth Reit II, LLC, DF Growth Reit, LLC, DF Manager, LLC, Diversyfund, Inc. and Alan Lewis. Hearing in San Francisco on 05/12/2022 at 09:00 A.M. (Courtroom: Courtroom 1). Filer sharing argument time: No. (Argument minutes: 15) Appearance in person or by video: I wish to appear in person. Special accommodations: NO. Filer admission status: I certify that I am admitted to practice before this Court. Date of service: 04/14/2022. [12422058] [22-70023] (Alarcon, Paul) [Entered: 04/14/2022 06:43 PM] |
| 04/18/2022 | ☐ 37 | Filed (ECF) Acknowledgment of hearing notice by Attorney Mr. Jeffrey Alan Berger for Respondent USSEC. Hearing in San Francisco on 05/12/2022 at 09:00 A.M. (Courtroom: Courtroom 1, 3rd Floor, Room 338). Filer sharing argument time: No. (Argument minutes: 15) Appearance in person or by video: I wish to appear in person. Special accommodations: NO. Filer admission status: I certify that I am admitted to practice before this Court. Date of service: 04/18/2022. [12423996] [22-70023] (Berger, Jeffrey) [Entered: 04/18/2022 10:57 AM] |
| 04/20/2022 | ☐ 38 <br> 2 pg, 83.25 KB | Filed (ECF) Petitioners Craig Cecilio, Alan Lewis, DF Manager, LLC, DF Growth Reit II, LLC, DF Growth Reit, LLC and Diversyfund, Inc. Stipulated Motion to dismiss the case. Date of service: 04/20/2022. [12426219] [22-70023] (Dato, Robert) [Entered: 04/20/2022 09:41 AM] |
| 04/20/2022 | ☐ 39 <br> 1 pg, 123.29 KB | Filed order (Deputy Clerk: AF): The parties' stipulated motion to dismiss this appeal (Dkt. Entry No. [38]) is GRANTED. The parties shall bear their own fees and costs. This order serves as the mandate of this court. [12426536] (AF) [Entered: 04/20/2022 01:00 PM] |

# EXHIBIT 7

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**March 16, 2022**

**SECURITIES ACT OF 1933**
**Release No. 11040 / March 16, 2022**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-20801**

| | |
|---|---|
| **In the Matter of**<br><br>**DF Growth REIT II, LLC,**<br><br>**Respondent.** | **ORDER TEMPORARILY SUSPENDING EXEMPTION PURSUANT TO SECTION 3(b) OF THE SECURITIES ACT OF 1933 AND RULE 258 OF REGULATION A THEREUNDER, STATEMENT OF REASONS FOR ENTRY OF ORDER, AND NOTICE OF OPPORTUNITY FOR HEARING** |

**I.**

The public official files of the Securities and Exchange Commission ("Commission") show that:

Respondent DF Growth REIT II, LLC ("REIT II" or "Respondent"), a Delaware limited liability company with its principal place of business in San Diego, California, filed a Regulation A offering statement on Form 1-A under the Securities Act of 1933 ("Securities Act") with the Commission on December 23, 2020, and filed an amendment to the offering statement on Form 1-A/A under the Securities Act on January 21, 2021 (the "Offering Statement"). The Offering Statement was filed to obtain an exemption from the registration requirements of the Securities Act, as amended, pursuant to Section 3(b) of the Securities Act and Regulation A thereunder. The Offering Statement offered $50 million of limited liability company interests, designated as Class A Investor Shares, on a purportedly continuous basis in a Tier 2 offering under Regulation A, and was qualified on January 29, 2021.

**II.**

Rule 258 of Regulation A promulgated under the Securities Act, 17 C.F.R. § 230.258, provides that the Commission may, at any time, enter an order temporarily suspending a Regulation A exemption if it has "reason to believe" that one of six enumerated factors are present. 17 C.F.R. § 230.258. Each factor provides an independent basis upon which to

temporarily suspend an exemption from Regulation A.  Two of these factors are:

- "any of the terms, conditions or requirements of Regulation A have not been complied with" (17 C.F.R. § 230.258(a)(1)); or

- "[t]he offering statement, [or] any sales or solicitation of interest material . . . contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading" (17 C.F.R. § 230.258(a)(2)).

The Commission, on the basis of information reported to it by its staff, has reason to believe that (1) REIT II failed to comply with the terms, conditions and requirements of Regulation A; and (2) REIT II's offering documents and the website it uses to solicit investors contain untrue statements of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.  The Commission's decision to issue this temporary suspension under the "reason to believe" standard is not a final determination about the availability of the exemption.

### A.    Non-Compliance with Regulation A

The Commission has reason to believe that REIT II failed to comply with two of the terms, conditions, or requirements of Regulation A.

First, REIT II was required to commence its qualified continuous offering within two days after its January 29, 2021 qualification pursuant to Rule 251(d)(3)(i)(F) under Regulation A: "Continuous . . . offerings may be made under this Regulation A, so long as the offering statement pertains only to . . . [s]ecurities the offering of which will be commenced within two calendar days after the qualification date . . . ."  REIT II's September 29, 2021 semi-annual report states that, as of June 30, 2021, it had not yet commenced its operations or sold any LLC interests under Regulation A, but that it "plans to begin raising money . . . starting in the second half of the year."

Here, there is a reason to believe that REIT II's failure to commence the offering within two days of qualification constituted a failure to comply with Rule 251(d)(3).  Notably, violations of Rule 251(d)(3) are "deemed to be significant to the offering as a whole" for purposes of the insignificant deviation provisions of Rule 260, 17 C.F.R. § 230.260(a)(2), although Rule 260(c) specifically states that Rule 260(a) "provides no relief or protection from a [suspension] proceeding under Rule 258."

Second, REIT II raised its maximum offering amount from $50 million to $75 million through the filing of an August 26, 2021 offering circular supplement rather than a new offering statement or post-qualification amendment as required by the note to Rule 253(b) under Regulation A:  "An offering circular supplement may not be used to increase the volume of securities being offered.  Additional securities may only be offered pursuant to a new offering statement or post-qualification amendment qualified by the Commission."  Based on this failure to file an offering statement or post-qualification amendment as required, both of which must be qualified, there is a reason to believe that REIT II avoided review by Division of Corporation Finance staff and sold in contravention of the requirement that qualification is a necessary

component for Regulation A sales. *See* Rule 251(d)(2). After Division of Enforcement staff notified REIT II of this failure, it reduced its offering amount back to $50 million.

### B.      Materially Misleading Representations

The Commission has reason to believe that DiversyFund, Inc.'s ("DiversyFund") website, used to solicit REIT II investors, REIT II's January 2021 offering circular ("Offering Circular"), and REIT II's August 26, 2021 offering circular supplement make materially misleading representations regarding REIT II being a separate investment vehicle from REIT I, and regarding how much capital REIT II needs to raise from investors, its plan of operation based on the amount of capital raised, and its fees.[1]

First, REIT II argued in its emergency motion for stay filed with the Ninth Circuit,[2] that a temporary disqualification from REIT II's Regulation A exemption will result in harm to thousands of investors in both REIT I and REIT II. If we accept REIT II's argument regarding investor harm as true, then there is reason to believe that the website's representations regarding the separation of REIT II and REIT I are misleading. In November 2021, REIT II's website[3] stated that REIT I and REIT II's offerings are "separate investment vehicles." The website further explained the separation between the two offerings as follows:

> "Will launching REIT 2 impact my original REIT investment in any way?
>
> No, REIT I will not be impacted by REIT II in any way. The assets in REIT I will continue to be owned and operated by REIT I."

Similarly, if we accept REIT II's argument regarding investor harm as true – *i.e.,* that stopping REIT II sales of securities will harm both REIT I and REIT II investors – then there is reason to believe that representations in the Offering Circular regarding how much capital it needs to raise from investors and its plan of operation, which is based on the amount of capital raised, are both misleading. REIT II's Offering Circular states on its cover page that "The Offering has no minimum amount. Thus, we will begin to deploy (spend) the money we raise right away, no matter how much or little we raise." (emphasis added). In addition, under its "Plan of Operation," REIT II's Offering Circular states: "Whether we raise $50,000,000 in the Offering or something less, we believe the proceeds of the Offering will satisfy our cash requirements. If we raise less than $50,000,000, we will simply make fewer investments." (emphasis added).

Second, there is reason to believe that REIT II made conflicting representations about whether fund management fees will be charged. Specifically, REIT II's August 2021 offering

---

[1] DiversyFund is the 100% owner of DF Manager, LLC, the manager of both the DF Growth REIT, LLC ("REIT I") and REIT II securities offerings.

[2] The Ninth Circuit denied the emergency motion for stay. *See* DiversyFund, Inc., et al. v. U.S. Securities and Exchange Commission, Case No. 22-70023 (9th Cir. Feb. 28, 2022).

[3] We refer to different versions of the website because DiversyFund has revised it several times and continues to do so.

circular supplement describes an "Asset Management Fee" "equal to 2% of the capital raised," but the September 2021 version of DiversyFund's website states that there are "no management fees." There is reason to believe that these conflicting representations are misleading.

There is also reason to believe that REIT II made conflicting representations regarding several other fees.  REIT II's Offering Circular represents that DF Manager will charge a substantial "Sponsor Fee," and may charge a "Property Disposition Fee," a "Construction Management Fee," a "Guaranty Fee" and "Other Fees."  REIT II's August 2021 offering circular supplement, which states that it revises the fee structure in its entirety, does not mention the "Sponsor Fee," but discusses the possible "Property Disposition Fee," "Construction Management Fee," "Guaranty Fee" and "Other Fees."  None of these fees appear under the website headings "What Are Your Fees?," or "REIT 2: Fee Structure," both of which state that they describe the "new fee structure."  These fees are not discussed in the November 2021 version of DiversyFund's website.  There is reason to believe that these conflicting representations are misleading.

In these circumstances, the Commission has reason to believe that these representations are materially misleading.  A reasonable REIT II investor would consider it important to know if their investment's success or failure was contingent upon REIT I or on how much money REIT II raised.  A reasonable REIT II investor would also find it important to know what fees might be charged.  *See Basic v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

## III.

IT IS ORDERED, pursuant to Rule 258(a) of the General Rules and Regulations under the Securities Act, that the exemption of REIT II under Regulation A be, and hereby is, temporarily suspended.

IT IS FURTHER ORDERED that notice of this Order shall be delivered by personal service, registered mail, or certified mail to the addresses given by the issuer, any underwriter, and any selling security holder in the Offering Statement.

NOTICE IS HEREBY GIVEN that any person having an interest in this matter may, within thirty calendar days after the entry of this Order, file with the Secretary of the Commission pursuant to the Commission's Rules of Practice a request for a hearing; that within twenty days after the receipt of such request the Commission will, or at any time upon its own motion the Commission may, set the matter for hearing at a place to be designated by the Commission, for the purpose of determining whether this order should be vacated or made permanent, without prejudice, however, to the presentation and consideration of additional matters at the hearing; and that notice of the time and place of the hearing will be promptly given by the Commission.  If no hearing is requested and none is ordered by the Commission, this Order shall become permanent on the thirtieth day after its entry, and will remain in effect unless and until it is modified or vacated by the Commission.

Attention is called to Rule 151(a), (b) and (c) of the Commission's Rules of Practice, 17 C.F.R. § 201.151(a), (b) and (c), providing that when, as here, a proceeding is set before the Commission, all papers (including those listed in the preceding paragraph) shall be filed

electronically in administrative proceedings using the Commission's Electronic Filings in Administrative Proceedings (eFAP) system access through the Commission's website, www.sec.gov, at http://www.sec.gov/eFAP.  Respondent also must serve and accept service of documents electronically.  All motions, objections, or applications will be decided by the Commission.

By the Commission.

Vanessa A. Countryman
Secretary