BUCHALTER
A Professional Corporation
Sanjay Bhandari (181920)
655 W. Broadway, Suite 1600
San Diego, California 92101
Telephone: 619.219.5335
E-mail: sbhandari@buchalter.com

Mitchell S. Kim (276429)
Danielle M. Mayer (298995)
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Telephone: (213) 563-8360
E-mail: mkim@buchalter.com

Attorneys for Defendant, DF GROWTH REIT, LLC; DF GROWTH REIT II, LLC; DIVERSYFUND, INC.; CRAIG CECILIO; and ALAN LEWIS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARK FERRY et al.,

Plaintiffs,

v.

DF GROWTH REIT, LLC et al.,

Defendants.

Case No. 3:22-cv-02001-AJB-WVG

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE THE FIRST AMENDED COMPLAINT**

**<u>Hearing</u>**
Date: July 13, 2023
Time: 2:00 p.m.
Location: 4A

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. PLAINTIFFS' LACK OF STANDING IS FATAL TO THE FAC ........ 1
III. PLAINTIFFS' CLAIMS ARE TIME-BARRED ........ 3
IV. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM ........ 4
A. Asset Management Fees ........ 4
B. Acquisition and Developer Fees ........ 5
C. Separateness of REIT I and REIT II ........ 6
D. No minimum amount ........ 7
E. First (Closed) SEC Investigation ........ 7
F. The BRE Administrative Action ........ 8
V. PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY ........ 10
VI. THE MOTION TO STRIKE ........ 10
VII. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altayyar v. Etsy, Inc.*,
242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018)....12

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002)....9

*Craftmatic Sec. Litig.*,
890 F.2d at 460....11

*Craftmatic Sec. Litig. v. Kraftsow*,
890 F.2d 628 (3d Cir. 1989)....9

*Cutler v. Rancher Energy Corp.*,
13-906-DOC, 2014 U.S. Dist LEXIS 34622, 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014)....6

*Escalante v. Minn. Life Ins. Co.*,
Case No. 09cv1843-L, 2010 WL 2889106 (S.D. Cal. Jul. 22, 2010)....4

*Fries v. N. Oil & Gas, Inc.*,
285 F. Supp. 3d 706 (S.D.N.Y. 2018)....8

*Geiger v. Solomon-Page Group, Ltd.*,
933 F. Supp. 1180 (S.D.N.Y. 1996)....9

*Gratz v. Bollinger*,
539 U.S. 244 (2003)....3

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008)....11

*Inland Empire Waterkeeper v. Corona Clay Co.*,
17 F.4th 825 (9th Cir. 2021)....2

*Johnson v. Siemens AG*,
No. 09 Civ. 5310 (JG), 2011 WL 1304267 (E.D.N.Y. Mar. 31, 2011)....10

*In re KeySpan Corp. Sec. Litig.*,
383 F. Supp.2d 358 (E.D.N.Y. 2003) .......... 10

*Lee v. Retail Store Employee Bldg. Corp.*,
Case No. 15-CV-04768-LHK, 2017 WL 346021 (N.D. Cal. Jan. 24, 2017) .......... 12

*In re Lions Gate Ent. Corp. Sec. Litig.*,
165 F. Supp.3d 1 (S.D.N.Y. 2016) .......... 8

*Lujan v. Def. of Wildlife*,
504 U.S. 555 (1992) .......... 1

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
272 F. Supp.2d 243 (S.D.N.Y.2003) .......... 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .......... 3

*In re Optionable Securities Litigation*,
577 F. Supp. 2d 681 (S.D.N.Y. 2008) .......... 8, 9

*Plevy v. Haggerty*,
38 F. Supp. 2d 816 (C.D. Cal. 1998) .......... 6

*Richman v. Goldman Sachs Grp. Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012) .......... 9

*Schaffer v. Horizon Pharma PLC*,
16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .......... 11

*Shemian v. Research In Motion Ltd.*,
No. 11 Civ. 4068 (RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) aff'd, 570 F. App'x 32 (2d Cir. 2014) .......... 11

*Sitrick v. Citigroup Global Markets, Inc.*.
Case No. CV-05-3731-AHM, 2009 WL 1298148 (C.D. Cal. Apr. 30, 2009) .......... 5

*Starr v. Georgeson S'holder Inc.*,
412 F.3d 103 (2d. Cir. 2005) .......... 5

*United States v. Betts-Gaston*,
860 F.3d 525 (7th Cir. 2017) .......... 5

*United States v. Lucas*,
709 F. App'x. 119 (3d Cir. 2017) ........................................................ 5

*Weinhoffer v. Davie Shoring, Inc.*,
23 F.4th 579 (5th Cir. 2022) ........................................................ 4

*Weiss v. NNN Cap. Fund I, LLC*,
Case No. 14-cv-2689-H, 2015 WL 11990929 (S.D. Cal. Apr. 3, 2015) ........................................................ 1

**California Cases**

*Wheaton v. Nolan*,
3 Cal. App. 2d 401 (1934) ........................................................ 10

**California Statutes**

Cal. Civ. Code
§ 19 ........................................................ 10

Cal. Corp. Code
§ 25401 ........................................................ 1, 10, 11

**Other Authorities**

17 C.F.R. § 229.401(f) ........................................................ 9

Fed. R. Civ. P. 8 ........................................................ 6, 12

Fed. R. Civ. P. 9(b) ........................................................ 6, 12

Fed. R. Civ. P. 12(b)(1) ........................................................ 12

Fed. R. Civ. P. 12(b)(6) ........................................................ 12

*https://www.sec.gov/Archives/edgar/data/1824154/000121390023033723/ea177612-1ka1_dfgrowthreit2.htm*; ........................................................ 6

*https://www.sec.gov/litigation/apdocuments/3-20801-2022-06-03-divisions-motion.pdf*, Ex. 11 ........................................................ 5

## I. INTRODUCTION

Plaintiffs' Opposition (ECF 16; "Opp.") largely fails to address the arguments made in Defendants' Motion (ECF 14; "Mot."), thus conceding the correctness of dismissal many times over. Specifically, Plaintiffs (1) identify no allegations sufficient for standing on any viable theory; (2) fail to address the Motion's arguments on limitations issues, confirming that most of their allegations are time-barred; (3) fail to articulate allegations sufficient to state a plausible claim; (4) fail to articulate a viable theory for why this fraud cause should involve regulatory missteps all agree were "technical and inadvertent"; and (5) fail to articulate allegations statutorily required to impose secondary liability. For the reasons stated in Defendants' Motion and explained further below, the Court should dismiss the First Amended Complaint ("FAC") and either deny leave to amend or strike irrelevant matter from any allowed amendment.

## II. PLAINTIFFS' LACK OF STANDING IS FATAL TO THE FAC

Although Plaintiffs halfheartedly dispute the need to allege standing, Opp. at 18:9-17 (arguing that section 25401 does not require reliance or causation), they wisely do not press the point, conceding that they must allege "'injury in fact' that is 'fairly traceable' to Defendants' action." Opp. at 17 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992)). Whatever the elements of a particular claim, as a constitutional matter a plaintiff must have standing to bring it. Mot. at 5-6. Plaintiffs' attempt to distinguish *Weiss v. NNN Cap. Fund I, LLC*, Case No. 14-cv-2689-H, 2015 WL 11990929 (S.D. Cal. Apr. 3, 2015) makes no sense in light of their acceptance that they must allege standing, but in any case, they accept *Weiss*' ruling that injury in fact cannot flow from an alleged misrepresentation that occurred that *after* Plaintiff's investment. Opp. at 19; *Weiss* at *5. In sum, the parties agree that Plaintiffs must allege that they invested *after* the misrepresentation about which they complain, and suffered injury in fact by it. If their complaint does not plead this, it must be dismissed.

Plaintiffs first argue that they have standing for their excessive fees liability theory, because they would be damaged if they were charged more than they were told. Opp. at 18:19-23. Defendants concede this would satisfy standing for that liability theory. However, because Plaintiffs' excess fees allegations are based on misreadings and speculation (see below), it is not a viable claim for liability; and standing is determined on a claim by claim basis. *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 831-32 (9th Cir. 2021) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). None of Plaintiffs' other liability theories involve a viable theory of standing.

Plaintiffs broadly argue standing exists because "they purchased securities based on misrepresentations and omissions." Opp. at 18. They cite no authority for this theory, which is circular and would eliminate standing in every investment case. Obviously, not every omission generates injury in fact.

Plaintiffs next argue that they "would be harmed by the 'no minimum' representations because" they didn't know the REITs needed capital beyond any single investor's money, which might not be available. Opp. at 18-19. But Plaintiffs never address the Motion's point (Mot. at 16) that no investor could have believed such a thing in light of the cautionary statements in the REITs' offering circulars about (1) the REITs' ongoing need for capital, (2) the auditors' "going concern" caution, and (3) that business would be "severely curtailed" if only a small amount of capital was raised. Further, the alleged injury is so speculative that it is never even identified – Plaintiffs instead attempt to use predictions by Mr. Lewis. Facing different issues over a year ago, Mr. Lewis predicted that Defendants might "very quickly" go out of business (Opp. at 20 n.10), but Plaintiffs never explain how that out-of-context prediction constitutes evidence of injury in fact given that the REITs are still in business distributing dividends to investors. So what exactly was the injury suffered by Plaintiffs from the alleged "no minimum" misrepresentation? This is not

for the Court to speculate, but for Plaintiffs to specifically allege.

Plaintiffs' inadequate fee disclosure theory (Opp. at 19 and 19 n.9) fares no better. Again, Plaintiffs identify no harm that flowed from any alleged failure to deliver a statement on fees charged, or any inadequacy of statements made.

In a class action context, named plaintiffs seeking to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) (internal quotation marks and citations omitted). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Given these Plaintiffs aim to lead a class, they must be much more specific about their investment dates, what misrepresentations occurred after, and what injury flowed from them.

## III. <u>PLAINTIFFS' CLAIMS ARE TIME-BARRED</u>

Plaintiffs do not dispute that they are under a two-year statute of limitations triggered by a duty to inquire. Opp. at 23:1-4; Mot. at 7-8. They argue their claims are timely because they could not have known before February 2022 about "the undisclosed SEC investigations," the second of which included allegations about "interdependence of the REITs, and falsity of the REITs' representations regarding 'no minimum capital needs.'" Opp. at 22:15-18. But the SEC's 2022 allegations are not what the Motion put at issue as time-barred. Rather, the Motion argued that claims based on other issues (noticeable more than two years before being alleged) were barred, and specifically argued that Plaintiff Krause's March 2023 claim about what fee disclosures he did and didn't get since 2018 is barred. Mot. at 8. So are all claims of excessive fees calculated from any disclosure issued prior to March 2021. Mot. at 8, 19-20. Plaintiffs do not respond to, and thus concede, these arguments, which bar all or nearly all of the allegations first made in their March 2023 complaint.

Plaintiffs' argument that statutes of limitation should not be considered on a motion to dismiss (Opp. at 23), is an overreach. Although limitations-related allegations must be construed liberally (as with all issues at the pleading stage), time-bars clear on the face of a complaint are properly decided on a motion to dismiss. *Escalante v. Minn. Life Ins. Co.*, Case No. 09cv1843-L, 2010 WL 2889106 at *4-5 (S.D. Cal. Jul. 22, 2010). Indeed, leave to amend should only be allowed if there is reason to think allegations could be reframed to state a claim within the limitations period. *Id.*

## IV. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM

### A. Asset Management Fees

Plaintiffs' Opposition mainly highlights the deficiencies identified in Defendants' Motion.[1]

First, as argued in the Motion, no asset management fees were assessed against the REIT I investors so they suffered no "injury in fact." Mot. at 15:1-9. Plaintiffs do not dispute that no such fees were assessed, but argue injury because REIT I allegedly *could have* assessed such fees. Opp. at 8-9. They cite no case allowing such potential "injury in theory," and do not even attempt to reconcile it with their admission that they must plead and prove "injury in fact." Opp. at 17.

Second, as for REIT II, Plaintiffs fail to explain how a *material* misrepresentation could exist in light of the detailed, accurate fee disclosure they do not dispute was available to all REIT II investors. This is not a function of any

[1] Plaintiffs' new arguments about "fund level fees" change nothing, but are improper and should be ignored. In defending the sufficiency of the FAC's allegations about asset management fees, Plaintiffs argue that Defendants misrepresented the non-existence of "fund level fees" (Opp. at 8:9-10), and ask the Court to take judicial notice of "a screenshot of the DiversyFund.com website in April 2021" about such fees. Opp. at 8 and 8 n.3. But the term "fund level fees" never appears in the FAC, which also makes no allegation about alleged misrepresentations on DiversyFund's website in April 2021. Plaintiffs thus improperly blur the argument about what they would allege (if allowed to amend), with the sufficiency of what they did allege in the FAC. Plaintiffs also fail to inform the Court that it is reversible error to take judicial notice of facts based on their inclusion in an archival internet source like the Wayback Machine (the website Plaintiffs reference in their request for judicial notice). *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022).

"bespeaks caution" doctrine, which Defendants never raised (but Plaintiffs attack as a strawman), but because a material misrepresentation cannot be something no reasonable person would have found important.[2] Not only did all investors have access to an accurate fee schedule; they also were told that the total fee load with asset management fees was no higher than when no such fee was included (i.e., the total fee load was merely reallocated).[3] It is not plausible to allege that a reasonable investor cared what names were used for the same amount of fees.

**B. <u>Acquisition and Developer Fees</u>**

Plaintiffs merely restate their deficient allegations, while failing to address the Motion's arguments.

Plaintiffs' argument about DiversyFund Park Boulevard exemplifies this pattern. Plaintiffs first fail to acknowledge that the Motion was correct that no "development fee of approximately $1,250,000 from REIT I" appears anywhere in the SEC filing cited in the FAC. *Compare* Opp. at 11 with Mot. 17. Instead, they now claim the filing "discloses an estimated $1,200,000 fee on a $250,000 investment," and this "far exceeded the 6-8% developer fees" that were allowed. Opp. at 12. However, the disclosure actually states that REIT I ("the Company") would invest $250,000 into a "Project Entity," and that Project Entity (not REIT I) would likely pay $1,200,000 in fees to DiversyFund given the rate of 6-8% of total project costs.

---

[2] *United States v. Betts-Gaston*, 860 F.3d 525, 532 (7th Cir. 2017) ("[W]hether a statement is material depends on its effect on 'a reasonable person'"); *United States v. Lucas*, 709 F. App'x. 119, 123 (3d Cir. 2017) ("materiality is an objective test, and requires showing that a defendant's misrepresentations would have been important to a reasonable person deciding whether to take the requested action"); *Sitrick v. Citigroup Global Markets, Inc.*. Case No. CV-05-3731-AHM, 2009 WL 1298148, at *18 (C.D. Cal. Apr. 30, 2009) (citation omitted) ("[A] plaintiff 'cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability of the truth of the investment.'"); *see also Starr v. Georgeson S'holder Inc.*, 412 F.3d 103, 109 (2d. Cir. 2005) ("An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.").

[3] The same November 2021 FAQs on which Plaintiffs rely for their "separateness" allegations (judicially noticeable because referenced in the complaint) also state this fact. *See https://www.sec.gov/litigation/apdocuments/3-20801-2022-06-03-divisions-motion.pdf*, Ex. 11.

ECF 14-1 (RJN) Ex. 6. The disclosure expressly calculates $1.2m from a 6-8% rate: it cannot be read as positing that $1.2m implies more than 6-8% would be charged. One simply cannot read the disclosure as Plaintiffs urge: it says the opposite.

The same is true for Plaintiffs' other allegations about excessive fees. Plaintiffs make the same mistakes over and over, confusing multi-investor project entities and/or total project costs with one investor (REIT I or II) or its equity stake. *Compare* Mot. at 17-19 with Opp. at 11-12. Plaintiffs do not understand the disclosures they cite, and impermissibly ask the Court to speculate about critical information they lack (e.g., the amounts invested by others; fees paid by others; loans and other components of total project costs). But under Rule 8, such speculation is forbidden, and Rule 9(b), a party alleging fraud must have the particularized facts demonstrating the "who what where and how of fraud" before they allege fraud.[4]

As for the obvious error of inattention in REIT II's disclosure concerning fees for the NCP Dove project (*see* Mot. at 18:2-10), Plaintiff's speculation about what that error means is even more impermissible now that REIT II's amended disclosure specifies the actual fee paid ($530,106), well within the 4% fee allowed.[5]

**C. <u>Separateness of REIT I and REIT II</u>**

Again, Plaintiffs' Opposition merely regurgitates the FAC, without addressing the points made in Defendants' Motion. For example, as the first of four arguments, the Motion pointed out that each Plaintiff invested before the FAC's alleged "November 2021" statement about REIT separateness, so no Plaintiff has standing to complain about it. Mot. at 13. The Opposition says nothing in response to this

[4] Plaintiffs incorrectly argue uncertainty about whether Rule 9(b) applies to this case, citing *Cutler v. Rancher Energy Corp.*, 13-906-DOC, 2014 U.S. Dist LEXIS 34622, 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014). However, *Cutler* merely held that Rule 9(b) should not apply to claims of negligence, while agreeing it should apply to section 25401 claims of fraud, like those made in the FAC. 2014 WL 1153054 at *9.

[5] The amended disclosure is available for judicial notice at *https://www.sec.gov/Archives/edgar/data/1824154/000121390023033723/ea177612-1ka1_dfgrowthreit2.htm*; *see Plevy v. Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998) (over plaintiff's objection, taking judicial notice of SEC filings even if "not specifically mentioned" in the complaint, where plaintiff's complaint was based on interpretations of SEC filings and other public statements).

argument, or the second (materiality), third (time-bar) or fourth (insufficient allegations) arguments, instead veering off to discuss Plaintiffs' separate "no minimum amount" claims. Opp. at 13-14. Again, Plaintiffs' failure to respond is a concession; the "separateness" allegations are insufficient to state a claim.

Plaintiffs incorrectly argue against the persuasive value of the SEC ALJ's rejection of their theories. After reviewing the SEC's presentation of the same facts on which Plaintiffs rely, the ALJ found the SEC's theory so implausible that she did not even require a finding of triable issues of fact to reject it, in contrast to her rulings on other issues raised. ECF 16-1, Plaintiffs' RJN, Ex. 1 ("Moreover, the evidence presented is insufficient to support the Division's claims that Respondent misrepresented its minimum capital requirements and the relationship between REIT I and REIT II."). This is quite damning, and merits consideration in assessing others' attempts to free-ride on such rejected theories.

**D. <u>No minimum amount</u>**

This theory, also rejected as implausible by the SEC ALJ (see above), is also left undefended by Plaintiff's Opposition, which again merely restates the FAC's allegations without addressing the deficiencies listed in the Motion. Opp. at 13-14. Plaintiffs thus concede they lack standing, are time-barred, and state implausible allegations, as the Motion specifically argued with respect to this theory. Mot at 15-17; *see also supra* at 2-3.

**E. <u>First (Closed) SEC Investigation</u>**

Plaintiffs do not dispute Defendants' authority (Mot. at 8) that not every investigation is material, but argue that the first SEC investigation (about which they allege nothing other than it closed) was material because it resulted in a suspension of REIT II. Opp. at 15-16. However, the FAC itself states REIT II's 2022 suspension resulted from a second investigation, not the first one, which Plaintiffs admit closed in January 2020. FAC ¶¶ 30-31. Plaintiffs thus have no response, admitting their allegations about first SEC inquiry do not raise a material matter.

An investigation's mere existence, which is all Plaintiffs' allege, creates no duty to disclose. Even if the first investigation had progressed all the way to the SEC issuing a "Wells Notice" (effectively a notice of intent to bring action), no duty to disclose would thereby arise. *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp.3d 1, 12-13 (S.D.N.Y. 2016) (gathering cases rejecting generalized duty to disclose SEC investigations, even after issuance of Wells Notice). Like the *Lions Gate* plaintiffs, Plaintiffs here allege no qualitative facts about the first investigation that allow a finding that it was material. *Id.*

Nor do Plaintiffs respond to the Motion's case law (Mot. at 9-10) establishing that the statement on which Plaintiffs rely did not create any duty to update because it was expressly limited to a specific time. And even if a duty to correct applied, any "duty to correct does not obviate the requirement that the correcting information be material." *Lions Gate*, 165 F. Supp. 3d at 17-18 (citation omitted). Because the first SEC investigation was not material, it was not material correcting information required to be disclosed.

Plaintiffs' attempts to pad the FAC with such trivial nonevents should be rejected. This theory of liability fails to present a plausible basis for a claim.

**F. <u>The BRE Administrative Action</u>**

In light of the trivial finding and penalty associated with Mr. Cecilio's BRE matter, no reasonable investor could have found that matter material, and REITs I and II were under no duty to disclose it.

As Defendants' Motion noted, even omissions concerning "corporate mismanagement or uncharged criminal conduct are not actionable unless the non-disclosures render other statements by defendants misleading." *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 718-19 (S.D.N.Y. 2018) (collecting cases); Mot. at 10-12. As one court held, even a CEO's prior criminal convictions for fraud need not be disclosed absent a duty to disclose, which does not arise unless a disclosure's statements about the CEO were rendered misleading by the omission. *In re*

*Optionable Securities Litigation*, 577 F. Supp. 2d 681, 692-93 (S.D.N.Y. 2008); *Richman v. Goldman Sachs Grp. Inc.*, 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012) ("Revealing one fact about a subject does not trigger a duty to reveal all facts on the subject, so long as what was revealed would not be so incomplete as to mislead."); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (there is no "rule of completeness for securities disclosures"; for a viable claim, there must be a misleading statement).

Plaintiffs make no attempt to show how the BRE matter rendered false or misleading any REIT I or II statement about Mr. Cecilio. The closest they come is mentioning general disclosures about Mr. Cecilio's background and experience, but this is self-defeating, because the federal securities regulations that require that background discussion clearly do not require discussion of the trivial BRE matter. The SEC has issued regulations detailing what prior legal proceedings are "material to an evaluation of the ability and integrity" of officers and directors. 17 C.F.R. § 229.401(f). Plaintiffs make no attempt to show that the BRE matter fits within this regulation (Opp. at 16-17); it clearly does not. 17 C.F.R. § 229.401(f) (specifying which prior legal proceedings should be disclosed to investors). The fact that the SEC's governing regulation does not require disclosure strongly supports the conclusion that Defendants were under no duty to discuss the BRE matter. *Optionable Sec. Litig.*, 577 F. Supp. 2d at 692; *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1187-88 (S.D.N.Y. 1996) ("The fact that the SEC does not require disclosure of this fact is further support for this conclusion because it reflects the SEC's expert view that such disclosure is not required."). In general, issues of director or officer competence (which is all the BRE "failure to supervise" finding might raise) are not material matters requiring disclosure under securities laws. *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 460 (3d Cir. 1989).

In sum, federal securities law (both case law and regulation) clearly indicates that the BRE matter is immaterial and not something about which the REITs had any

duty to speak.

Plaintiffs also do not contest that this issue is barred (*compare* Opp. at 16-17 *with* Mot. at 12 and ECF 14-1 RJN Exs. 1-2) because since 2017 they had access to the publicly available BRE sanction.[6]

## V. PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY

Plaintiffs do not address, (Opp. at 20-21), and therefore concede Defendants' argument that their secondary liability claims fail if primary liability is not shown.

Plaintiffs also do not address Defendants' argument that they failed to allege the facts required by California law to raise secondary liability, including specific allegations about each secondarily liable person's material aid in any alleged violation. Mot. at 20-21. The Opposition lists only allegations that secondary Defendants had supervisory positions, Opp. at 20-21, but not that they actually participated in wrongdoing. This is not enough. *Johnson v. Siemens AG*, No. 09 Civ. 5310 (JG) (RER), 2011 WL 1304267, at *15 (E.D.N.Y. Mar. 31, 2011) (plaintiff could not allege supervisory defendants' involvement simply by virtue of their high-level positions, general responsibilities, and their access to inside information); Mot. at 20-21. Again, the failure to respond concedes the point.

## VI. THE MOTION TO STRIKE

Defendants' Rule 12(f) motion asked that Plaintiffs' allegations concerning *inadvertent* regulatory violations be struck because they are irrelevant to Plaintiff's section 25401 claim, which alleges fraud. Mot. at 5 (Rule 12(f) standard), 2 n.3 (elements of section 25041 claims), 12 (arguing certain allegations should be struck

[6] "Where allegedly undisclosed material information is in fact readily accessible in the public domain, ... a defendant may not be held liable for failing to disclose this information." *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp.2d 358, 377 (E.D.N.Y. 2003); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp.2d 243, 249-250 (S.D.N.Y.2003) ("[T]he Defendants cannot be held liable for failing to disclose ... publicly available information."); *see also Wheaton v. Nolan*, 3 Cal. App. 2d 401, 403 (1934) ("Means of knowledge, especially where it consists of public records … is deemed in law to be knowledge"); Cal. Civ. Code § 19 ("Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned of that fact").

because the parties agree they were "technical and inadvertent").

In response, Plaintiffs argue that Defendants "were tasked with compliance" with Reg A and "failed to disclose" noncompliance. Opp. at 21-22. Plaintiffs cite no statutory language or case authority that allow such "negligent management" allegations in place of the misrepresentations required by Section 25401. In fact, the law is clear that securities laws such as section 25401 and its federal equivalents must be based on a misrepresentation, not mere mismanagement. *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1095 (C.D. Cal. 2008) (the "securities laws do not create a cause of action for corporate mismanagement that is not accompanied by deception"); *Craftmatic Sec. Litig.*, 890 F.2d at 460 ("Where the incremental value of disclosure is solely to place potential investors on notice that management is culpable of a breach of faith or incompetence, the failure to disclose does not violate the securities laws."); Mot. at 2 n.3 (listing elements of section 25401, including "fraudulent untrue statements"). Plaintiffs fail to tie their technical violation allegations to any REIT I or REIT II public statement rendered misleading thereby, or to sketch out when a duty to disclose allegedly arose. *Cf. Shemian v. Research In Motion Ltd.*, No. 11 Civ. 4068 (RJS), 2013 WL 1285779, at *21 (S.D.N.Y. Mar. 29, 2013) aff'd, 570 F. App'x 32 (2d Cir. 2014) (plaintiff did not establish a material omission where he "failed to allege sufficient facts regarding the existence and timing of Defendants' knowledge of defects to give rise to a duty to disclose").

Further, regulatory noncompliance that Plaintiffs concede was "technical and inadvertent" is not necessarily negligent, and highly unlikely to be actionable, particularly given that the REITs relied upon expert securities lawyers for Reg A compliance and disclosed the risk that securities lawyers may have erred in ensuring compliance. *See* REIT II Offering Circular at 12 ("Risk of Failure to Comply with Securities Laws"), ECF 14-4 ("RJN") at Ex. 3; *Schaffer v. Horizon Pharma PLC*, 16-CV-1763 (JMF), 2018 WL 481883, at *8 (S.D.N.Y. Jan. 18, 2018) (plaintiff failed

to allege actionable misrepresentations about legal and regulatory compliance where defendants had warned of risk of fraudulent or illegal activity); *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017) (warnings in prospectus informed investors of possible risks that later materialized), *aff'd*, 731 F. App'x 35 (2d Cir. 2018) (summary order).

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs have failed to establish subject-matter jurisdiction under FRCP 12(b)(1) and failed to allege a plausible, particularized basis for relief under FRCP 8, 9(b) and 12(b)(6). Any amendment would prove futile. Indeed, by failing to address the arguments raised in the Motion, Plaintiffs have abandoned rebuttal and conceded the correctness of denial of leave to amend. *Lee v. Retail Store Employee Bldg. Corp.*, Case No. 15-CV-04768-LHK, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) (denying leave to amend because plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of this claim").

DATED: May 1, 2023

BUCHALTER
A Professional Corporation

By: */s/ Sanjay Bhandari*
SANJAY BHANDARI
MITCHELL S. KIM
DANIELLE M. MAYER
Attorneys for Defendants, DF GROWTH REIT, LLC; DF GROWTH REIT II, LLC; DIVERSYFUND, INC.; CRAIG CECILIO; and ALAN LEWIS