UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV and RYAN KRAUSE, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DF GROWTH REIT, LLC, DF GROWTH REIT II, LLC, DIVERSYFUND, INC., CRAIG CECILIO, and ALAN LEWIS,<br><br>　　　　　　　　　　Defendants. | Case No.: 22-cv-02001-AJB-VET<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**(Doc. No. 14)** |

Before the Court is DF Growth REIT, LLC, DF Growth REIT II, LLC, DiversyFund, Inc., Craig Cecilio, and Alan Lewis's (collectively, "Defendants") motion to dismiss Mark

Ferry, Valerie Hamerling, Igor Korostelev, and Ryan Krause's (collectively, "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). (Doc. No. 14.)[1] The motion is fully briefed. (Doc. Nos. 16. 17.) For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

I. **BACKGROUND**[2]

This is a putative securities fraud class action brought by Plaintiffs against Defendants: DF Growth REIT, LLC ("REIT I), DF Growth REIT II ("REIT II"), LLC, DiversyFund, Inc. ("DiversyFund"), Craig Cecilio ("Cecilio"), and Alan Lewis ("Lewis").

The FAC is the operative complaint. According to the FAC, REIT I and REIT II are "blind pool" companies that invest the proceeds of their securities offerings in real estate projects. REIT I's and REIT II's offerings are permitted under SEC Regulation A, which allows companies to offer and sell securities to the public without having to register the offerings with the SEC so long as the issuer fully complies with the regulation's requirements. REIT I offered such securities from 2018 to November 2021. REIT II offered such securities from August 2020 into 2022.

DiversyFund serves as the sponsor of REIT and REIT II and owns 100% of REIT I and REIT II's manager, DF Manager, LLC ("DF Manager").[3] Cecilio and Lewis founded and own DiversyFund. They also co-own DF Manager. Cecilio is the Chief Executive Officer of DiversyFund and DF Manager. Lewis is the Chief Investment Officer of REIT I, REIT II, DiversyFund, and DF Manager. Plaintiffs allege that Cecilio and Lewis have complete de facto control of REIT I and REIT II.

---

[1] In their motion to dismiss, Defendants also request that in the event the Court allows Plaintiffs to amend the FAC, the Court should "strike and disallow in any amendment certain time-barred or otherwise futile matters." (Doc. No. 14 at 9.)

[2] The following facts are taken from the FAC and assumed true for purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

[3] DF Manager is not a named defendant.

The FAC raises two causes of action under the California Corporations Code. (*Id*.) Plaintiffs allege that REIT I and REIT II violated Section 25401 of the California Corporations Code "by making statements of material fact regarding (i) the interdependency between REIT I and REIT II; (ii) the fees charged by REIT I and REIT II; (iii) the background of management; and (iv) REIT I and REIT II's lack of a need to raise a minimum amount of capital."

As to interdependency, Plaintiffs claim that REIT I and REIT II misrepresented themselves as separate investment vehicles because "if REIT II did not co-invest in certain real estate deals alongside REIT I, the deals will fall through and REIT I will suffer a loss." As to fees charged, Plaintiffs allege that REIT I and REIT II represented that there would be no management fees even though REIT II did collect such fees, and that REIT I and REIT II were subject to developer and acquisition fees in excess of what was represented. As to the management's background, Plaintiffs claim that REIT I and REIT II misrepresented their management's expertise by failing to disclose certain SEC investigations, as well as the California's Bureau of Real Estate's ("BRE") regulatory sanctions against Cecilio in 2017. As to the no-minimal-capital-amount misrepresentation, Plaintiffs allege that REIT II represented to investors that there was no minimum amount that it needed to raise even though it needed to raise more than $10 million to be viable.

The second cause of action is against DiversyFund, Cecilio, and Lewis. Plaintiffs allege that DiversyFund, Cecilio, and Lewis are each jointly and severally liable as control persons under Section 25504 of the California Corporations Code because they materially aided in REIT I's and REIT II's Section 25401 violations.

## II.     LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) tests whether the court has subject matter jurisdiction. Lack of Article III standing requires dismissal for want of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) that is fairly

traceable to the defendant's challenged action; and (3) that is likely to be redressed by a favorable decision. *Id.*

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).[4] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**B. Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Although a court must take all factual allegations in a complaint as true, it is not required to accept conclusory statements. *Iqbal*, 556 U.S. at 678.

**III. DISCUSSION**

Defendants move the Court to dismiss the entirety of the FAC, arguing that: (A) Plaintiffs have failed to allege Article III standing because Plaintiffs have not pled any

---

[4] Unless otherwise indicated, internal citations, quotation marks, and alterations are omitted from the case citations in this Order.

injuries resulting from the alleged statutory violations; and (B) Plaintiffs fail to state their Section 25401 claims because they are time-barred and implausible.

### A. Rule 12(b)(1) – Lack of Article III Standing

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Article III standing to sue "is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id.* The Supreme Court has explained the "'irreducible constitutional minimum' of standing consists of three elements." *Id.* A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Id.* Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC*, 594 U.S. at 431. "[T]he risk of future harm on its own does not support Article III standing for [a] plaintiffs' damages claim." *Id.* at 441.

At issue is whether Plaintiffs have alleged an "injury in fact", the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Defendants contend that Plaintiffs have not pled injuries resulting from each of the alleged statutory violations. In response, Plaintiffs argue that they have "properly plead damages and other actionable injuries throughout the FAC" and refer to paragraphs 6, 46, 64, 65, 66, and 159 of the FAC. (Doc. No. 16 at 22–25.)

To begin, the Court finds that Plaintiffs' citation to paragraphs 6 and 159 of the FAC are unavailing. Paragraph 6 alleges that Plaintiffs purchased securities at various times, and

paragraph 159 alleges: "As a result of the sale of REIT I and REIT II securities to the Plaintiffs and the Class by means of written and oral untrue statements of material fact, and omissions of material fact, Defendants REIT I and REIT II are each liable to Plaintiffs under § 25501 of the Cal. Corp. Code." (Doc. No. 13 at ¶¶ 6, 159.) These allegations do not establish an injury in fact. They allege merely that statutory violations occurred. The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). A bare allegation of a statutory violation, "divorced from any concrete harm," is not enough to establish injury in fact.[5] *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

### 1) Misrepresentation re Separateness of REIT I and REIT II and No Minimum Capital Amount Required

Next, paragraphs 64, 65, and 66 concern Plaintiffs' alleged misrepresentations concerning the separateness of REIT I and REIT II and REIT II's representation that there would be no minimum amount required to meet capital needs. The allegations state that "the loss of REIT II's ability to raise funds pursuant to Regulation A 'will cause significant and irreparable harm to DiversyFund and their 30,000 investors' including investors in both REIT I and REIT II." (Doc. No. 13 at ¶ 65 (quoting Lewis' court filing in the petition to stay the SEC's order temporarily disqualifying REIT II's Regulation A exemption).) The

---

[5] Plaintiffs also appear to argue that they need not satisfy Article III standing because a Section 25401 violation does not require proof of reliance or causation. (Doc. No. 16 at 12–13, 23.) The argument is without merit. Article III standing is a constitutional—not statutory—requirement to bring a claim in federal court. As the party invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating constitutional standing to bring their claims in this court. *See TransUnion*, 594 U.S. at 430–31. The elements of Plaintiffs' statutory claims are irrelevant to the Court's Article III's standing analysis. *See Spokeo*, 578 U.S. at 339 ("Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.")

FAC also contains allegations that indicate that harm "would befall REIT II and its investors (closure of the business and losses to all investors) if it were unable to continue to raise additional funds in reliance on its Regulation A exemption." (*Id.* at ¶ 68.)

While these allegations reveal a risk of future harm, the Supreme Court has explained that the mere risk of future harm, without more, does not suffice to demonstrate Article III standing in a suit for damages. *TransUnion*, 594 U.S. at 437. As Plaintiffs do not allege that that the risk of loss due to the alleged misrepresentations has materialized, they have not established a concrete harm. *See id.* at 436 ("If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing." (emphasis in original)). Thus, the Court finds Plaintiffs have not satisfied Article III standing to bring these claims.

### 2) Misrepresentation re Excessive Developer and Acquisition Fees

Turning to paragraph 46, that allegation states that "REIT I and REIT II made incomplete partial disclosures concerning the right of DiversyFund to collect acquisition and developer fees when the REITs acquired interests in property" and that "DiversyFund then collected exorbitant acquisition fees that appear to have exceeded what Defendants had represented DiversyFund would collect from REIT I and REIT II." (Doc. No 13 at ¶ 46.)

The Court finds (and Defendants concede) that Plaintiffs have adequately pled an injury in fact with respect to the exorbitant fees misrepresentation because Plaintiffs were charged more money than what REIT I and REIT II represented. Plaintiffs have thus demonstrated monetary harm flowing from this alleged wrongdoing. Because Plaintiffs have alleged that they suffered monetary harm (a recognized concrete injury) that is traceable to REIT I's and REIT II's conduct and can likely be redressed by a favorable decision, they have satisfied Article III standing to bring this claim.

### 3) Misrepresentation re No Management Fees

Similarly, with respect to the claim that REIT II misrepresented that there would be "no management fees", Plaintiffs have sufficiently pled standing because they allege that "DiversyFund collected management fees from REIT II." (Doc. No. 13 at ¶ 80.) Because the FAC indicates that Plaintiffs were charged management fees even though REIT II represented they would not, Plaintiffs have demonstrated a recognized concrete injury (monetary harm), that is traceable to REIT II's conduct and can likely be redressed by a favorable decision. Accordingly, Plaintiffs have satisfied Article III standing to bring this misrepresentation claim against REIT II.

Although Plaintiffs allege that REIT I also misrepresented that there would be no management fees, the FAC is silent as to whether any such fees were, in fact, ever collected from REIT I. Because the risk of future harm on its own does not support Article III standing for damages, Plaintiffs have not established a concrete harm from this alleged misrepresentation. *See TransUnion*, 594 U.S. at 441. Accordingly, Plaintiffs do not have Article III standing to bring the no-management-fees claim against REIT I.

### 4) Misrepresentation re Management's Background and Expertise

Lastly, as to the alleged misrepresentations about the management's background and expertise, Plaintiffs raise no argument and point to no allegations showing that they suffered an injury in fact resulting from the failure to disclose the SEC's investigations or Cecilio's 2017 BRE sanctions. As Plaintiffs allege no concrete harm resulting from these alleged wrongdoings, the Court finds they have failed to establish Article III standing for these claims.

* * *

Based on the foregoing, the Court finds Plaintiffs have not sufficiently alleged an injury in fact as to their alleged misrepresentation about the separateness of REIT I and REIT II, no minimum amount required to meet capital needs for REIT II, no management fees for REIT I, and management's background and expertise. *See Spokeo*, 578 U.S. at 338 ("Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts

demonstrating each element."). Accordingly, the Court **DISMISSES** these claims for lack of Article III standing.

Because Plaintiffs have adequately pled Article III standing with respect to the misrepresentations concerning excessive fees, as well as management fees for REIT II, the Court does not dismiss these claims on constitutional standing grounds. As more fully explained below, however, the Court dismisses the entirety of the FAC for lack of statutory standing pursuant to Rule 12(b)(6).

**B. Rule 12(b)(6) – Failure to State a Claim**

Here, Plaintiffs allege that REIT I and REIT II violated Section 25401 and seek to hold them liable in this civil action pursuant to Section 25501. (Doc. No. 13 at ¶ 159.) Albeit not raised by the parties, the Court considers, as a threshold matter, whether Plaintiffs' FAC adequately alleges statutory standing. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6)."); *Maya*, 658 F.3d at 1067 ("lack of statutory standing requires dismissal for failure to state a claim").

Section 25401 of the California Corporations Code makes it illegal "for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401. Although Section 25401 is penal in nature, the corresponding Section 25501 "establishes a private remedy for damages." *California Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 921 (Cal. Ct. App. 2001). Section 25501 provides that "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from, or sells a security to, that person, who may sue either for rescission or for damages (**if the plaintiff or the defendant, as the case may be, no longer owns the security**)." Cal. Corp. Code § 25501 (emphasis added).

In this case, Plaintiffs do not seek the remedy of rescission, but rather, damages. (Doc. No. 13 at 60–61.) The allegations in the FAC, however, indicate that Plaintiffs continue to own the securities at issue. (*Id.* at ¶ 6 (alleging that Plaintiffs invested in the securities between various times "and the present".) (*See also id.* at 56 (defining the class as all persons who purchased REIT I and/or REIT II shares "between November 13, 2018 and March 16, 2022" but not including a sale or loss of ownership date.)

Accepting these allegations as true, it would appear Plaintiffs lack statutory standing to assert their claims. Indeed, the FAC is devoid of any allegation that Plaintiffs have sold or no longer own the shares they purchased from REIT I or REIT II, and the Court cannot assume facts not alleged. *See Assoc. Gen. Contractors of California, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged."). Because the express language of Section 25501 provides a private right of action for damages only "if the plaintiff or the defendant, as the case may be, no longer owns the security," Cal. Corp. Code § 25501, and the FAC contains no indication that such circumstances have occurred, Plaintiffs have not adequately stated a claim for relief under the statute. *See, e.g.*, *Viterbi v. Wasserman*, 123 Cal. Rptr. 3d 231, 237 (Cal. Ct. App. 2011) ("Thus, under section 25501, because plaintiffs still own the securities at issue in this action, their sole potential remedy is rescission.").

As currently pled, Plaintiffs' FAC reveals a lack of statutory standing and thus cannot give rise to a plausible claim for relief pursuant to Section 25501. Moreover, because Plaintiffs have failed to adequately plead a claim for primary liability under Section 25501 against REIT I and REIT II, they cannot prevail on their secondary claim for control person liability under Section 25504 against DiversyFund, Cecilio, and Lewis. *See, e.g.*, *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("in the absence of a viable claim of primary liability, plaintiff cannot state a claim against the D & O defendants for control person liability under § 25504.")

Based on the foregoing, the Court sua sponte dismisses the FAC in its entirety under Rule 12(b)(6) for failure to state a claim. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d at 991

(a sua sponte dismissal under Rule 12(b)(6) "may be made without notice where the claimant cannot possibly win relief.") Because the Court dismisses the entirety of Plaintiffs' FAC for lack of statutory standing, the Court need not and does not consider Defendants' arguments that most of Plaintiffs' claims are barred by the statute of limitation, that any time-barred claims should be stricken from any subsequent amendment, and that the alleged misrepresentations are immaterial and implausible.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Court **DISMISSES** Plaintiffs' FAC. Considering leave should be freely given and Plaintiffs may be able to allege additional facts to establish constitutional and statutory standing, the Court **GRANTS** Plaintiff **LEAVE TO AMEND** the FAC.

Plaintiff's Second Amended Complaint must be filed, along with a redline version attached, <u>no later than April 9, 2024</u>. Failure to file a SAC will result in dismissal of the case for failure to prosecute. Moreover, in accordance with Rule 1's call "[t]o secure the just, speedy, and inexpensive determination of every action and proceeding," the Court **DIRECTS** that Plaintiffs' SAC should address not only the constitutional and statutory standing defects found in this Order, but also all arguments raised in Defendants' motion to dismiss. Further, the Court directs that prior to filing any subsequent motion to dismiss, counsel must meet and confer and discuss the intended motion, in an attempt to resolve issues without court intervention, as appropriate.

**IT IS SO ORDERED**.

Dated: March 26, 2024

Hon. Anthony J. Battaglia
United States District Judge