1  BUCHALTER
   A Professional Corporation
2  Sanjay Bhandari (CA 181920)
   655 W. Broadway, Suite 1600
3  San Diego, California 92101
   Telephone:  619.219.5335
4  E-mail: sbhandari@buchalter.com

5  Attorneys for Defendants DF GROWTH
   REIT, LLC; DF GROWTH REIT II, LLC;
6  DIVERSYFUND, INC.; CRAIG CECILIO;
   and ALAN LEWIS

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  MARK FERRY et al.,                    Case No. 3:22-cv-02001-AJB-VET

12        Plaintiffs,                     **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
13     v.                                 DEFENDANTS' MOTION TO
                                          DISMISS THE SECOND AMENDED
14  DF GROWTH REIT, LLC et al.,           COMPLAINT**

15        Defendants.                     No oral argument requested.
                                          Filed without a hearing date pursuant to
16                                        the Court's June 3, 2024 Order (Docket
                                          No. 29)
17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                              1

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
                                                          3:22-cv-2001-AJB

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................9

II. BACKGROUND ...................................................................................10

    A.  Statement of Facts ......................................................................10

    B.  Plaintiffs' Causes of Action and Theories ...............................10

III. LEGAL STANDARD............................................................................11

    A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction..............11

    B.  Motion to Dismiss for Failure to State a Claim ....................12

    C.  Motion to Dismiss for Failure to State a Claim with Particularity .....13

    D.  Statutory Elements Combined with Standing ...................................13

IV. ARGUMENT........................................................................................14

    A.  Plaintiffs Lack Standing.............................................................14

        1.  No Plaintiff Alleges Any Injury in Fact ................................14

        2.  The Four Rejected Theories (Interdependency, Management Background, Minimum Capital, Registration Exemption) Still Fail to Establish Standing................................15

        3.  The Fees Theory Fails to Survive Scrutiny ...........................17

            a.  Asset Management Fees.............................................17

            b.  Acquisition and Developer Fees.................................18

                (1)  DiversyFund Park Boulevard .............................19

                (2)  NCP Dove ...........................................................19

                (3)  DF Summerlyn .....................................................20

                (4)  McArthur LG........................................................20

    B.  Plaintiffs Are Time-Barred. ......................................................21

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

2

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

C.    Plaintiffs' Allegations are Immaterial and Implausible. ...................23

    1.    The Interdependence Theory Fails ...........................................23

    2.    The Fees Theory Fails ...............................................................24

        a.    Asset Management Fees ................................................24

        b.    Acquisition and Developer Fees ...................................25

        c.    Detailed Accountings ...................................................25

    3.    The Management Background Theory Fails ..........................26

    4.    The Minimum Capital Theory Fails .......................................28

    5.    The Exemption Theory Fails ...................................................29

D.    Plaintiffs' Secondary Liability Fails .................................................30

E.    Leave to Amend Should be Denied ...................................................31

V.    CONCLUSION .........................................................................................32

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

3

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Intel Corp.*,
　No. 19-CV-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21,
　2021) ................................................................................................. 14, 17

*Arlington Central School District Board of Education v. Murphy*,
　548 U.S. 291 (2006) .......................................................................... 31

*Ascon Props., Inc. v. Mobil Oil Co.*,
　866 F.2d 1149 (9th Cir.1989) ........................................................... 31, 32

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .......................................................................... 12

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
　Carpenters*,
　459 U.S. 519 (1983) .......................................................................... 13

*Barilli v. Sky Solar Holdings, Ltd.*,
　389 F. Supp. 3d 232 (S.D.N.Y. 2019) .............................................. 27

*Basic Inc. v. Levinson*,
　485 U.S. 224 (1988) .......................................................................... 16

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) .......................................................................... 12, 20

*Branch v. Tunnell*,
　14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by
　Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ...... 13

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
　911 F.2d 242 (9th Cir. 1990) ............................................................ 26

*Courtesy Properties, LLC v. S&ME, Inc.*,
　No. 1:20-cv-02097-SDG, 2020 WL 7698659 (N.D. Ga. Dec. 28,
　2020) ................................................................................................. 20

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

*In re Donald J. Trump Casino Securities Lit*,
   7 F.3d 357 (3d Cir. 1993)......................................................................29

*Ecelectic Properties East, LLC v. Marcus Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)................................................... 17, 18, 26

*Ferris v. Wynn Resorts Ltd.*,
   Case No. 2:18-cv-00479, 2020 WL 2748309 (D. Nev. May 27,
   2020) ........................................................................................................27

*Fries v. Northern Oil & Gas, Inc.*,
   285 F. Supp. 3d 706 (S.D.N.Y. 2018) .............................................27, 28

*Galati v. Commerce Bancorp, Inc.*,
   220 F. App'x 97 (3d Cir. 2007)..............................................................27

*Gregory v. ProNAi Therapeutics Inc.*,
   297 F. Supp. 3d 372 (S.D.N.Y. 2018) ...................................................28

*Hardisty v. Moore*,
   6 F. Supp. 3d 1044 (S.D. Cal. 2014) .....................................................13

*Herring v. Teradyne, Inc.*,
   2008 WL 11337851 (S.D. Cal. Aug. 29, 2008) .....................................25

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT
   Corp.*,
   660 F. App'x 850 (11th Cir. 2016) .........................................................26

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) .....................................................14

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013)..................................................30

*Johnson v. Fed. Home Loan Mortg. Corp.*,
   793 F.3d 1005 (9th Cir. 2015)..........................................................12, 19

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ........................................................28

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024)..........................................................................26, 27

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                    5

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

*MAZ Partners LP v. First Choice Healthcare Sols., Inc.*,
   No. 6:19-CV-619, 2019 WL 5394011 (M.D. Fla. Oct. 16, 2019) ...................28

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ........................................................................32

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
   No. 16-CV-00253-WHO, 2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) ........................................................................................................18

*Rosen v. Uber Techs., Inc.*,
   164 F. Supp. 3d 1165 (N.D. Cal. 2016) .......................................................13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...............................................................11, 12

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
   343 F.3d 1036 (9th Cir. 2003) .....................................................................12

*Seaman v. Cal. Bus. Bank*,
   No. 13-cv-02031-JST, 2013 WL 5890726 (N.D. Cal. Oct. 30, 2013) ..............28

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .......................................................................29

*Trans World Airlines, Inc. v. Hughes*,
   449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) .........................................................................................................18

*Vaughn v. Teledyne, Inc.*,
   628 F.2d 1214 (9th Cir. 1980) .....................................................................29

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .....................................................................13

*Weiss v. NNN Cap. Fund I, LLC*,
   No. 3:14-cv-02689-H-NLS, 2015 WL 11990929 (S.D. Cal. Apr. 3, 2015) ...............................................................................................14, 15, 31

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .....................................................................12

*Xia Bi v. McAuliffe*,
   927 F.3d 177 (4th Cir. 2019) .......................................................................25

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

6

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

*In re Yahoo! Inc. Sec. Litig.*,
 No. C-11-02732 CRB, 2012 WL 3282819 (N.D. Cal. Aug. 10,
 2012), *aff'd,* 611 F. App'x 387 (9th Cir. 2015)...............................................28

*Yee v. NIVS IntelliMedia Tech. Grp.*,
 No. CV1108472, 2012 WL 12886829 (C.D. Cal. Sept. 7, 2012)......................13

*Zakinov v. Ripple Labs, Inc.*,
 No. 18-cv-06753, 2020 WL 5877864 (N.D. Cal. Oct. 2, 2020) ........................26

**California Cases**

*Deveny v. Entropin, Inc.*,
 139 Cal. App. 4th 408 (2006)...........................................................................21

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (2010)...................................................................14, 15

*Moss v. Kroner*,
 197 Cal. App. 4th 860 (2011)...........................................................................30

*Scotten v. First Horizon Home Loan Corp.*,
 No. CIV. 2:12-1266 WBS, 2012 WL 3277104................................................18

*Viterbi v. Wasserman*,
 191 Cal. App. 4th 927 (2011)...........................................................................30

**Federal Statutes**

Fed. R. Civ. P. 8...................................................................... 12, 18, 23, 31

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

Fed. R. Civ. P. 10b-5(b) ...........................................................................27

Fed. R. Civ. P. 11........................................................................................18

Fed. R. Civ. P. 12(b)(1)...............................................................................32

Fed. R. Civ. P. 12(b)(6).................................................................. 12, 13, 32

Fed. R. Civ. P. 12(h)(3)................................................................................12

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

7

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

**California Statutes**

CCC
  § 25401 .................................................................................*passim*
  § 25501 ................................................................................10, 30
  § 25504 .................................................................................*passim*
  § 25506 ...........................................................................................21
  § 25506(b) .....................................................................................21
  § 25507(a) .....................................................................................21

**Other Authorities**

DiversyFund's website, www.DiversyFund.com ...................................23

John F. Manning, *Textualism and Legislative Intent*, 91 VA. L. REV.
  419, 445 (2005)...........................................................................31

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

8

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

# I.    **INTRODUCTION**

The Second Amended Complaint ("SAC"; ECF 25) in this putative securities fraud class action asserts the same theories in the same ways as the dismissed First Amended Complaint ("FAC"; ECF 13). The minor changes made do not cure the defects that caused dismissal, much less the other problems the Court asked be considered based on Defendants' prior motion. Defendants[1] therefore ask that the Court again dismiss the complaint for the reasons summarized below, each of which is an independent bar to Plaintiffs' case.

*First*, all Plaintiffs lack standing: they did not allege or suffer injury from any of the five forms of misrepresentations they allege.

*Second*, Plaintiffs are time-barred: they base their claims on matters about which they had notice more than two years before their first assertion.

*Third*, Plaintiffs fail to state a plausible claim. They rely on disclosures that are inconsistent with their claims; immaterial matters (e.g., administrative inquiries by the U.S. Securities and Exchange Commission ("SEC") and California's Bureau of Real Estate ("BRE")); and implausible, insufficiently particularized allegations that boil down to conclusory statements and speculation.

The SAC remains an inadequate attempt to free-ride on a SEC investigation that may have seemed worthy of attention when Plaintiffs began their quest, but ended with no monetary penalty and only an administrative consent order based on largely technical issues (such as Defendants' lawyer's use of the wrong form). *See* SAC Ex. 2 at 2-3. At this stage, on their third failure to state an adequate complaint, Plaintiffs' demonstrated inability to state a proper claim justifies dismissal with prejudice.

//

---

[1] All Defendants (*i.e.*, DF Growth REIT, LLC, a Delaware limited liability company ("REIT I"); DF Growth REIT II, LLC, a Delaware limited liability company ("REIT II"), DiversyFund, Inc., a Delaware corporation ("DiversyFund"), Craig Cecilio, and Alan Lewis) join in this motion.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                    9
MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

## II.    BACKGROUND

### A.    Statement of Facts

The Court's prior Order [ECF 23] summarized the facts correctly as follows.

Defendants REIT I and REIT II are "blind pool" real estate investment trusts ("REITs") that pool investor funds into later-identified real estate projects. [ECF 23 at 2.] They raised funds under SEC Regulation A, which allows securities offerings through a limited qualification process instead of full SEC registration. [*Id.*] REIT I offered such securities from 2018 to November 2021; REIT II did so from August 2020 into 2022. [*Id.*]

Defendants DiversyFund is the sponsor of REIT I and II, and the 100% owner of the REITs' manager, DF Manager (which is not a named defendant). [*Id.*]. Defendants Cecilio and Lewis co-founded and co-own DiversyFund and DF Manager, and are alleged to have complete *de facto* control over the REITs. [*Id.*].

Both REITs concentrate on "growth" investments, under which investor funds (with profits/returns) would be returned only after a "five-stage growth cycle that includes: (1) raising capital, (2) acquiring assets, (3) performing "value-add renovations to the properties which allows for increased rents and greater appreciation, (4) time for natural market appreciation, and (5) sale of the property based on market conditions." SAC ¶¶ 16, 18.

### B.    Plaintiffs' Causes of Action and Theories

The SAC alleges the same causes of action as the FAC. In Count One, the SAC alleges that REITs I and II violated California Corporations Code ("CCC") ¶ 25401, thereby incurring liability under CCC § 25501, as a result of five forms of misrepresentations, concerning: "(i) the interdependency between REIT I and REIT II; (ii) the fees charged by REIT I and REIT II; (iii) the background of management; (iv) REIT I and REIT II's lack of a need to raise a minimum amount of capital; and (v) the status of REIT I and REIT II Class A Investor shares as exempt from registration." [SAC ¶ 180; *see generally id.* ¶¶ 178-83.] In Count Two, the SAC

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

10

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1  alleges that DiversyFund, Cecilio and Lewis have secondary liability under CCC §

2  25504 for REIT I and II's primary violations. [*Id.* ¶¶ 184-87.]

3        These are the same theories alleged in the FAC and rejected by this Court,[2]

4  with inadequate changes. The allegations remain inadequate to plead standing,

5  timeliness, plausibility, or particularity.

6  **III.    LEGAL STANDARD**

7        **A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

8        Plaintiffs earlier argued "that they need not satisfy Article III standing because

9  a Section 25401 violation does not require proof of reliance or causation." [Dismissal

10  Order (ECF 23) at 6 n.5.][3] The Court rejected that argument, holding that regardless

11  of the elements of their cause of action, as a constitutional matter every plaintiff must

12  have standing. [*Id.*]

13        To plead standing, Plaintiffs "must clearly allege facts demonstrating each

14  element" of the following test: that they " (1) suffered an injury in fact, (2) that is

15  fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

16  redressed by a favorable judicial decision." [*Id.* at 5.] The alleged injury must be

17  "concrete and particularized and actual or imminent, not conjectural or hypothetical."

18  [*Id.*] Plaintiffs must establish such injury "for each claim they press and for each form

19  of relief they seek." [*Id.*]

20        Standing may be tested through a facial attack (that "the allegations contained

21  in a complaint are insufficient on their face to invoke federal jurisdiction") or a

22  factual attack (disputing "the truth of the allegations that, by themselves, would

23  otherwise invoke federal jurisdiction"). *Safe Air for Everyone v. Meyer*, 373 F.3d

---

24  [2] The Order quoted items (i)-(iv) exactly as stated in the SAC, ECF 25 at 3, rejecting
25  each as insufficient to establish standing. The fifth ground (potential statutory
   violations invalidating Regulation A exemptions) was discussed as inadequate in
26  Defendants' motion to dismiss [ECF 14 at 6, 12-14] and was rejected in the Court's
   discussion of "statutory violations" as insufficient to establish standing, *id.* at 6, and
27  "risk of future harm" resulting from inapplicability of the Regulation A exemption
   as insufficient to do so either. *Id.* at 7.
28  [3] Unless otherwise indicated, internal citations, quotation marks, and alterations are
   omitted from citations to the Court's order and other authorities cited herein.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

11

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1035, 1039 (9th Cir. 2004); Dismissal Order (ECF 23) at 4. Courts apply Rule 12(b)(6)'s standards to a facial attack, "accepting the plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor." [*See* Dismissal Order (ECF 23) at 4]. In a factual attack, however, the court does not presume truthfulness of plaintiff's allegations, and may weigh evidence to resolve factual questions. *Safe Air*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (in a factual attack, the court "need not presume the truthfulness of the plaintiffs' allegations"). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003).

If at any time a district court finds a lack of subject matter-jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### B. Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), courts must dismiss any claim whose supporting allegations fail to satisfy Rule 8's requirement of a plausible set of facts which, if true, would entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

While a court must accept well-pled allegations and construe them in plaintiff's favor, it may not credit conclusory allegations. *Iqbal*, 556 U.S. at 678. Nor should a court "accept as true allegations contradicting documents that are referenced in the complaint." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

12

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

08 (9th Cir. 2015).[4] Further, construing facts in favor of a plaintiff does not allow a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). When ruling on a Rule 12(b)(6) motion, in addition to the complaint, the court may consider "[1] data points gleaned from documents incorporated by reference into the complaint, [2] matters of public record, and [3] facts susceptible to judicial notice." *Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1171 (N.D. Cal. 2016).

## C.   Motion to Dismiss for Failure to State a Claim with Particularity

In cases sounding in fraud, Rule 9(b) requires specific allegations on the "who, what, when, where, and how" of alleged misrepresentations, including why the statement is false or misleading. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Because section 25401 "concerns the *fraudulent* sale of securities," to "sufficiently allege a violation of sections 25401 or 25504, [a plaintiff] must meet the particularity requirement of Rule 9(b)." *Yee v. NIVS IntelliMedia Tech. Grp.*, No. CV1108472, 2012 WL 12886829, at *1 (C.D. Cal. Sept. 7, 2012);

## D.   Statutory Elements Combined with Standing

This Court correctly stated the statutory elements of CCC § 25401 in another case as follows: "In order to establish a cause of action under Section 25401, a plaintiff must plead and prove that there was a sale or purchase of stock in California by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading." *Hardisty v. Moore*, 6 F. Supp. 3d 1044, 1064 (S.D. Cal. 2014) (Battaglia, J.).

In addition, to prove constitutionally required standing, Plaintiffs must allege

---

[4] Even on a FRCP 12(b)(6) motion to dismiss, a court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

13

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

a misrepresentation caused them injury, which requires that they relied on it. *Weiss v. NNN Cap. Fund I, LLC*, No. 3:14-cv-02689-H-NLS, 2015 WL 11990929, at *5-6 (S.D. Cal. Apr. 3, 2015) (Huff, J.) (dismissing Section 25401 and 25504 claims because of plaintiff's failure to allege injury resulting from alleged misrepresentation); *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1355, 1363-64 (2010) (Prop. 64 injury in fact standing requires that plaintiff "show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury"; affirming dismissal because plaintiff did not allege reliance on a misrepresentation that caused injury). No plaintiff has met this burden.

## IV.   ARGUMENT

### A.   Plaintiffs Lack Standing.

Defendants bring both facial and factual attacks on standing, through the arguments herein and the Declaration of Kevin Smith filed herewith.

### 1.   No Plaintiff Alleges Any Injury in Fact

As demonstrated by the redline of the SAC against the FAC, ECF 25-5, Plaintiffs made only minimal changes to the FAC's allegations about each Plaintiff's stock purchases and their standing to complain about matters on which they relied.

In the revised allegations, only Plaintiff Hamerling alleges anything even remotely resembling standing, newly alleging that she "generally relied on the representations about REIT II that were made on the DiversyFund.com website." SAC ¶ 63. This new assertion about DiversyFund's website "generally," without naming any of the five forms of misrepresentations the SAC alleges, fails to causally connect injury to representation as required for standing. Such "allegations are insufficient to plausibly allege an injury-in-fact that is traceable to Defendants' conduct because Plaintiffs do not allege that Plaintiffs read any of the allegedly defective documents or relied upon those documents." *Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *14 (N.D. Cal. Jan. 21, 2021); *In re iPhone*

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

14

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

*Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013) (Koh, J.) ("[A] plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue."); *Weiss*, 2015 WL 11990929 at *5-6;[5] *Durell,* 183 Cal. App. 4th at 1363-64. No other plaintiff makes even this assertion.[6] Thus, none of the Plaintiffs make allegations sufficient to sustain standing even assessed on a facial attack.

**2.      The Four Rejected Theories (Interdependency, Management Background, Minimum Capital, Registration Exemption) Still Fail to Establish Standing**

Even if any Plaintiff had alleged a causal connection to themselves, the SAC does not cure the theoretical defects the Court noted in facially rejecting four of Plaintiffs' five theories: (i) interdependency of the REITs, (iii) management background, (iv) minimum amount of capital and (v) exemption from registration.

The SAC addresses standing for these theories at SAC ¶¶ 139 to 151, and in a new section titled "Plaintiffs and the Class Have Suffered Injury in Fact," at SAC ¶¶ 164 to 170. These allegations fail for three reasons.

*First*, most of these new allegations are conclusory and hypothetical, approaches the Court previously rejected. For example, the SAC claims that Plaintiffs "suffered an actual, concrete injury as a direct and proximate result [of misstatements] in that they parted with their funds … in reliance on [the REITs] being exempt from registration," which any reasonable investor would have required. SAC

---

[5] Judge Huff's decision in *Weiss* is a good example. *Weiss* involved a Section 25401 claim based on alleged misrepresentations that induced plaintiff to invest. *Weiss*, 2015 WL 11990929, at *1. As such, "[t]o establish standing, Plaintiff must show that he—not the purported class—ha[d] suffered an injury in fact for each of the claims he raises." *Id.* at *5. The *Weiss* plaintiff could not do this, because he alleged that (1) he "purchased the securities at issue on or around April 28, 2008," and that (2) defendants "omitted material information with respect to their mezzanine loans from July through August 2008 for the Plantations Note and August through September 2008 for the Barberry Note, *after he purchased his interests*." *Id.* (emphasis added). As a result, his complaint failed "to establish that he suffered an injury 'fairly traceable' to the … Defendants' actions." *Id.*

[6] After plaintiffs Ferry, Korostelev and Krause's investments are described at paragraph 6, their names do not appear again in the SAC.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

15

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

¶ 150; *see also* ¶¶ 165, 169. This allegation, which names no investor as having actually considered the issue, and frames the misrepresentation as pivotal without any reason or identified harm, is just the sort of conclusory, hypothetical allegation the Court already ruled to be insufficient. [ECF 23 at 6, 7, 8.] If the parting from investment funds were enough, every investor would automatically have standing for any theory under the sun. In fact, the allegation is not one of injury, but rather one of materiality – what a reasonable investor would have found significant. *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) ("A misrepresentation is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision."). There is no allegation of concrete injury.

*Second*, the SAC posits that damages sought in a malpractice complaint against Defendants' former securities counsel for errors that led to REIT II's suspension demonstrates that the REITs suffered injury as a result. SAC ¶¶ 139-145, 168. In fact, none of those costs were suffered by the REITs – all were paid only by DiversyFund. Smith Decl. ¶ 3. The REITs had no resulting injury from securities counsel's errors, and are doing well. *Id.* ¶¶ 3-4.

*Third*, the SAC claims the "no minimum capital" representation caused injury, claiming (without any cited support) that REIT II's 2022 net operating loss of $1,829,170 was caused by an inability to raise new investor capital after its Reg. A exemption was suspended. SAC ¶¶ 73, 167. Such speculation is clearly insufficient to state a claim. Further, it is incorrect: that loss comprised several normal expenses and charges, unrelated to REIT II's suspension and/or resulting inability to raise new investor capital. Smith Decl., ¶ 5 and Ex. 8. Most of the $1,829,170 was simply depreciation on real property, a "paper loss" that yields "tax benefits" in the short term, and will never be realized if the property is sold at a profit as expected. *Id.*

In sum, as the Court held before, only theory (ii) concerning undisclosed fees presents a theoretically viable theory of injury in fact. However, as set forth below, the fees allegations do not survive scrutiny either.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                    16

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

### 3.    The Fees Theory Fails to Survive Scrutiny

#### a.    *Asset Management Fees*

The SAC's allegations regarding asset management fees, which apply only to REIT II investors (no such fees were collected from REIT I)[7] and so only to Plaintiff Hamerling,[8] are so implausible and incoherent that they fail a facial attack.

The SAC alleges that Hamerling was duped by DiversyFund's website into thinking REIT II did not charge asset management fees, and presumably she did not see REIT II's detailed fee disclosures about such fees. SAC ¶¶ 63 (claiming she "generally relied" on DiversyFund's website), 80 (alleging website statements concerning "no management fees" were false based on REIT II's detailed fee disclosures). This allegation cannot be credited. A plaintiff who cared about fees could not decide to invest upon being told one fee was not present: they would have to see what other fees exist, at what levels, to decide if fees are acceptable. Courts judge plausibility by "relying on judicial experience and common sense." *Ecelectic Properties East, LLC v. Marcus Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Thus, for example, judges are not blind the fact that "real estate values can be variable"; a plaintiff pointing to a price increase alone as evidence of wrongdoing has not painted enough of a picture to make a plausible allegation. *Eclectic Properties*, 751 F.3d at 998. Similarly, a plaintiff cannot plausibly allege excessive fees or poor performance without providing market benchmark data. *Anderson*, 2021 WL 229235, at *12. Especially given the trivial amount involved, Smith Decl. ¶ 7, plaintiff Hamerling cannot allege a fees-based fraud without alleging what fees she

---

[7] The Court previously held that absent allegations that asset management fees were collected from REIT I, its investors could only allege a "risk of future harm," which did not support standing. ECF 23 at 8. The SAC has not so alleged, so only REIT II investors can assert this theory.

[8] Plaintiff Ferry alleges only that he invested in REIT I; Hamerling alleges that she invested in REIT I and REIT II; and Korostelev and Karuse allege only that they bought $500 each of "DiversyFund Investor Shares," a defined term that includes both REITs. SAC at 1 n.2, ¶ 6. Because the only investment date Korostelev and Krause provide is 2018, before REIT II was launched (SAC ¶ 8), and the Court cannot assume facts not alleged [Order (ECF 23) at 10], they are not REIT II investors.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

17

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1    expected and why.

2        Hamerling's "I was duped about asset management fees" claim is rendered
3    further implausible (indeed, incoherent) by her allegation that she also was duped by
4    REIT II's detailed fee disclosures, this time into thinking REIT II's acquisition fee
5    would be "between 1% and 4% of the total project costs." SAC ¶¶ 126-130 (alleging
6    more than the promised range of 1-4% was charged). Did Hamerling read only the
7    website, or also the fee disclosures? She cannot claim she was duped by both. Rule
8    8, and indeed Rule 11,[9] do not permit contradictory allegations about things within a
9    plaintiff's own knowledge. *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No.
10   16-CV-00253-WHO, 2016 WL 6393503, at *5 (N.D. Cal. Oct. 28, 2016) ("Courts
11   may dismiss a claim as not plausible where its supporting factual allegations are
12   contradictory.") (gathering cases); *Scotten v. First Horizon Home Loan Corp.*, No.
13   CIV. 2:12-1266 WBS, 2012 WL 3277104, at *6 n.1 (E.D. Cal. Aug. 9, 2012
14   ("[C]onflicting allegations of facts that would be within plaintiffs' knowledge do not
15   plausibly suggest entitlement to relief."); *Eclectic Properties*, 751 F.3d at 999
16   (declining to credit contradictory allegations that a property was worth both $11.1
17   million and $20.3 million); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63
18   (2d Cir. 1971) ("[A]n allegation made indefinite or erroneous by other allegations in
19   the same complaint is not a well-pleaded allegation."), *rev'd on other grounds*, 409
20   U.S. 363 (1973).

21        b.    *Acquisition and Developer Fees*

22        Setting aside the obvious standing defects with Plaintiffs' claim that
23   disclosures were insufficiently detailed,[10] their allegations about acquisition and

---

24   [9] Defendants do not bring a Rule 11 motion at this time, but note that Rule 11 requires
25   counsel's certification, after reasonable inquiry, that any pleading's "factual
     contentions have evidentiary support." One cannot certify two contradictory realities.
26   [10] These claims (that disclosures about fees were not as clear or specific as allegedly
     promised, *see* SAC ¶¶ 47-49) fail to follow the Court's requirements as set forth in
     its Dismissal Order. Plaintiffs make no attempt to allege any concrete injury: the
27   portion of the SAC that discusses injury in fact does not even mention this theory of
     violation. SAC ¶¶ 164-70. Even had they tried, any injury to Plaintiffs' alleged
28   informational rights is the sort of conjectural harm this Court stated will not support

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                                    18

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1  developer fees center on four projects for which they claim the REITs charged

2  excessive acquisition or developer fee changes. They are wrong about each one.

3  Plaintiffs seem to have misread the REITs' disclosures, confusing one type of cost

4  for another and single investor projects for multiple investor projects; failing to

5  account for leverage in calculating percentages; etc. In each case, the fees assessed

6  were within the range investors had been told would be assessed.

7  (1)    DiversyFund Park Boulevard

8  Plaintiffs first allege that REIT I paid $1.25 million in developer fees on its

9  $0.25m investment in DiversyFund Park Boulevard, citing a May 2019 disclosure.

10  (SAC ¶¶ 52, 92-94.) However, it is not possible to take $1.25m from $0.25m in

11  capital, rendering this allegation impossible to credit. *Johnson*, 793 F.3d at 1007-08.

12  Further, the May 2019 disclosure listed no such fee, or indeed state that any fee was

13  actually assessed (*see* Smith Decl. ¶ 6(b) and Ex. 1 at 1-2). Plaintiffs alternatively

14  speculate that perhaps the fee was $1.2m, and perhaps that was taken on the $5m

15  REIT I ultimately invested; but they cite no disclosure stating this, and in fact it never

16  occurred. Smith Decl., ¶ 6(b). What Plaintiffs appear to have done is to misread the

17  May 2019 disclosure (which included a projection of *DiversyFund*'s overall

18  developer fee from all investors over the life of the project)[11] as a disclosure of a fee

19  actually assessed against REIT I. It was not that, and no such fee was assessed. Smith

20  Decl., ¶ 6(b)-(c). Plaintiffs' allegations about DiversyFund Park Boulevard are

21  implausible and incorrect. They provide no basis to find standing.

22  (2)    NCP Dove

23  Plaintiffs next allege, based on a May 2022 disclosure, that REIT II paid

24  acquisition fees of "$1,280,2126 [sic]" (acknowledged by the SAC as a typo, SAC ¶

25  61) in 2021 on a $5.014m investment in NCP Dove, LLC, which would exceed the

26  _____

standing. Dismissal Order [ECF 23] at 5.

27  [11] The disclosure states that REIT I would invest $250,000 into a "Project Entity,"
and that the Project Entity (not REIT I) would likely pay $1,200,000 in fees to
28  DiversyFund given the rate of 6-8% of total project costs. Smith Decl., Ex. 1.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

19

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1  disclosed cap for such fees, i.e., "4% of '[REIT II's] share of the total sale price.'"

2  (SAC ¶¶ 59-62, 127-131.) This allegation, based on speculation from a typo, does

3  not provide the plausible, particularized factual basis required for a fraud case.

4  *Courtesy Properties, LLC v. S&ME, Inc*., No. 1:20-cv-02097-SDG, 2020 WL

5  7698659, at *8 (N.D. Ga. Dec. 28, 2020) (citing *Twombly*, 550 U.S. at 555).

6  Moreover, it is incorrect. In fact, REIT II paid $530,106 in acquisition fees on a

7  31.07% share in the $46,370,000 cost for NCP Dove; $530,106 is 3.68% of

8  $14,407,159 (31.07% of $46,370,000), well within the 4% allowed. Smith Decl., ¶

9  6(b)-(c); *see also id*. Ex. 4 (REIT II 2021 Form 1-K/A) at F-11.

10  ### (3)    DF Summerlyn

11  Plaintiffs claim that REIT I's disclosure that it paid acquisition fees of

12  $540,088.00 on its investments in DF Summerlyn, LLC "appears to exceed 5.5% of

13  REIT I's share of the total project cost," citing REIT I's disclosed equity investment

14  of $1,324,500. (SAC ¶ 103.) Again, Plaintiffs have no plausible basis to claim this.

15  REIT I disclosed that it would pay DiversyFund 6-8% of the total project costs,

16  including both 'hard' costs (e.g., the cost of land, buildings, construction, and

17  renovation) and 'soft' costs (e.g., professional fees)." (SAC ¶ 90, 111.) Total project

18  cost, as defined, obviously far exceeds equity investment and also purchase price,

19  especially given that both REITs focus on "value-add renovations" to improve

20  property value. (SAC ¶ 16.) Plaintiffs do not allege the total project cost for DF

21  Summerlyn. (SAC ¶¶ 102-103.) Without that, they can only guess what percentage

22  of that number $540,088.00 is; they can only speculate that the fee paid "appears to

23  exceed" the cap. (FAC ¶ 102.) Speculation is not a plausible or Rule 9(b)-compliant

24  basis for a fraud complaint. For avoidance of doubt, the Smith Declaration establishes

25  that the fee paid was less than 5.5%. Smith Decl., ¶ 6(b)-(c).

26  ### (4)    McArthur LG

27  Plaintiffs claim that a September 2020 disclosure that "in 2020 [DiversyFund]

28  received acquisition fees of $549,842 in connection with the acquisition of McArthur

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                    20

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

LG, LLC" means that REIT I paid more than 5.5% given its equity investment of $5,255,302. (SAC ¶¶ 107-08.) Again, Plaintiffs have no plausible basis to claim this, because acquisition fees are calculated as a percentage of "total project cost" (SAC ¶¶ 90, 111), which Plaintiffs have not alleged. Plaintiffs therefore can only speculate that $549k "appears to exceed" the allowed amount. (SAC ¶ 108). Speculation is no basis for a fraud complaint or a finding of standing. Finally, the Smith Declaration establishes that the fee paid was less than 5.5%. Smith Decl., ¶ 6(b)-(c).

### B.  **Plaintiffs Are Time-Barred.**

Under California Corporations Code 25506, Plaintiffs' Section 25401 claim has a maximum limitations period of 5 years, or "two years after the discovery by the plaintiff of the facts constituting the violation, **whichever shall first expire**." Cal. Corp. Code § 25506(b) (emphasis added). Under section 25507, Plaintiffs' section 25504 claim for secondary liability must be brought within "two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire." Cal. Corp. Code § 25507(a).

"[I]nquiry notice is sufficient to trigger the running of the limitations period under section 25506." *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 412-13 (2006). "Inquiry notice arises in a securities action when circumstances suggest to an investor of ordinary intelligence the possibility that he has been defrauded." *Id.* at 428. This includes "whenever there are any financial, legal, or other data, such as public disclosures in the media" that "would tend to alert a reasonable person to the likelihood of fraud." *Id.* (internal citations and quotation marks omitted).

Plaintiffs' first complaint was filed on December 16, 2022, limiting them to issues first noticeable only after mid-December 2020. Issues first raised in Plaintiffs' FAC, filed March 10, 2023, must be noticeable only after mid-March 2021.

Plaintiffs were put on notice of theory 1 (interdependence of REITs I and II) by REIT II's December 2020 Offering Circular.  (*See* Smith Decl. Ex. 3 at 20-21).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                                      21

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

That publicly filed document disclosed that the REITs would have common management and co-investments, putting Plaintiffs on at least inquiry notice about these matters. The clearly foreseeable economic relationship and interdependence resulting from common management and co-investment is what Plaintiffs incorrectly claim was not disclosed. (SAC ¶¶ 70-72).

Plaintiffs are also barred from asserting theory 2 (acquisition/developer fees and lack of detailed disclosures about them; asset management fees). First, all plaintiffs could see what public disclosures had been made since 2018 and decide whether those met the alleged October 2018 promise of details (SAC ¶¶ 47-48). Second, substantive claims of excessive fees cannot now be raised based on disclosures made in May 2019 about DiversyFund Park Boulevard, June 2020 about DF Summerlyn, or September 2020 about McArthur. Third, REIT II's Offering Circular (filed December 23, 2020) stated that it would be charged "an asset management fee equal to 2%" and other fees (Smith Decl., ¶ 9 and Ex. 3 (Dec. 2020 Offering Circular), creating at least inquiry notice that disallows a March 2023 claim of surprise that asset management fees were charged.

Plaintiffs are also barred from asserting Theory 3 (Mr. Cecilio's background). Mr. Cecilio's sanction was made public in 2017 (*see* Smith Decl., ¶ 2 and Ex. 7), putting Plaintiffs on inquiry notice that expired in 2019.

Plaintiffs are barred from asserting Theory 4 (no minimum amount of capital) by REIT II's December 2020 Offering Circular, which expressly warned that if REIT II "raised only a small amount from the Offering", "its business plans would be severely curtailed"; also noting that REIT II had yet to generate any revenue; that its ability to survive for the next twelve months was "dependent on its ability to obtain capital," about which it could give no assurance. Smith Decl., Ex. 3 at 4, 8.) The reasonable investor was therefore on inquiry notice as of December 2020 that REIT II faced problems if it raised less than expected.

REIT II's December 2020 Offering Circular warnings also bar Plaintiff Theory

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                                22

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

5 (registration exemption). Investors were warned repeatedly that although the investment securities were "OFFERED PURSUANT TO AN EXEMPTION FROM REGISTRATION," the SEC "HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THE SECURITIES OFFERED HEREUNDER ARE EXEMPT"; and that while REIT II's management "relied on the advice of securities lawyers and believe we qualify for the exemption," if those lawyers were wrong, "we could be liable to penalties imposed by the Federal government and State regulators, as well as to lawsuits from investors." Smith Decl., Ex. 3 at 2, 20 ("RISK OF FAILURE TO COMPLY WITH SECURITIES LAWS").

## C.    Plaintiffs' Allegations are Immaterial and Implausible.

Plaintiffs' theories also fail to pass Rules 8 and 9(b)'s requirements for plausibility and particularity.

### 1.    The Interdependence Theory Fails

Plaintiffs claim that REITs I and II "violated § 25401 of the Cal. Corp. Code by making statements of material fact regarding … the interdependency between REIT I and REIT II." (SAC ¶ 180.) Plaintiffs allege: "[i]n November 2021, when both REIT I and REIT II were selling securities to the public, DiversyFund's website, www.DiversyFund.com, advertised to investors that REIT I and REIT II 'operate as separate investment vehicles' and that 'REIT I will not be impacted by REIT II in any way.'" (SAC ¶ 63). Plaintiffs allege these statements were untrue, citing litigation statements concerning the potentially dire impact of a sudden stoppage of REIT II. These allegations fail as to both REIT I and REIT II investors.

For REIT I investors, the allegations fail as a matter of timing and logic. REIT I was closed in November 2021 (SAC ¶ 7), so only REIT II investors could claim to have viewed the November 2021 statement before investing. Further, the statement merely allayed concerns of REIT I investors, [12] telling them their assets would remain

---

[12] The full November 2021 statement is attached to the SAC. It answered the question "Will launching REIT 2 impact my original REIT investment in any way?" with "No,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

"owned and operated by REIT I." It cannot be plausibly alleged to be an actionable misrepresentation for either REIT I investors or REIT II investors.

Further, as noted above, Plaintiffs were put on notice of the interdependence of REITs I and II by REIT II's December 2020 Offering Circular. Not only is this a time bar, but it renders implausible the allegation that interdependence was fraudulently concealed from investors.

Finally, the allegations fail to plausibly allege any actual misrepresentations or omission. Plaintiffs do not plead a single fact disputing the separateness of REITs I and II as independent entities with separate bank accounts, separate interests in various assets, etc. Instead Plaintiffs allege that separateness is disproven by Mr. Lewis' late 2021 expression of fears that the SEC's sudden suspension of REIT II could so harm the entire group of companies as to cause the REITs and their management to wind up affairs. (SAC ¶ 65-66). This expression of concern about future events is not evidence such events occurred, but merely speculation.

### 2. The Fees Theory Fails

#### a. *Asset Management Fees*

Plaintiffs claim that REIT II made inaccurate statements that it would not charge asset management fees. (SAC ¶¶ 80-84.) Specifically, they claim that "during a substantial portion of 2021," DiversyFund's website stated that it required a "minimum investment of only $500 and **no management fees**." (FAC ¶¶ 79-80.) Plaintiffs admit that this was true for REIT I, which did not collect asset management fees (SAC ¶ 23),[13] but not for REIT II, which did not (SAC ¶ 26). These allegations fail to present a plausible fraud claim, for related reasons.

*First*, REIT II publicly disclosed that asset management fees would be

---

REIT I will not be impacted by REIT II in any way. These assets in REIT I will continue to be owned and operated by REIT I." (See SAC Ex. 2 at 4.)

[13] Plaintiffs still claim that because Defendants could have assessed asset management fees for some REIT I investors starting in 2020, sales to those investors were fraudulent. (SAC ¶ 79.) However, as the Court held, given that REIT I did not charge such fees, REIT I investors have no injury and no plausible claim.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

24

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1  charged. This occurred twice before any REIT II investor bought shares, in the

2  December 2020 Offering Circular discussed above and in an August 26, 2021

3  Offering Circular Supplement, which stated that REIT II would be charged "an

4  annual asset management fee equal to 2%." SAC ¶ 80.

5      *Second*, because of this, it is not plausible that a REIT II investor to whom fees

6  were material could have believed asset management fees would not be charged. Any

7  investor who cared about fees could not rely on an nonspecific website discussion of

8  only one type of fee, without checking what other fees could be assessed, in what

9  amounts. In light of the detailed, multi-page fee disclosures REIT II publicly filed,

10 which included specific discussion of asset management fees, no reasonable investor

11 to whom fees were material could plausibly claim reliance on the generalized

12 statement on DiversyFund's website. *See* Smith Decl. ¶ 9 and Ex. 3 at 32-34, Ex. 5

13 at 1-4; *Herring v. Teradyne, Inc.*, 2008 WL 11337851, at *4 (S.D. Cal. Aug. 29,

14 2008) ("fully disclosed information cannot alter the 'total mix' of information

15 available to investors"); *Xia Bi v. McAuliffe*, 927 F.3d 177, 186 (4th Cir. 2019), as

16 amended (July 9, 2019) ("But the realities of the Internet do not alter the fundamental

17 need for plaintiffs to plead reliance with particularity … Investments often boil down

18 to a series of written contracts," and "[t]he written offering documents must control"

19 even if "they in fact contradicted … stray media statements …").

### b.    *Acquisition and Developer Fees*

21     The earlier discussion of these fees demonstrated not only that fees were in

22 line with disclosed ranges, but also that Plaintiff's allegations to the contrary were

23 implausible readings of the disclosures on which they rely.

### c.    *Detailed Accountings*

25     Plaintiffs complain that the REITs promised "a detailed statement" of fees and

26 transactions, SAC ¶¶ 47-48, then provided insufficiently detailed disclosures, thereby

27 rendering them "false, misleading and/or incomplete." *See, e.g.*, SAC ¶¶ 98, 104,

28 109. This claim, which would put this court in the untenable position of trying to

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                25

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

decide whether the details provided were "detailed" enough, is not actionable: federal and state securities laws treat such statements as nonactionable puffery. *Eclectic Properties*, 751 F.3d at 999 (description of investment as "safe and secure" was not actionable); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (statements regarding quality or superiority of product are not actionable); *Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753, 2020 WL 5877864, at *4, *12 n.9 (N.D. Cal. Oct. 2, 2020) (dismissing Section 25401 claim because defendants' statement that a certain cryptocurrency is "required" for global commerce was "plainly puffery"); *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) (descriptions of share repurchase plan as "thoughtful" and "optimal" were non-actionable puffery).

### 3.    The Management Background Theory Fails

Plaintiffs allege that in 2017, "before DiversyFund launched REIT I," its Chief Executive Officer Mr. Cecilio "faced administrative accusations by the California Real Estate Bureau." SAC ¶ 40. While making general allegations that investors would want to know of such matters, SAC ¶ 153, at no point does the SAC cite a single statement in REIT I or REIT II's disclosures that was rendered false or misleading because of the omission of the sanction on Mr. Cecilio's arising from his pre-DiversyFund business. This is fatal to their claim. "Logically and by its plain text," federal securities fraud law reaches only nondisclosure only of information "necessary to ensure that statements already made are clear and complete." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024). Even omitted disclosures that were required by securities regulations are not actionable as misrepresentations, absent an affirmative statement rendered misleading by their omission. *Id.* at 261, 265 (even information required to be disclosed by SEC Regulation S-K is not actionable as an omission, absent an affirmative statement rendered misleading). California's section 25401 is phrased in the same way as the federal law the Supreme Court recently so interpreted. It allows

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

a plaintiff to rely on an omission only where defendant "omits to state a material fact *necessary to make the statements made* … not misleading." CCC § 25401. Therefore, under both federal and state law, Plaintiffs' theory of pure omission regarding Mr. Cecilio's prior BRE sanction fails. *Macquarie*, 601 U.S. at 266 ("Pure omissions are not actionable under Rule 10b-5(b).")

This principle is illustrated by *Fries v. Northern Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 720-21 (S.D.N.Y. 2018). *Fries* involved the nondisclosure of a CEO's receipt of a SEC "Wells Notice" (essentially, notice of intent to sue) for alleged misconduct at a different company (for masking his control of that company to "improperly obtain financial benefits … through a stock manipulation scheme"). *Id.* at 712. The CEO's new company had disclosed that it would rely on the expertise and relationships of its management, including the CEO, and "touted"—to borrow Plaintiffs' terminology in the present action—the qualifications of the CEO. *Id.* at 714-15. The *Fries* plaintiff argued these representations should have included information about the CEO's prior misconduct. *Id.* at 715. The *Fries* court rejected this theory, holding that "[a]llegations that defendants concealed corporate mismanagement or uncharged criminal conduct are not actionable unless the non-disclosures render other statements by defendants misleading." *Id.* at 718; see also id. at 719 ("In making that determination, courts must consider whether the omitted mismanagement or uncharged criminal conduct is sufficiently connected to defendants' existing disclosures.").

In general, management background allegations are highly disfavored, both because they tend to not be tied to affirmative representations, and because they tend to be linked to vague descriptive statements (treated as nonactionable "puffery").[14]

---

[14] *See generally Galati v. Commerce Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007) (general statements regarding business unit did not "put into play," and thus require disclosure of, kickback scheme by management); *Ferris v. Wynn Resorts Ltd.*, Case No. 2:18-cv-00479, 2020 WL 2748309, at *13-15 (D. Nev. May 27, 2020) (dismissing securities fraud claims premised on sexual harassment allegations because, e.g., statements about corporate culture and code of conduct were puffery, and statements about compliance with legal obligations were not misleading); *Barilli*

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2

27

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

3:22-cv-2001-AJB

As in *Fries*, Mr. Cecilio's 2017 administrative settlement of a BRE inquiry of another corporate entity has not been "sufficiently connected to defendants' existing disclosures," or actionable statements therein (versus puffery), to require the disclosures Plaintiffs allege were lacking in this case.[15]

### 4.    The Minimum Capital Theory Fails

---

*v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 252 (S.D.N.Y. 2019) ("The general positive statements about [defendant's] professional history and management abilities, such as statements that he was a 'successful businessman,' are at most non-actionable puffery."); *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 399 (S.D.N.Y. 2018) (statements that defendant's "technology, knowledge, experience, and scientific resources provide[d] [defendant] with competitive advantages" and that defendant was "a leader in developing and ... deliver[ing] therapeutic outcomes that dramatically changed patients' lives" were non-actionable puffery); *MAZ Partners LP v. First Choice Healthcare Sols., Inc.*, No. 6:19-CV-619, 2019 WL 5394011, at *9-10 (M.D. Fla. Oct. 16, 2019) (statement that CEO was key to company's success not rendered materially misleading by omission of corporate misconduct, the CEO's involvement in a market manipulation scheme, even though the court agreed that the market manipulation scheme would have been relevant to a reasonable investor.).

[15]   Relatedly, Plaintiffs also fail in their complaint that the REITs should have disclosed a prior SEC investigation that closed without incident in January 2020. (SAC ¶¶ 30, 155-161.) They also allege no facts about how long that inquiry was open, what it concerned, or that any adverse findings or penalties were involved. (SAC ¶¶ 30, 155-161.)  Nor do they allege when Defendants became aware of it, or any injury caused Plaintiffs by the alleged failure to disclose. These allegations are inadequate to allege standing, and insufficient to state a material matter that should have been disclosed as of a particular point in time. *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("a government investigation, without more, does not trigger a generalized duty to disclose"). This conclusion is not altered by Plaintiffs' attempt to say they complain not about nondisclosure of a material matter *per se* but about a failure to qualify or update related statements. For example, Plaintiffs identify a statement in REIT I's October 2018 Offering Circular that stated REIT I and DiversyFund were not "currently the subject of any investigation," and claim that statement should have been updated when Defendants learned of the SEC's first investigation (SAC ¶ 158.) A duty to update, however, applies only to relevant forward-looking statements. *Seaman v. Cal. Bus. Bank*, No. 13-cv-02031-JST, 2013 WL 5890726, at *5 (N.D. Cal. Oct. 30, 2013) ("an affirmative duty to update or correct past statements … applies only to statements that are clear, factual, and forward-looking, such that some continuing representation remains alive in the minds of investors when circumstances change"); *In re Yahoo! Inc. Sec. Litig.*, No. C-11-02732 CRB, 2012 WL 3282819, at *20 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015) (same). REIT I's October 2018 statement was clearly not forward looking; it only described the situation "currently." Other statements relied on by Plaintiffs are both irrelevant (*e.g.*, they discuss being "named as a defendant in any active or pending litigation," *see* SAC ¶¶ 159-160, which is not the same as an investigation) and insufficiently detailed under FRCP 9(b) to be culpable misrepresentations because Plaintiffs never allege when Defendants knew of the first SEC investigation. If Defendants did not know of an SEC investigation when they made a disclosure, they could not disclose it.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                                28

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

1   Plaintiffs allege that "REIT I and REIT II "violated § 25401 of the Cal. Corp.

2   Code by making statements of material fact regarding … REIT I and REIT II's lack

3   of a need to raise a minimum amount of capital." (FAC ¶ 180.) Plaintiffs allege that

4   "in the REIT II Offering Circular (dated <u>January 19, 2021</u>), REIT II represented that

5   its Regulation A offering 'has no minimum amount,' and as such, 'we will begin to

6   deploy (spend) the money we raise right away, no matter how much or how little we

7   raise.'" SAC ¶ 64 (citing REIT II Offering Circular, p. 1).

8   These allegations are not plausible. The Offering Circular said only that funds

9   would be deployed as they were raised; in other words, that the REITs would not

10  wait to raise a threshold amount before beginning to invest. As noted above, the

11  Offering Circular did not state that all would be well regardless of how much was

12  raised, and in fact cautioned investors about related risks, including that "if [REIT II]

13  raised only a small amount from the Offering," "its business plans would be severely

14  curtailed[.]" *See* Smith Decl. Ex. 3 at 4, 8. No reasonable investor could claim

15  surprise about potential harms arising from less being raised than hoped. Even if such

16  an express disclosure was not present, the claim would be implausible because

17  securities offerors are not required to state the obvious, or predict the future. *See*

18  *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980); *In re Donald J. Trump*

19  *Casino Securities Lit*, 7 F.3d 357, 377 (3d Cir. 1993); *In re Stac Elecs. Sec. Litig.*, 89

20  F.3d 1399, 1407 (9th Cir. 1996).

21  ### 5.    The Exemption Theory Fails

22  Plaintiffs argue that the SEC's suspension of REIT II as a result of an inquiry

23  that began in November 2021 proves securities fraud. However, as Plaintiffs admit,

24  the issues raised by the SEC were "technical and inadvertent." (*Id.* at ¶ 138; 140-42

25  (noting that Defendants sued their prior securities counsel for malpractice because of

26  harm suffered as a result of counsel's mistakes)). Obviously, it is impossible to claim

27  that Defendants committed fraud by not knowing their counsel had made technical

28  and inadvertent regulatory errors such as using the wrong form.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

//

D.    **Plaintiffs' Secondary Liability Fails**

The SAC's second Count alleges that Defendants DiversyFund, Cecilio, and Lewis are liable under CCC § 25504 as having "materially aid[ed] in the act or transaction constituting [a] violation" of section 25501. This secondary liability claim fails for three reasons.

First, Plaintiffs have not established primary liability under section 25401 and 25501, without which secondary liability cannot exist. *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("In the absence of a viable claim of primary liability [under § 25401 or 25501], plaintiff cannot state a claim against the D & O defendants for control person liability under § 25504.").

Second, because Plaintiffs seek rescission (not damages) (SAC at 77), they may only sue their counterparties in the contract they seek to rescind, i.e., the REITs. *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 937 (2011). Defendants are aware that *Moss v. Kroner*, 197 Cal. App. 4th 860 (2011) disagrees with *Viterbi*, allowing brokers to be sued for monetary relief on a rescission claim; Defendants respectfully submit that *Moss* is incorrect. Rescission "by its very definition requires a contract between the parties as it is designed to place the parties in their precontractual condition." 191 Cal. App. 4th at 943. Examining the same legislative record as *Moss*, *Viterbi* correctly found no persuasive evidence that "the Legislature intended the term 'rescission' to be given anything other than its ordinary meaning." *Id.* The *Moss* court, by contrast, created a monetary remedy against non-sellers, reasoning that otherwise section 25504 would be superfluous for plaintiffs limited to rescission. *Moss*, 197 Cal. App. 4th at 875-79. However, such divination of Legislative intent is inherently flawed: courts should limit themselves to the public meaning of statutory text. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 30, 56 (2012). All that can be reliably concluded is that in section 25501, the Legislature intentionally created two different remedial paths: rescission for those

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                          30

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
3:22-cv-2001-AJB

still holding securities, and damages for others. Rescission has not changed its meaning over the years. Far from following legislative intent, *Moss*' creation of a new legal remedy (the monetary component of rescission without tender, etc.) actually violates the statutory text (clearly limiting plaintiffs to rescission) that is the clearest expression of legislative intent. *Cf. Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006) (courts must "begin with the text" and "enforce [it] according to its terms"; rejecting argument that allowing expert fees would be consistent with the statute's goals and legislative history, "in light of [the Act's] unambiguous text").[16]

Third, Plaintiffs have not adequately pleaded secondary liability. The SAC makes only conclusory allegations about control. *See, e.g.*, SAC ¶¶ 11 (alleging "complete *de facto* control"), 20 (alleging Cecilio and Lewis "were each displayed prominently on [relevant] marketing materials", and signed SEC-filed offering materials), 185 ("Defendants DiversyFund, Cecilio and Lewis each directly or indirectly controlled persons liable under Section 25401…"). The allegations of "material aid" are essentially the same conclusory boilerplate based on Cecilio and Lewis being prominent executives who signed public filings. SAC ¶¶ 20, 186. This is not enough under either Rule 8 or Rule 9(b) to prove material aid. *Weiss*, 2015 WL 11990929 at *5 (dismissing secondary liability where plaintiffs had "not provided sufficiently specific allegations as to how the [secondarily liable defendants] aided and abetted violations of aided and abetted violations of Section 25504").

## E.    Leave to Amend Should be Denied

A "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*,

---

[16] *See also* John F. Manning, Textualism and Legislative Intent, 91 VA. L. REV. 419, 445 (2005) (arguing that bills "are likely to look awkward" because they result from "a legislative process that has many twists and turns; that gives the most intensely interested or even outlying legislative actors many opportunities to stop, slow, or reshape initiatives that have apparent majority support; and that emphasizes the legislative majority's need to compromise as a way to secure a bill's passage").

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

866 F.2d 1149, 1160 (9th Cir.1989). Considerations include undue prejudice to the opposing party, bad faith by the movant, and futility. *Id.*

At this stage, the Court should deny leave to amend and dismiss this case with prejudice. Plaintiffs have tried and failed three times to state an adequate claim, even after this Court's clear instructions on what they needed to do. Plaintiffs have made their best case, but still cannot meet the Court's requirements. To require another round of costly and time-consuming briefings for this 2022 case does not make sense. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (approving dismissal with prejudice after prior grant of leave to amend: "plaintiff had made her best case and had been found wanting"). Particularly given Plaintiffs' inability to even allege standing, the Court should decline to allow further burdening of the federal courts.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants ask this Court to dismiss Plaintiffs' SAC under FRCP 12(b)(1) and FRCP 12(b)(6), with prejudice.

DATED:  June 10, 2024                 BUCHALTER
                                      A Professional Corporation


                                      By:   */s/ Sanjay Bhandari*
                                            SANJAY BHANDARI
                                            Attorneys for Defendants

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 82907378v2                    32
MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
                                            3:22-cv-2001-AJB