LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons (SBN 244977)
92 Hopmeadow Street, Suite 205
Weatogue, CT 06089
Tel: (860) 920-5181
Fax: (860) 920-5174
joshuakons@konslaw.com

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiffs MARK FERRY, VALERIE
HAMERLING, IGOR KOROSTELEV, and RYAN
KRAUSE

## U.S. DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV and RYAN KRAUSE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>DF GROWTH REIT, LLC,<br>DF GROWTH REIT II, LLC,<br>DIVERSYFUND, INC.,<br>CRAIG CECILIO, and ALAN LEWIS,<br><br>        Defendants. | CASE NO. 22 CV-2001-AJB-WVG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

PROCEDURAL POSTURE…………………………………………………... 1

ARGUMENT AND AUTHORITIES……………………………………………5

I.          Standard of Review……………………………………………..5

II.         Liability under California Corp. Code § 25401…………………...6

III.        Plaintiffs' Claims Are Timely Claims under the private case of action established by California Corp. Code………………………………….. 7

A.         Management Fees……………………………………………. 7

B.         Acquisition and Developer Fees………………………………. 8

IV.        Plaintiffs Have Pleaded Concrete Injuries In Fact Caused By Defendants' Misrepresentations and Omissions………………………………... 11

A.         General Principles of Article III "Injury In Fact"………………. 11

B.         Management Fees……………………………………………. 12

C.         Acquisition and Developer Fees………………………………. 14

V.         Plaintiffs Have Pleaded Their Claims Plausibly and With Sufficient Particularity…………………………………………………….. 19

VI.        Plaintiffs Have Stated a Claim for Violations of Section 25504 of the Cal. Corp. Code……………………………………………………...23

CONCLUSION…………………………………………………………24

i

# TABLE OF POINTS AND AUTHORITIES

### Cases

*also Mosesian v. Peat, Marwick, Mitchell Co.* 727 F.2d 873, 879 (9th Cir. 1984)..7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..................................................................................6

*Bowden v. Robinson,* 67 Cal. App. 3d 705, 136 Cal. Rptr. 871, 878 (1977)............6

*Cutler v. Rancher Energy Corp.,* No. SACV 13-00906-DOC (JPRx), 2014 U.S. Dist. LEXIS 34622 at *16 (C.D. Cal. Mar. 11, 2014)...........................................6

*Cutler,* 2014 U.S. Dist. LEXIS 34622 at *26-2 ......................................................6

*I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481 at *89 (N.D. Cal. Dec. 30, 2005)......6

*In re Wash. Mut., Inc., 462 B.R. 137, 141-42* (Bankr. D. Del. 2011) .....................24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 560-561 (1992) .......................11

*Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1260 (9th Cir. 2022) ............................6

*Yee v. NIVS Intellimedia Tech. Group, Inc.,* No. CV 11-8473 JGB (AJWx), 2013 U.S. Dist. LEXIS 46128 at *9 .........................................................................6

*Zakinov v. Ripple Labs, Inc.,* No. 18-cv-06753-PJH, 2020 U.S. Dist. LEXIS 32982 at *50-51 (N.D. Cal. Feb. 26, 2020) ......................................................................6

### Statutes

Cal. Corp. Code § 25504.....................................................................................24

### Rules

Fed. R. Civ. P. 9(b) ...........................................................................................6, 19

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT

Plaintiffs Mark Ferry, Valerie Hamerling, Igor Korostelev and Ryan Krause ("Plaintiffs"), by and through their undersigned counsel, hereby file their response in opposition to Defendants' Motion ("Motion") to Dismiss the Second Amended Class Action Compliant (ECF No. 25, hereinafter "SAC"). For the reasons that follow, Defendants' Motion should be denied in its entirety.

## PROCEDURAL POSTURE

Plaintiffs have alleged that throughout the Class Period[1], Defendants made various material misrepresentations and omissions of fact via their U.S. Securities and Exchange Commission ("SEC") filings and website, including recurring misstatements between 2018 and 2022 about the fees charged or to be charged by the subject DF Growth REITs I and II.[2] In its Order Granting Defendants' Motion to Dismiss With Leave To Amend (ECF No. 23, hereinafter "Order") the Court held that Plaintiffs had failed to plead facts demonstrating their constitutional standing to assert certain of their claims because Plaintiffs had not alleged an "injury in fact" resulting from some of the alleged misrepresentations, including concerning the separateness of REIT I and REIT II, the REITs' minimum capital needs, and the background and expertise of management. *See* Order, p. 5-6, applying *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) ("injury in fact" is the

---

[1] The Class Period herein runs from November 13, 2018, through March 16, 2022.
[2] Terms not defined herein shall have the same meanings as in the SAC.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

"first and foremost of standing's three elements"). However, the Court also held that "Plaintiffs have adequately pled an injury in fact with respect to the exorbitant fees misrepresentation because Plaintiffs were charged more money than what REIT I and REIT II represented." Order, p. 7. Finally, notwithstanding its holding that Plaintiffs had pleaded "concrete injury" sufficient to support Article III standing as to some of the alleged misrepresentations, the Court dismissed all of Plaintiffs claims under Fed. R. Civ. P. 12(b)(6) based on statutory standing because Plaintiffs failed to allege a claim for rescission, as opposed to statutory damages, despite the fact that Plaintiffs still own the subject securities. *See* Order, p. 9, discussing Cal. Corp. Code § 25501.

Plaintiffs have now amended their claims, substituting a claim for rescission for the statutory damages claim, and further elucidating how they have been concretely harmed by Defendants' misrepresentations and omissions of material fact. *See, e.g.,* SAC ¶¶ 163-170, 182-83. Plaintiffs have also filled out the timeline with respect to misrepresentations that pre-dated certain of their purchases, and to demonstrate that their claims were brought within the limitations period. In the SAC, Plaintiffs have remedied the only deficiency that the Court identified with respect to their allegations concerning excessive/undisclosed or inadequately disclosed fees (pleading of rescission vs. damages remedy), have addressed the other issues raised by Defendants in their previous motion to dismiss (*see* Order, p.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

11), and have demonstrated concrete harm from Defendants' alleged misrepresentations and omissions, and therefore the Motion should be denied.

## STATEMENT OF FACTS

This case focuses on a series of misrepresentations and omissions of fact contained in the REITs' marketing materials and SEC filings.[3] The subject matter of these misrepresentations and omissions includes, *inter alia*, the following:

First, Defendants misrepresented the management fees actually charged and the fees that could be charged by the REITs. As charged by the SEC, the REITs heavily advertised as a selling point on DiversyFund's website and elsewhere having "no management fees". (SAC ¶ 74) In the case of REIT II, this representation was flatly untrue, as REIT II did in fact charge management fees. *Id.*

Second, throughout the Class Period the REITs made misstatements and incomplete partial disclosures concerning the acquisition and developer fees. (SAC ¶¶ 46, 86) DiversyFund then collected exorbitant acquisition fees that appear to have exceeded what Defendants had represented DiversyFund would collect from the REITs, while at best partially disclosing the quantum of developer and

---

[3] The Court previously ruled that Plaintiffs' alleged misrepresentations and omissions concerning the independence of REIT I from REIT II (and vice versa) (SAC ¶ 72), the background and experience of management and certain SEC investigations (SAC ¶¶ 63-70), and the minimum amount of capital that REIT II needed to raise to be a viable investment do not establish a "concrete harm" constituting an injury in fact for purposes of Article III standing. (Order, pp. 6-8)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

acquisition fees paid, and the method of calculating same. *Id.* Although the REITs repeatedly represented throughout the Class Period that they would provide a detailed accounting of all fees and related party transactions (SAC, *e.g.,* ¶¶ 52, 62, 88, 95, 100) it appears that Defendants never did provide such an accounting.

Third, REIT I and REIT II repeatedly described their offerings of DiversyFund Investor Shares in their SEC filings as being within an exemption from registration under Regulation A, but failed to disclose that REIT I (beginning on or about March 26, 2021) and REIT II (beginning on or about January 31, 2021) had not adhered to the requirements of Regulation A and therefore the REITs' shares were not within a valid exemption from registration. (SAC ¶ 133) The REITs therefore ran the risk of being disqualified from utilizing the Regulation A exemption from registration, as eventually occurred when the SEC permanently suspended REIT II's offering. (SAC ¶ 136 and **Exh. 2**)

The Defendants herein have sued the attorneys who prepared the same offering documents that are the subject of this action, alleging that the attorneys were negligent and committed professional malpractice by, *inter alia,* preparing faulty Offering Circulars and Offering Circular Supplements for the REITs. *See* Complaint, *DF Growth REIT, LLC v. Flaster Greenberg P.C., et al,* N.J. Superior Court Docket No. MER-L-000200-23 ("N.J. Compl."), discussed at SAC ¶¶ 143-45.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

In the N.J. Compl., Defendants alleged that REIT I and REIT II had suffered "disastrous effects" as a result of this "grossly negligent" securities counsel. (N.J. Compl. ¶17.) Defendants alleged that this legal malpractice caused specific, actual, and concrete injury to REIT I and REIT II. Specifically, Defendants alleged that due to the SEC's investigation of the alleged violations, REIT II prematurely terminated its offering, and has incurred significant costs and losses, totaling over $1 million to date. (N.J. Compl. ¶ 21.)

Defendants further alleged that as a result of their attorneys' negligence, they have incurred damages including potential civil liability, as well attorneys' fees and costs to defend against the SEC's investigations and proceedings. (N.J. Compl. ¶ 25.) However, in Defendants now claim herein that "none of [the] damages were suffered by the REITs" and "all injuries/damages alleged or sought in the [N.J. Compl.] were suffered by DiversyFund." Declaration of Kevin Smith dated June 10, 2024 ("Smith Decl.") ¶ 3 (emphasis in original).

## ARGUMENT AND AUTHORITIES

## I.    Standard of Review

In order to withstand a motion to dismiss under Fed. R. Civ. P. 8(a), a complaint need not state detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

There is a split of authority as to whether the pleading standard set forth in Fed. R. Civ. P. 9(b) applies to claims under Cal. Corp. Code § 25401.[4]

## II.    Liability under California Corp. Code § 25401

The private cause of action established by Cal. Corp. Code §§ 25401 and 25501 differs from common law negligent misrepresentation under California law in that: (1) proof of reliance is not required, (2) although the fact misrepresented or omitted must be "material," no proof of causation is required, and (3) plaintiff need not plead defendant's negligence.[5]

Finally, the particular misstatement of fact alleged to trigger liability need not even directed to the complaining plaintiffs. *See Zakinov v. Ripple Labs, Inc.,* No. 18-cv-06753-PJH, 2020 U.S. Dist. LEXIS 32982 at *50-51 (N.D. Cal. Feb. 26, 2020); *see also Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1260 (9th Cir. 2022)

---

[4] Compare *Yee v. NIVS Intellimedia Tech. Group, Inc.,* No. CV 11-8473 JGB (AJWx), 2013 U.S. Dist. LEXIS 46128 at *9 (C.D. Cal. Mar. 25, 3013 with *Cutler v. Rancher Energy Corp.,* No. SACV 13-00906-DOC (JPRx), 2014 U.S. Dist. LEXIS 34622 at *16 (C.D. Cal. Mar. 11, 2014).

[5] *Cutler,* 2014 U.S. Dist. LEXIS 34622 at *26-2; *see also Bowden v. Robinson,* 67 Cal. App. 3d 705, 136 Cal. Rptr. 871, 878 (1977); *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481 at *89 (N.D. Cal. Dec. 30, 2005), (intent not an element of liability under § 25401); *Strong v. Cochran,* No. 2:14-cv-788-TC, 2017 U.S. Dist. Lexis 179973 (D. Utah Oct. 13, 2017) (to state a claim under § 25501, plaintiffs do not need to show reliance).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

(Section 12 of Securities Act of 1933 does not require that a solicitation be directed or targeted to a particular plaintiff).

### III.    **Plaintiffs' Claims Are Timely**

Claims under the private case of action established by California Corp. Code § 25501 must be brought "before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire." Cal. Corp. Code § 25506. All of Plaintiffs' claims were brought within two years of the time when Plaintiffs could have discovered them (and within 5 years after the REITs' offerings began), rendering all claims timely.[6] Even if there is a question on timeliness, Plaintiffs' claims should not be dismissed at this stage. *Mosesian v. Peat, Marwick, Mitchell Co.* 727 F.2d 873, 879 (9th Cir. 1984) ("The question of what a reasonably prudent investor should have known is particularly suited to a jury determination").

### A.    **Management Fees**

With respect to management fees charged by REIT II, REIT II did not even begin *charging* management fees until August 2021, and Plaintiffs' initial

---

[6] *See Siegal v. Gamble,* No. 13-cv-03570-RS, at *6 (N.D. Cal. July 7, 2016) ("The discovery rule delays accrual of a cause of action until a plaintiff has "actual knowledge" of the claim or "knowledge that could reasonably be discovered through investigation of sources open to her." *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1109 (1988).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Complaint alleging misrepresentations and omissions concerning management fees charged (or, in the case of REIT I, potentially to be charged) by the REITs was filed on December 16, 2022, well under two years after the 2021 misrepresentations in question.

### B. Acquisition and Developer Fees

With respect to acquisition and developer fees, the true and complete facts concerning the quantum of these fees charged by the REITs – which totals over $24 million – have to this day never been fully disclosed, as the REITs have never made the reports to investors that Defendants repeatedly represented would provide the information concerning fees. *See* SAC, *e.g.,* ¶¶ 52, 55-56, 62, 88, 95, 100.

The disclosures and factual assertions that Defendants *have* made concerning acquisition and developer fees are something of a moving target. For example, REIT II filed an *amended* Annual Report on Form 1-K/A dated April 28, 2023 – after this litigation was pending – revising the reported acquisition fees for the NCP Dove project during yearly period ending on December 31, 2021 downward to $530,106, from the "$1,280,2126 [sic] in acquisition fees to the Sponsor" reported in the 1-K/A filing on May 3, 2022.[7] *See* Declaration of Joshua

---

[7] As noted in the SAC, REIT II reported this total in acquisition fees paid to DiversyFund during calendar year 2021, and appears only to have invested in the single NCP Dove project as of that time. *See* SAC ¶ 61.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

B. Kons dated July 3, 2023 ("Kons Decl.") annexing initial filing and amended filing. This new $530,106 figure is, conveniently, below the maximum 4% of REIT II's share of the acquisition price that REIT II represented would be charged. Compare SAC ¶¶ 59-62 with Smith Decl. ¶ 6(c)(ii); *see also* Smith Decl. at ¶ 6(c)(ii)) (asserting incorrectly that REIT I allegedly paid only 2.18% of REIT's share of the total project cost, or $207,105.73, in acquisition fees on a project known as DF Summerlyn, even though arithmetic shows that that sum (if true) would equal approximately 6% of REIT I's 38.33% share of $9,480,772.94).

Based on the foregoing, Defendants have never disclosed the true facts concerning the developer and acquisition fees charged, despite repeatedly representing that they would do so. All of the misrepresentations challenged in the SAC occurred within five years before this case was filed (*see* SAC ¶¶ 87-132). The specific representations concerning the fees in the offering circulars were incomplete and misleading statements as it stated the REITs "will be entitled to receive from the Project Entity the fees described" in the offering circulars. *See* SAC ¶¶ 54-55, 59-60. These misleading partial disclosures would not have alerted a reasonable investor to the probability that DiversyFund had collected more than the maximum percentages of the REIT's share of the total project cost set forth in the REITs' SEC filings more than two years before Plaintiffs' claims were filed, and the claims are

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

therefore timely. *See Fox*, 35 Cal. 4th at 807 (discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action").

### C.    Non-Exemption from Registration

REIT I attempted to increase the sums it was seeking to raise from investors from $50 million to $75 million on March 26, 2021, but failed to accomplish a valid qualification for the offering of shares in excess of $50 million because it filed an Offering Circular Supplement, rather than a new offering statement or post-qualification amendment as was required under Regulation A. (N.J. Compl. ¶ 15). REIT I terminated its offering on November 13, 2021, having sold a total of $65,128,397 from investors including over $15 million worth of shares that were not in fact qualified or exempt from registration under Regulation A. The termination of the REIT I offering was disclosed in a Form 1-K filed on May 3, 2022, but the fact that REIT I had failed to file the proper paperwork to increase the size of its offering was not disclosed. Further, after March 26, 2021, REIT I referred to its offering of Class A Investor shares as an offering under Regulation A in, without limitation, the following SEC filings: Form 1-K dated April 30, 2021, Form 1-SA dated September 28, 2021 and Form 1-K dated May 3, 2022. (SAC ¶ 134). Thus, REIT I continued to offer shares that it effectively held out as within a valid Regulation A exemption from registration, when in fact the shares were unregistered securities not within a valid exemption. These facts concerning

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

REIT I's failure to comply with Regulation A and sales of unregistered securities were never disclosed in REIT I's public SEC filings, and only came to light in the N.J. Compl. which was filed on February 10, 2023.

REIT II similarly violated Regulation A in several manners that ultimately resulted in the permanent suspension of its offering via the Final SEC Order. *See* SAC, **Exh. 2.** However, REIT II did not disclose in its public SEC filings that its offering was not within a valid exemption from registration in its SEC filings until May 3, 2022, although it had become aware of the SEC investigation in November 2021. As Plaintiffs' claims were asserted less than 2 years after May 3, 2022, the claims concerning misrepresentations concerning REIT II's purported exemption from registration are timely.

### IV.  **Plaintiffs Have Pleaded Concrete Injuries In Fact Caused By Defendants' Misrepresentations and Omissions**

### A.  **General Principles of Article III "Injury In Fact"**

Plaintiffs properly plead damages and other actionable injuries throughout the FAC sufficiently to establish an "injury in fact" that is "fairly traceable" to Defendants' action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 560-561 (1992). Article III requires that a plaintiff "show (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that

11

the injury will be redressed by a favorable decision." *Fleming v. The Charles Schwab Corp.,* 878 F.3d 1146, 1151 (9th Cir. 2017), quoting *Bernhardt v. Cty. of L.A.,* 279 F.3d 862, 868-69 (9th Cir. 2002).[8]  The Court previously held that Plaintiffs had satisfied these elements with respect to Defendants' representations concerning "no management fees" at the fund level (for REIT II only) and acquisition/developer fees (as to both REITs) – what the Court terms the "exorbitant fees misrepresentation". Order, pp. 7-8.

**B.  Management Fees**

With respect to management fees charged by REIT II, REIT II began charging management fees in August 2021, at the time it began selling shares, and all REIT II purchasers including Plaintiff Valerie Hamerling, were charged management fees at the fund level in contravention of Defendants representations that there would be "no management fees." Plaintiffs have therefore "demonstrated a recognized concrete injury (monetary harm) that is traceable to REIT II's

---

[8] In the context of a motion to dismiss, this "injury in fact requirement is not Mount Everest" and showing injury in fact "requires only that [a] claimant allege[] some specific identifiable trifle of injury." *In re Vanguard Chester Funds Litig.*, C.A. No. 22-955, 2023 U.S. Dist. LEXIS 708181 at *17 (E.D. Pa. Nov. 20, 2023), quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3rd Cir. 2014). In this context, a financial injury is "a classic and paradigmatic form of injury in fact." *In re Vanguard Chester*, 2023 U.S. Dist. LEXIS 708181 at *18; *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, (C.D. Cal. 2020) (deprivation of monetary benefit was "precisely the sort of economic injury that normally satisfies the injury in fact requirement"); *Cottrell v. Alcon Labs*, 874 F.3d 154, 163 (3rd Cir. 2017)(financial harm is a classic and paradigmatic form of injury in fact).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

conduct and can likely be addressed by a favorable decision." Order, p. 7.

Defendants appear to argue that Plaintiff Hamerling cannot have been misled by Defendants' website representations (trumpeted in a prominent graphic) that there would be no asset management fees, because asset management fees were disclosed in REIT II's SEC filings. (Motion, pp. 17-18) But this argument misreads the SAC, which does not allege that Plaintiffs affirmatively relied upon REIT I and REIT II's SEC filings concerning the quantum of developer/acquisition fees.[9]

Rather, as the Court previously recognized, Plaintiffs were harmed by the acquisition and developer fees "because Plaintiffs were charged more than REIT I and REIT II represented" and therefore, "Plaintiffs have alleged that they suffered monetary harm (a recognized concrete injury) that is traceable to REIT I's and REIT II's conduct and can likely be redressed by a favorable decision." (Order, p. 7) Plaintiffs' allegations are therefore not self-contradictory. In summary,

---

[9] Defendants attempt to analogize their prominently placed representation of "no management fees" in a large graphic on DiversyFund's website to "stray media statements." Motion, p. 25. But it is plausible that a reasonable investor would be misled by on a prominent, specific representation of "no management fees" held out by the issuer as a key distinguishing factor, even if contrary information is disclosed elsewhere. As the U.S. Supreme Court stated in the context of a proxy statement disclosure claim: "[o]nly when the inconsistency would exhaust the misleading conclusion's capacity to influence the reasonable shareholder would a § 14(a) action fail on the element of materiality. *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1096-98 (1991), Of note, Defendants cannot dispute the falsity of the "no management fees" representation, as its inaccuracy as been acknowledged by Defendant Cecilio. (SAC ¶ 83)

---

13

Defendants have attempted to conflate monetary harm traceable to their conduct with facts that would be required to establish reliance or loss causation. *See Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, C.A. No. 10-CV-5095 (PCG), 2023 U.S. Dist. LEXIS 183665 at *10 (S.D.N.Y. Oct. 12, 2023) (standard for determining standing is not the same as that applicable for determining loss causation).[10]

## C.     Acquisition and Developer Fees

With respect to acquisition and developer fees, the Court previously ruled that Plaintiffs had "adequately pled" an injury in fact regarding this issue "because Plaintiffs were charged more money that what REIT I and REIT II represented." *See* Order, p. 7. Defendants try to revisit this holding via the Smith Decl., which annexes certain public SEC filings as exhibits, and makes piecemeal factual assertions based on Mr. Smith's personal experience, and stated review of unspecified business records. The facts cherry-picked by Defendants for inclusion in the Smith Decl. shed little light on the full quantum of developer/acquisition fees charged because Defendants never made the

---

[10] The only case involving § 25501 that Defendants cite in support of their argument that actual reliance is required to establish Article III standing does not discuss reliance at all, but instead is premised on the fact that the plaintiff therein purchased the subject securities before the omissions of fact in question had even occurred. *Cf.,* Motion, p. 14 with *Weiss v. NNN Cap. Fund I LLC,* 2015 WL 11990929 at *5-6 (S.D. Cal. Apr. 3, 2015).

14

promised reports to investors with a "detailed statement" showing the "service performed and the amount of compensation paid. *See* SAC, *e.g.,* ¶¶ 52, 62, 88, 95, 100.

Defendants have never furnished the "detailed statement" referenced above. Exacerbating this lack of disclosure, in a series of SEC filings describing REIT I's investments (totaling $24 million) in specific projects, the fees payable to DiversyFund are discussed only as follows: "An affiliate of the Company's Manager (the 'Sponsor') will be entitled to receive from the Project Entity: As described in 'Compensation of Management' in DF Growth REIT, LLC offering circular on pages 22-26." *See* SAC ¶¶ 55-56. Given this circular form of "disclosure" Plaintiffs are left to analyze what information *is* in the public domain and have identified several examples where the fees charged appear to be excessive given what is known about the total project costs and sums invested.

For example, REIT II filed an *amended* Annual Report on Form 1-K/A dated April 28, 2023 – after this litigation was pending – revising the reported acquisition fees for the NCP Dove project during yearly period ending on December 31, 2021 downward to $530,106, from the "$1,280,2126 [sic] in acquisition fees to the Sponsor" reported in the initial 1-K filing on May 3, 2022.[11]

_____

[11] As noted in the SAC, REIT II reported this total in acquisition fees paid to DiversyFund during calendar year 2021, and appears only to have invested in the single NCP Dove project as of that time. *See* SAC ¶ 61.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

This new figure, conveniently, is below the maximum 4% of REIT II's share of the acquisition price that REIT II represented would be charged. Compare SAC ¶¶ 59-62 with Smith Decl. at ¶ 6(c)(ii) (alleging based on unspecified "business records" that REIT II paid only $530,106 – or less than half the sum alleged by Plaintiffs based on REIT II's prior SEC filings, in acquisition fees). Defendants also continue to attempt to move the goalposts by touting figures in the Smith Decl. that do not comport with basic arithmetic, asserting that REIT I allegedly paid only $207,105.73 in acquisition fees on a project known as DF Summerlyn, and that such sum equals "2.18% of REIT I's 38.33% share of the $9,480,772,94 [sic] total project cost for DF Summerlyn." (Smith Decl. at ¶ 6(c)(ii)) But 2.18% of 38.33% of $9,480,772.94 (*i.e.,* 2.18% of $3,633,980.27) actually equals $79,220.77.

As Plaintiffs have pleaded facts giving rise to an inference that Defendants cause them financial harm, and Defendants have not factually rebutted these assertions in a credible manner, the Court should adhere to its ruling that Plaintiffs have "adequately pled" an injury in fact regarding this issue "because Plaintiffs were charged more money that what REIT I and REIT II represented" – a paradigmatic form of injury in fact. *See* Order, p. 7.[12]

---

[12] S*ee also In re Vanguard Chester,* 2023 U.S. Dist. LEXIS 708181 at *18; *Scholl v. Mnuchin,* 489 F. Supp. 3d 1008, (C.D. Cal. 2020); *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing . . . .").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**D.    Non-Exemption from Registration**

REIT I and REIT II repeatedly described their offerings of DiversyFund Investor Shares in their SEC filings as being within an exemption from registration under Regulation A, but failed to disclose that REIT I (beginning on or about March 26, 2021) and REIT II (beginning on or about January 31, 2021) had not adhered to the requirements of Regulation A and therefore the REITs' shares were not within a valid exemption from registration. (SAC ¶ 133).

REIT II violated Regulation A in several manners that ultimately resulted in the permanent suspension of its offering via the Final SEC Order. *See* SAC, **Exh. 2.** REIT I's violations of Regulation A may be summarized as filing an incorrect form (Offering Circular Supplement dated March 26, 2021) to raise the maximum offering proceeds, "depriving REIT I of its ability to rely on Regulation A for the issuance of related unregistered securities." N.J. Compl. at ¶ 22. Therefore the shares sold after March 26, 2021 – including the REIT I shares sold to Plaintiff Hamerling in June and August 2021 – were neither registered nor exempt from registration. *See* SAC ¶ 6(b).

While Defendants argue, based on the Smith Decl. prepared for this litigation, that these misstatements have not caused harm, their averments in the N.J. Compl. state the opposite. *See* N.J. Compl., ¶17 (REIT II had suffered "disastrous effects" as result of Regulation A issue) ¶24 (REIT II prematurely

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

terminated its offering, and has incurred significant costs and losses, totaling over $1 million to date); ¶ 25)(REIT I and REIT II "have incurred and will continue to incur substantial damages from, among other potential liability, attorneys' fees and costs to defend against the SEC's investigations and proceedings"). The Smith Decl. asserts that REIT I and REIT II intend to withdraw these claims, but no effort to do so appears from the docket sheet. *See* Kons Decl. ¶¶14-16.

In addition to the financial harms above, with respect to all shares in REIT II and REIT I shares sold on or after March 26, 2021, Plaintiffs and the Class have suffered an "injury in fact" by being induced to pay Defendants their funds for securities that fundamentally were not of the quality represented, by virtue of the DiversyFund Investor Shares neither being registered or exempt from registration. No reasonable investor would purchase securities known to be unlawfully offered unregistered securities not within a valid exemption, and therefore DiversyFund investors have been harmed by being sold DiversyFund Investor Shares under false pretenses.[13] Class members' reliance on Defendants' representations as to a basic quality of the subject DiversyFund Investor Shares – that they were offered

---

[13] *See Am. Signature, Inc.,* 2023 U.S. Dist. LEXIS 183665 at *10 (plaintiffs alleged injury in fact due to "harm they suffered from purchasing incorrectly rated and currently illiquid securities"); *Nakajima c. Munakata,* C.A. No. 20-00052-JMS-R, 2021 U.S. Dist. LEXIS 203915 at *11 (D. Hawaii Oct. 22, 2021) (plaintiff pled injury in fact where plaintiff was deprived of his money under false pretenses, where he remitted investment funds based on representation that he would receive a green card under EB-5 program).

18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

lawfully based on a valid exemption from registration- may be presumed, and no reasonable investor would knowingly buy unregistered securities being sold unlawfully.[14]

## V.    Plaintiffs Have Pleaded Their Claims Plausibly and With Sufficient Particularity

As noted above, there is a split of authority as to whether the pleading standard set forth in Fed. R. Civ. P. 9(b) applies to claims under Cal. Corp. Code § 25401. Given that the statute does not specifically reference fraud, and does not contain a scienter element, and that Plaintiffs' claims do not sound in fraud, the Court should apply Rule 8(a).[15] However, even if the Court were to apply Rule 9(b) the Ninth Circuit has interpreted Rule 9(b) to require the pleader to state "the time, place and specific content of the false representations as well as the identifies

---

[14] *See Dandong v. Pinnacle Performance Ltd.*, No. 10-cv-8086 (JMF), 2013 U.S. Dist. LEXIS 150259 at *31 (S.D.N.Y. Oct. 17, 2013) ("the alleged misrepresentations and omissions here were so fundamental to the value of the Notes that it is hard to imagine a reasonable investor purchasing them if the Offering Documents had revealed their true nature""); *Seekamp v. It's Huge, Inc.*, C.A. No. 09-CV-00018, 2012 U.S. Dist. LEXIS 33295 at *34 (N.D.N.Y. Mar. 13, 2012) ("it [was] equally clear that every plaintiff would have relied on the implicit representation of [anti-theft security discount's] legality and beneficialness in deciding whether to purchase it"); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 131 (S.D.N.Y. 2001) (court presumed reliance on representations concerning net asset value (NAV) of fund shares where it was "hard to imagine" that any investor did not rely on them).

[15] *See Cutler,* 2014 U.S. Dist. LEXIS 34622 at *16; *Openwave Sys. v. Fuld,* No. C 08-5683, 2009 U.S. Dist. LEXIS 48206 at *11 (Rule 9(b) did not apply to cause of action under § 25401 because that cause of action sounded in negligence).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

of the parties to the misrepresentation." *Misc. Serv. Workers, Driver, & Helpers, Teamsters Local # 427 v. Philco-Ford, Corp.,* 661 F.2d 776, 782 (9th Cir. 1981). These basic facts are amply supplied in the SAC.

### A.    The Asset Management Fee Claims are Plausible

As alleged in the SAC, Defendants prominently displayed the "no management fee" representation on its website and across its aggressive social media advertising campaigns. SAC ¶¶ 77, 80-81. In the case of REIT II, the representations concerning "no management fees" were flat out false because DiversyFund collected management fees from REIT II.[16] (SAC ¶ 80) In the case of REIT I, Defendants dispossessed investors of their funds all while reserving the right to reverse course and assess REIT I investors lucrative annual management fees at a later date in the sole discretion of REIT I, DiversyFund, and Messrs. Cecilio and Lewis. It is not only plausible – but probable – that ordinary retail investors would rely on the fundamental "no management fees" representation heavily featured in marketing materials and on the DiversyFund website and held out by DiversyFund as a differentiator. *See Seekamp,* 2012 U.S. Dist. LEXIS 33295 at *34 and the other cases cited at f.n. 14 above.

---

[16] Defendants also cloud the issue by arguing that the excessiveness of the fees cannot be determined without benchmarks, or that the fees amount to small sums on an individual investor-level. Such arguments are irrelevant given the issue is whether or not Defendants representations regarding the fees were false.

20

**B.     The Excessive Acquisition Fee Claims are Plausible**

Defendants made specific representations to the Plaintiffs and the Class about their right to collect acquisition and developer fees, and the method by which such fees would be calculated. SAC ¶ 86. The Court previously ruled that Plaintiffs had "adequately pled" an injury in fact regarding this issue "because Plaintiffs were charged more money that what REIT I and REIT II represented." *See* Order, p. 7. Notwithstanding the Court's previous ruling, Defendants attempt to dispute Plaintiffs' allegations in the SAC concerning several specific projects (not addressing the many other projects discussion in the SAC), but their disputations based on the Smith Decl. do not negate the plausibility of Plaintiffs' contention that the disclosures on this issue are false, misleading and/or incomplete.

With respect to the NPC Dove project, for example, prior to the filing of the FAC, Defendants represented that for the period ending December 31, 2021, REIT II paid $1,280,2126 in acquisition fees to the DiversyFund (the sponsor). May 3, 2022 1-K (Kons Decl. **Exh. 1,** p.13).

On March 10, 2023, the Plaintiffs filed their FAC (Dkt. 13), which was followed by Defendants' Motion to Dismiss the FAC on April 3, 2023 (Dkt. 14). Thereafter, Defendants filed a second amended annual report on Form 1-K/A for the period ending December 31, 2021 on April 28, 2023 – only days *after* the Motion to Dismiss the FAC was filed. *See* Kons Decl. **Exh. 2**. In the revised Form

21

1-K/A for the period ending December 31, 2021 that was filed *after* to the FAC and Motion to Dismiss the FAC, the quantum of acquisition fees paid is stated to be the $530,106 figure cited in the Smith Decl., which would be below the 4% ceiling for such fees *assuming* the total acquisition cost, and REIT II's share of the total project cost, are as stated in the Smith Decl. But based on the SAC's allegations (which in turn were based on REIT II's own SEC filing (Kons Decl. **Exh. 1**), the acquisition fees paid by REIT II appear to exceed the 4% cap. Regardless of whether the acquisition fee paid was $1,280,2126 as originally stated, or $530,106, it is plausible that REIT II failed to provide a "detailed statement" of the "services performed and the amount of compensation paid" by REIT II to DiversyFund and the methodology by which the acquisition fee was calculated. The disclosures are therefore "false, misleading and/or incomplete" as alleged in the SAC.[17]

---

[17] It is plausible that the misrepresentation at issue in this litigation related to facts regarding fees and the disclosure thereof, and are not mere puffery as Defendants argue. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) "[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.' "To be misleading, a statement must be "capable of objective verification." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). For example, "puffing"—expressing an opinion rather than a knowingly false statement of fact—is not misleading. *Id.* ;*see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206–07 (9th Cir. 2016); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

For another example, with respect to the DF Summerlyn project, the allegations regarding the misrepresentation of the acquisition fees and the failure to provide a "detailed statement" of the "services performed and the amount of compensation paid", are plausible based on Defendants' own SEC filings, which Defendants now contradict. If, as alleged in the Smith Decl., the total project cost was $9,480,772.94, then the acquisition fees paid to DiversyFund would be calculated based on REIT I's share of the total project cost of $3,456,822.33 (38.33% of $9,480,772.94. But the $207,015.73 acquisition fee that REIT I allegedly paid based on the Smith Decl. is actually 5.99% of REIT I's 38.33% share of the $9,480,772.94 total project cost for DF Summerlyn, not 2.18% as alleged in the Smith Decl.  It is therefore plausible that the fee charged is above the 5.5% maximum represented, even based on the Smith Decl.  Further, the $207,015.73 figure cited in the Smith Decl. does not appear to be disclosed in any of REIT I's SEC filings, as the $540,088 is the only public fee disclosure regarding DF Summerlyn. *See* SAC ¶¶ 102-03; Kons Decl. ¶ 13; Kons Decl. **Exh. 3,** FN-11.

## VI.    **Plaintiffs Have Stated a Claim for Violations of Section 25504 of the Cal. Corp. Code.**

The Plaintiffs have properly plead a claim for secondary liability of Defendants DiversyFund, Inc., Craig Cecilio, and Alan Lewis.[18] DiversyFund, Inc.

---

[18] "Control" for purposes of section 25504 means "the possession, directly or

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

was the sponsor of REIT I and II. (SAC ¶ 10) Defendant Cecilio was the CEO of DiversyFund. (SAC ¶ 11) Defendant Lewis was Chief Investment Officer of REIT I, REIT II, and DiversyFund. (SAC ¶ 12) In these respective capacities, Defendants DiversyFund, Cecilio and Lewis each had the power to direct – and did direct – the management and policies of REIT I and II. (SAC ¶ 20)

Indeed, the Offering Circulars for both REITs list Mr. Cecilio as Chief Executive Officer and Mr. Lewis as Chief Financial Officer for the REITs, which fall squarely within the definition of § 25504. Therefore, it is entirely plausible that Defendants DiversyFund, Cecilio and Lewis are "control persons" under Cal. Corp. Code § 25504. If Plaintiffs have stated a claim for primary liability, there can be no doubt that their allegations state a claim for secondary liability against the Defendants Cecilio and Lewis.

## **CONCLUSION**

Based on the foregoing, the Rule 12(b)(1) and 12(b)(6) Motions to Dismiss should be DENIED.

Dated this July 9, 2024

/s/ Todd M. Friedman
Todd M. Friedman (SBN 216752)

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

indirectly, of the power to direct or cause the direction of the management and policies." *In re Wash. Mut., Inc., 462 B.R. 137, 141-42* (Bankr. D. Del. 2011) (quoting *Rochez Bros. Inc. v. Rhoades,* 527 F.2d 880, 890 (3d Cir. 1975)).

24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Todd M. Friedman (SBN 216752)
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow Street, Suite 205
Weatogue, CT 06089
Tel: (860) 920-5181
joshuakons@konslaw.com

LAW OFFICE OF CHRISTOPHER J. GRAY
Christopher J. Gray (*pro hac vice*)
360 Lexington Ave, 14th Floor
New York, New York 10017
Phone: (212) 838-3221
Fax: (212) 937-3139
chris@investorlawyers.net

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT

# PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On July 9, 2024, I electronically filed with the Court through its CM/ECF program and served a true copy through the same program the following documents: **PLAINTIFFS' OPPOSITION**

**TO DEFENDANTS' MOTION**

**TO DISMISS THE SECOND AMENDED COMPLAINT** on interested parties in said case as follows:

[x]    ELECTRONICALLY, Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

Place of Filing: 21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364.

Executed on July 9, 2024, at Woodland Hills, CA

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By: s/ Todd M. Friedman
                        Todd M. Friedman

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT