1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10
11  MARK FERRY, VALERIE                    Case No.: 22-cv-02001-AJB-VET
    HAMERLING, IGOR KOROSTELEV
12  and RYAN KRAUSE, on behalf of          **ORDER GRANTING IN PART AND**
    themselves and all others similarly    **DENYING IN PART DEFENDANTS'**
13  situated,                              **MOTION TO DISMISS THE**
                                           **SECOND AMENDED COMPLAINT**
14
15                         Plaintiffs,     **(Doc. No. 30)**
16  v.
17
18  DF GROWTH REIT, LLC,
    DF GROWTH REIT II, LLC,
19  DIVERSYFUND, INC., CRAIG CECILIO,
    and ALAN LEWIS,
20
21                         Defendants.
22
23      Before the Court is Defendants DF Growth REIT, LLC, DF Growth REIT II, LLC,
24  DiversyFund, Inc., Craig Cecilio, and Alan Lewis's (collectively, "Defendants") motion to
25  dismiss Plaintiffs Mark Ferry, Valerie Hamerling, Igor Korostelev, and Ryan Krause's
26  (collectively, "Plaintiffs") Second Amended Complaint ("SAC") pursuant to Federal Rules
27  of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 30.) The motion is fully briefed. (Doc.
28

Nos. 33, 34.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss with prejudice.

## I.    BACKGROUND[1]

This is a putative securities fraud class action brought by Plaintiffs against Defendants: DF Growth REIT, LLC ("REIT I"), DF Growth REIT II, LLC ("REIT II"), DiversyFund, Inc., Craig Cecilio, and Alan Lewis.

According to the SAC, REIT I and REIT II (collectively, "REITs") are "blind pool" companies that invest the proceeds of their securities offerings in real estate projects. (SAC, Doc. No. 25, ¶¶ 7, 8.) REIT I's and REIT II's offerings are permitted under SEC Regulation A, which allows companies to offer and sell securities to the public without having to register the offerings with the SEC so long as the issuer fully complies with the regulation's requirements. (*Id.*) REIT I offered such securities from 2018 to November 2021. (*Id.* ¶ 7.) REIT II offered such securities from August 2020 into 2022. (*Id.* ¶ 8.)

DiversyFund serves as the sponsor of REIT I and REIT II and owns 100% of REIT I and REIT II's manager, DF Manager, LLC ("DF Manager").[2] (*Id.* ¶ 7, 8, 10.) Cecilio and Lewis founded and own DiversyFund. (*Id.* ¶¶ 11, 12.) They also co-own DF Manager. (*Id.*) Cecilio is the Chief Executive Officer of DiversyFund and DF Manager. (*Id.* ¶ 11.) Lewis is the Chief Investment Officer of REIT I, REIT II, DiversyFund, and DF Manager. (*Id.* ¶ 12.) Plaintiffs allege Cecilio and Lewis have complete *de facto* control of REIT I and REIT II. (*Id.* ¶¶ 11, 12.)

The SAC raises two causes of action under the California Corporations Code. (*Id.* ¶¶ 178–87.) Plaintiffs allege that REIT I and REIT II violated Section 25401 of the California Corporations Code "by making statements of material fact regarding (i) the interdependency between REIT I and REIT II; (ii) the fees charged by REIT I and REIT

---

[1] The following facts are taken from the SAC and assumed true for purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

[2] DF Manager is not a named defendant.

II; (iii) the background of management; (iv) REIT I and REIT II's lack of a need to raise a minimum amount of capital; and (v) the status of REIT I and REIT II Class A Investor shares as exempt from registration." (*Id.* ¶ 180.)

As to interdependency, Plaintiffs claim that REIT I and REIT II misrepresented themselves as separate investment vehicles because "if REIT II did not co-invest in certain real estate deals alongside REIT I, the deals will fall through and REIT I will suffer a loss." (*Id.* ¶ 65.) As to fees charged, Plaintiffs allege that REIT I and REIT II represented that there would be no management fees even though REIT II did collect such fees, and that REIT I and REIT II were subject to developer and acquisition fees in excess of what Defendants represented. (*Id.* ¶¶ 74–86.) As to the management's background, Plaintiffs claim that REIT I and REIT II misrepresented their management's expertise by failing to disclose certain Securities and Exchange Commission ("SEC") investigations, as well as the California's Bureau of Real Estate's ("BRE") regulatory sanctions against Cecilio in 2017. (*Id.* ¶¶ 152–61.) As to the no-minimum-capital-amount misrepresentation, Plaintiffs allege that REIT II represented to investors that there was no minimum amount that it needed to raise, even though it needed more than the $11.3 million it had raised to be viable. (*Id.* ¶¶ 64–67, 70.) Finally, Plaintiffs claim that REIT I and REIT II misrepresented to investors that their offerings of DiversyFund Investor Shares were exempt from registration under Regulation A, when in reality, Defendants had not adhered to the requirements of Regulation A and REITs' shares were not within a valid exemption from registration. (*Id.* ¶¶ 133–51.)

The second cause of action is against DiversyFund, Cecilio, and Lewis. Plaintiffs allege that DiversyFund, Cecilio, and Lewis are each jointly and severally liable as control persons under Section 25504 of the California Corporations Code because they materially aided in REIT I's and REIT II's Section 25401 violations. Plaintiffs seek an award of rescission of the REIT I and REIT II investments purchased by the Plaintiffs and the Class. (*Id.* ¶¶ 184–87.)

For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiffs' Section 25401 cause of action with respect to alleged misrepresentations regarding (i) the interdependency between REIT I and REIT II; (ii) the excessive acquisition fees charged by REIT I and REIT II; (iii) the background of management; and (iv) REIT I and REIT II's lack of a need to raise a minimum amount of capital.

Defendants' motion to dismiss is **DENIED** as to Plaintiffs' Section 25401 claims regarding (v) REIT II's alleged misrepresentations about charging asset management fees; and (vi) the status of REIT I and REIT II Class A Investor shares as exempt from registration. Moreover, the motion is **DENIED** as to Plaintiffs' second of cause of action under Section 25504 alleging joint and several liability with respect to the two remaining alleged Section 25401 violations.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) tests whether the court has subject matter jurisdiction. Lack of Article III standing requires dismissal for want of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) that is fairly traceable to the defendant's challenged action, and (3) that is likely to be redressed by a favorable decision. *Id.*

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).[3] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient

---

[3] Unless otherwise indicated, internal citations, quotation marks, and alterations are omitted from the case citations in this Order.

as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

By contrast, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)). "If the 'existence of jurisdiction turn[s] on disputed factual issues,' and those 'jurisdictional disputes [are] not intertwined with the merits of the claim,' then 'it [falls] to the district court to resolve those factual disputes itself.'" *Bowen v. Energizer Holdings, Inc.*, No. 23-55116, 2024 WL 4352496, at *5 (9th Cir. Oct. 1, 2024) (quoting *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021)). However, "when jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)).

**B.     Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To determine the sufficiency of the complaint, the court must

assume the truth of all factual allegations and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Although a court must take all factual allegations in a complaint as true, it is not required to accept conclusory statements. *Iqbal*, 556 U.S. at 678.

## III.  DISCUSSION

Defendants move to dismiss the entirety of the SAC, arguing that: (A) Plaintiffs have failed to allege Article III standing because Plaintiffs have not pled any injuries resulting from the alleged statutory violations; and (B) Plaintiffs fail to state their Section 25401 claims because they are time-barred, implausible, and fall short of Rule 9(b)'s heightened pleading standard.

### A.    Rule 12(b)(1) – Lack of Article III Standing

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Article III standing to sue "is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id.* The Supreme Court has explained the "'irreducible constitutional minimum' of standing consists of three elements." *Id.* A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Id.* Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC*, 594 U.S. at 431.

At issue is whether Plaintiffs have alleged an "injury in fact," the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"

1   *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Defendants

2   contend that Plaintiffs have not pled injuries resulting from each of the alleged statutory

3   violations. (Motion to Dismiss ("Mot."), Doc. No. 30-1, at 9, 14.) In response, Plaintiffs

4   state that they have "properly plead damages and other actionable injuries throughout the

5   [S]AC." (Opposition ("Opp'n"), Doc. No. 33, at 14.) The Court will consider whether

6   Plaintiffs have Article III standing to assert each of the five alleged misrepresentations.

### 1.    Misrepresentation re Interdependency between REITs I and II

8        Plaintiffs allege that "investors who invested in REIT I after the REIT II Offering

9   commenced . . . would have been misled by Defendants' misstatements as to the

10  interdependence of the two REITs." (SAC ¶ 72.) In November 2021, Defendants' website

11  included a question and answer section that read: "Will launching REIT II impact my

12  original REIT investment in any way? No, REIT I will not be impacted by REIT II in any

13  way." (*Id.*) Plaintiffs contend that in May 2022, "REIT I disclosed that in 2021 it had paid

14  $32,456 to Lex Nova for legal services to REIT II," (*id.*), implying that REIT I paid REIT

15  II's legal fees. However, the SAC does not allege that the misrepresentation existed at the

16  time when the named Plaintiffs invested in REIT I and REIT II,[4] that any named Plaintiff's

17  REIT I or REIT II investment decreased in value as a result, or that any named Plaintiff

18  was specifically harmed by the misrepresentations. Because Plaintiffs do not allege any

19  concrete injury traceable to a misrepresentation regarding the interdependency between

20  REIT I and REIT II, Plaintiffs have not satisfied Article III standing. *See Weiss v. NNN*

21  *Cap. Fund I, LLC*, No. 14-CV-2689-H-NLS, 2015 WL 11990929, at *5 (S.D. Cal. Apr. 3,

---

[4] Plaintiff Ferry invested in REIT I in June 2020 and between July 2020 and January 2021, (SAC ¶ 6(a)), and Plaintiff Hamerling invested in REIT I in June and August 2021, (*id.* ¶ 6(b)). The SAC alleges that Plaintiffs Korostelev and Krause "invested over $500 in DiversyFund Investor Shares [defined as including both REIT I and REIT II] between 2018 and the present" without specifying exactly when Korostrelev and Krause invested, or whether they invested in REIT I, REIT II, or both. (*Id.* ¶ 6 (c)–(d).) Defendants argue that because the Court cannot assume facts not alleged, the Court cannot assume that Plaintiffs Korostelev and Krause are REIT II investors. (Mot. at 17 n.8.) Plaintiffs neither respond to Defendants' arguments, nor do Plaintiffs clarify when Korostelev and Krause invested, and whether it occurred after the alleged misrepresentation. (*See generally* Opp'n.)

2015) (dismissing Section 25401 claim where plaintiff's complaint failed to establish that he suffered an injury traceable to Defendants' actions).

### 2. Misrepresentation re No Minimum Capital Amount Required

REIT II's offering materials represented that REIT II's Regulation A offering "has no minimum amount" it needed to raise such that it would "begin to deploy (spend) the money we raise right away, no matter how much or how little we raise." (SAC ¶ 64.) Plaintiffs allege that, contrary to its representation, REIT II "did in fact have minimum capital needs, and needed to raise far more than the total of $11.3 million it in fact raised (before the SEC suspended REIT II's offering on March 16, 2022) in order to be viable." (*Id.* ¶ 69.) The SAC additionally alleges:

> [C]ontrary to the 'no minimum amount' representations, REIT II did in fact languish without access to additional investor capital–thereby causing the REIT II investors significant actual injury to the funds that were invested. REIT II incurred net losses of $1,829,170 in 2022, the last year for which its audited financial reports are presently available."

(*Id.* ¶ 73.)

Defendants argue that Plaintiffs are merely speculating the loss was caused by an inability to raise new investor capital after the SEC suspended REIT II's Regulation A exemption. (Mot. at 16.) Further, Defendants assert Plaintiffs' speculation is factually incorrect, and that "[m]ost of the $1,829,170 [loss] was simply depreciation on real property, a 'paper loss' that yields 'tax benefits' in the short term, and will never be realized if the property is sold at a profit as expected." (*Id.* (citing Declaration of Kevin Smith ("Smith Decl."), Doc. No. 30-2, ¶ 5; Doc. No. 30-10.)) REIT II's publicly available, audited 2022 annual report states that the $1,820,170 net loss is comprised of general and administrative expenses, fund management expenses, and unrealized investment loss. (Doc. No. 30-10 at 19.) Plaintiffs do not dispute the accuracy of REIT II's 2022 annual

report, or the content of the Smith Declaration that the property, if sold, would earn a profit as anticipated. (*See generally* Opp'n.)

Because Plaintiffs do not counter Defendants' jurisdictional factual attack, *see Safe Air*, 373 F.3d at 1039, and do not allege facts showing that the REIT II's net loss is traceable to Defendants' "no minimum amount" misrepresentations, Plaintiffs have not satisfied their burden of demonstrating Article III standing to bring a claim regarding the "no minimum amount" representation. *See Weiss*, 2015 WL 11990929, at *5.

### 3.    Misrepresentation re Fees Charged by REIT I and REIT II

The Court previously found that Plaintiffs adequately pled Article III standing in the First Amended Complaint with respect to misrepresentations concerning REIT II's management fees and REIT I's and REIT II's excessive developer and acquisition fees because Plaintiffs alleged that they suffered monetary harm traceable to REIT I's and REIT II's conduct that can likely be redressed by a favorable decision. (*See* Doc. No. 23 at 7–9.)

In response to the SAC, Defendants raise two additional jurisdictional challenges to Plaintiffs' allegations that Defendants misrepresented the nature and amount of fees charged. First, Defendants bring a facial standing challenge to Plaintiff Hamerling's allegations that DiversyFund's website misrepresented that REIT II would not charge asset management fees when she alleges it did. (Mot. at 17.) Second, Defendants factually attack Plaintiffs' allegations that REIT I and REIT II charged exorbitant acquisition and developer fees. (*Id.* at 18–19.)

### i.    Asset Management Fees

Plaintiffs allege that at the time Hamerling invested in REIT II, DiversyFund's website (DiversyFund.com) stated that DiversyFund had "no management fees." (SAC ¶¶ 62, 63, 74, 80, 81, 85.) Yet, Plaintiffs assert the advertisement was false because REIT II's Form 1-K disclosed, "[f]or the periods ending December 31, 2022, and December 31, 2021, REIT II paid $212,813 and $166,519 in asset management fees" to DiversyFund. (*Id.* ¶ 80.)

Defendants make two arguments in support of dismissing Hamerling's claim. First, Defendants argue "[a] plaintiff who cared about fees could not decide to invest upon being told one fee was not present: they would have to see what other fees exist, at what levels, to decide if fees are acceptable." (Mot. at 17.) Second, Defendants assert that Hamerling's allegations are impermissibly contradictory. (*Id.* at 18.) Specifically, Hamerling appears to rely exclusively on Defendants' website's "no management fees" statement in support of her management fees claim, but then relies on Defendants' fee disclosures in support of her separate claim regarding excessive acquisition and developer fees. (*Id.*; *see* SAC ¶ 25.) The fee disclosures state that DiversyFund is entitled to charge an annual management fee equal to 2% of the capital raised from the sale of Class A investor shares for REIT II. (Mot. at 18.) Defendants argue "[s]he cannot claim she was duped by both [Defendants' website and its fee disclosures]." (*Id.*) Plaintiffs respond that to state a Section 25401 claim, Plaintiffs need not plead reliance. (Opp'n at 17 (citing *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC, 2014 WL 1153054, at *10 (C.D. Cal. Mar. 11, 2014) ("Section 25401 differs from common law negligent misrepresentation in that: (1) proof of reliance is not required . . . .")).) Plaintiffs assert that because the SAC alleges Defendants charged Hamerling management fees in contravention of Defendants' representations, Plaintiffs have demonstrated a concrete injury of monetary harm that is traceable to REIT II's conduct and can likely be addressed by a favorable decision. (*Id.* at 15–16.)

Plaintiffs have satisfied Article III standing to bring a claim against REIT II. Defendants present no support for the contention that a "plaintiff who cared about fees could not decide to invest upon being told one fee was not present." (Mot. at 17.) Further, Defendants' argument that Hamerling cannot be "duped" by both DiversyFund's website and REIT II's fee disclosures is belied by Plaintiffs' Section 25401 claim and actual allegations. As an initial matter, Plaintiffs need not plead reliance to state a Section 25401 claim. *See Brady v. Dairy Fresh Prod. Co.*, 974 F.2d 1341 (9th Cir. 1992). And in fact, Hamerling does not—the SAC does not allege that Hamerling relied on REIT II's fee disclosures prior to investing. (*See* SAC ¶¶ 126–30.) Because the SAC indicates that REIT

II charged Plaintiffs management fees even though REIT II represented it would not, Plaintiffs have demonstrated a recognizable concrete injury of monetary harm that is traceable to REIT II's conduct and can likely be redressed by a favorable decision. *See TransUnion*, 549 U.S. at 437. Accordingly, Plaintiffs have Article III standing to bring their management fees misrepresentation claim against REIT II.

Although Plaintiffs allege REIT I also misrepresented that there would be no management fees, (SAC ¶ 74), the SAC does not allege that any such fees were ever collected from REIT I. Because the risk of future harm on its own does not support Article III standing, Plaintiffs have not established a concrete harm from this alleged misrepresentation. *See TransUnion*, 594 U.S. at 441. Accordingly, Plaintiffs do not have Article III standing to bring the no-management-fees claim against REIT I. (*See* Doc. No. 23 at 8.)

### ii.    Acquisition & Developer Fees

Plaintiffs also allege REIT I and REIT II paid acquisition and developer fees to DiversyFund that exceeded the maximum amount Defendants disclosed would be paid— generally no more than 8% of REIT I's share of any project's total cost, and no more than 4% of REIT II's share of any project's cost. (SAC ¶¶ 49–50, 58, 61–62, 86, 90, 91.) Specifically, Plaintiffs allege Defendants overcharged acquisition and developer fees in four investment projects: (1) REIT I's project, DiversyFund Park Blvd, LLC ("Park Boulevard"), (*id.* ¶ 52); (2) REIT I's project, DF Summerlyn, LLC ("DF Summerlyn"), (*id.* ¶¶ 102–03); (3) REIT I's project, McArthur LG, LLC ("McArthur LG"), (*id.* ¶¶ 107–08); and (4) REIT II's project, NCP Dove, LLC ("NCP Dove"), (*id.* ¶¶ 59–62).

The Court previously found Plaintiffs satisfied Article III standing to bring their claim because Plaintiffs alleged they suffered monetary harm from the overcharges that is traceable to REIT I's and REIT II's conduct and can likely be redressed by a favorable decision. (*See* Doc. No. 23 at 7.) Now, Defendants bring a factual attack, contending Plaintiffs "seem to have misread the REITs' disclosures, confusing one type of cost for another and single investor projects for multiple investor projects; failing to account for

leverage in calculating percentages; etc." (Mot. at 19.) Defendants assert that for each of the four projects, "the fees assessed were within the range investors had been told would be assessed." (*Id.*) The Court addresses Defendants' arguments with respect to each of the four projects.

**Park Boulevard** – Citing a May 2019 SEC disclosure, Plaintiffs allege REIT I paid approximately $1.25 million in developer fees on a $5 million investment in Park Boulevard, where REIT I was a 52.62% equity owner in the project, violating Defendants' representation that developer fees should "not exceed 6%–8% of the Company's share of the total project cost." (SAC ¶¶ 52, 90, 92–94.) Defendants assert the $1.25 million developer fee in the May 2019 disclosure represents a projection of DiversyFund's overall developer fees from all investors over the life of the project, rather than a disclosure of a fee actually assessed against REIT I. (Mot. at 19.) Defendants insist "no such fee was assessed." (*Id.*; *see also* Smith Decl. ¶ 6(b)–(c).) Plaintiffs do not dispute Defendants' contention, nor do Plaintiffs present any affidavit or evidence to support a finding of subject matter jurisdiction. (*See generally* Opp'n.) Accordingly, Plaintiffs have not satisfied their burden to demonstrate that they have suffered an injury in fact to establish Article III standing for Park Boulevard. *See Savage*, 343 F.3d at 1040 n.2.

**DF Summerlyn** – REIT I's 2019 annual report disclosed that in connection with the acquisition of DF Summerlyn, DiversyFund "is entitled to receive up to 5.5% of the total project cost including acquisition price, construction, or capital expenditure budget and insurance and carrying costs." (SAC ¶ 102.) Plaintiffs allege that the $540,088 acquisition fee DiversyFund received for REIT I's $1,324,500 investment in DF Summerlyn exceeded the 5.5% of the total project cost to which it was entitled. (*Id.* ¶¶ 102–03.) Defendants argue that Plaintiffs conflate "total project cost" with the project's equity investment and purchase price, but that "total project cost"—which includes acquisition price, construction, insurance and carrying costs—necessarily exceeds the project's initial investment. (Mot. at 20.) Defendants also assert REIT I only paid $207,015.73 in acquisition fees on the DF Summerlyn project, which Defendants initially calculated as

"2.18% of REIT I's 38.33% share of the $9,480,772[.]94 total project cost for DF Summerlyn." (Smith Decl. ¶ 6(c).) Plaintiffs dispute the accuracy of Defendants' calculation, (Opp'n at 19), and Defendants later submitted that $207,015.73 equals 2.18% of the $9,480,772.94 total cost of the project (without accounting for REIT I's share), (Second Declaration of Kevin Smith ("Second Smith Decl."), Doc. No. 34-1, ¶ 4).

The merits of Plaintiffs' misrepresentation claim depend on whether Defendants paid more in acquisition fees to DiversyFund than what was disclosed to Plaintiffs. The Court finds the parties' disputes as to the amount of acquisition fees paid, the amount paid by any one Defendant, and the total project costs are intertwined with the merits of Plaintiffs' misrepresentation claim. *See Energizer Holdings, Inc.*, 2024 WL 4352496, at *5 ("[J]urisdictional issue[s] and substantive issues are deemed intertwined [when] the question of jurisdiction is dependent on the resolution of factual issues going to the merits.") (quoting *Safe Air*, 373 F.3d at 1039). "[W]hen a court is faced with a factual attack on standing . . . the court must leave the resolution of material factual disputes to the trier of fact when the issue of standing is intertwined with an element of the merits of the plaintiff's claim." *Id.* at *6. Based on the evidence presented to date, Plaintiffs continue to have standing to bring their misrepresentation claim regarding DF Summerlyn. However, for the reasons discussed below, Plaintiffs' failure to plead DF Summerlyn's total project cost does not meet Rule 9(b)'s heightened pleading standard.

**McArthur LG** – Plaintiffs allege that the $549,842 acquisition fee DiversyFund received for a $5,255,302 investment in the McArthur LG project "appears to exceed" the 5.5% of the total project cost to which it was entitled. (SAC ¶¶ 107–08.) Defendants again assert that Plaintiffs have not alleged the total project cost of McArthur LG, which differs from the initial investment, so Plaintiffs are only speculating as to whether the acquisition fees paid to DiversyFund exceed the disclosed percentage of the total project cost. (Mot. at 20–21.) Additionally, in a sworn declaration, Defendants present that the actual acquisition fee constituted 5.17% of the total project cost. (Smith Decl. ¶ 6(c)(iv).) Plaintiffs do not dispute Defendants' contention, nor do Plaintiffs present any affidavit or evidence to

support their claim. (*See generally* Opp'n.) Accordingly, Plaintiffs have not satisfied their burden of demonstrating Article III standing to bring a claim regarding excessive developer fees with respect to the McArthur LG project. *See Weiss*, 2015 WL 11990929, at *5.

**NCP Dove –** Plaintiffs allege that in REIT II's 2021 annual report, REIT II reported paying "$1,280,2126 [sic]" in acquisition fees to DiversyFund in conjunction with the NCP Dove project, (SAC ¶¶ 61, 130), in which REIT II invested $5,014,216.07, (*id.* ¶ 62). Plaintiffs assert that "$1,280,2126 [sic]" in acquisition fees on a $5,014,216.07 investment "cannot have equaled less than 4% of REIT II's share of the project expenses," (*id.*), the maximum percentage permitted in REIT II's disclosures. On April 28, 2023, after this litigation commenced, REIT II amended its 2021 annual report to reflect a reduction in the reported acquisition fees for the NCP Dove project from "$1,280,2126 [sic]" to $530,106. (Opp'n at 11; *see* Mot. at 20.) Defendants argue that Plaintiffs' allegation is based on "speculation from a typo" and that $530,106 in acquisition fees "on a 31.07% share in the $46,370,000 cost for NCP Dove . . . is 3.68% . . . , well within the 4% allowed." (Mot. at 20 (citing Smith Decl. ¶ 6(b)–(c); Doc. No. 30-6).) Plaintiffs question the accuracy of Defendants' reporting, responding that Defendants' evidence is based on "unspecified business records." (Opp'n at 14.) Other than Defendants' amended 2021 annual report that reflects a reduction in NCP Dove's acquisition fees from "$1,280,2126 [sic]" to $530,106, Defendants do not present any other evidence or business records elucidating the basis for the typo in REIT II's disclosures, or the corrected figure.

The Court finds the parties' disputes as to the amount of acquisition fees paid, the amount paid by any one Defendant, and the total project costs are intertwined with the merits of Plaintiffs' misrepresentation claim. *See Energizer Holdings, Inc.*, 2024 WL 4352496, at *5. Based on the evidence presented to date, Plaintiffs continue to have standing to bring their misrepresentation claim regarding NCP Dove. However, for the reasons discussed below, Plaintiffs' failure to plead NCP Dove's total project cost does not meet Rule 9(b)'s heightened pleading standard.

/ / /

### 4.     Misrepresentation re Management's Background and Expertise

Plaintiffs allege that REIT I and REIT II misrepresented their management's expertise by failing to disclose certain SEC investigations into DiversyFund, as well as the 2017 BRE regulatory sanctions against DiversyFund's CEO, Cecilio. (SAC ¶¶ 152–61.) Plaintiffs allege that "in the absence of material negative information that rendered Defendants' statements false and misleading," Plaintiffs "have suffered injury by being dispossessed of the funds that they were induced to invest in DiversyFund Investor Shares." (*Id.* ¶¶ 165, 169.) Defendants argue that Plaintiffs' allegations of harm are conclusory and hypothetical, and that "[i]f the parting from investment funds were enough, every investor would automatically have standing for any theory under the sun." (Mot. at 15.)

To satisfy the "concrete injury" requirement of Article III standing, Plaintiffs can allege physical or monetary injuries, as well as "[v]arious intangible harms." *TransUnion LLC*, 594 U.S. at 425. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. In the context of securities fraud, courts have traditionally recognized harm to an investor at the time the investor enters a transaction. *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir. 1987) ("In a securities fraud case, the cognizable injury occurs at the time an investor enters, or if he currently owns stock, decides to forego entering a transaction as a result of material misrepresentations. This constitutes the injury giving rise to a cause of action, even if an actual monetary loss is not sustained until later.") Plaintiffs allege that Defendants' omissions induced Plaintiffs to invest in DiversyFund Investor Shares, which led them to enter a transaction, transforming their cash into a more "illiquid" form "of REIT I and REIT II" shares. (SAC ¶ 164.) Plaintiffs seek recission to recoup the funds they paid for the shares, in exchange for their shares. (*Id.* ¶¶ 183, 187.) Accordingly, Plaintiffs have alleged a concrete injury to satisfy Article III standing to pursue their misrepresentation claim regarding Defendants' failure to disclose the SEC investigations into DiversyFund and the BRE sanctions against Cecilio. However, for the reasons discussed below, Plaintiffs' claim centered on BRE's 2017 sanctions against Cecilio are

22-cv-02001-AJB-VET

time-barred. Additionally, Plaintiffs' claims regarding undisclosed SEC investigations fail to satisfy the heightened Rule 9(b) pleading standard.

### 5. Misrepresentation regarding REIT I's and REIT II's Exemptions from Registration

Plaintiffs allege that REIT I and REIT II repeatedly misrepresented to the SEC and to the public that their offerings fell within the Regulation A exemption under 17 C.F.R. 230.251 *et seq.*, when instead, both REIT I and REIT II were illegally offered and sold without any applicable offering exemption. (SAC ¶¶ 13, 133–136, 138.) Defendants' alleged violations precipitated two SEC investigations, culminating in the SEC permanently suspending the REIT II offering. (*Id.* ¶¶ 37–39, 138; *see also* Doc. No. 25-2). Plaintiffs allege that Defendants' violations led to the premature termination of REIT II, which "caused REIT II to incur significant costs and losses totaling over $1 million as of February 10, 2023." (SAC ¶¶ 139, 144.) Plaintiffs also purport to have suffered an actual, concrete injury as a result of REIT I and REIT II's misrepresentation "in that they parted with their funds and were charged fees thereon in reliance on DiversyFund Investor Shares being exempt from registration . . . ." (*Id.* ¶ 150.) Plaintiffs allege "[g]iven the illiquid nature of the DiversyFund investments, a favorable decision in this litigation ordering recission would provide the Plaintiffs and the Class the redress they require by returning their funds to them in exchange for their shares." (*Id.* ¶ 151.)

Defendants argue Plaintiffs' allegations are conclusory and hypothetical and that parting with funds is insufficient to allege a concrete injury. (Mot. at 15–16.) Defendants also assert "[t]he REITs had no resulting injury from securities counsel's errors [regarding Defendants' noncompliance with Regulation A], and are doing well." (*Id.* at 16.) Specifically, Defendants contend the SAC's allegation that "costs and losses, totaling over $1 million to date," (SAC ¶ 144), "were all paid by DiversyFund, not the REITs," and that any harm stemming from the SEC's investigation and actions taken against the REITs "were suffered by DiversyFund (and . . . its principals, Mr. Cecilio and Mr. Lewis)." (Smith Decl. ¶¶ 3–4.)

Plaintiffs have Article III standing to bring this claim. At the time of the alleged misrepresentation that REIT I and REIT II were exempt from Regulation A, Plaintiffs "parted with their funds and were charged fees thereon." (*Id.* ¶ 150.) Plaintiffs' allegations that they parted with their funds and entered a transaction based on a misrepresentation constitute a concrete injury in a securities fraud case to satisfy standing. *See Volk*, 816 F.2d at 1412. Accordingly, Plaintiffs have alleged a concrete injury to satisfy Article III standing to pursue their misrepresentation claim regarding the REITs' registration exemption.

\* \* \*

In evaluating Article III standing, the Court finds Plaintiffs have not sufficiently alleged an injury in fact as to their claims alleging misrepresentations about the interdependency of REIT I and REIT II, no minimum amount required to meet capital needs for REIT II, no management fees for REIT I, and excessive acquisition and developer fees for Park Boulevard and McArthur LG. *See Spokeo*, 578 U.S. at 338 ("Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."). Accordingly, the Court **DISMISSES** these claims for lack of Article III standing **WITH LEAVE TO AMEND**.

Because Plaintiffs have adequately pled Article III standing with respect to the alleged misrepresentations concerning excessive acquisition and developer fees for DF Summerlyn and NCP Dove, as well as management fees for REIT II, management's background and expertise, and failure to adhere to Regulation A, the Court **DENIES** the motion to dismiss these claims on constitutional standing grounds.

### B.      Rule 12(b)(6) – Failure to State a Claim

Defendants additionally argue that Plaintiffs' remaining claims should be dismissed under Rule 12(b)(6) because Plaintiffs' claims are barred by the statute of limitations, Plaintiffs do not plead their misrepresentation claims with the particularity required by Rule 9(b), and that the alleged misrepresentations are immaterial and implausible.

/ / /

/ / /

17

### 1.    Statute of Limitations

California Corporations Code Section 25506 stipulates that Section 25401 claims must be "brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall expire first." Cal. Corp. Code § 25506. "[I]inquiry notice is sufficient to trigger the running of the limitations period under section 25506." *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 423 (2006). "Inquiry notice arises in a securities action when circumstances suggest to an investor of ordinary intelligence the possibility that he has been defrauded." *Id.* at 428. These circumstances can include "whenever there are 'any financial, legal, or other data, such as public disclosures in the media about the financial condition of the corporation' that would tend to alert a reasonable person to the likelihood of fraud." *Id.* (quoting *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1114 (C.D. Cal. 2003)).

Here, because Plaintiffs filed their initial complaint on December 16, 2022, (*see* Doc. No. 1), Plaintiffs can only bring claims first noticeable on or following December 16, 2020. *See* Cal. Corp. Code § 25506. Defendants take issue with the timeliness of each of Plaintiffs' remaining claims. (Mot. at 21–23.) Plaintiffs respond that all of their claims were brought within two years of the time when they could have discovered them—and within five years after the REITs' offerings began—making all claims timely. (Opp'n at 7.)

### i.    Asset Management Fees

Defendants assert that REIT II's December 3, 2020, Offering Circular stated that REIT II would charge "an asset management fee equal to 2%" and other fees, (Mot. at 22; Doc. No. 30-5), placing Plaintiffs on inquiry notice that REIT II would charge management fees. Yet, Plaintiffs allege that Defendants' website stated, "no management fees" "through 2020 and most of 2021," (SAC ¶ 79), and REIT II did not charge management fees until August 2021, (*id.* ¶ 80). At issue is at what point a reasonably prudent investor would have been on inquiry notice that Defendants possibly engaged in fraud. *Deveny*, 139 Cal. App. 4th at 423. If REIT II's December 2020 Offering Circular put Plaintiffs on inquiry notice

18

of potential fraud, then Plaintiff Hamerling's claim is time-barred because Plaintiffs filed their complaint more than two years after December 3, 2020. However, if an investor reasonably relied on Defendants' website, and would not have been on notice until Defendants charged REIT II management fees, then Plaintiff Hamerling's claim is timely. "The question of what a reasonably prudent investor should have known is particularly suited to a jury determination." *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir. 2005). Accordingly, the Court **DENIES** the motion to dismiss Plaintiffs' claims regarding the management fees charged by REIT II as untimely at the motion to dismiss stage.

### ii.    **Excessive Acquisition Fees**

Defendants do not dispute the timeliness of Plaintiffs' claim regarding excessive acquisition fees paid in conjunction with NCP Dove. (Mot. at 21–23.) The only remaining claim regarding excessive acquisition fees Defendants contend is time-barred relates to DF Summerlyn. Plaintiffs allege that in the Form 1-K annual report for the 2019 fiscal year, dated June 16, 2020, REIT I disclosed that DiversyFund received $540,088 in connection with the acquisition of DF Summerlyn, which Plaintiffs assert "appears to exceed the 5.5% of REIT I's share of the total project cost" given the initial $1,324,500 investment in DF Summerlyn. (SAC ¶ 99, 102–03.)

Defendants argue that the statute of limitations prevents Plaintiffs from raising a substantive claim of excessive fees based on June 2020 disclosures about DF Summerlyn. (Mot. at 22.) Plaintiffs respond that the offering circulars, stipulating that the REITs "will be entitled to receive from the Project Entity the fees described," "would not have alerted a reasonable investor to the probability that DiversyFund had collected more than the maximum percentages of the REIT[s'] share of the total project cost set forth in the REITs' SEC filings more than two years before Plaintiffs' claims were filed[.]" (Opp'n at 9.) Given that Plaintiffs filed their claim within 5 years of the alleged overcharge, and "[t]he question of what a reasonably prudent investor should have known is particularly suited to a jury

determination," *Mosesian*, 727 F.2 at 879, the Court **DENIES** the motion to dismiss Plaintiffs' claim regarding DF Summerlyn's acquisition fees as untimely.

### iii.    Management's Background & Expertise

Defendants assert, and Plaintiffs do not dispute, that Plaintiffs are time-barred from bringing a misrepresentation claim related to BRE's 2017 regulatory sanctions against Defendant Cecilio because Plaintiffs were on inquiry notice since 2017, when the sanctions became public on the California Department of Real Estate's website. (Mot. at 22 (citing Smith Decl. ¶ 2; Doc. No. 30-9).) Because Plaintiffs did not file their original complaint until 2022, beyond the two-year inquiry notice limitations period, *see* Cal. Corp. Code § 25506, the Court dismisses Plaintiffs' claim regarding Defendants' failure to disclose the 2017 BRE sanctions against Cecilio. Defendants do not challenge the timing of Plaintiffs' misrepresentation allegations regarding Defendants' nondisclosure of the SEC investigation ("SEC Investigation No. LA-5069") into DiversyFund, (SAC ¶¶ 30, 155–161), so that portion of Plaintiffs' misrepresentation claim is not time-barred.

### iv.    Failure to Adhere to Regulation A

Defendants do not dispute that Plaintiffs' misrepresentation claim regarding REIT I's failure to comply with Regulation A is timely. However, Defendants argue that REIT II's December 2020 Offering Circular warned investors that although the securities were "offered pursuant to an exemption from registration," the SEC "has not made an independent determination that the securities offered hereunder are exempt." (Mot. at 23 (quoting Doc. No. 30-5 at 3).) Plaintiffs respond that they could not have learned of REIT II's alleged violations of Regulation A until May 3, 2022, when REIT II disclosed in its public SEC filings that its offering was not within a valid exemption from registration. (*Id.* at 14.) Given that Plaintiffs filed their misrepresentation claim within 5 years of Defendants' alleged failure to disclose noncompliance with SEC Regulation A, and "[t]he question of what a reasonably prudent investor should have known is particularly suited to a jury determination," *Mosesian*, 727 F.2 at 879, the Court **DENIES** the motion to dismiss Plaintiffs' claim regarding Defendants' noncompliance with Regulation A.

* * *

The Court finds the two-year inquiry notice limitations period prevents Plaintiffs from bringing a misrepresentation claim related to Defendants' failure to disclose BRE's 2017 regulatory sanctions against Cecilio. Accordingly, the Court **DISMISSES** this claim as time-barred. Plaintiffs' misrepresentation claims regarding REIT II's management fees, REIT I's and REIT II's excessive acquisition fees, nondisclosure of SEC Investigation No. LA-5069, and failure to adhere to Regulation A, are timely.

### 2.    Plausibility & Particularity

The Parties dispute whether Federal Rule of Civil Procedure 9(b) applies to Plaintiffs' Section 25401 misrepresentation claims. Rule 9(b) stipulates, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b); *see also In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) ("[I]f a plaintiff chooses to allege in the complaint that the defendant has engaged in fraudulent conduct, then the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).") (internal quotation marks and citation omitted). Defendants assert that Plaintiffs have not pled their Section 25401 claims with particularity to meet the Rule 9(b) standard. (Mot. at 13, 20, 31.) Plaintiffs counter that there is a split of authority as to whether the Rule 9(b) applies to Section 25401 claims and that the Court should apply Rule 8(a). (Opp'n at 22.) Plaintiffs further assert that even if Rule 9(b) applies, Plaintiffs' allegations are sufficient. (*Id.*) The Court first addresses whether Plaintiffs' Section 25401 claims are subject to Rule 9(b) and then whether Plaintiffs have adequately pled the Section 25401 claims under the applicable standard.

### i.    Rule 9(b)'s Applicability to Cal. Corp. Code § 25401 Claim

Ninth Circuit precedent does not directly address whether Rule 9(b) applies to Section 25401 claims. Moreover, district courts have diverged in requiring Section 25401 claims to meet the Rule 9(b) pleading requirements depending on whether the claim sounds in fraud or in negligence. *Compare SIC Metals, Inc. v. Hyundai Steel Co.*, No. SACV1800912CJCPLAX, 2018 WL 6842958, at *4 (C.D. Cal. Nov. 14, 2018) ("As with

all claims sounding in fraud, section 25401 claims for fraudulent conduct are subject to Rule 9(b)'s heightened pleading standards."), *and Yee v. NIVS IntelliMedia Tech. Grp.*, No. CV1108472DMGAJWX, 2012 WL 12886829, at *1 (C.D. Cal. Sept. 7, 2012) (requiring plaintiff to meet Rule 9(b) pleading standard for Section 25401 claim because "[b]y requiring a false statement or material omission, section 25401 'concern[s] the *fraudulent* sale of securities'" (quoting *Stewart v. Ragland*, 934 F.2d 1033, 1047 (9th Cir. 1991) (emphasis added)), *and Olenicoff v. UBS AG*, No. SACV081029AGRNBX, 2009 WL 481281, at *6 (C.D. Cal. Feb. 24, 2009) (dismissing Section 25401 claim where plaintiffs failed to meet Rule 9(b) pleading requirement), *with Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC, 2014 WL 1153054, at *6 (C.D. Cal. Mar. 11, 2014) ("Claims alleging a violation of Section 25401 need not satisfy Rule 9(b) if grounded on only negligent behavior."), *and Openwave Sys. Inc. v. Fuld*, No. C 08-5683 SI, 2009 WL 1622164, at *4 (N.D. Cal. June 6, 2009) (Section 25401 claim need not comply with Rule 9(b) because complaint alleged negligent behavior, not fraudulent conduct). Even if fraud is not an element of a claim, if the complaint "sounds in fraud," Rule 9(b) applies. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

Here, because Plaintiffs' claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard. *See Hayes v. Scherer*, No. 821CV00389SSSADSX, 2023 WL 5507072, at *3 (C.D. Cal. July 3, 2023). The Court finds the reasoning in *Hanna v. Sierra Network, Inc.*, No. CV 19-211 DSF (FFMX), 2019 WL 12361302, (C.D. Cal. Apr. 1, 2019), persuasive. The *Hanna* court determined, "[b]ecause Plaintiff has asserted Individual Defendants violated California's securities laws when they made false statements and withheld material information, the claim sounds in fraud. Therefore, Plaintiff's complaint must satisfy Rule 9(b)." 2019 WL 12361302, at *4. Similarly, here, Plaintiffs base their Section 25401 misrepresentation claims on allegations that Defendants made false and misleading statements of material fact, which sound in fraud. (SAC ¶¶ 20, 67, 69,72, 80, 98, 104, 114, 117, 122, 125, 165, 169, 180, 181.) Additionally, both *Openwave Systems, Inc.* and *Cutler*, which declined to apply Rule 9(b) to Plaintiffs' section

25401 claims, are distinguishable. There, the complaints only alleged defendants' negligence, not fraud. *Openwave Sys. Inc.*, 2009 WL 1622164, at *4; *Cutler*, 2014 WL 1153054, at *6. Because Plaintiffs' claims sound in fraud, Rule 9(b)'s heightened pleading standard applies. *See Vess*, 317 F.3d at 1103–04; *see also Hollifiel v. Resolute Cap. Partners Ltd., LLC*, No. 2:22-CV-07885-SB-RAO, 2023 WL 4291524, at *7 (C.D. Cal. May 12, 2023).

### ii.    Whether Plaintiffs' Section 25401 Claims Satisfy Rule 9(b)

"To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

### a.    Asset Management Fees

Plaintiffs satisfy their burden under Rule 9(b) to allege a violation of Section 25401 with respect to DiversyFund's website's representation that REIT II charged "no management fees." Plaintiffs allege that "as least as late as November 30, 2021," DiversyFund's website represented REIT II had "no management fees," when "[f]or the periods ending December 31, 2022 and December 31, 2021, the Company [REIT II] paid $212,813 and $166,519 in asset management fees to the Sponsor [DiversyFund]." (SAC ¶¶ 80, 85.) Plaintiffs further allege that "[i]t was only in December 2021, after the SEC called the inaccuracy of its website to DiversyFund's attention, that DiversyFund removed the 'no management fees' representations from its website." (*Id.* ¶ 82.) Additionally, Plaintiffs identify that Plaintiff Hamerling was dispossessed of her investment funds "under the auspices of the 'no management fee' misrepresentations," even though she was later "charged asset management fees." (*Id.* ¶ 84.) These allegations specify the "who, what, when, where, and how" of the alleged fraudulent statement, as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *See Cafasso, U.S. ex rel.* 637 F.3d at 1055. Accordingly, Plaintiffs have met the Rule 9(b) pleading burden to allege a claim against REIT II's "no management fees" misrepresentation.

### b. Acquisition Fees

Plaintiffs' allegations that Defendants received inflated acquisition fees for projects DF Summerlyn and NCP Dove fall short of Rule 9(b)'s pleading requirements. In both instances, Plaintiffs conflate Defendants' initial project investments with overall project costs. With respect to DF Summerlyn, REIT I disclosed that DiversyFund is "entitled to receive up to 5.5% of the total project cost." (SAC ¶ 102.) Plaintiffs allege that REIT I invested $1,324,500 into DF Summerlyn, so "the $540,088 acquisition fee appears to exceed 5.5% of REIT I's share of the total project." (*Id.* ¶ 103.) Plaintiffs do not plead the actual or estimated total project cost of DF Summerlyn—Plaintiffs only plead the initial $1,324,500 investment. (*See id.*) Accordingly, the Court is unable to infer that DF Summerlyn's $540,088 acquisition fee exceeds "5.5% of the total project cost." (*Id.* ¶¶ 102–03.)

Plaintiffs similarly do not plead NCP Dove's total project costs. REIT II represented that DiversyFund would charge an acquisition fee "between 1% and 4% of the total project costs." (*Id.* ¶ 129.) Plaintiffs plead that REIT II invested $5,014,216.06 into NCP Dove, so REIT II's disclosure that it "paid $1,280,2126 [sic] in acquisition fees" to DiversyFund "cannot have equaled less than 4% of REIT II's share of the property purchase price." (*Id.* ¶¶ 129, 130.) The SAC conflates "property purchase price" with "total project costs." (*Id.*) Because the SAC does not allege the actual or estimated total project costs of NCP Dove, the Court is unable to discern whether the acquisition fees exceed "4% of the total project costs." (*Id.* ¶ 129.) Further, Plaintiffs concede that REIT II's amended 2021 annual report revised NCP Dove's acquisition fees for the yearly period ending December 31, 2021, from "$1,280,2126 [sic]" to $530,106, which is "below the maximum 4% of REIT II's share of the acquisition price that REIT II represented would be charged." (Opp'n at 11–12.)

Because Plaintiffs fail to allege the total project costs for DF Summerlyn and NCP Dove, the SAC does not adequately allege why Defendants' disclosures are false. *See Cafasso, U.S. ex rel.* 637 F.3d at 1055. Accordingly, the Court **DISMISSES** the claims

regarding excessive acquisition fees for failing to satisfy Rule 9(b)'s heightened pleading standard.

### c. SEC Investigation (Investigation No. LA-5069)

Plaintiffs fail to satisfy Rule 9(b)'s pleading requirements regarding Defendants' failure to disclose SEC Investigation No. LA-5069, which closed in January 2020. Plaintiffs allege that REIT I's October 2018 circular stated that REIT I was not "currently the subject of any investigation or proceedings by any governmental authorities," (SAC ¶ 158), so its failure to disclose SEC Investigation No. LA-5069 in subsequent disclosures misled investors. (*Id.* ¶¶ 155–161.) Defendants argue that Plaintiffs do not allege when Defendants became aware of SEC Investigation No. LA-5069, and Defendants could not disclose an investigation they did not know about. (Mot. at 28 n.15.) Defendants further assert they had no duty to update the October 2018 circular because it only stated that REIT I was not "currently" the subject of an investigation, and the duty to update "applies only to statements that are clear, factual, and forward-looking, such that some continuing representation remains alive in the minds of investors when circumstances change[.]" (*Id.* (quoting *Seaman v. Cal. Bus. Bank*, No. 13-cv-02031-JST, 2013 WL 5890726, at *5 (N.D. Cal. Oct. 30, 2013)).) Plaintiffs do not directly respond to Defendants' arguments.

The Court agrees with Defendants that Plaintiffs have not sufficiently stated a claim that Defendants' omissions were false or misleading, or that Defendants had a duty to correct or update the October 2018 circular that only stated that REIT I was not currently under investigation. Plaintiffs only allege when the SEC Investigation No. LA-5069 concluded and fail to assert the period under which Defendants were under investigation or when they could have disclosed it. Accordingly, the Court **GRANTS** the motion to dismiss as to this claim.

### d.    Failure to Adhere to Regulation A

Plaintiffs satisfy their burden under Rule 9(b) to allege a violation of Section 25401 with respect to Defendants' misrepresentation of Regulation A registration exemption. Plaintiffs allege that REIT I and REIT II described their offerings of DiversyFund Investor

Shares in SEC filings as being within an exemption from registration under Regulation A, but failed to disclose that REIT I (beginning on or about March 26, 2021) and REIT II (beginning on or about January 31, 2021) had not adhered to the requirements of Regulation A. (SAC ¶ 133.) Thus, Plaintiffs allege, REITs' shares were not within a valid exemption from registration. (*Id.*) Specifically, Plaintiffs allege REIT II violated Regulation A by delaying its offering by at least seven months and by filing a circular supplement, instead of a new offering statement or amendment, when it increased its maximum offering amount. (*Id.* ¶ 136.) Plaintiffs allege REIT I similarly violated Regulation A by filing an offering circular supplement rather than a new offering statement or post-qualification, as required by Rule 253(b). (*Id.* ¶ 137.) These violations resulted in the SEC's temporary suspension of—and ultimately, permanent suspension of—REIT II's Regulation A exemption from registration. (*Id.* ¶ 31.) Defendants argue that because Plaintiffs admit that any error was "technical and inadvertent," Plaintiffs do not state a claim. (Mot. at 29.) However, "a civil claim for violation of §§ 25401 and 25501 does not require a showing of intent." *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 WL 3590984, at *27 (N.D. Cal. Dec. 30, 2005). Plaintiffs have satisfied Rule 9(b)'s requirements to state a Section 25401 claim for Defendants' alleged misrepresentation regarding Regulation A exemption.

\* \* \*

The Court finds that Plaintiffs did not plead their Section 25401 misrepresentation claims regarding excessive acquisition fees and Defendants' failure to disclose SEC Investigation No. LA-5069 with the particularity required under Rule 9(b). Accordingly, the Court **DISMISSES** these claims. Plaintiffs' claims regarding Defendants' misrepresentations regarding REIT II's asset management fees and the status of REIT I and REIT II Class A Investor shares as exempt from Regulation A registration remain.

### C. Secondary Liability

Plaintiffs bring a second cause of action under California Corporations Code Section 25504 to allege that Defendants DiversyFund, Cecilio, and Lewis are secondarily liable for

violations under Section 25401 for providing "material aid [that] included . . . the development, oversight, approval, and distribution of the advertising and marketing materials used in connection with the offer and sale of the DiversyFund Investor Shares, along with the execution of the various Regulation A offering circulars." (SAC ¶ 186.) Plaintiffs additionally allege that Cecilio and Lewis had "complete *de facto* control of REIT I and REIT II," (*id.* ¶ 11), and each "directed the day-to-day management of DF Manager, REIT I and REIT II, (*id.* ¶ 185). Defendants move to dismiss this claim, asserting secondary liability cannot exist if primary liability is not established; that Plaintiffs, in seeking rescission and not damages, may only sue the REITs; and that the SAC only includes conclusory allegations about control, which are insufficient to state a claim.

First, because the Court has determined that Plaintiffs state a claim under Section 25401 regarding misrepresentations of REIT II's asset management fees and Regulation A exemption for REIT I and REIT II, Plaintiffs can plead a claim for secondary liability related to these underlying causes of action. Second, the Court agrees with the reasoning in *Moss v. Kroner*, 197 Cal. App. 4th 860 (2011), that while "ordinary principles of rescission require strict privity in order to rescind contracts," the text of Section 25504 "demonstrate[s] the Legislature's choice to expand liability, in limited circumstances, beyond the strict privity, direct buyer and seller liability . . . to other, secondarily responsible participants in securities fraud." 197 Cal. App. 4th at 878. As was the case in *Moss*, Plaintiffs can seek rescission as relief while seeking secondary liability against Defendants DiversyFund, Cecilio, and Lewis. *See id.* at 875–79. Third, courts have interpreted "the plain language of section 25504" to mean "that principal executive officers and directors are presumptively liable for their corporation's issuance of unqualified securities, regardless of whether they participated in the transactions at issue, or controlled the issuer." *Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1310 (2011). Construing the facts alleged in favor of Plaintiffs, the Court finds they adequately state a claim that Defendants DiversyFund, Cecilio, and Lewis are secondarily liable for the remaining claims regarding

alleged misrepresentations regarding REIT II's asset management fees and Regulation A exemption for REITs I and II.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss the SAC. Considering leave should be freely given, the Court **GRANTS** Plaintiffs **LEAVE TO AMEND** the SAC.

If Plaintiffs seek to file a Third Amended Complaint ("TAC"), the TAC must be filed, along with a redline version attached, <u>no later than January 10, 2025</u>. The Court directs that prior to filing any subsequent motion to dismiss, counsel must meet and confer and discuss the intended motion, in an attempt to resolve issues without court intervention, as appropriate.

**IT IS SO ORDERED**.

Dated:  December 6, 2024

Hon. Anthony J. Battaglia
United States District Judge

22-cv-02001-AJB-VET