BUCHALTER
A Professional Corporation
Sanjay Bhandari (CA 181920)
Samuel Sazer (CA 313037
655 W. Broadway, Suite 1600
San Diego, California 92101
Telephone: 619.219.5335
E-mail: sbhandari@buchalter.com
ssazer@buchalter.com

Attorneys for Defendants DF GROWTH REIT, LLC; DF GROWTH REIT II, LLC; DIVERSYFUND, INC.; CRAIG CECILIO; and ALAN LEWIS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARK FERRY et al.,

Plaintiffs,

v.

DF GROWTH REIT, LLC et al.,

Defendants.

Case No. 3:22-cv-02001-AJB-DDL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND MOTION TO STRIKE**

Date: May 1, 2025
Time: 2:00 p.m.
Ctrm: 4A

# Table of Contents


I. INTRODUCTION ........ 6

II. BACKGROUND ........ 6

A. The Allegations Remaining Following the Court's Order on Defendants' Motion to Dismiss the Second Amended Complaint ........ 6

III. LEGAL STANDARD ........ 8

A. Motion to Dismiss ........ 8

B. Motion to Strike ........ 9

IV. ARGUMENT ........ 9

A. The TAC Fails to State a Claim Based on Defendants' Representations Regarding Regulation A ........ 9

B. The TAC Fails to State a Claim Based on the Acquisition Fees Paid by Defendants ........ 13

C. Leave to Amend Should be Denied ........ 16

D. The Court Should Strike the Allegations in the TAC that Relate to Previously-Dismissed Claims ........ 16

V. CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ........ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ........ 9

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022) ........ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ........ 8

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ........ 18

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) ........ 9

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ........ 12

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ........ 14

*Hayes v. Woodford*,
444 F.Supp.2d 1127 (S.D. Cal. 2006) ........ 9

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) ........ 8

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
No. 12-CV-04457-YGR, 2016 WL 6582045 (N.D. Cal. Nov. 7, 2016) ....................16

*Morgan v. Rohr, Inc.*,
No. 20-CV-574-GPC-AHG, 2023 WL 7713582 (S.D. Cal. Nov. 15, 2023) ....................10

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)....................16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)....................11

*In re Progenity, Inc. Sec. Litig.*,
No. 320CV01683RBMAHG, 2023 WL 219345 (S.D. Cal. Jan. 13, 2023) ....................11

*Rosen v. Uber Techs., Inc.*,
164 F. Supp. 3d 1165 (N.D. Cal. 2016)....................9

*Schaffer v. Horizon Pharma PLC*,
16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018)....................11

*Scott v. Enter. Fin. Servs. Corp.*,
947 F. Supp. 2d 1021 (E.D. Mo. 2013) ....................14

*Stiles v. Wal-Mart Stores, Inc.*,
No. 214CV02234MCECMK, 2018 WL 3093501 (E.D. Cal. June 20, 2018)....................16

*Voiles v. Reavis*,
No. 11-CV-1166 JLS (BGS), 2014 WL 5092687 (S.D. Cal. Oct. 9, 2014) ....................16

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012)....................10

**California Cases**

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
158 Cal. App. 4th 226 (2007)....................13

*People v. Butler*,
212 Cal. App. 4th 404 (2012) ..... 15

**California Statutes**

California Corporations Code
§ 25401 ..... *passim*

Securities Act of 1933 ..... 12

**Other Authorities**

Rule 8 ..... 8

Rule 12(b)(6) ..... 6, 8, 9

Rule 12(f) ..... 6, 9

# I. INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC"; ECF No. 49) accepts the Court's December 4, 2024 dismissal (ECF No. 40) of most of Plaintiffs' theories, but tries to revive one: the excessive acquisition and developer fees theory. However, the scant new allegations in the TAC are insufficient to do so. The TAC still does not adequately allege any false statements regarding the actual amount of acquisition/developer fees paid in connection with any specific project.

Plaintiffs are also mistaken in asserting that Defendants made any representations guaranteeing Regulation A exemption. Defendants never claimed their investments were in fact exempt, and actually warned investors that they might not be.

Lastly, the TAC repeats many allegations that relate solely to theories that the Court has already rejected. The Court should strike these as irrelevant.

Accordingly, the matters discussed herein should be dismissed with prejudice pursuant to Rule 12(b)(6), and the allegations relating to dismissed matters (including allegations supporting theories dismissed in the Court's ruling on this motion) should be stricken pursuant to Rule 12(f). Finally, upon the granting of this motion, Defendant DF Growth REIT LLC (REIT I) should be dismissed from this case, as none of the allegations remaining would apply to it.

# II. BACKGROUND

## A. The Allegations Remaining Following the Court's Order on Defendants' Motion to Dismiss the Second Amended Complaint

Plaintiffs' general allegations are correctly summarized in the Court's December 6, 2024 Order ("Order"). *See* ECF No. 40 at 2-3.

Plaintiffs' Second Amended Complaint ("SAC") alleged that REIT I and REIT II violated Section 25401 of the California Corporations Code by making false statements of material fact regarding "(i) the interdependency between REIT I and REIT II; (ii) the fees charged by REIT I and REIT II; (iii) the background of

management; (iv) REIT I and REIT II's lack of a need to raise a minimum amount of capital; and (v) the status of REIT I and REIT II Class A Investor shares as exempt from [SEC] registration." *Id.* Of these theories of liability, the Court dismissed all but the following:

1. Theory 1: that some REIT II investors may be entitled to rescission due to the "no asset management fees" statement that appeared on DiversyFund's website for a brief period. *Id.* at 9-11.

2. Theory 2: that REIT I and REIT II investors may be entitled to rescission because each REIT's securities were not in fact exempt under Regulation A. *Id.* at 25-26.

### B. The New Allegations in the Third Amended Complaint

With the Court's leave, Plaintiffs filed the TAC on January 10, 2025. ECF No. 41. The TAC at first appeared to re-assert all of the SAC's allegations, in addition to new allegations relating to the acquisition fees charged in connection with two projects: NCP Dove and DF Summerlyn. *See* ECF No. 41-5 (redline of TAC); *id.* at ¶¶ 62, 103, 130. Plaintiffs' counsel subsequently explained on a meet-and-confer call that even though the TAC did not remove allegations relating to theories of liability that were rejected in the Court's Order, Plaintiffs do not intend to re-assert those theories – with the exception of the theory relating to acquisition/developer fees, which the TAC's limited amendments are intended to revive as to NCP Dove and DF Summerlyn.

The amendments respond to the Court's finding that Plaintiffs' claims relating to the acquisition fees paid in connection with the NCP Dove and DF Summerlyn projects failed because Plaintiffs did not plead either project's "total project costs." Order at 24. Plaintiffs purport to rely on the costs information provided in the Declaration of Kevin Smith, which Defendants submitted in support of their Motion to Dismiss the SAC (ECF No. 30-2) ("Smith Declaration").

With respect to NCP Dove, the TAC alleges that regardless of the acquisition

fees that were actually attributable to REIT II's investment in NCP Dove, the typographical error "$1,280,2126" in REIT's II's May 3, 2022 annual report is controlling. TAC ¶ 61; *see also* ECF No. 41-5 ¶ 62. Because this amount "would have far exceeded 4% of REIT II's 31.07% share of the project cost," Plaintiffs allege that REIT II's representation of acquisition fees between 1% and 4% of total project costs was false. *Id.*

With respect to DF Summerlyn, the TAC asserts that the Smith Declaration's calculation of the relevant acquisition fee as $207,105.73 – amounting to 2.18% of total project costs – is incorrect, in that if the total project cost was $9,480,772.94, then REIT I's share of acquisition costs would be limited to 5.5% of REIT I's 38.33% of that $9.48 million—which the TAC calculates to be $199,868.91. TAC ¶ 103.

## III. <u>LEGAL STANDARD</u>

### A. <u>Motion to Dismiss</u>

Under Rule 12(b)(6), courts must dismiss any claim whose supporting allegations fail to satisfy Rule 8's requirement of a plausible set of facts which, if true, would entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Though a court must accept well-pled allegations and construe them in plaintiff's favor, it may not credit conclusory allegations. *Iqbal*, 556 U.S. at 678. Nor should a court "accept as true allegations contradicting documents that are referenced in the complaint." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007- 08 (9th Cir. 2015).[1] Further, construing facts in favor of a plaintiff does not allow a court to assume "the [plaintiff] can prove facts that [he or she] has not

[1] A court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When ruling on a Rule 12(b)(6) motion, the court may consider, in addition to the complaint, "[1] data points gleaned from documents incorporated by reference into the complaint, [2] matters of public record, and [3] facts susceptible to judicial notice." *Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1171 (N.D. Cal. 2016).

**B. <u>Motion to Strike</u>**

Rule 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Matter is 'immaterial' where [it has] no important or essential relationship to the claims or defenses being pleaded." *Hayes v. Woodford*, 444 F.Supp.2d 1127, 1132 (S.D. Cal. 2006). Matter is "impertinent" where it "is not necessary or does not pertain to the issues at hand." *Id.* Rule 12(f) thus allows a court to prevent "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

**IV. <u>ARGUMENT</u>**

**A. <u>The TAC Fails to State a Claim Based on Defendants' Representations Regarding Regulation A</u>**

The Court previously held that Plaintiffs stated a claim for violation of Section 25401 based on Defendants' "alleged misrepresentation regarding Regulation A exemption." Order at 25-26. In doing so, the Court characterized Plaintiffs' allegations as follows:

> Plaintiffs allege that REIT I and REIT II ***described their offerings of DiversyFund Investor Shares in SEC filings as being within an exemption from registration under Regulation A***, but failed to disclose that REIT I (beginning on or about March 26, 2021) and REIT II (beginning on or about January 31, 2021) had not adhered to the

requirements of Regulation A.

*Id.* (emphasis added) (internal citations omitted).

This discussion, which was dicta with respect to the issues discussed herein, does not accurately describe Defendants' SEC filings, which are incorporated by reference in the TAC.[2] In fact, Defendants never represented to investors that the shares were exempt. On the contrary, REIT II expressly warned investors in its December 2020 Offering Circular that although its investment securities were "OFFERED PURSUANT TO AN EXEMPTION FROM REGISTRATION," the SEC "HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THE SECURITIES OFFERED HEREUNDER ARE EXEMPT." Smith Decl. Ex. 3 (ECF No. 30-5) at 3.[3] REIT II further explained that while REIT II's management "relied on the advice of securities lawyers and believe we qualify for the exemption," if those lawyers were wrong, REIT II "could be liable to penalties imposed by the Federal government and State regulators, as well as to lawsuits from investors." *Id.* at 21. REIT I's October 2018 Offering Circular (the contents of which are discussed in, *inter alia*, paragraph 21 of the TAC) contained the same statements.[4]

Plaintiffs do not allege that any of these statements were false. The pleadings establish without dispute that Defendants relied in good faith on securities lawyers'

---

[2] Because Plaintiffs have filed a superseding complaint (the TAC), Defendants have broad leeway to raise new challenges to their claims. "Courts in this Circuit . . . have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) (citing *In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010)); *see also Morgan v. Rohr, Inc.*, No. 20-CV-574-GPC-AHG, 2023 WL 7713582, at *2 (S.D. Cal. Nov. 15, 2023).

[3] All pin cites to SEC filings herein reference the page number of the PDF exhibit submitted to the Court (rather than the original page number indicated in the SEC filing).

[4] *See* Declaration of Samuel Sazer ("Sazer Decl.") Ex. A at 3, 20.

opinions that their offerings were exempt. *See, e.g.*, TAC ¶ 138 (admitting that the alleged errors causing the offerings to lose their exempt status were "technical and inadvertent"). The SEC filings incorporated by reference also establish that Defendants warned investors that they were relying on their attorneys' advice, which might be wrong.

Defendants' statements that they *believed* their offerings to be exempt from Regulation A are not actionable. That is because "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); *see also In re Progenity, Inc. Sec. Litig.*, No. 320CV01683RBMAHG, 2023 WL 219345, at *10-12 (S.D. Cal. Jan. 13, 2023) (applying *Omnicare* and granting motion to dismiss). Thus, statements that effectively amount to an assertion that '"we believe we are obeying the law"' cannot serve as the basis for a securities fraud claim – unless the declarant did not "honestly" believe that they were obeying the law. *Id.* Since Plaintiffs do not allege that Defendants falsely claimed *to believe* that they satisfied Regulation A, and since Defendants fully disclosed that they were relying on the advice of attorneys, Plaintiffs cannot prevail. *Id.* (holding that securities laws "do[] not allow investors to second-guess inherently subjective and uncertain assessments," nor are they "an invitation to Monday morning quarterback an issuer's opinions")[5]; *see also Schaffer v. Horizon Pharma PLC*, 16-CV-1763 (JMF), 2018 WL 481883, at *8 (S.D.N.Y. Jan. 18, 2018) (actionable misrepresentations about legal and regulatory compliance cannot be based on disclosed risks). In light of the numerous disclaimers made by Defendants,

[5] In *Omnicare*, the assertions at issue were the following: (1) "We believe our contract arrangements with other healthcare providers, our pharmaceutical suppliers and our pharmacy practices are in compliance with applicable federal and state laws"; and (2) "We believe that our contracts with pharmaceutical manufacturers are legally and economically valid arrangements that bring value to the healthcare system and the patients that we serve." *Id.* at 179-80. These were accompanied by a disclosure that the relevant laws might "be interpreted in the future in a manner inconsistent with our interpretation and application." *Id.* at 180.

the "bespeaks caution" doctrine also compels dismissal of Plaintiffs' claims. *See, e.g.*, *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). The Court need not resort to that doctrine here, however, because Plaintiffs have not alleged that Defendants made an affirmative statement of fact regarding their compliance with Regulation A.

Indeed, and in truth, neither REIT ever affirmatively represented that it was exempt from registration in any of the four SEC filings identified by Plaintiffs. *See* TAC ¶¶ 134-35. The REITs' filings are incorporated by reference in the TAC, and they are attached herewith for the Court's reference. None contains a representation that the entity is exempt.

- REIT I's April 30, 2021 Form 1-K: The words "exempt" or "exemption" do not appear in this filing. The filing is labeled REIT I's "Annual Report Pursuant to Regulation A of the Securities Act of 1933," but nowhere does it represent that REIT I's offerings were, in fact, exempt from registration under Regulation A.
- REIT I's September 28, 2021 Form 1-SA: The words "exempt" or "exemption" do not appear in this filing. The filing is labeled "Semi-Annual Report Pursuant to Regulation A," but nowhere does it represent that REIT I's offerings were, in fact, exempt from registration under Regulation A.
- REIT I's May 3, 2022 Form 1-K: The words "exempt" or "exemption" do not appear in this filing. The filing is labeled REIT I's "Annual Report Pursuant to Regulation A of the Securities Act of 1933," but nowhere does it represent that REIT I's offerings were, in fact, exempt from registration under Regulation A.
- REIT II's September 28, 2021 Form 1-K: The words "exempt" or "exemption" do not appear in this filing. The filing is labeled "Semi-Annual Report Pursuant to Regulation A," but nowhere does it represent

that REIT II's offerings were, in fact, exempt from registration under Regulation A.

Because neither entity actually represented that its offerings were exempt from registration under Regulation A – and instead, expressly warned investors that the SEC could find them not to be exempt – Plaintiffs have not pled a false representation of material fact.

Furthermore, "[r]ecovery in a civil action for a section 25401 violation is permitted only if the seller *was aware or was negligent in failing to be aware* that his representations were misleading." *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 256 (2007) (emphasis added) (internal quotation marks omitted). With regard to the REITs' exempt status, there was neither a representation that was misleading, nor any allegation that Defendants negligently failed to learn that any of their prior misrepresentations were misleading. Instead, Defendants accurately stated their belief that they thought their lawyers had done their jobs correctly. Plaintiffs have never alleged that Defendants thought otherwise, or should have—to the contrary, they acknowledge the technical and inadvertent nature of the problem later highlighted (literally, use of the wrong form). This concession leaves Plaintiffs worlds away from the sort of allegations required to meet the plausibility and particularity requirements for Plaintiffs' fraud-based claims.

For all of these reasons, Plaintiffs' claims based on alleged misrepresentations regarding Regulation A exempt status fail as a matter of law.

### B. <u>The TAC Fails to State a Claim Based on the Acquisition Fees Paid by Defendants</u>

The Court previously dismissed Plaintiffs' claims relating to the acquisition fees associated with the NCP Dove and DF Summerlyn. Order at 24. The TAC now pleads each project's total cost; however, it still fails to plausibly allege, with particularity, that either project's corresponding acquisition fee was excessive.

As to NCP Dove, Plaintiffs cannot base their claim on the "$1,280,2126"

acquisition fee erroneously reported in REIT's II's May 3, 2022 annual report. As an initial matter, it is not plausible for Plaintiffs to allege that REIT II paid a $12.8 million acquisition fee from an investment of only $5.01 million—that is impossible. TAC ¶¶ 61-62. Nor may Plaintiffs satisfy their burden by cherry-picking one figure from Mr. Smith's declaration while ignoring the rest—including the permissible acquisition fee reported therein (which the TAC accurately alleges to be $530,106. *Id.* Indeed, the TAC offers no basis to infer that the actual figure was excessive. A typo just means the absence of plausible evidence; it does not supply a plausible allegation by itself. The mere existence of a typo in a company's disclosures is insufficient to state a claim for securities fraud. *See Scott v. Enter. Fin. Servs. Corp.*, 947 F. Supp. 2d 1021, 1029 (E.D. Mo. 2013) (granting motion to dismiss because plaintiff's allegations failed to dispel the "equally, if not more, persuasive [inference]" that defendant simply made an "inadvertent" accounting error); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) (refusing to interpret securities law in a manner that would give rise to a cause of action "in every case where there was an accounting error or auditing mistake made by a publicly traded company").

As to DF Summerlyn, the relevant statement is REIT I's representation in its Annual Report dated June 16, 2020, that "Sponsor is entitled to receive up to 5.5% of the total project cost including acquisition price, construction or capital expenditure budget and insurance and carrying costs." TAC ¶ 102. The TAC's allegation that Sponsor received an acquisition fee in excess of 5.5% "*of REIT I's share* [of] the total project cost, *id.* ¶ 103 (emphasis added), is irrelevant, because the statement at issue referred only to the "total project cost." The "5.5%" figure is also another obvious misprint, as the same filing explains that "the Sponsor will charge the Company a developer fee of ***between 6% and 8%*** of the total project costs."[6] As

[6] Sazer Decl. Ex. B at 17 (emphasis added); *see also id.* Ex. C (Annual Report dated July 16, 2019) at 13.

with NCP Dove, Plaintiffs cannot maintain an action for securities fraud by cherry-picking a single, isolated misprint in one of Defendants' disclosures—especially one that is plainly contradicted by Defendants' other disclosures, including in the very same document from which Plaintiffs cherry-picked. Thus, the TAC fails to plausible allege that REIT I made a false representation regarding the acquisition fees paid in connection with the DF Summerlyn project.

Additionally, to the extent Plaintiffs maintain that Defendants falsely promised to provide "detailed statements" showing the calculation of acquisition and developer fees, this theory fails as well. As noted in Defendants' last Motion to Dismiss, such a theory would put this Court "in the untenable position of trying to decide whether the details provided were 'detailed' enough." ECF No. 30-1 at 25-26. These types of statements are therefore rightly treated as nonactionable puffery. *See id.* (citing supporting case law); *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 414 (S.D.N.Y. 2022) ("Generally speaking, a promise that lacks objective measurements or definitive language by which to objectively analyze performance is deemed unenforceable 'puffery.'"). Moreover, the TAC does not allege that any plaintiff suffered an injury-in-fact as a result of Defendants' alleged failure to provide sufficiently "detailed" statements. *See* Order at 5-7 (holding that Plaintiffs need to show that they suffered "concrete harm" as the result of particular statements or omissions in order to establish Article III standing) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).[7]

Furthermore, the TAC's allegations describe, at most, a "false promise"—i.e., a promise to provide "detailed statements" *in the future*. Such promises are not actionable under Section 25401, except where the declarant "ha[s] either no intention or ability to ever fulfill the promises made" *at the time that the statement is made*. *People v. Butler*, 212 Cal. App. 4th 404, 422–23 (2012). Because the TAC fails to

[7] Plaintiffs likewise do not allege that they suffered any concrete harm as a result of Defendants' allegedly inaccurate disclosures regarding these fees.

suggest that Defendants *never intended* to provide these "detailed statements," Plaintiffs cannot proceed on a false promise theory.

For all of these reasons, Plaintiffs' claims relating to the acquisition and/or developer fees paid by Defendants fail as a matter of law.

### C. Leave to Amend Should be Denied

A "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Considerations include undue prejudice to the opposing party, bad faith by the movant, and futility. *Id.*

The Court should deny further leave to amend at this late stage. Plaintiffs have had four chances. There is no reason to invite another round of briefing for this 2022 case. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (approving dismissal with prejudice after prior grant of leave to amend, because "plaintiff had made her best case and had been found wanting").

### D. The Court Should Strike the Allegations in the TAC that Relate to Previously-Dismissed Claims

"[T]he great weight of authority in this circuit indicates that it is both proper and desirable to strike realleged claims that were previously dismissed with prejudice." *Stiles v. Wal-Mart Stores, Inc.*, No. 214CV02234MCECMK, 2018 WL 3093501, at *5 (E.D. Cal. June 20, 2018); *see also Voiles v. Reavis*, No. 11-CV-1166 JLS (BGS), 2014 WL 5092687, at *9 (S.D. Cal. Oct. 9, 2014) (recommending motion to strike be granted where paragraphs contained allegations that related solely to a previously-dismissed claim); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-YGR, 2016 WL 6582045, at *5 n.6 (N.D. Cal. Nov. 7, 2016) (indicating that the court would agree to strike "claims and allegations that bear no further relevance in this action").

In this case, at Defendants' request, Plaintiffs agreed to remove certain allegations from the TAC that are relevant only to dismissed claims that the TAC

does not seek to revive.[8] But Plaintiffs have not agreed to remove all of them.

First, Plaintiffs seek to preserve Paragraph 23, which discusses asset management fees paid by REIT I. The Court's Order, however, only preserved Plaintiffs' claims concerning the asset management fees paid *by REIT II*. Order at 11. The fees paid by REIT I are therefore immaterial to any remaining claim.

Second, Plaintiffs seek to preserve the portions of Paragraph 30-34 that relate to the SEC's first investigation of Defendants. But the Court already determined that Plaintiffs failed to state a claim based on this investigation. *See id.* at 25. These allegations thus serve no purpose other than to tar the Defendants with the SEC's findings on a matter that is no longer part of this case, which is patently improper.

Third, Plaintiffs seek to preserve allegations complaining that Defendants provided insufficiently frequent or insufficiently "detailed" statements showing how fees were calculated for specific projects. *See* TAC ¶¶ 41-43, 46-49, 64-65, 68, 71, 74-77, 83-84, 88. The Court has never endorsed the validity of these complaints, and any claims based on them fail for the reasons discussed above. *See supra* at 11.

Fourth, Plaintiffs seek to preserve the allegations in Paragraph 113 that "with respect to Defendants' representations concerning the exemption of REIT I and REIT II's offerings from registration under Regulation A, Plaintiffs have been harmed by these REITs' inability to raise additional capital due to the fact that their offerings are not within a valid exemption from registration," and that those "who purchased shares of REIT II have also suffered injury because . . . REIT II has incurred significant costs and losses totaling over $1 million as of February 10, 2023 as a result of its failure to establish a valid exemption from registration under Regulation A." These allegations are immaterial in light of the Court's determination that Plaintiffs failed to establish any injury traceable to Defendants' alleged "inability to raise new investor capital after the SEC suspended REIT II's Regulation A

[8] Plaintiffs agreed to remove paragraphs 40-45, 52-53, 63-73, the portions of paragraphs 74, 81, 82, and 84 that refer to management fees paid by REIT I, 75-79, 92-94, 97-98, 101, 105-109, 112-117, 120, 123-125, 153-161, and 167-169.

exemption." Order at 8-9.

All of the foregoing allegations should be stricken as immaterial and/or impertinent. Striking these allegations from the TAC will also help to provide clarity on the permissible scope of discovery in this action going forward. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

## V. **CONCLUSION**

For the reasons stated, the Court should dismiss with prejudice the claims and theories addressed in this Motion, and dismiss REIT I from this case.[9] The Court should also strike the portions of the TAC identified above.

DATED: February 10, 2025

BUCHALTER
A Professional Corporation

By: */s/ Samuel Sazer*
SAMUEL SAZER
Attorneys for Defendants

[9] For the avoidance of doubt, and consistent with this Court's prior rulings, Defendants' position is that the only claim that should be allowed to proceed is the claim that some REIT II investors are entitled to rescission based on the "no asset management fees" statement that appeared on DiversyFund's website for a brief period. Order at 9-11.