LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons (SBN 244977)
92 Hopmeadow Street, Suite 205
Weatogue, CT 06089
Tel: (860) 920-5181
Fax: (860) 920-5174
joshuakons@konslaw.com

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiffs MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV, and RYAN KRAUSE

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

MARK FERRY, VALERIE HAMERLING, IGOR KOROSTELEV and RYAN KRAUSE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

DF GROWTH REIT, LLC,
DF GROWTH REIT II, LLC,
DIVERSYFUND, INC.,
CRAIG CECILIO, and ALAN LEWIS,

Defendants.

CASE NO. 22-CV-2001-AJB-VET

**PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

PROCEDURAL POSTURE ........................................................................ 1

STATEMENT OF FACTS ........................................................................ 4

ARGUMENT AND AUTHORITIES ........................................................................ 4

I. Standard of Review ........................................................................ 4

II. Liability Under California Corp. Code §25401……………………….................5

A. Plaintiffs State a Claim Concerning Developer Fees…………………………..6

B. The Claims Regarding NCP Dove are Plausible……………………………...8

C. The Claims Regarding DF Summerlyn are Plausible………………………..10

D. The Detailed Statements Representations are Not Mere Puffery……………12

III. Plaintiffs State a Claim Concerning Non-Exemption from Registration………...15

A. The Defendants Falsely Describe the Offerings As Exempt Under Regulation A……………………………………………………………………………..15

B. The Court Already Ruled on This Issue…………………………………..16

C. Defendants Repeatedly Representing That the Offerings Were Exempt…….18

D. Defendants' Statements are Not Statements of Belief………………………..21

IV. The Motion to Strike Should Be Denied……………………………………...23

CONCLUSION………………………………………………………………………..25

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....... 4

*Bowden v. Robinson,*
67 Cal. App. 3d 705, 136 Cal. Rptr. 871, 878 (1977) ....... 6

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.,*
866 F. Supp. 2d 223, 244 (S.D.N.Y.2012) ....... 14

*Cf., Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
575 U.S. 175, 186 (2015) ....... 23

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113, 131 (S.D.N.Y. 2001) ....... 18

*Cutler v. Rancher Energy Corp.,*
No. SACV 13-00906-DOC (JPRx), 2014 U.S. Dist. LEXIS 34622 at *16 (C.D. Cal. Mar. 11, 2014) ....... 5, 6, 7

*Cutler,*
2014 U.S. Dist. LEXIS 34622 at *26-2 ....... 6

*Dandong v. Pinnacle Performance Ltd.*,
No. 10-cv-8086 (JMF), 2013 U.S. Dist. LEXIS 150259 at *31 (S.D.N.Y. Oct. 17, 2013) ....... 18, 20

*DF Growth REIT, LLC, et al. v. Flaster Greenberg P.C., et al.,*
Docket No. MER-L-000200-23 (Superior Court of New Jersey, Mercer County) ....... 17

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524, 1528 (9th Cir. 1994) ....... 28

*Hayes v. Woodford*,
444 F.Supp.2d 1127, 1132 (S.D. Cal. 2006) ....... 6

*I-Enter Co. LLC. v. Draper Fisher Jurvetson Mgmt. Co. V, LLC,*
No. C-03-1561 MMC, 2005 WL 3590984 at *27 (N.D. Cal. Dec. 30, 2005) ....... 19

*I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*,
No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481 at *89 (N.D. Cal. Dec. 30, 2005) ....... 6, 24

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010) ....................13

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
No. 3:12–CV–1737 JM (WMC), 2013 WL 5206216, at *17 (S.D. Cal. Sept. 13, 2013) ....................13

*In re Ford Motor Co. Sec. Litig.*,
381 F.3d 563 (6th Cir.2004) ....................15

*In re Rigel Pharms., Inc. Securities Litig.*,
697 F.3d 869(9th Cir. 2012) ....................5

*In re Scientific–Atlanta, Inc. Sec. Litig.*,
239 F. Supp. 2d 1351(N.D.Ga.2002) ....................15

*In re Spiegel, Inc. Sec. Litig.*,
382 F. Supp. 2d 989 (N.D.Ill.2004) ....................14

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994). ....................26

*Mulligan v. Impax Lab'ys, Inc.*,
36 F. Supp. 3d 942, (N.D. Cal. 2014) ....................14

*Nakajima c. Munakata,* C.A. No. 20-00052-JMS-R, 2021 U.S. Dist. LEXIS 203915 at *11 (D. Hawaii Oct. 22, 2021) ....................18

No. 16-CV-1762 (JMF), 2018 U.S. Dist. LEXIS 8114 at *53 (S.D.N.Y. Jan. 18, 2018) ....................26

*Omnicare,*
575 U.S. at 186 ....................24, 25

*Schaffer v. Horizon Pharma PLC* ....................25

*Signature, Inc. v. Moody's Inv. Servs.,* C.A.
No. 10-CV 5095 (PCG), 2023 U.S. Dist. LEXIS 183665 at *10 (S.D.N.Y. Oct. 12, 2023 ....................18

*Sliger v. Prospect Mortg*., LLC,
789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011)....................29

*Strong v. Cochran,*
No. 2:14-cv-788-TC, 2017 U.S. Dist. Lexis 179973 (D. Utah Oct. 13, 2017) ....................6

*U.S. v. 729.773 Acres of Land, More or Less, Situate in City and County of Honolulu,*
531 F. Supp. 967, 971 (D. Haw. 1982) .......... 28

*Whittlestone, Inc.,*
618 F.3d at 973) .......... 29

*Yee v. NIVS Intellimedia Tech. Group, Inc.,*
No. CV 11-8473 JGB (AJWx), 2013 U.S. Dist. LEXIS 46128 at *9 .......... 5

**Rules**

Fed. R. Civ. P. 12(f) .......... 5, 23

Fed. R. Civ. P. 9(b) .......... 3, 5

Plaintiffs Mark Ferry, Valerie Hamerling, Igor Korostelev and Ryan Krause ("Plaintiffs"), by and through their undersigned counsel, hereby file their response in opposition to Defendants' Motion (ECF No., 45, hereinafter "Motion") to Dismiss the Third Amended Class Action Complaint (ECF No. 41, hereinafter "TAC"). For the reasons that follow, Defendants' Motion should be denied in its entirety.

## PROCEDURAL POSTURE

Plaintiffs have alleged that throughout the Class Period[1], Defendants made various material misrepresentations and omissions of fact via their U.S. Securities and Exchange Commission ("SEC") filings, Offering Circulars and supplements thereto, and website, including recurring misstatements between 2018 and 2022 about the fees charged or to be charged by the subject DF Growth REITs I and II.[2]

This case has been the subject of two previous Motions to Dismiss directed to the First Amended Complaint (ECF No. 13) and Second Amended Complaint (ECF No. 25, hereinafter "SAC"), and resolved via two orders (ECF Nos. 23 ("March 26, 2024 Order") and 40 ("December 6, 2024 Order") that have resulted in Plaintiffs' claims being narrowed. The Court previously ruled that Plaintiffs' alleged misrepresentations and omissions concerning the independence of REIT I

---

[1] The Class Period herein runs from November 13, 2018, through March 16, 2022.
[2] Terms not defined herein shall have the same meanings as in the TAC.

from REIT II (and vice versa), the background and experience of management and certain SEC investigations, management fees that might be collected in the future from REIT I, and the minimum amount of capital that REIT II needed to raise to be a viable investment do not establish a "concrete harm" constituting an injury in fact for purposes of Article III standing. (March 24 Order, pp. 6-8; December 6, 2024 Order, pp. 7-11). Plaintiffs do not seek to revisit these dismissals via the TAC.

Second, the Court dismissed some, but not all, of Plaintiffs' allegations concerning acquisition and developer fees charged by Defendants to REIT I and REIT II, that exceeded the limits on such fees Defendants had advertised, based on Article III standing. (December 6, 2024 Order, pp. 11-14) Plaintiffs alleged REIT I and REIT II paid acquisition and developer fees to DiversyFund that exceeded the maximum amount Defendants disclosed would be paid—generally no more than 8% of REIT I's share of any project's total cost, and no more than 4% of REIT II's share of any project's cost. *Id.* The Court held that with respect to the project known as NCP Dove, "Plaintiffs continue to have standing to bring their misrepresentation claim" because "the parties' disputes as to the amount of acquisition fees paid, the amount paid by any one Defendant, and the total project costs are intertwined with the merits of Plaintiffs' misrepresentation claim." *Id.* at 14. The Court similarly held, with respect to the project known as DF Summerlyn, that Plaintiffs continue to have Article III standing to assert their claims. *Id.* at 13.

However, the Court dismissed Plaintiffs' claims concerning acquisition fees with respect to two other projects- McArthur LG and Park Boulevard, based on the Court's finding that Plaintiffs had failed to demonstrate that they suffered an injury in fact sufficient to establish standing. *Id.* at 12-14. Plaintiffs do not seek to revisit these dismissals via the TAC.

Third, as discussed in detail below, the Court dismissed Plaintiffs' claims concerning acquisition/developer fees with respect to DF Summerlyn and NCP Dove under Fed. R. Civ. P. 9(b), based on Plaintiffs' failure to allege the "total project cost" for each of those projects, but granted Plaintiffs leave to amend those claims. *Id.* at 24.

Fourth, the Court denied Defendants' motion to dismiss with respect to Plaintiffs claims that REITs I and II[3] "repeatedly misrepresented to the SEC and to the public that their offerings fell within the Regulation A exemption under 17 C.F.R. 230.251 *et seq.*, when instead, both REIT I and REIT II were illegally offered and sold without any applicable offering exemption." *Id.* at 16-17, 26.

Now before the Court remain two issues raised in the Motion: First, whether Plaintiffs meet the standards of Fed. R. Civ. P. 9(b) with respect to Defendants charging acquisition and developer fees to REITs I and II with respect to NCP

3 The two subject REITs are DF Growth REIT, LLC ("REIT I") and DF Growth REIT II, LLC ("REIT II"). *See* TAC ¶¶ 7-8. REIT I and REIT II are sometimes referred to jointly below as the "REITs".

Dove and DF Summerlyn; and second, whether Plaintiffs have sufficiently pleaded misrepresentations concerning the fact that Defendants sold unregistered securities of REIT I and II, that were not within any valid exemption from registration, while holding such securities out to investors and the public as being within a valid Regulation A exemption from registration.

## STATEMENT OF FACTS

The Plaintiffs refer the Court to the Statement of Facts set forth in the Plaintiffs' Opposition to the Motion to Dismiss the Second Amended Complaint. Dkt. 33 at pp. 3-5, and discuss the facts in the context of argument below.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

In order to withstand a motion to dismiss under Fed. R. Civ. P. 8(a), a complaint need not state detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The well-pleaded factual allegations of the complaint are assumed to be true, and they are construed in the light most favorable to the plaintiff. *In re Rigel Pharms., Inc. Securities Litig.,* 697 F.3d 869, 875 (9th Cir. 2012).

There is a split of authority as to whether the pleading standard set forth in Fed. R. Civ. P. 9(b) applies to claims under Cal. Corp. Code § 25401.[4] The Court previously ruled that Rule 9(b) applies herein because Plaintiffs' claims "sound in fraud." (December 6, 2024 Order, p. 22)

With respect to the motion to strike, Rule 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Matter is 'immaterial' where [it has] no important or essential relationship to the claims or defenses being pleaded." *Hayes v. Woodford*, 444 F.Supp.2d 1127, 1132 (S.D. Cal. 2006).

## II. <u>Liability under California Corp. Code § 25401</u>

The private cause of action established by Cal. Corp. Code §§ 25401 and 25501 differs from common law negligent misrepresentation under California law in that: (1) proof of reliance is not required, (2) although the fact misrepresented or omitted must be "material," no proof of causation is required, and (3) plaintiff need not plead defendant's negligence.[5]

---

[4] Compare *Yee v. NIVS Intellimedia Tech. Group, Inc.,* No. CV 11-8473 JGB (AJWx), 2013 U.S. Dist. LEXIS 46128 at *9 (C.D. Cal. Mar. 25, 3013 with *Cutler v. Rancher Energy Corp.,* No. SACV 13-00906-DOC (JPRx), 2014 U.S. Dist. LEXIS 34622 at *16 (C.D. Cal. Mar. 11, 2014).

[5] *Cutler,* 2014 U.S. Dist. LEXIS 34622 at *26-2; *see also Bowden v. Robinson,* 67 Cal. App. 3d 705, 136 Cal. Rptr. 871, 878 (1977); *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481 at *89 (N.D. Cal. Dec. 30, 2005), (intent not an element of liability under §

Plaintiffs have not made express allegations of fraud, and continue to take the position that Fed. R. Civ. P. 8(a) applies to their claims because fraud is not an essential element of their claims. *See Cutler,* 2014 U.S. Dist. LEXIS 34622 at *16. However, Plaintiffs recognize that the Court's previous rulings that Rule 9(b) applies are the law of the case concerning this issue.

### A. Plaintiffs State a Claim Concerning Developer Fees

With respect to acquisition and developer fees, Defendants made specific representations to the Plaintiffs and the Class about their right to collect acquisition and developer fees, reports that purportedly would be provided concerning the fees, and the method by which such fees would be calculated. TAC ¶ 86. The Court previously ruled that Plaintiffs had "adequately pled" an injury in fact regarding this issue "because Plaintiffs were charged more money that what REIT I and REIT II represented." *See* March 26, 2024 Order, p. 7.

Defendants then attempted to revisit this holding via a sworn Declaration from a (since-departed) employee, Kevin Smith (ECF. No. 30-2, hereinafter "Smith Decl."), which annexes certain public SEC filings as exhibits, and makes piecemeal factual assertions about the REITs' fees, based on Mr. Smith's personal experience, and stated review of unspecified business records.

---

25401); *Strong v. Cochran,* No. 2:14-cv-788-TC, 2017 U.S. Dist. Lexis 179973 (D. Utah Oct. 13, 2017) (to state a claim under § 25501, plaintiffs do not need to show reliance).

Defendants' disclosures regarding developer fees in the REITs' SEC filings have also proven to be a moving target. REIT II filed an *amended* Annual Report on Form 1-K/A dated April 28, 2023 – after this litigation was pending – revising the reported acquisition fees for the NCP Dove project during yearly period ending on December 31, 2021 downward to $530,106, from the "$1,280,2126 [sic] in acquisition fees to the Sponsor" reported in the initial 1-K filing on May 3, 2022.[6] This new figure, conveniently, is below the maximum 4% of REIT II's share of the acquisition price that REIT II represented would be charged. Compare TAC ¶¶ 59-62 with Smith Decl. at ¶ 6(c)(ii) (alleging based on unspecified "business records" that REIT II paid only $530,106 – or less than half the sum alleged by Plaintiffs based on REIT II's prior SEC filings, in acquisition fees).

Despite these newly asserted facts, the Court previously held that the Plaintiffs have Article III standing to bring their misrepresentation claims concerning developer fees concerning NCP Dove and DF Summerlyn, but dismissed these with leave to replead based on the Plaintiffs' failure to plead the total project costs consistent with Fed. R. Civ. P. 9(b). December 6, 2024 Order at 12-14.

[6] As noted in the TAC, REIT II reported this total in acquisition fees paid to DiversyFund during calendar year 2021 and appears only to have invested in the single NCP Dove project as of that time. *See* TAC ¶ 61.

The Plaintiffs now have repleaded these claims per the Court's previous ruling, and simply pleaded the total project costs in the TAC as invited to by the Court, based on Defendants' SEC filings as well as the figures contained in the Smith Decl. TAC ¶¶ 62, 130. In their Motion, Defendants yet again go to great lengths to distance themselves from the misrepresentations related to the "detailed statement" concerning developer fees, and the method of calculation thereof, that they were to provide to the Plaintiffs and the Class.

**B. The Claims Regarding NCP Dove are Plausible**

Defendants incorrectly claim that the Plaintiffs theory of liability rests on a mere "typo." This is hardly the case. In the May 3, 2022 annual report, REIT II disclosed the acquisition fee paid as $1,280,2126 [sic]. Naturally, this appears to be a typographical error, where the fee is somewhere approximately $1.28 million (depending on what number should be after the second comma. As a result (as previously pleaded in the SAC), $1.28 million in fees on a $5,014,216.07 investment is a fee of over 25% of REIT II's investment – which cannot have equaled less than 4% REIT II's share of the project expense. TAC ¶ 61.

Based on the Court's December 6, 2024 Order, the Plaintiffs have now pleaded the total project cost for NCP Dove as set forth in the Smith Decl. indicating that the "total project cost" was $46,370,000. TAC ¶ 62. In that case, REIT II's share of the total project cost would be $14,407,159. In the alternative,

based on the SEC filing on Form 1-K/A dated April 28, 2023, regarding the "total acquisition cost" of $49,893,685.01, the REIT II's share would be $15,502.023.09. TAC ¶ 62.

This puts the $1.28 million acquisition fee far above REIT II's 4% when compared to REIT II share of the total project cost (8.9% on $14,407,159), or total acquisition cost (8.2% on the $15,502,032.09). No matter which key the "fat finger" struck, the acquisition fees on NCP Dove exceeds the 4% of the total project cost or total acquisition cost as represented by Defendants. Total project costs have been alleged in the TAC, making it plausible that the total acquisition fees exceeded 4% of the total project costs contrary to the representations made to the Plaintiffs and the Class.

Defendants yet again try to confuse the issues by claiming that the Plaintiffs alleged that based on the "typo," the total acquisition fee alleged was $12.8 million. Motion p.14. Nowhere in any of the complaints in this action (original, FAC, SAC, and now TAC) did Plaintiffs make such an allegation.

Moreover, in the revised Form 1-K/A for the period ending December 31, 2021 that was filed *after* to the FAC and Motion to Dismiss the FAC, the quantum of acquisition fees paid is stated to be the $530,106 figure cited in the Smith Decl., which would be below the 4% ceiling for such fees *assuming* the total acquisition cost, and REIT II's share of the total project cost, are as stated in the Smith Decl.

But based on the SAC's allegations (which in turn were based on REIT II's own SEC filing (Kons Decl. **Exh. 1))**, the acquisition fees paid by REIT II appear to exceed the 4% cap. It is not plausible that the $530,106 figure renders the $1,280,2126 as represented to the Plaintiffs and the Class as a mere typo – as it is a completely different number that simply could not be the product of an inadvertent "fat finger" error.

In summary, nothing has changed with regard to Plaintiffs' allegations concerning NCP Dove except that the Plaintiffs now have pleaded the total project costs. As a result, the parties remain in dispute over the amount of acquisition fees paid on NCP Dove, the amount paid by any one Defendant, and the total project costs thereon – leaving the factual disputes "intertwined with the merits pf Plaintiffs' misrepresentation claims." *See* December 6, 2024 Order at p. 14, 24.

### C. The Claims Regarding DF Summerlyn are Plausible

Defendants make the same "about face" with regard to DF Summerlyn. Plaintiffs alleged in the TAC that the acquisition fee of $540,088 that was paid on REIT I's investment of $1,324,500 into DF Summerlyn far exceeded 5.5% of REIT I's share of the total project cost. TAC ¶ 103. This is true, as the fee would be over 40.7% of the amount invested – far in excess of the 5.5% fee as represented. *See* TAC ¶¶ 102-03.

Defendants attempt to confuse the issues by arguing, for the first time, that this representation was an "obvious misprint." (Motion, p. 14) However, again, nothing has changed since the last round of motion practice other than that Plaintiffs have now pleaded the total project cost. *Cf.,* December 6, 2024 Order at p. 14, 24. Just as the Court concluded with respect to NCP Dove, the underlying factual issues regarding the fees paid, amounts paid by any one Defendant, and the total project costs are intertwined with the Plaintiffs' misrepresentation claim.

The Court nonetheless dismissed the DF Summerlyn claims in the December 6, 2024 Order, based on failure to plead the total project costs. Just as the Plaintiffs did with NCP Dove, the Plaintiffs accepted the Court's invitation to plead total project costs of $9,480,772.94, which were taken right from the Smith Decl. TAC ¶ 103. Plaintiffs further alleged that based on REIT I's 38.33% share of DF Summerlyn (equaling $3,663,980.27), any acquisition fee above $199,868.91 would exceed 5.5% of REIT I's share of the total project costs – thereby making it plausible that the $540,088 acquisition fee exceeded this 5.5% limitation. TAC ¶ 103.

Defendants failed to take issue or attack this in their Motion. Instead, they attack the 5.5% figure with their new "obvious misprint" argument. In fact there is no evidence before the Court suggesting that the figures given were a misprint. As

such, consistent with the December 6, 2024 Order, the Motion should be denied as to DF Summerlyn.

**D. The Detailed Statements Representations are Not Mere Puffery**

Notwithstanding the fact that Defendants have now prosecuted three motions to dismiss, they raise a new argument that the representations that the Plaintiffs would receive a "detailed statement" of the acquisition fees received by Defendants are somehow non-actionable puffery.

When determining whether statements amounted only to puffery, the court must analyze the context in which the statements were made." *In re Bridgepoint Educ., Inc. Sec. Litig.,* No. 3:12–CV–1737 JM (WMC), 2013 WL 5206216, at *17 (S.D. Cal. Sept. 13, 2013). Even a statement of opinion or an expression of corporate optimism may be deemed actionable in certain circumstances because "there is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in 'misrepresentations of existing facts.' " *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.,* 757 F. Supp. 2d 260, 310 (S.D.N.Y. 2010) (quoting *Novak v. Kasaks,* 216 F.3d 300, 315 (2d Cir. 2000)).

Determining whether a given statement is material "entail[s] fact-intensive assessments that are more properly left to the jury." *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.,* 866 F. Supp. 2d 223, 244

(S.D.N.Y.2012). Thus, "[i]n deeming a statement puffery at the motion to dismiss stage, courts must exercise great caution." *Id.*; *see also In re Spiegel, Inc. Sec. Litig.,* 382 F. Supp. 2d 989, 1028 (N.D.Ill.2004) (declining to hold that statements were puffery at the motion **967* to dismiss stage because materiality involves "delicate assessments of the inferences a reasonable shareholder would draw").

Accordingly, Courts are only inclined to grant a "motion to dismiss on the ground that the statements are 'puffery' only if it concludes that the statement is 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance.'" *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966–67 (N.D. Cal. 2014), citing *In re Ford Motor Co. Sec. Litig.,* 381 F.3d 563, 570 (6th Cir.2004) (citation omitted); *see also In re Scientific–Atlanta, Inc. Sec. Litig.,* 239 F. Supp. 2d 1351, 1360 (N.D.Ga.2002) ("A statement can be dismissed as puffery as a matter of law only if it is immaterial because it is so exaggerated or so vague that a reasonable investor would not rely on it in considering the 'total mix' of facts available.").

Ther repeated representations made Defendants regarding the provision of a "detailed statement" of the "services performed and the amount of compensation paid" is hardly immaterial to the Plaintiffs and the Class, and are not so vague that a reasonable investor would not rely on it. Defendants promised a simple accounting of the Sponsor's fees, the work performed, and how the fees were

calculated, but failed to provide the promised detailed accounting, leading to confusion as to what fees were paid, and disputes about purported typos and misprints. Given the importance of calculating the fees generated for services rendered by Defendants, these representations are not mere puffery.

The Court previously found that the Plaintiffs have standing to bring their claims regarding the misrepresentations concerning fee disclosures. December 6, 2024 Order at 11. ("The Court previously found Plaintiffs satisfied Article III standing to bring their claim because Plaintiffs alleged they suffered monetary harm from the overcharges that is traceable to REIT I's and REIT II's conduct and can likely be redressed by a favorable decision.").

Finally, the Defendants' arguments about the "detailed statements" being nothing more than future promises is a red herring, as the promise was made repeatedly and continuously throughout the Class Period, and as late as May 2022, after the end of the Class Period. *See, e.g.,* REIT I May 3, 2022 Form 1-K and TAC, *e.g.,* ¶¶ 52, 62, 88, 95, 100. Based on the foregoing, the Plaintiffs have viable claims regarding the acquisition fees for DF Summerlyn and NCP Dove that should proceed to the trier of fact.

## III. Plaintiffs State a Claim Concerning Non-Exemption from Registration

### A. The Defendants Falsely Describe the Offerings As Exempt Under Regulation A

REIT I and REIT II repeatedly described their offerings of DiversyFund Investor Shares in their SEC filings as being offered under (and, by necessary implication, exempt from registration under) Regulation A, but failed to disclose that REIT I (beginning on or about March 26, 2021) and REIT II (beginning on or about January 31, 2021) had not adhered to the requirements of Regulation A and therefore the REITs' shares were not within a valid exemption from registration. TAC ¶ 133.

In fact, REIT II violated Regulation A in several manners that ultimately resulted in the permanent suspension of its offering via the Final SEC Order. *See* TAC, Exh. 2. REIT I's violations of Regulation A may be summarized as filing an incorrect form (Offering Circular Supplement dated March 26, 2021) to raise the maximum offering proceeds, "depriving REIT I of its ability to rely on Regulation A for the issuance of related unregistered securities." *See* Complaint in *DF Growth REIT, LLC, et al. v. Flaster Greenberg P.C., et al.,* Docket No. MER-L-000200-23 (Superior Court of New Jersey, Mercer County) ("N.J. Compl." at ¶ 22. Therefore, the shares sold after March 26, 2021 – including the REIT I shares sold to Plaintiff Hamerling in June and August 2021 – were neither registered nor exempt from registration. *See* SAC ¶ 6(b).

No reasonable investor would purchase securities known to be unlawfully offered unregistered securities not within a valid exemption, and therefore DiversyFund investors have been harmed by being sold DiversyFund Investor Shares under false pretenses.[7] Defendants' representations as to a basic quality of the subject DiversyFund Investor Shares – that they were offered lawfully based on a valid exemption from registration- is fundamental, and no reasonable investor would knowingly buy unregistered securities being sold unlawfully.[8]

**B. The Court Already Ruled on This Issue**

The Court already ruled in Plaintiffs' favor on this issue. In the December 6, 2024 Order, the Court held that Plaintiffs stated a claim under "Section 25401 with respect to Defendants' misrepresentation of Regulation A registration exemption."

---

[7] *See Am. Signature, Inc. v. Moody's Inv. Servs.,* C.A. No. 10-CV 5095 (PCG), 2023 U.S. Dist. LEXIS 183665 at *10 (S.D.N.Y. Oct. 12, 2023) (plaintiffs alleged injury in fact due to "harm they suffered from purchasing incorrectly rated and currently illiquid securities"); *Nakajima c. Munakata,* C.A. No. 20-00052-JMS-R, 2021 U.S. Dist. LEXIS 203915 at *11 (D. Hawaii Oct. 22, 2021) (plaintiff pled injury in fact where plaintiff was deprived of his money under false pretenses, where he remitted investment funds based on representation that he would receive a green card under EB-5 program).

[8] *See Dandong v. Pinnacle Performance Ltd.*, No. 10-cv-8086 (JMF), 2013 U.S. Dist. LEXIS 150259 at *31 (S.D.N.Y. Oct. 17, 2013) ("the alleged misrepresentations and omissions here were so fundamental to the value of the Notes that it is hard to imagine a reasonable investor purchasing them if the Offering Documents had revealed their true nature"""); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 131 (S.D.N.Y. 2001) (court presumed reliance on representations concerning net asset value (NAV) of fund shares where it was "hard to imagine" that any investor did not rely on them).

(pp. 25-26). In so ruling, the Court understood Plaintiffs' theory that REIT I and II "described their offerings of DiversyFund Investor Shares… as being within an exemption from registration under Regulation A" but failed to disclose that they "had not adhered to the requirements of Regulation A." *Id.* The Court also rejected Defendants' argument that they should be absolved because their errors were technical and inadvertent. *Id.,* citing *I-Enter Co. LLC. v. Draper Fisher Jurvetson Mgmt. Co. V, LLC,* No. C-03-1561 MMC, 2005 WL 3590984 at *27 (N.D. Cal. Dec. 30, 2005) (civil claim under ¶¶ 25401 and 35501 does not require showing of intent).

Defendants now describe the Court's observations as "dicta" and essentially to raise the same arguments again, essentially repackaging their arguments about intent as arguments that their statements were ones of belief, not of fact. Plaintiffs' theory remains that REIT I and II "described their offerings of DiversyFund Investor Shares… as being within an exemption from registration under Regulation A" but failed to disclose that they "had not adhered to the requirements of Regulation A." December 6, 2024 Order at 25-26. This representation was "so fundamental to the value of the [securities] that it is hard to imagine a reasonable investor purchasing them" if the truth had been revealed. *Dandong v. Pinnacle Performance Ltd.*, No. 10-cv-8086 (JMF), 2013 U.S. Dist. LEXIS 150259 at *31 (S.D.N.Y. Oct. 17, 2013)

### C. Defendants Repeatedly Represented That the Offerings Were Exempt

In their arguments in support of the Motion, Defendants attempt to recast their representations of fact as statements of belief. But Defendants cannot escape the fact that after the initial Offering Circulars for REIT I (filed October 19, 2018) and REIT II (filed November 20, 2020), which were filed as Part II of a Regulation A Offering Statement, Defendants filed numerous Offering Circular Supplements for REIT I and REIT II. Each of these Offering Circular Supplement filings references and states that it supplements the initial Offering Circular (which, again, is filed as Part II of a "Regulation A Offering Statement"). Each Offering Circular Supplement references the initial Offering Circular, which states that the subject limited partnership units are "offered pursuant to an exemption from registration." *See, e.g.* TAC Exh. 4 (REIT I Offering Circular Supplement No. 16, referencing Offering Circular).

The Offering Statements themselves for the REITs also contain an attestation that "(p)ursuant to the requirements of Regulation A, the issuer certifies that it has reasonable ground to believe that it meets all of the requirements for filing on Form 1-A… ." *See, e.g.,* REIT I Offering Statement on Form 1-A dated January 19, 2021. Defendants Cecilio and Lewis executed the REIT I Offering Circular representing to investors that "[p]ursuant to the requirements of Regulation A, the issuer certifies that it has reasonable grounds to believe that it

meets all of the requirements for filing on Form 1-A and has duly caused this offering statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of San Diego, State of California, on October 19, 2018." TAC ¶ 147. This representation in the REIT I Offering Circular remained available to prospective investors in DiversyFund at all relevant times when REIT I shares were being offered and was referenced in the numerous subsequent Offering Circular Amendments.[9]

Of note, even after Defendants received notice that the SEC's Division of Enforcement was investigating REIT II for possible violations of the federal securities laws in November 2021, Defendants did not disclose the SEC's investigation into whether REIT II's exemptions from registration were invalid in their SEC filings until May 3, 2022. TAC ¶¶ 159. In fact, after being advised of the SEC investigation, the Defendants filed Offering Circular Supplements for REIT I on December 3, 2021 and January 14, 2022 (two filed), and for REIT II on

---

[9] After March 26, 2021, REIT I referred to its offering of Class A Investor shares as an offering under Regulation A in, without limitation, the following SEC filings: Form 1-K dated April 30, 2021, Form 1-SA dated September 28, 2021 and Form 1-K dated May 3, 2022. (TAC ¶ 134) After January 31, 2021, REIT II referred to its offering of Class A Investor shares as an offering under Regulation A in its Form 1-SA dated September 28, 2021, and did not update the REIT II Offering Circular's description of the offering as exempt from registration under Regulation A before REIT II disclosed the second SEC investigation (Investigation No. LA-5266) in its Form 1-K filed with the SEC on or about May 3, 2022. (TAC ¶ 135)

February 23, 2022, without disclosing the issue. Thus, Defendants' arguments to the effect that they made "a sincere statement of pure opinion" because they relied upon counsel is belied by their delay in disclosing the issue to prospective investors and their filing of multiple Offering Circular Supplements after November 2021 that did not reference the issue of the REITs' non-compliance with Regulation A (and therefore being engaged in an unlawful securities offering). *Cf., Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,* 575 U.S. 175, 186 (2015).

REIT II continued to sell securities to the public after November of 2021, without disclosing the SEC investigation, based upon its filing on December 13, 2021 filing of a petition pursuant to Rule 430(b)(1) of the SEC's Rules of Practice, which had the effect of pausing REIT II's automatic disqualification. TAC ¶¶ 35-37. REIT II's SEC filings state that its offering was suspended on January 27, 2022.

Defendants' arguments that their SEC filings do not use the word "exempt" or "exemption" amount to sophistry, as the referenced filings hold the subject offerings out as Regulation A offerings that, by definition, are unregistered and may only be sold if they meet the requirements of the exemption. *See* REIT I April, 30, 2021 Form 1-K (stating under caption "Regulation A Offering" that REIT I's Offering Circular for "sale of Class A Investor Shares under Regulation A" was

"qualified" by the SEC); REIT I's May 3, 2022 Form 1-K (identical language). These are couched as statements of fact, not opinion.

In summary, Defendants sold unregistered securities even after they were expressly on notice of the SEC's view that REIT II's exemption from registration was invalid, without disclosing the issue, negating any inference that the sales were based on inadvertence or innocent reliance on advice of counsel. Further, as previously ruled by the Court, Defendants' arguments that their misstatements were the result of technical and inadvertent mistakes are unavailing because intent in not an element of a civil claim under ¶¶ 25401 and 35501) December 6, 2024 Order at pp. 25-26, citing *I-Enter Co. LLC*, 2005 WL 3590984 at *27.

**D. Defendants' Statements are Not Statements of Belief**

As argued above, Defendants made statements concerning purported *facts* to the effect that the subject DiversyFund Investor Shares were exempt from registration under Regulation A.

Defendants nonetheless attempt to focus on *other* statements that they made couched or framed as statements of belief, that the Defendants claim are not actionable. Defendants' authorities for this theory are unavailing. *Omnicare,* 575 U.S. at 186, in inapposite because the case at bar does not involve a "pure opinion" statement- as argued above many assertions that are quoted in the TAC do not reference anyone's opinion at all and are not framed as statements of belief. For

example, the Offering Statements themselves for the REITs also contain an attestation that "(p)ursuant to the requirements of Regulation A, the issuer certifies that it has reasonable ground to believe that it meets all of the requirements for filing on Form 1-A… ." *See, e.g.,* REIT I Offering Statement on Form 1-A dated January 19, 2021. Defendants Cecilio and Lewis also executed the REIT I Offering Circular representing to investors that "[p]ursuant to the requirements of Regulation A, the issuer certifies that it has reasonable grounds to believe that it meets all of the requirements for filing on Form 1-A and has duly caused this offering statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of San Diego, State of California, on October 19, 2018." TAC ¶ 147. These are not statements of opinion and, in any event, as the *Omnicare* Court carefully discussed, a defendant cannot "nullify [the statutory disclosure requirement) for all sentences starting with the phrases 'we believe' or we think.'" *Id*. at 192.

*Schaffer v. Horizon Pharma PLC,* relied upon by Defendants, is distinguishable because it was an attempted "straight" omission case premised on the disclosure requirements of Regulation S-K, Item 503, rather than any affirmative misstatement of fact rendered misleading by material omissions, and the very omissions alleged by the plaintiffs in *Schaffer*, concerning risks associated

with the defendant's pricing strategy, were in fact disclosed as risk factors. No. 16-CV-1762 (JMF), 2018 U.S. Dist. LEXIS 8114 at *53 (S.D.N.Y. Jan. 18, 2018).

Defendants' cursory argument suggesting that the "bespeaks caution" doctrine applies here lacks merit, as that doctrine, which has evolved under the *federal* securities laws, applies to *forward looking* statements concerning future projections, estimates or forecasts- not the type of factual statements at issue herein. *See In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1413 (9th Cir. 1994).

**IV. <u>The Motion to Strike Should Be Denied.</u>**

Under Fed. R. Civ. P. 12(f), matter is "immaterial" where it has no important or essential relationship to the claims or defenses being pleaded; Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1382. "Impertinent" matters consist of statements that do not pertain, and are not necessary, to the issues in question. *Id.* Here, the paragraphs of the TAC that Defendants seek to strike are relevant to the operative claims, relate to the live claims, and pertain to the issues in question.

With respect to TAC ¶ 113, the referenced paragraph relates to acquisition fee disclosures, not the subject matter referenced by Defendants. However, any allegations of the TAC relating to damages stemming from the REITs' sale of shares despite not being within a valid exemption from registration- a claim that the Court has previously sustained- are certainly not immaterial given the Court's

denial of Defendants' motions to dismiss with respect to Plaintiffs Reg A exemption claims. December 6, 2024 Order at 16-17, 26.

With respect to TAC ¶¶ 46-49, 64-65, 68 and 71, all relate to promised detailed statements showing "(t)he fees paid to the Manager and its affiliates" that supposedly would "describe the services preformed and the amount of compensation paid." These statements, never furnished, are relevant to Plaintiffs' contention that the actual representations made by Defendants concerning developer fees were "false, misleading and/or incomplete" because of the lack of information sufficient to determine the work performed and how much was paid in fees for each project. *See* TAC ¶¶ 98, 104, 132.

With respect to TAC ¶¶ 30-34, except ¶ 30, all related to the late 2021 SEC investigation and subsequent suspension are directly related to REIT II's false representations concerning its purported Regulation A exemption.

With respect to TAC ¶ 23, the paragraph covers acquisition fees (a subject of live claims herein) and financing fees, as well providing background information concerning REIT I's entitlement to receive an asset management fee, despite its "no management fees" marketing campaign. *See* TAC ¶ 74. With respect to TAC ¶¶ 41-43, Plaintiffs offered to remove the allegations concerning the Bureau of Real Estate issue in a revised pleading, an offer to which Defendants never substantively responded.

To prevail on a motion to strike pursuant to Federal Rule of Civil Procedure 12(f), the moving party must show that that complaint contains redundant, immaterial, impertinent, or scandalous assertions, and is granted largely where the challenged assertions cause prejudice to the moving party. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1994); *see also U.S. v. 729.773 Acres of Land, More or Less, Situate in City and County of Honolulu,* 531 F. Supp. 967, 971 (D. Haw. 1982) ("A motion to strike is a severe measure and it is generally viewed with disfavor. [I]t is not normally granted unless prejudice would result to the movant from the denial of the motion…"). And if there is any doubt, the as to "whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Sliger v. Prospect Mortg*., LLC, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (citing *Whittlestone, Inc.,* 618 F.3d at 973). Here, Defendants make no real attempt to show prejudice and simply attempt to chisel away at factual allegations that illustrate and place in context their violations of law. Defendants do not come close to meeting this burden and their improper use of the Rule 12(f) device should be rejected.

## **CONCLUSION**

Based on the foregoing, the Motion should be DENIED.

Dated this February 25, 2025

/s/ Todd M. Friedman
Todd M. Friedman (SBN 216752)

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman (SBN 216752)
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow Street, Suite 205
Weatogue, CT 06089
Tel: (860) 920-5181
joshuakons@konslaw.com

LAW OFFICE OF CHRISTOPHER J. GRAY
Christopher J. Gray (*pro hac vice*)
360 Lexington Ave, 14th Floor
New York, New York 10017
Phone: (212) 838-3221
Fax: (212) 937-3139
chris@investorlawyers.net

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On February 26, 2025, I electronically filed with the Court through its CM/ECF program and served a true copy through the same program the following documents: **PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

on the interested parties in said case as follows:

[x] ELECTRONICALLY, Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

Place of Filing: 21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364.

Executed on February 26, 2025, at Woodland Hills, CA

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By: s/ Todd M. Friedman
Todd M. Friedman