BUCHALTER
A Professional Corporation
Sanjay Bhandari (CA 181920)
Samuel Sazer (CA 313037
655 W. Broadway, Suite 1600
San Diego, California 92101
Telephone: 619.219.5335
E-mail: sbhandari@buchalter.com
ssazer@buchalter.com

Attorneys for Defendants DF GROWTH REIT, LLC; DF GROWTH REIT II, LLC; DIVERSYFUND, INC.; CRAIG CECILIO; and ALAN LEWIS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARK FERRY et al.,

Plaintiffs,

v.

DF GROWTH REIT, LLC et al.,

Defendants.

Case No. 3:22-cv-02001-AJB-DDL

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND MOTION TO STRIKE**

Date: May 1, 2025
Time: 2:00 p.m.
Ctrm: 4A

# **Table of Contents**


I. INTRODUCTION ........................................................................................3

II. ARGUMENT..............................................................................................4

A. Plaintiffs' Acquisition/Developer Fees Allegations Are Insufficient...4

1. NCP Dove..................................................................................4

2. DF Summerlyn ...........................................................................5

B. The "Detailed Statements" Claim Is Too Vague for Enforcement.......6

C. The Allegations About Registration Status Fail ..................................7

1. The Court Did Not Previously Rule on this Issue......................7

2. Non-Disclosure Is Not Properly Alleged...................................8

3. Failure to Update Is Not Adequately Alleged............................9

4. Plaintiffs' Other Regulation A Arguments Fail .........................9

D. The Motion to Strike Should Be Granted ........................................10

III. CONCLUSION .........................................................................................12

## I. **<u>INTRODUCTION</u>**

Plaintiffs' Opposition to Defendants' Motion to Dismiss the Third Amended Complaint ("TAC") rests on a series of mistaken assumptions and elisions.

First, as to the NCP Dove project, Plaintiffs cherry-pick from the Smith Declaration, assuming they may use it to plead total project costs while ignoring its intertwined statement of compliant fees. Plaintiffs cannot plausibly have it both ways. Absent a particularized allegation allowing them to cherry-pick one fact from a record while ignoring others, Plaintiffs have no plausible basis to allege excess NCP Dove fees.

Second, Plaintiffs elide the true record regarding an alleged 5.5% cap for the DF Summerlyn project. That number appears nowhere in authoritative disclosures (which gave ranges of 6-8%), and it was contradicted even in the same document in which it once mistakenly appeared.

Third, Plaintiffs assume the repetition of the "detailed statements" blurb renders it concrete and capable of enforcement. However, the law requires a false representation of existing, concrete, and material fact. Plaintiffs cannot allege that.

Fourth, Plaintiffs elide the difference between statements of fact and of belief. Defendants' statements about registration exemption were clearly of belief: that they "relied on the advice of securities lawyers and *believe* [they] qualify for the exemption." Plaintiffs' pivot to a "failure to update" argument to save the registration exemption theory also fails. Though Plaintiffs' *brief* vaguely claims that Defendants received information they should have disclosed, the TAC does not. Nor could it.

The Court should also grant Defendants' Motion to Strike. Allegations about dismissed theories are inherently immaterial and prejudicial. Plaintiffs' argument that the allegations are "background" is insufficient to justify the formal answer, discovery, motion practice, and other prejudice they will cause.

## II. <u>ARGUMENT</u>

### A. <u>Plaintiffs' Acquisition/Developer Fees Allegations Are Insufficient</u>

Plaintiffs misconstrue the Court's most recent Order. The Court held that Plaintiffs' claims about acquisition and developer fees did not satisfy Rule 9(b) because Plaintiffs "d[id] not adequately allege why Defendants' disclosures are false." ECF No. 40 at 24-25. Plaintiffs suggest that the Court's Order constituted free legal advice, assuring them that they would succeed if they just alleged total project costs. That is not correct. The standard remains that Plaintiffs must allege plausible, particularized, false representations. Plaintiffs have not.

#### 1. NCP Dove

Plaintiffs argue that a) their NCP Dove allegations are not based on a typo, and b) they alleged acquisition costs of $1.28 million. Neither argument is correct.

First, the TAC clearly does rely on a typo. It quotes a disclosure stating "the Company [REIT II] has paid $1,280,2126 [sic] in acquisition fees to the Sponsor," and notes that REIT II had invested only "$5,014.216.06." TAC ¶ 61. The "[sic]" appears in the TAC: Plaintiffs agree that "$1,280,2126 [sic]" is not a real number, but a mistake. It matters not whether it a "fat finger" typo, Opp. at 9, or another type.

Second, Plaintiffs never alleged that acquisition costs were $1.28 million. The TAC alleges 12802126, which is 12.8 million. This figure, which Plaintiffs admit is wrong, is no basis for a plausible, particularized allegation of fraud. It would be pure speculation to guess what the real number is: $12.8 million (which the numerals work out to), $1.28m (which Plaintiffs get by chopping off a digit for no plausible reason), or something else. Plaintiffs now *argue* the number should be read as $1.28m, but they never alleged this in the TAC, and the allegation would lack a plausible basis.

Plaintiffs also wrongly suggest that they are entitled to rely on the total project costs for NCP Dove identified in the Smith Declaration, while disregarding the acquisition fee reported therein as $530,106. Opp. at 8-10. Plaintiffs must have a plausible basis to pick only one part of a disclosure while ignoring others. If they

want to base their claims on the Smith Declaration's calculation of total project costs, then, absent a compelling justification, they must accept its calculation of fees of $530,106. Instead, Plaintiffs attempt to pair the total project costs set forth in the Smith Declaration with the TAC's inaccurate recasting of a typo as the supposed acquisition fee. This is improper and implausible; Plaintiffs offer no reason to credit the Smith Declaration on the first point but not the second.

Plaintiffs concede that when the correct fee of $530,106 is used, the relevant acquisition fee "would be below the 4% ceiling for such fees." *Id.* at 9. That is the end of the analysis. Because Plaintiffs still do not plausibly allege that Defendants paid excessive fees (or that their disclosures relating to NCP Dove were materially false in any other respect), this theory fails as a matter of law.

**2. DF Summerlyn**

Plaintiffs wrongly assert that there is "no evidence before the Court" suggesting that any statement about a 5.5% cap for DF Summerlyn was a misprint. *Id.* at 11. At this motion to dismiss stage, it is wrong to speak of evidence. Plaintiffs' allegations, however, reference disclosures that render their claim of a 5.5% cap for this project implausible. The same filing in which the 5.5% figure appears (REIT I's June 16, 2020 Annual Report) states that "the Sponsor will charge the Company a developer fee of between 6% and 8% of the total project costs." ECF No. 45-1 at 14. This is also stated many other places, including REIT I's 2019 Annual Report. *Id.* Thus, Plaintiffs' claim is indeed based on an isolated misprint that was contrary to all other disclosures, including statements in the one in which it appears.

Furthermore, there is not a single allegation in the TAC that would provide a plausible basis to believe any of the Plaintiffs actually read or relied on this misprint. *See Weiss v. NNN Cap. Fund I, LLC*, No. 3:14-cv-02689-H-NLS, 2015 WL 11990929, at *5-6 (S.D. Cal. Apr. 3, 2015) (Huff, J.) (dismissing Section 25401 and 25504 claims because of plaintiff's failure to allege injury resulting from alleged misrepresentation); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D.

Cal. 2013) (Koh, J.) ("[A] plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue."). The misprint was not contained in an offering document, website, or similar promotional materials, but simply in a periodic, required update—and even in that document, it was contradicted. Such grasping at straws is an insufficient basis to put the Court and defendants through the resource-intensive process of litigating a class action for securities fraud.

**B. The "Detailed Statements" Claim Is Too Vague for Enforcement**

Plaintiffs' claims that Defendants' disclosures were not detailed enough do not address Defendants' argument that Plaintiffs' theory would put the Court "in the untenable position of trying to decide whether the details provided were 'detailed' enough." ECF No. 45-1 at 15. They do not explain how a jury would make this nebulous determination. Nor can they, because a promise to provide "detailed" statements is puffery—just like a promise to provide "best in class" or "state of the art" statements. *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018) (deeming such descriptors to be nonactionable puffery).

Plaintiffs unpersuasively contend that Defendants' promise, while "opinion-based," was "anchored in 'misrepresentations of existing facts.'" Opp. at 12 (quoting *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 310 (S.D.N.Y. 2010)).[1] Yet Plaintiffs do not identify any "existing facts" that Defendants misrepresented. Nor does the TAC furnish any basis to infer that, at the time the promise was made, Defendants were aware of existing facts that would render this promise false or misleading. *Cf. id.* at 312.

[1] In *Bank of Am. Corp.*, 757 F. Supp. 2d 260, the court found that a representation of "adequate due diligence" was not puffery, because the inadequate due diligence *had already been performed* when the representation was made. *Id.* at 309-10. Even then, the court dismissed plaintiffs' claims based on this representation because they "fail[ed] to allege with particularity that the statements by [defendants] were knowingly false at the time that they were uttered." *Id.* at 312.

Even if a claim for securities fraud could ever be based on a promise to provide "detailed statements," Plaintiffs do not plausibly allege that the promise was false. Plaintiffs admit that Defendants provided the promised statements; they merely complain that the statements were not actually as detailed as they were hoping. *Id.* at 13. Tellingly, the only basis for this complaint appears to be the fact that "disputes" have arisen in this litigation as to how to properly interpret the statements that Defendants provided. The existence of such disputes, however – which only arose once Plaintiffs attempted to misconstrue Defendants' statements in this litigation – does not mean that Defendants' statements were insufficiently detailed, let alone that their promise to provide detailed statements was false. *See* ECF No. 40 at 24-25 (holding that Rule 9(b) requires Plaintiffs to plausibly allege "*why* Defendants' disclosures are false") (emphasis added).

In short, no reasonable investor would rely on a vague promise to provide "detailed statements," and Plaintiffs have not plausibly alleged that Defendants falsely promised to provide such statements.

### C. <u>The Allegations About Registration Status Fail</u>

#### 1. The Court Did Not Previously Rule on this Issue

The SEC filings identified in the TAC contain no representation that Defendants' offerings were in fact exempt from registration under Regulation A; rather, they stated Defendants' belief that this was so, and told investors of the risk that Defendants might be wrong. *See* ECF No. 45-1 at 9-13.[2] Though the Court previously credited Plaintiffs' claim that Defendants represented that their offerings were exempt in ruling on other issues, ECF No. 40 at 25-26, the claim was not

---

[2] In responding, Plaintiffs point to Defendants' statement in another document that "(p)ursuant to the requirements of Regulation A, the issuer certifies that it has reasonable ground *to believe* that it meets all of the requirements for filing on Form 1-A…." Opp. at 18-19 (emphasis added). This statement too, however, was expressly one of opinion or belief. There is also no basis to believe that any Plaintiff relied on it: Indeed, though the TAC specifically references four filings in alleging that Defendants misrepresented their registration status, none contains this statement. *See* TAC ¶¶ 134-35.

challenged before, and it is contradicted by the SEC filings referenced in the TAC (which were not previously made available to the Court), ECF No. 40 at 25-26. Plaintiffs are wrong in claiming that this issue was previously ruled upon.

**2. Non-Disclosure Is Not Properly Alleged**

Nor are Plaintiffs correct that the TAC is viable under a nondisclosure theory (i.e., that Defendants should have disclosed the SEC investigation that led to REIT II's suspension). First, "Section 25401 does not apply to simple nondisclosure." *Lynch v. Cook*, 148 Cal. App. 3d 1072, 1087–88 (Ct. App. 1983) (quotation marks omitted); *see also Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 227–28 (3d Cir. 2002) (interpreting California law and rejecting the contention that Section 25401 imposes "a general duty to disclose all information that relates to any topic mentioned" in a company's public filings). Second, even if simple non-disclosure could suffice, the TAC does not allege *when* Defendants learned of the inadvertent violations of Regulation A, or what disclosures should have been made to prevent what investor harm in each REIT. Though the TAC alleges that "REIT II became aware of the SEC's investigation in November 2021" (TAC ¶ 139), it fails to allege what the SEC actually told REIT II at that time, even in general terms. Plaintiffs' brief goes beyond what the TAC alleges in claiming that the SEC provided notice of Regulation A violations.[3] Plaintiffs make no such allegation in the TAC, nor could they.[4]

Obviously, SEC investigations can relate to a wide variety of subjects with a wide range of seriousness, and many end with no adverse action. (In this case, the SEC ended its investigation with no penalties, and only an administrative cease and

---

[3] Plaintiffs argue: "In summary, Defendants sold unregistered securities *even after they were expressly on notice of the SEC's view that REIT II's exemption from registration was invalid*, without disclosing the issue, negating any inference that the sales were based on inadvertence or innocent reliance on advice of counsel." Opp. at 21 (emphasis added). But the TAC does not allege what the SEC said, or when.

[4] Plaintiffs have access to records of Defendants' interactions with the SEC, which demonstrate that such an allegation cannot be made consistent with Rule 11.

desist based mainly on technical errors by securities counsel. ECF 30-1 at 9.) As the Court has held, therefore, the SEC's notifying Defendants of an investigation in November 2021 did not trigger a duty to disclose. ECF 40 at 25 (rejecting SAC's allegations based on nondisclosure of SEC investigations); *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (holding that "a government investigation, without more, does not trigger a generalized duty to disclose").

### 3. Failure to Update Is Not Adequately Alleged

For the same reasons, Plaintiffs cannot rescue their allegations under a "failure to update" theory. The TAC does not allege what the SEC said, when it said it, what subsequent disclosure should have contained what information, and whether any named Plaintiff actually purchased securities after that time, so as to be a class representative for such allegations. *See Weiss*, 2015 WL 11990929 at *1 (dismissing claim because plaintiff failed to show "that he—not the purported class—ha[d] suffered an injury in fact for each of the claims he raise[d]"). This theory is particularly implausible as to REIT I, which was closed by November 12, 2021. TAC ¶ 24. Thus, there is no plausible or particularized basis for the Court infer when Defendants learned of concrete facts that were required to be disclosed, or that any disclosures about them were untimely. *Cf. In re Yahoo! Inc. Sec. Litig.*, 611 F. App'x 387, 390 (9th Cir. 2015) ("[E]ven if we were to recognize a duty to correct, which we do not, appellees have not violated such a duty because they corrected the prior statements within a reasonable time.") (internal quotation marks omitted).[5]

### 4. Plaintiffs' Other Regulation A Arguments Fail

Plaintiffs mistakenly rely the proposition that '"a civil claim for violation §§ 25401 and 25501 does not require a showing of intent."' ECF No. at 26 (quoting *I-*

[5] To the extent that Section 25401 imposes a "duty to update," the Court has already determined that such duty "applies only to statements that are clear, factual, and forward-looking, such that some continuing representation remains alive in the minds of investors when circumstances change[.]" Order at 25 (quoting *Seaman v. Cal. Bus. Bank*, No. 13-cv-02031-JST, 2013 WL 5890726, at *5 (N.D. Cal. Oct. 30, 2013)). The TAC identifies no such statements regarding Regulation A.

*Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 WL 3590984, at *27 (N.D. Cal. Dec. 30, 2005)). That is beside the point. For an actionable *misrepresentation* to exist, Plaintiffs must allege that Defendants were aware of regulatory errors, or should have been, when disclosures were made. *See Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC,* 158 Cal. App. 4th 226, 256 (2007) ("Recovery in a civil action for a section 25401 violation is permitted only if the seller was aware or was negligent in failing to be aware that his representations were misleading."). The TAC fails to allege this.

The "bespeaks caution" doctrine directly applies to cautionary statements such as the ones in issue. *See* ECF No. 45-1 at 11-12. Even if Plaintiffs were correct that this only applies to forward-looking statements (Opp. at 23), the statements at issue *were* forward-looking. The risk they identified was a future one: If the securities lawyers were wrong, then *in the future* REIT II "could be liable to penalties imposed by the Federal government and State regulators, as well as to lawsuits from investors." ECF No. 45-1 at 10.

In sum, the TAC contains no plausible allegation of a representation that the REITs were actually exempt, rather than believed to be; or that the belief was not honest; or that it was not updated after a specifically identified fact was learned, in time to prevent a named Plaintiff's identified harm. Plaintiffs therefore cannot state a claim based on Defendants' representations regarding Registration A.

**D. <u>The Motion to Strike Should Be Granted</u>**

Plaintiffs concede that some of their allegations should be struck, Opp. at 23-24, but defend some as "relevant," arguing that Defendants will suffer no prejudice. Opp. at 25. However, "the prospect of expensive and potentially unnecessary and irrelevant discovery is more than sufficient prejudice to justify a motion to strike." *CFPB v. Performance SLC, LLC,* No. 20-02132, 2021 WL 2982275, at *3 (C.D. Cal. Apr. 2, 2021). The case on which Plaintiffs rely is fully consistent: It held that a motion to strike is properly granted against "stale and barred charges" that "would

have been burdensome" to "answer" and otherwise litigate. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1994) (discussing "strong likelihood that [the allegations] would lead to unwarranted and prejudicial inferences against Fantasy"; and noting "the stricken allegations would have unnecessarily complicated the trial . . . requiring the introduction of extensive evidence" extrinsic to "the real issues"). Prejudice is clear.

As to many allegations, the parties agree they should be removed. As noted in Defendants' brief, Plaintiffs agreed to remove many allegations during meet and confer talks. ECF No. 45:1 at 17 n.8. Their Opposition does not dispute this. Those allegations[6] should accordingly be struck. (The Court should direct the parties to confer accordingly before any new Complaint is filed.)

The discussion below therefore focuses on allegations whose removal is discussed in the Opposition.

**Paragraph 23**. Plaintiffs admit this centers on asset management fees available to REIT I, Opp. at 24, a theory the Court rejected. ECF 40 at 11:6-12.

**Paragraph 30**. Plaintiffs previously told Defendants they opposed removing this paragraph, but the Opposition does not defend it. It should be struck. *See* Opp. at 24:15 (defending allegations ¶¶ 30-34 "except ¶ 30").

**Paragraphs 31-34.** These allegations relate to the Regulation A exemption theory, challenged herein. Opp. at 24. They should be struck if that theory is struck. Even if it not, the allegations about previously stricken theories should be. *See, e.g.*, TAC ¶ 33 (allegations regarding REITs as "separate investment vehicle[s]").

**Paragraphs 41-43**. The Opposition does not argue against removal of these paragraphs. *Id.* at 24:24-28.

**Paragraphs 46-49, 64-65, 68, 71, 74-77, 83-84, and 88**. These "all relate to promised detailed statements." Opp. at 24 (not discussing, however, ¶¶ 74-77, 83-

[6] The parties' agreement covers TAC ¶¶ 40-45, 52-53, 63, 66, 69-70, 75-79, 92-94, 97-98, 101, 105-109, 112-117, 120, 123-125, 153-161, 167, and 169; and those portions of ¶¶ 74, 81, 82, and 84 that refer to fees for REIT I.

84, or 88). That theory was not sustained in the Court's Order (ECF 40). As explained above, it is not viable, and should be struck.

## III. CONCLUSION

For the reasons stated above and in Defendants' moving papers, the Court should dismiss with prejudice the claims and theories addressed in Defendants' Motion, and dismiss REIT I from this case. The Court should also strike the portions of the TAC identified above.

DATED: March 4, 2025

BUCHALTER
A Professional Corporation

By: */s/ Samuel Sazer*
SAMUEL SAZER
BUCHALTER, A PROFESSIONAL CORPORATION
Attorneys for Defendants